# EXHIBIT 9

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-310-712-6600
FACSIMILE: 1-310-712-8800
WWW.SULLCROM.COM

*1888 Century Park East*
*Los Angeles, California 90067-1725*

NEW YORK • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

June 26, 2023

<u>Via E-mail</u>

Eric Bond,
Jason C. Benton,
   Federal Deposit Insurance Corporation,
     3501 Fairfax Drive, D-7028,
       Arlington, VA 22226-3500.

        Re:    <u>SVB Financial Group</u>

Dear Messrs. Bond and Benton:

      I write as counsel to SVB Financial Group ("Debtor") to demand that the Federal Deposit Insurance Corporation ("FDIC") in its corporate capacity ("FDIC-C") immediately cease its violation of its legal obligations and pay to the Debtor the deposit balance of more than $1.929 billion the Debtor maintained in deposit accounts at Silicon Valley Bank ("SVB") at the time Debtor's access to those accounts was improperly blocked.

      To remind you of the relevant background, on March 10, 2023, the California Department of Financial Protection and Innovation took possession of the property and business of SVB and appointed the FDIC as receiver of SVB ("FDIC-R"). Prior to March 10, the Debtor had established, and as of March 10 it maintained, bank accounts at SVB (the "Debtor Accounts"), including account numbers 101035270, 3303510822 and 7899916176.

      On March 12, 2023, the Boards of the FDIC and the Federal Reserve voted to recommend, and after consulting with the President, the Secretary of the Treasury approved actions to invoke the systemic risk exception under the Federal Deposit Insurance Act to enable the FDIC-C to fully guarantee all deposits of SVB and Signature Bank. The FDIC-C took that action. Before the opening of business on March 13, 2023, the FDIC-C announced that "all deposits—both insured and uninsured" of the former Silicon Valley Bank of Santa Clara, California had been transferred to a newly created FDIC-operated bridge bank, Silicon Valley Bridge Bank, N.A. (the "Bridge Bank"). The headline of the announcement was "FDIC Acts to Protect All Depositors" and in the announcement the FDIC-C represented that depositors would "have full access

Eric Bond  -2-
Jason C. Benton

to their money beginning this morning [March 13], when Silicon Valley Bridge Bank, N.A., the bridge bank, opens and resumes normal banking hours and activities, including online banking." The FDIC-C further represented that "[a]ll depositors of the institution will be made whole." The use of the word "all"—multiple times in multiple places—is deliberate and unambiguous, with the FDIC-C's announcement distinguishing between SVB's deposits (which are "all" transferred) and depositors (which will "all" be made whole), on the one hand, and SVB's assets, on the other hand, of which only "substantially all" were transferred.

The Debtor was a large depositor of SVB. It retained its deposits with SVB after the appointment of the FDIC as receiver, and the transfer of "all deposits" to the Bridge Bank included the transfer of "all" Debtor Accounts. The Debtor confirmed through the Bridge Bank's information systems that the Debtor Accounts had transferred, and, consistent with the self-declared purpose of the FDIC's announcement and actions, the Debtor retained the vast majority of its deposits with the Bridge Bank.[1]

Nevertheless, on approximately March 16, 2023, the Bridge Bank, at the direction of the FDIC-C or FDIC-R or both, stopped honoring the Debtor's withdrawal requests, and since that time the FDIC has blocked the Debtor from accessing the Debtor Accounts. At the time Debtor's access to the Debtor Accounts was blocked, the accounts contained in excess of $1.929 billion.

The obligation to pay the uninsured deposits of SVB is a legal obligation of the FDIC-C, through the Deposit Insurance Fund. Having invoked the systemic risk exception, the FDIC-C guaranteed "all" uninsured deposits formerly held at SVB without exception, and acted to induce counterparties to maintain their relationships with the Bridge Bank in part to improve its recoveries, the FDIC-C cannot now unilaterally condition or limit the coverage of its action. It must give the Debtor "full access" to all of its uninsured funds as it has every other former depositor of SVB. Accordingly, the Debtor demands that FDIC-C provide it with access to the full amount of its uninsured deposits by no later than Tuesday, June 27, 2023.

Sincerely,

Robert A. Sacks

---

[1] The FDIC announcement notes that its actions would "preserve the value of the assets and operations of Silicon Valley Bank, which may improve recoveries for creditors and the [FDIC's deposit insurance fund]."