Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

*Counsel to the Federal Deposit Insurance
Corporation (in its corporate capacity)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP, <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, <br><br> Defendant. | CASE NO. 5:23-cv-06543-BLF <br><br> **FDIC-C'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS** <br><br> Judge: Hon. Beth Labson Freeman <br> Action Filed: December 19, 2023 <br><br> Hearing Date: July 11, 2024 <br> Time: 9:00 AM <br> Courtroom: 3 – 5th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES, THEIR COUNSEL OF RECORD, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that at 9:00 AM on July 11, 2024, or as soon thereafter as the matter may be heard, before the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, Defendant Federal Deposit Insurance Corporation, in its corporate capacity (**FDIC-C**), will and hereby does move for partial dismissal of this action.

FDIC-C respectfully moves the Court to dismiss every claim in the Complaint except the claim under 12 U.S.C. § 1821(f) in Count VI. FDIC-C seeks dismissal for (1) lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and (2) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Jeannette Wise and accompanying exhibits; the arguments of counsel; and all other material that may properly come before the Court.

# **TABLE OF CONTENTS**

Introduction ............................................................................................................. 1

Background ............................................................................................................. 3

    A.    Silicon Valley Bank's Failure. ................................................................ 3

    B.    SVBFG's Deposits. ................................................................................ 4

    C.    SVBFG's Claims to FDIC-R1 and FDIC-R2. ....................................... 5

    D.    SVBFG's Claim to FDIC-C. ................................................................. 5

    E.    SVBFG's Adversary Proceeding Against FDIC-C, FDIC-R1, and FDIC-R2........... 6

Legal Standard........................................................................................................ 7

Argument ................................................................................................................ 7

I.    12 U.S.C. § 1821(f) bars SVBFG's other deposit-related claims against FDIC-C. .............. 7

II.    SVBFG fails to state a plausible non-FOIA claim ......................................11

    A.    The turnover claim is not plausible (Count II). ........................................11

        1.    The alleged obligation is disputed. ................................................... 11

        2.    FDIC-C does not possess any SVBFG "Account Funds." .............................. 12

        3.    FDIC-C does not owe SVBFG an enforceable obligation. ............................. 12

        4.    Even if FDIC-C owed an enforceable obligation, FDIC-C satisfied it. ........... 14

    B.    The automatic-stay claim is not plausible (Count III)............................... 15

    C.    The due process claim is not plausible (Count IV). ................................ 16

    D.    The standalone APA claim is beyond this Court's jurisdiction and is not plausible (Count V)............................................................................ 18

    E.    The estoppel claim is not plausible (Count VII). .................................... 20

    F.    The claim for a declaratory judgment is not plausible (Count I). ........................ 21

III.    This Court lacks jurisdiction over the FOIA Claim (Count VIII). ....................... 23

Conclusion.............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Aiken Cnty.*,
    645 F.3d 428 (D.C. Cir. 2011) ......................................................................... 18, 19

*Al Otro Lado, Inc. v. Nielsen*,
    327 F. Supp. 3d 1284 (S.D. Cal. 2018) ............................................................. 18, 19

*Am. Small Bus. League v. Contreras-Sweet*,
    2016 U.S. Dist. Lexis 145024 (N.D. Cal. Oct. 18, 2016), *aff'd*, 712 F. App'x
    667 (9th Cir. 2018) .................................................................................................. 18

*Arrow Reliance, Inc. v. Califf*,
    2022 WL 18027595 (W.D. Wash. Dec. 30, 2022) .................................................. 13

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 7, 11

*Aviva Life & Annuity Co. v. FDIC*,
    654 F.3d 1129 (10th Cir. 2011) ......................................................................... 9, 10

*Axon Enters. v. FTC*,
    143 S. Ct. 890 (2023) ............................................................................................... 8

*Bark v. U.S. Forest Serv.*,
    37 F. Supp. 3d 41 (D.D.C. 2014) ........................................................................... 18

*Battista v. FDIC*,
    195 F.3d 1113 (9th Cir. 1999) ................................................................................ 23

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 7

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ........................................................................................... 19, 20

*Brnovich v. Biden*,
    630 F. Supp. 3d 1157 (D. Ariz. 2022) .................................................................... 19

*Brown v. GSA*,
    425 U.S. 820 (1976) ................................................................................................ 10

*Bullion Servs. v. Valley State Bank*,
    50 F.3d 705 (9th Cir. 1995) ............................................................................ 2, 3, 16

*In re Charter Co.*,
    913 F.2d 1575 (11th Cir. 1990) .............................................................................. 11

*Citizens Bank of Md. v. Strumpf*,
    516 U.S. 16 (1995) .................................................................................................. 12

*City of Chi. v. Fulton*,
    592 U.S. 154 (2021) ................................................................................................ 15

*City of Oakland v. Lynch,*
   798 F.3d 1159 (9th Cir. 2016) ................................................................................. *passim*

*City of Reno v. Netflix, Inc.,*
   52 F.4th 874 (9th Cir. 2022) ......................................................................................... 21

*Cobell v. Norton,*
   240 F.3d 1081 (D.C. Cir. 2001) .................................................................................... 18

*Com. Law Corp. v. FDIC,*
   716 F. App'x 383 (6th Cir. 2017) ................................................................................. 23

*DeCell & Assocs. v. FDIC,*
   36 F.3d 464 (5th Cir. 1994) .......................................................................................... 17

*DeSoto v. Yellow Freight Sys., Inc.,*
   957 F.2d 655 (9th Cir. 1992) ........................................................................................ 20

*Doe I v. Mayorkas,*
   530 F. Supp. 3d 893 (N.D. Cal. 2021) (Freeman, J.) .................................................. 18

*EC Term of Years Tr. v. United States,*
   550 U.S. 429 (2007) ................................................................................................. 9, 10

*Erickson v. FDIC,*
   2010 WL 11596560 (C.D. Cal. Mar. 10, 2010) ........................................................... 17

*Evers v. Astrue,*
   536 F.3d 651 (7th Cir. 2008) .......................................................................................... 9

*Far W. Fed. Bank, S.B. v. Off. of Thrift Supervision-Dir.,*
   119 F.3d 1358 (9th Cir. 1997) ...................................................................................... 23

*FDIC v. Isham,*
   782 F. Supp. 524 (D. Colo. 1992) ................................................................................ 20

*Fed. Crop Ins. Corp. v. Merrill,*
   332 U.S. 380 (1947) ...................................................................................................... 20

*Foskaris v. Experian Info. Sols., Inc.,*
   2018 WL 3381394 (N.D. Cal. July 11, 2018) ............................................................... 9

*Glassey v. Amano Corp.,*
   2006 WL 889519 (N.D. Cal. Mar. 31, 2006), *aff'd,* 285 F. App'x 426 (9th Cir.
   2008) ....................................................................................................................... 11, 12

*In re Gurga,*
   176 B.R. 196 (9th Cir. B.A.P. 1994) ............................................................................ 11

*Harris v. Sec'y of Hous. & Urb. Dev.,*
   2014 WL 6060171 (E.D. Cal. Nov. 12, 2014) ............................................................ 20

*In re Heller Ehrman LLP,*
   461 B.R. 606 (Bankr. N.D. Cal. 2011) ........................................................................ 11

*Hinck v. United States,*
   550 U.S. 501 (2007) ............................................................................................ 8, 9, 10

*Jablon v. United States,*
   657 F.2d 1064 (9th Cir. 1981) ............................................................................... 20

*Johnson v. Williford,*
   682 F.2d 868 (9th Cir. 1982) ............................................................................. 20, 21

*Kent v. Worldwide Fin. Servs., Inc.,*
   2017 WL 1044990 (E.D. Mich. Mar. 20, 2017) .................................................... 15

*Kershaw v. Resol. Tr. Corp.,*
   987 F.2d 1206 (5th Cir. 1993) ............................................................................... 17

*Lawrence v. Wells Fargo Bank, N.A.,*
   2014 WL 2705425 (N.D. Cal. June 13, 2014) ...................................................... 20

*Lazy Y Ranch Ltd. v. Behrens,*
   546 F.3d 580 (9th Cir. 2008) .................................................................................. 7

*Libr. of Cong. v. Shaw,*
   478 U.S. 310 (1986) .............................................................................................. 23

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ........................................................................................ 18, 19

*Mahtesian v. OPM,*
   388 F. Supp. 2d 1047 (N.D. Cal. 2005) ............................................................... 24

*Mangindin v. Wash. Mut. Bank,*
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ................................................................. 22

*Mathews v. Eldridge,*
   424 U.S. 319 (1976) .............................................................................................. 17

*Metro Cnty. Title, Inc. v. FDIC,*
   13 F.3d 883 (5th Cir. 1994) ................................................................................... 17

*In re Mountaineer Coal Co.,*
   247 B.R. 633 (Bankr. W.D. Va. 2000) ................................................................. 15

*Mt. Adams Veneer Co. v. United States,*
   896 F.2d 339 (9th Cir. 1989) ................................................................................. 19

*N.A. for Gun Rts., Inc. v. City of San Jose,*
   632 F. Supp. 3d 1088 (N.D. Cal. 2022) (Freeman, J.) ...................................... 7, 24

*Nee v. FDIC,*
   2012 WL 1986289 (C.D. Cal. May 31, 2012) ...................................................... 23

*Nimon v. Resol. Tr. Corp.,*
   975 F.2d 240 (5th Cir. 1992) ................................................................................. 17

*Nolan v. Cleland*,
    686 F.2d 806 (9th Cir. 1982) .................................................................................................... 9

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ................................................................................................................. 18

*In re NSA Telecommunications Recs. Litig.*,
    2010 WL 11475732 (N.D. Cal. Dec. 21, 2010) ...................................................................... 23

*Okpalobi v. Foster*,
    244 F.3d 405 (5th Cir. 2001) (en banc) .................................................................................. 21

*OPM v. Richmond*,
    496 U.S. 414 (1990) ............................................................................................................... 21

*Osterman v. U.S. Army Corps of Eng'rs*,
    2014 WL 5500396 (W.D. Wash. Oct. 30, 2014) ..................................................................... 24

*Pearl River Union Free Sch. Dist. v. King*,
    214 F. Supp. 3d 241 (S.D.N.Y. 2016) .................................................................................... 18

*Pelletier v. United States*,
    2013 WL 425874 (D. Colo. Feb. 4, 2013), *rev'd in part on other grounds*, 588 F.
    App'x 784 (10th Cir. 2014) .................................................................................................... 22

*Pub. Util. Dist. No. 1 of Snohomish Cnty. v. Bonneville Power Admin.*,
    250 F. App'x 821 (9th Cir. 2007) ........................................................................................... 13

*Querim v. EEOC*,
    111 F. Supp. 2d 259 (S.D.N.Y. 2000), *aff'd*, 9 F. App'x 35 (2d Cir. 2001) .......................... 19

*Safe Air For Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .................................................................................................. 7

*Savage Servs. Corp. v. United States*,
    25 F. 4th 925 (11th Cir. 2022) ................................................................................................. 8

*Shanks v. Dressel*,
    540 F.3d 1082 (9th Cir. 2008) .......................................................................................... 16, 17

*Smallwood v. DOJ*,
    266 F. Supp. 3d 217 (D.D.C. 2017) ....................................................................................... 24

*Stossel v. Meta Platforms, Inc.*,
    634 F. Supp. 3d 743 (N.D. Cal. 2022) ...................................................................................... 7

*Strohnik v. Woodside Hotel Grp., Ltd.*,
    2021 WL 11696238 (N.D. Cal. Apr. 15, 2021) (Freeman, J.) ................................................. 5

*Sulit v. Schiltgen*,
    213 F.3d 449 (9th Cir. 2000) .................................................................................................. 21

*Tam v. FDIC*,
    830 F. Supp. 2d 850 (C.D. Cal. 2011) ..................................................................................... 9

FDIC-C's Notice of Mot. & Partial Mot. to Dismiss

*Thome v. FDA*,
   2011 WL 3206910 (N.D. Cal. July 27, 2011) .................................................... 24

*Thornton v. City of St. Helens*,
   425 F.3d 1158 (9th Cir. 2005) ................................................................... 17

*Town of Castle Rock v. Gonzales*,
   545 U.S. 748 (2005) ............................................................................ 16

*United States v. AMC Ent., Inc.*,
   1999 U.S. Dist. Lexis 21999 (C.D. Cal. Sept. 8, 1999) .................................. 19

*United States v. Bormes*,
   568 U.S. 6 (2012) ............................................................................... 9

*United States v. Inslaw, Inc.*,
   932 F.2d 1467 (D.C. Cir. 1991) ............................................................. 15

*United States v. Pullman Constr. Indus., Inc.*,
   210 B.R. 302 (N.D. Ill. 1997) ............................................................... 23

*Veluchamy v. FDIC*,
   706 F.3d 810 (7th Cir. 2013) ......................................................... 10, 21

*Vill. of Sugar Grove v. FDIC*,
   2013 WL 3274583 (N.D. Ill. June 27, 2013) ............................................. 10

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ............................................................ 18, 19

*Wilson v. Comm'r*,
   705 F.3d 980 (9th Cir. 2013) ................................................................. 9

### Statutes and Rules

5 U.S.C. § 551(13) ................................................................................. 18

5 U.S.C. § 704 ..................................................................................... 19

5 U.S.C. § 706(2)(A) ............................................................................... 9

11 U.S.C. § 106(a) ................................................................................. 23

11 U.S.C. § 362 ........................................................................... 6, 15, 23

11 U.S.C. § 362(a) ................................................................................. 15

11 U.S.C. § 362(a)(3) ............................................................................. 15

11 U.S.C. § 542 ......................................................................... 6, 11, 15, 23

11 U.S.C. § 542(a) ................................................................................. 11

11 U.S.C. § 542(b) ................................................................................. 11

12 U.S.C. § 1821(a)(4)(A)(ii) ........................................................................................... 9

12 U.S.C. § 1821(d) ................................................................................................... 3, 11

12 U.S.C. § 1821(f) ................................................................................................. passim

12 U.S.C. § 1821(f)(1) ............................................................................................... 8, 14

12 U.S.C. § 1821(f)(3) ............................................................................................... 9, 17

12 U.S.C. § 1821(f)(4) ............................................................................................. passim

12 U.S.C. § 1821(f)(5) ..................................................................................... 2, 8, 9, 10

12 U.S.C. § 1822(b) ...................................................................................................... 14

12 U.S.C. § 1823 ..................................................................................................... 12, 13

12 U.S.C. § 1823(c)(1) ............................................................................................. 13, 16

12 U.S.C. § 1823(c)(2)(A) ............................................................................................ 13

12 U.S.C. § 1823(c)(3) .................................................................................................. 13

12 U.S.C. § 1823(c)(4) .................................................................................................. 13

12 U.S.C. § 1823(c)(4)(A) ............................................................................................ 12

12 U.S.C. § 1823(c)(4)(E) ............................................................................................ 12

12 U.S.C. § 1823(c)(4)(F) ........................................................................................ 13, 16

12 U.S.C. § 1823(c)(4)(G) ...................................................................................... passim

12 U.S.C. § 1823(c)(4)(G)(i) ........................................................................................ 13

12 U.S.C. § 1823(d)(4) .................................................................................................. 13

12 U.S.C. § 1823(h) ...................................................................................................... 13

12 U.S.C. § 1823(k)(1)(A)(i) ........................................................................................ 13

12 U.S.C. § 1831o-1(a) ................................................................................................... 1

12 U.S.C. § 1831o-1(f) ................................................................................................... 1

28 U.S.C. § 2401(a) ...................................................................................................... 10

28 U.S.C. § 157(d) .......................................................................................................... 6

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 7, 24

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7, 22

FDIC-C'S NOTICE OF MOT. & PARTIAL MOT. TO DISMISS

1

## Other Authorities

Federal Reserve System, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank* (Apr. 28, 2023), *available at* https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf ......................... 1

**Introduction**

On Friday, March 10, 2023, Silicon Valley Bank failed, making it, as of that date, the second largest bank failure in U.S. history after Washington Mutual's in 2008. The California Department of Financial Protection and Innovation closed the Bank and named the Federal Deposit Insurance Corporation (**FDIC**) its receiver.

To protect depositors, the FDIC transferred substantially all of the Bank's deposits and assets to Silicon Valley Bridge Bank, N.A. (**Bridge Bank**), a full-service bridge bank established by the FDIC. The transfer was completed under the systemic risk exception approved by the Secretary of the Treasury on Sunday, March 12, 2023. As a result of the FDIC's actions, Silicon Valley Bank's depositors were able to fully access their deposits on Monday, March 13, 2023. No Bank-related losses were borne by taxpayers and not a single dollar of insured deposits was lost by any Bank customer. This remarkable feat was not unique to Silicon Valley Bank: to this day, no dollar of FDIC-insured deposits has ever been lost in a bank failure. The FDIC remains an unqualified government success story, with Silicon Valley Bank among the most recent of its noteworthy achievements.

Plaintiff SVB Financial Group (**SVBFG**) was the holding company of Silicon Valley Bank. Under federal law, a bank holding company, like SVBFG, is supposed to be a "source of financial strength" to its subsidiary bank. 12 U.S.C. § 1831o-1(a). That means it must be equipped to help if the bank suffers "financial distress." 12 U.S.C. § 1831o-1(f). Yet, on top of numerous oversight and management errors identified by the Federal Reserve leading up to the failure,[1] SVBFG failed to provide any meaningful assistance to Silicon Valley Bank and ultimately watched the Bank fail. Instead, SVBFG now seeks in this lawsuit to force the FDIC, in its corporate capacity (**FDIC-C**), to pay SVBFG over $1.9 billion from the FDIC's Deposit Insurance Fund for SVBFG's deposit accounts at Silicon Valley Bank. All of SVBFG's claims—except its claim under 12 U.S.C. § 1821(f) in Count VI—should be dismissed because they (1) are foreclosed by § 1821(f), which

---

[1] *See* Board of Governors of the Federal Reserve System, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank* (Apr. 28, 2023), *available at* https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf.

1    provides the exclusive remedy in this context, (2) are otherwise beyond this Court's jurisdiction, or

2    (3) fail to state a plausible claim.

3    In § 1821(f), Congress enacted a precisely drawn, detailed statute that sets carefully

4    calibrated limits on judicial review of claims by depositors of a failed bank seeking payment from

5    FDIC-C. Among other things, such a claim must be filed within 60 days of FDIC-C's final

6    determination of an administrative claim for deposit insurance coverage and must proceed in

7    accordance with the Administrative Procedure Act (**APA**). *See* 12 U.S.C. § 1821(f)(4), (5).

8    In June 2023, SVBFG filed an administrative claim with FDIC-C under § 1821(f) for $1.9

9    billion, which FDIC-C denied on October 20, 2023. Dkt. No. 1-11. In its final determination, FDIC-

10   C explained that federal law caps SVBFG's deposit insurance at $250,000. SVBFG argued that it

11   was owed more because the Secretary of the Treasury invoked the systemic risk exception in 12

12   U.S.C. § 1823(c)(4)(G), but, as FDIC-C explained, that invocation did not increase the deposit

13   insurance limit above $250,000, or otherwise obligate FDIC-C to pay SVBFG for all its deposits.

14   Instead, invocation of the systemic risk exception gave FDIC-C authority to take certain

15   discretionary actions to protect depositors. And FDIC-C did just that. As noted above, it exercised

16   its discretion to protect depositors by facilitating the transfer of insured and uninsured deposit

17   accounts—including SVBFG's—to Bridge Bank, where all transferred deposits were accessible

18   starting March 13, 2023. Indeed, SVBFG admits that it "was provided with access to *all* its deposits

19   on March 13, 2023." Dkt. No. 1 (**Complaint**) ¶ 67 (emphasis added). SVBFG then withdrew

20   "approximately 180 million, *i.e.* monies well in excess of the $250,000 deposit insurance limit." *Id.*

21   ¶ 69. Simply put, SVBFG has already received all the monies it could be owed by FDIC-C.

22   SVBFG does not still have access to all its deposits because two days after Bridge Bank

23   opened, the FDIC, in its capacity as receiver of Silicon Valley Bank (**FDIC-R1**), "exercised its rights

24   . . . to call SVBFG's deposit liabilities back to FDIC-R1," rescinding Bridge Bank's assumption of

25   the liabilities. Dkt. No. 1-11 at 3. As a result, SVBFG became unable to access the uninsured $1.9

26   billion balance in its deposit accounts. FDIC-R1 is legally distinct from FDIC-C: "Because FDIC

27   Corporate and FDIC Receiver perform two different functions and protect wholly different interests,

28   courts have been careful to keep the rights and liabilities of these two entities legally separate."

*Bullion Servs. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995). Any relief SVBFG seeks for any remaining deposits must come from FDIC-R1, not FDIC-C. Claims against FDIC-R1 are governed by 12 U.S.C. § 1821(d), which sets out a carefully tailored process for administrative and judicial claims that are wholly distinct from claims against FDIC-C under § 1821(f). And, as detailed below, SVBFG is separately pursuing claims against FDIC-R1 under § 1821(d).

Federal law also entitles SVBFG to seek judicial review of FDIC-C's final determination under § 1821(f), and SVBFG has pleaded such a claim in Count VI. While FDIC-C maintains that Count VI will ultimately fail on the merits, that is a matter to be resolved at summary judgment through APA review of the administrative record, so FDIC-C does not seek to dismiss Count VI.

The other seven counts of the Complaint, however, must be dismissed. Six of SVBFG's claims—all except the claim under the Freedom of Information Act (**FOIA**) in Count VIII— challenge the same conduct as SVBFG's § 1821(f) claim in Count VI yet seek to evade the carefully calibrated limits on judicial review that Congress set in § 1821(f). They are therefore foreclosed by § 1821(f). Each of these six claims also fails to state a plausible claim against FDIC-C, especially given that SVBFG, by its own admission, already had access to all its deposits and withdrew monies well in excess of the $250,000 insurance cap, which is all FDIC-C could owe.

Finally, the FOIA claim in Count VIII should be dismissed for lack of jurisdiction because SVBFG lacks standing to sue over the FOIA request at issue.

For these reasons and the reasons discussed below, the Court should dismiss every claim in the Complaint except the § 1821(f) claim in Count VI.

## Background

### A.    Silicon Valley Bank's Failure.

From 2000 through March 2023, SVBFG owned Silicon Valley Bank. Compl. ¶ 30. On Friday, March 10, 2023, the California Department of Financial Protection and Innovation took over the Bank and appointed FDIC-R1 to serve as the Bank's receiver. *Id.* ¶ 32. That same day, the FDIC created the Deposit Insurance National Bank of Santa Clara (**DINB**), and FDIC-C, FDIC-R1, and DINB entered into a purchase and assumption agreement to immediately transfer to DINB liability for all insured deposits at Silicon Valley Bank. *Id.* ¶ 34; Dkt. No. 1-6 (press release).

On Sunday, March 12, 2023, the Secretary of the Treasury, acting on the recommendation of the FDIC Board of Directors and the Board of Governors of the Federal Reserve System, and after consulting with the President, authorized application of the systemic risk exception under 12 U.S.C. § 1823(c)(4)(G), which enabled the FDIC to complete its resolution of Silicon Valley Bank in a manner that protected all depositors, both insured and uninsured. Dkt. No. 1-11 at 2 & n.2.

After invocation of the systemic risk exception, FDIC-C, FDIC-R1, and DINB rescinded their purchase and assumption agreement, as that agreement had been designed to protect only insured depositors. Compl. ¶ 64; Dkt. No. 1-11 at 2, 10. To protect both insured and uninsured depositors, FDIC-C instead facilitated the transfer of substantially all deposits from Silicon Valley Bank to the newly created, FDIC-operated Bridge Bank, where they were accessible starting on March 13, 2023. Dkt. No. 1-11 at 10–11 & n.14; Dkt. No. 1-8 (press release); Compl. ¶¶ 64–65.

Thus, by March 13, 2023, FDIC-C had, in accordance with its press releases, already acted to protect all depositors (including SVBFG), by facilitating the transfer to Bridge Bank of insured and uninsured deposits from Silicon Valley Bank. Dkt. No. 1-11 at 10–11.

On March 26, 2023, Bridge Bank was placed into receivership, with the FDIC named as its receiver (**FDIC-R2**). Compl. ¶ 76 n.6. On March 27, substantially all of Bridge Bank's assets were transferred to First-Citizens Bank & Trust Company. *Id.* ¶ 76; Dkt. No. 1-11 at 2 & n.5.

**B.**     **SVBFG's Deposits.**

As of March 10, 2023, when Silicon Valley Bank failed, SVBFG had deposit accounts at the Bank totaling approximately $2.1 billion. Compl. ¶ 31.

Along with the liability for other insured and uninsured deposits, Bridge Bank assumed liability for SVBFG's deposit accounts on March 13, 2023. Compl. ¶ 67; Dkt. No. 1-11 at 3. Thus, as SVBFG acknowledges, it "was provided with access to all its deposits" at Bridge Bank starting on March 13, 2023. Compl. ¶ 67; *see also id.* ¶ 47; Dkt. No. 1-11 at 9. Indeed, during the next few days, SVBFG successfully withdrew from Bridge Bank "approximately $180 million, *i.e.*, monies well in excess of the $250,000 deposit insurance limit." Compl. ¶ 69; *see also* Dkt. No. 1-11 at 9.

On March 15, 2023, FDIC-R1 "exercised its rights under the transfer agreement to call SVBFG's deposit liabilities back from the Bridge Bank." Dkt. No. 1-11 at 3, 11; *see also* Compl.

¶¶ 70–71. "On March 16, Bridge Bank rejected wire transfers" to SVBFG because FDIC-R1 had called the SVBFG deposit liabilities. Compl. ¶ 70. As of March 16, FDIC-R1 had an uninsured deposit liability to SVBFG of more than $1.929 billion. Dkt. No. 1-11 at 3.

On March 17, 2023, SVBFG filed for bankruptcy in the Bankruptcy Court for the Southern District of New York. Compl. ¶ 75.

**C.    SVBFG's Claims to FDIC-R1 and FDIC-R2.**

On May 2, 2023, FDIC-R1, which administers the remaining assets and liabilities of Silicon Valley Bank, and FDIC-R2, which administers the remaining assets and liabilities of Bridge Bank, each sent a notice to SVBFG that proofs of claims against FDIC-R1 and FDIC-R2 must be submitted to them on or before July 10, 2023. Dkt. No. 1-11 at 3.

On July 10, 2023, SVBFG filed proofs of claim, including deposit claims, with FDIC-R1 and FDIC-R2. *Id.* The deposit claims seek payment from FDIC-R1 and from FDIC-R2 for the approximately $1.93 billion amount of SVBFG's deposit claims. *Id.*

On January 5, 2024, FDIC-R1 and FDIC-R2 denied SVBFG's claims. *See SVB Fin. Grp. v. FDIC*, No. 1:23-cv-07218-JPC (S.D.N.Y.) Docket (**SDNY Dkt.**) Nos. 41-1 and 41-2. (This Court "may properly take judicial notice of other court filings and matters of public record." *Strohnik v. Woodside Hotel Grp., Ltd.*, 2021 WL 11696238, at *3 (N.D. Cal. Apr. 15, 2021) (Freeman, J.).) Consistent with the fact that FDIC-R1 had called back all of SVBFG's deposit liabilities—and thus FDIC-R1 is the only FDIC entity that could owe any deposit liability to SVBFG—FDIC-R1 stated that it denied SVBFG's claim "due to the receiver's defenses," SDNY Dkt. No. 41-1, whereas FDIC-R2 denied SVBFG's claim because it is "not a liability" of FDIC-R2, SDNY Dkt. No. 41-2.

SVBFG has represented in the bankruptcy court that it anticipates filing by March 5, 2024, one or more lawsuits challenging the FDIC-R1 and FDIC-R2 denials. SDNY Dkt. No. 41 at 2.

**D.    SVBFG's Claim to FDIC-C.**

Meanwhile, on June 26, 2023, SVBFG sent a letter to FDIC-C demanding full access to all its deposits. Compl. ¶ 83; Dkt. No. 1-10. According to SVBFG's June 26 letter, the "obligation to pay the uninsured deposits of SVB is a legal obligation of the FDIC-C, ***through the Deposit Insurance Fund.***" Dkt. No. 1-10 at 2 (emphasis added).

In its proofs of claim filed with FDIC-R1 and FDIC-R2, SVBFG described its June 26 letter as having "demanded that FDIC-C, *pursuant to its obligations under 12 U.S.C. 1821(f)*" pay to SVBFG the full amount of its deposits. Dkt. No. 1-11 at 9 (emphasis added).

On September 19, 2023, FDIC-C sent a letter to SVBFG acknowledging the June 26 letter as a claim for insurance coverage with respect to a deposit under 12 U.S.C. § 1821(f). Compl. ¶ 95. In its September 19 letter, FDIC-C noted that although there was no statutory time limit for it to decide SVBFG's claim under § 1821(f), FDIC-C was working to provide a final determination regarding insurance coverage within 30 days. *Id.*

On October 20, 2023, FDIC-C issued a final determination denying SVBFG's claim. Dkt. No. 1-11. In its final determination, FDIC-C explained, among other things, that (1) SVBFG had already received the insurance limit of $250,000, which is all that FDIC-C could owe, and (2) the Secretary of the Treasury's invocation of the systemic risk exception in § 1823(c)(4)(g) did not entitle SVBFG to any additional payments from FDIC-C. Dkt. No. 1-11 at 9–11.

**E.    SVBFG's Adversary Proceeding Against FDIC-C, FDIC-R1, and FDIC-R2.**

On July 9, 2023, SVBFG commenced an adversary proceeding in bankruptcy court against FDIC-C, FDIC-R1, and FDIC-R2, captioned *SVB Financial Group v. Federal Deposit Insurance Corp.*, No. 23-01137 (Bankr. S.D.N.Y.). Compl. ¶ 84.

As to FDIC-C, SVBFG asserted, among other things, a turnover claim under § 542 of the Bankruptcy Code and a claim for violation of the automatic stay under § 362 of the Bankruptcy Code (*i.e.*, the same claims asserted in Counts II and III of the Complaint in this case). *Id.*

On August 11, 2023, all three FDIC entities moved to dismiss the adversary proceeding. *Id.* ¶ 87. That same day, FDIC-R1 moved to withdraw the reference under 28 U.S.C. § 157(d). FDIC-C and FDIC-R2 filed joinders to FDIC-R1's motion. *Id.* ¶ 88. On December 13, 2023, Judge Cronan granted the motion to withdraw the reference. *Id.* ¶ 90.

On January 15, 2024, SVBFG requested that Judge Cronan stay the SDNY action while it pursues its claims against FDIC-C in this case and against FDIC-R1 and FDIC-R2 in new lawsuits it anticipates filing by March 5, 2024. SDNY Dkt. No. 41. That stay request remains pending.

**Legal Standard**

This motion to dismiss rests on two grounds: (1) lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and (2) failure to state a claim under Rule 12(b)(6).

*Rule 12(b)(1) Standards*: "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *N.A. for Gun Rts., Inc. v. City of San Jose*, 632 F. Supp. 3d 1088, 1095 (N.D. Cal. 2022) (Freeman, J.) (quoting *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint." *Id.* "In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction." *Id.* "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (quoting *Safe Air*, 373 F.3d at 1039). "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* (quoting *Safe Air*, 373 F.3d at 1039).

*Rule 12(b)(6) Standards*: "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Although courts generally "must take all of the factual allegations in the complaint as true," the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 555). Moreover, "documents appended to the complaint"—such as FDIC-C's final determination under § 1821(f), *see* Dkt. No. 1-11—"may be considered along with the complaint when deciding a Rule 12(b)(6) motion," and courts "'need not accept as true allegations contradicting documents that are referenced in the complaint.'" *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 754 (N.D. Cal. 2022) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)).

**Argument**

**I.    12 U.S.C. § 1821(f) bars SVBFG's other deposit-related claims against FDIC-C.**

By statute, a depositor of a failed bank's exclusive remedy against FDIC-C for coverage of its deposits at the failed bank is a claim under 12 U.S.C. § 1821(f), which SVBFG is pursuing in

1  Count VI. All of SVBFG's other claims against FDIC-C for payment of its deposits—Counts I, II,

2  III, IV, V, and VII—are foreclosed by the comprehensive remedial scheme in § 1821(f).

3          It is a "well-established principle that, in most contexts, 'a precisely drawn, detailed statute

4  pre-empts more general remedies.'" *Hinck v. United States*, 550 U.S. 501, 506 (2007) (citations

5  omitted). "And that makes sense: when the legislature has attacked a specific problem—and crafted

6  a detailed and precise remedy to address that problem—we should generally assume that the law

7  represents Congress's considered and exclusive judgment on that issue." *Savage Servs. Corp. v.*

8  *United States*, 25 F. 4th 925, 939 (11th Cir. 2022).

9          Courts typically treat this issue as one of subject-matter jurisdiction because Congress's

10  adoption of a precise and detailed remedial scheme for a particular type of grievance limits a district

11  court's jurisdiction to review that type of grievance through other avenues. *See Hinck*, 550 U.S. at

12  510 (affirming dismissal for lack of subject-matter jurisdiction), *aff'g* 446 F.3d 1307, 1316 (Fed.

13  Cir. 2006); *City of Oakland v. Lynch*, 798 F.3d 1159, 1167 (9th Cir. 2016) (affirming dismissal for

14  lack of subject-matter jurisdiction), *aff'g* 901 F. Supp. 2d 1188, 1196 (N.D. Cal. 2013); *see also*

15  *Axon Enters. v. FTC*, 143 S. Ct. 890, 900 (2023) ("A special statutory review scheme . . . may

16  preclude district courts from exercising jurisdiction over challenges to federal agency action.").

17          A statute qualifies as sufficiently "precisely drawn" and "detailed" to displace other remedies

18  if it "provides [1] a forum for adjudication, [2] a limited class of potential plaintiffs, [3] a statute of

19  limitations, [4] a standard of review, and [5] authorization for judicial relief." *Hinck*, 550 U.S. at

20  506; *accord City of Oakland*, 798 F.3d at 1165. As with the statutes in *Hinck* and *City of Oakland*,

21  the statute at issue here—12 U.S.C. § 1821(f)—provides each of these five criteria:

22  •    *A forum for adjudication*: "the United States district court for the Federal judicial

23  district where the principal place of business of the depository institution is located." § 1821(f)(4).

24  •    *A limited class of potential plaintiffs*: a "depositor" of an "insured depository

25  institution" in the "case of liquidation of, or other closing or winding up of the affairs of, [the]

26  insured depository institution." § 1821(f)(1).

27  •    *A statute of limitations*: "60 days after the date on which [FDIC-C's final]

28  determination is issued." § 1821(f)(5).

- *A standard of review and authorization for judicial relief*: FDIC-C's final determination is "reviewable in accordance with chapter 7 of title 5 [*i.e.*, the APA]." § 1821(f)(4). The APA directs the reviewing court to examine "whether the FDIC's decision was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.'" *Tam v. FDIC*, 830 F. Supp. 2d 850, 856 (C.D. Cal. 2011) (quoting 5 U.S.C. § 706(2)(A)). The APA also authorizes the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *Aviva Life & Annuity Co. v. FDIC*, 654 F.3d 1129, 1131 (10th Cir. 2011) (quoting 5 U.S.C. § 706(2)(A)).

Section 1821(f) thus qualifies under *Hinck* and *City of Oakland* as a "precisely drawn, detailed" statute that "pre-empts more general remedies" that address the same type of grievance.

The type of grievance that § 1821(f) encompasses is "any disputed claim relating to any insured deposit or any determination of insurance coverage with respect to any deposit." 12 U.S.C. § 1821(f)(3); *see also* § 1821(f)(4) ("any claim for insurance coverage"); § 1821(f)(5) (same). That covers any claim for payment from the Deposit Insurance Fund, which Congress expressly established for FDIC-C to "use to carry out its insurance purposes." 12 U.S.C. § 1821(a)(4)(A)(ii).

Preempted "general remedies" include statutory claims and due process claims. *E.g.*, *United States v. Bormes*, 568 U.S. 6, 12–16 (2012) (Tucker Act claim preempted); *EC Term of Years Tr. v. United States*, 550 U.S. 429, 433–36 (2007) (statutory tax refund claim preempted); *Wilson v. Comm'r*, 705 F.3d 980, 990 (9th Cir. 2013) (APA claim preempted); *Nolan v. Cleland*, 686 F.2d 806, 814–15 (9th Cir. 1982) (due process claim preempted); *Evers v. Astrue*, 536 F.3d 651, 657–61 (7th Cir. 2008) (due process and APA claims preempted); *Foskaris v. Experian Info. Sols., Inc.*, 2018 WL 3381394, at *4 (N.D. Cal. July 11, 2018) (declaratory judgment claim preempted).

Six of SVBFG's claims are foreclosed by § 1821(f). Counts I (declaratory judgment), II (turnover), III (automatic stay), IV (due process), V (APA), and VII (estoppel) all plead non-§ 1821(f) claims that seek payment—or declaration of a right to payment—from the Deposit Insurance Fund for SVBFG's deposits at Silicon Valley Bank. *See* Compl. ¶¶ 1, 5, 15, 29, 44, 107, 111, 118, 121, 123, 128, 145, 147, 162, 169 & Prayer for Relief ¶ (i). Because § 1821(f) provides the exclusive remedy for such claims, Counts I, II, III, IV, V, and VII must be dismissed.

SVBFG argues that its claims fall completely outside the scope of § 1821(f). *E.g.*, Compl. ¶ 18. But SVBFG's June 26 letter to FDIC-C demanded payment for its deposits from the "Deposit Insurance Fund," which is necessarily a demand for "Deposit Insurance" covered by § 1821(f). Dkt. No. 1-10 at 2. And the proofs of claim SVBFG filed with FDIC-R1 and FDIC-R2 in July 2023 described its June 26 letter to FDIC-C as "demand[ing] that FDIC-C, ***pursuant to its obligations under 12 U.S.C. 1821(f)***," pay to SVBFG the full amount of its deposits. Dkt. No. 1-11 at 9 (emphasis added). FDIC-C considered SVBFG's June 26 letter as a claim for insurance coverage under § 1821(f) and ultimately denied that claim. *Id.* at 1, 9–11. SVBFG cannot now argue that its claims have nothing to do with § 1821(f).

"Resisting the force of the better fitted statute requires a good countervailing reason, and none appears here." *EC Term of Years*, 550 U.S. at 434. If depositors like SVBFG could pursue against FDIC-C the claims pleaded in Counts I–V and VII, then they could "effortlessly evade" the carefully calibrated restrictions on judicial review set by Congress in § 1821(f). *Hinck*, 550 U.S. at 507 (quoting *EC Term of Years*, 550 U.S. at 434). For example, they could circumvent § 1821(f)'s much shorter statute of limitations. *Compare* § 1821(f)(5) (60-day limitations period), *with* 28 U.S.C. § 2401(a) (6-year limitations period for other claims against federal agencies). Displacement of general remedies by a more specific remedy is especially warranted when, as here, "resort to a general remedy would effectively extend the limitations period for the specific one," *EC Term of Years*, 550 U.S. at 434, as that "would make mush of the law," *City of Oakland*, 798 F.3d at 1166.

Allowing SVBFG's non-§ 1821(f) claims to proceed would also enable depositors to circumvent the carefully calibrated standard of review and remedial restrictions set by Congress in § 1821(f). Review under § 1821(f) incorporates APA standards, *see* § 1821(f)(4), which are "highly deferential" to FDIC-C, *Aviva Life & Annuity*, 654 F.3d at 1131 (citation omitted), limited to the administrative record, *see Vill. of Sugar Grove v. FDIC*, 2013 WL 3274583, at *3 (N.D. Ill. June 27, 2013), and authorize only certain remedies that do not include monetary relief, *see Veluchamy v. FDIC*, 706 F.3d 810, 815–16 (7th Cir. 2013). "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Brown v. GSA*, 425 U.S. 820, 833 (1976).

1    Simply put, allowing Counts I–V and VII to proceed "would impermissibly disrupt" the

2    § 1821(f) framework. *City of Oakland*, 798 F.3d at 1167. They should therefore be dismissed for

3    want of jurisdiction. SVBFG can pursue an § 1821(f) claim against FDIC-C (which it has pleaded

4    in Count VI), and it can pursue remedies against FDIC-R1 and FDIC-R2 in accordance with 12

5    U.S.C. § 1821(d). Its other claims against FDIC-C are foreclosed by § 1821(f).

6    **II.     SVBFG fails to state a plausible non-FOIA claim**

7    Irrespective of § 1821(f), each of SVBFG's non-FOIA claims should be dismissed for the

8    independent reason that they fail to state a plausible claim.

9    **A.     The turnover claim is not plausible (Count II).**

10   Count II seeks turnover of the "Account Funds" under § 542 of the Bankruptcy Code, 11

11   U.S.C. § 542. It must be dismissed because the "Account Funds" are not property of the estate, let

12   alone property of the estate in FDIC-C's "possession, custody, or control," such that they are subject

13   to turnover under § 542(a), nor are they an undisputed obligation that is "matured, payable on

14   demand, or payable on order" subject to turnover under § 542(b). Thus, while SVBFG does not

15   specify which subsection of § 542 it is invoking, Count II does not state a claim under either.

16   **1.     The alleged obligation is disputed.**

17   FDIC-C disputes SVBFG's legal allegation—which is not assumed to be true, *see Iqbal*, 556

18   U.S. at 678—that the Account Funds "constitute a debt the FDIC-C owes to SVBFG's estate, which

19   is property of the estate and is matured, payable on demand, or payable on order." *See* Compl. ¶ 118.

20   Disputed property and disputed debts are not subject to turnover under § 542. *See In re Gurga*, 176

21   B.R. 196, 199 (9th Cir. B.A.P. 1994) ("turnover proceedings involve return of *undisputed* funds");

22   *Glassey v. Amano Corp.*, 2006 WL 889519, at *4 (N.D. Cal. Mar. 31, 2006) ("turnover is not

23   intended as a remedy to determine disputed rights of parties to property; rather, it is intended to

24   obtain what is acknowledged to belong to the bankruptcy estate"), *aff'd*, 285 F. App'x 426 (9th Cir.

25   2008); *In re Heller Ehrman LLP*, 461 B.R. 606, 608 (Bankr. N.D. Cal. 2011) (following *Gurga*); *see

26   also In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990) ("Clearly, Congress envisioned the

27   turnover provision of § 542 of the Code to apply to tangible property and money due to the debtor

28   without dispute which are fully matured and payable on demand.") (citation omitted). Because

SVBFG does not seek the return of undisputed funds, its turnover claim must be dismissed. *See Glassey*, 2006 WL 889519, at *4.

### 2.    FDIC-C does not possess any SVBFG "Account Funds."

Dismissal is also warranted because what SVBFG calls "Account Funds" are not actual *funds*; rather, they are *liabilities* that were owed by Silicon Valley Bank to SVBFG. SVBFG's "view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21 (1995) (collecting cases). In *Citizens Bank*, a bank placed an administrative hold on a bankrupt depositor's checking account at the bank. *Id.* at 17–18. The Supreme Court ruled that such a hold "was neither a taking of possession of [the bankrupt depositor's] property nor an exercising of control over it" because a bank does not store a depositor's money. *Id.* at 21. Just so here. There are no SVBFG "funds" at issue, only a failed bank's promise to pay SVBFG the amount of its deposits.

At no point did the liability for that promise ever transfer to FDIC-C. The deposit liability was originally owed by Silicon Valley Bank to SVBFG. After the Bank's failure, it transferred to Bridge Bank and then was called back by FDIC-R1 so that the deposit liability now remains solely with FDIC-R1. *See* Background § B, above. SVBFG does not (and cannot) allege that that deposit liability ever transferred to or was otherwise assumed by FDIC-C.

### 3.    FDIC-C does not owe SVBFG an enforceable obligation.

SVBFG is also wrong in arguing that the Secretary of the Treasury "invoked the systemic risk exception to guarantee all deposits." *See* Compl. ¶ 114. Congress vested FDIC-C with broad *discretion* to take various actions and provide certain types of assistance with respect to a failing or failed bank. *See* 12 U.S.C. § 1823; Dkt. No. 1-11 at 6–8. FDIC-C is not obligated, and cannot be compelled, to make a payment to SVBFG that is completely within its discretion to make.

Invocation of the systemic risk exception in 12 U.S.C. § 1823(c)(4)(G) did not "guarantee" SVBFG's deposits or create any enforceable obligation against FDIC-C for these deposits. Dkt. No. 1-11 at 9–11. The "systemic risk exception is an exception to the least-cost resolution requirement [of 12 U.S.C. § 1823(c)(4)(A) and (E)], which in turn is a limit on FDIC-C's authority to act under

12 U.S.C. § 1823." *Id.* at 6. Generally speaking, "§ 1823 authorizes certain actions or assistance, the least-cost resolution requirement limits those actions or assistance, and the systemic risk exception (where invoked) waives the least-cost resolution requirement." *Id.* at 8. In other words, "[w]hen the systemic risk exception is invoked, FDIC-C may exercise its authority under § 1823 without complying with the least-cost resolution requirement." *Id.* That does not create any "guarantee" on deposits, nor does it raise the deposit insurance limit above $250,000 or otherwise impose any obligation on FDIC-C to take any particular course of conduct. *Id.* at 10.

Any action FDIC-C takes in this context is discretionary, not obligatory. The statute provides that once the systemic risk exception is invoked, FDIC-C "may"—but need not—"take other action or provide assistance under this section" (*i.e.*, under § 1823). 12 U.S.C. § 1823(c)(4)(G)(i). That discretion is emphasized in 12 U.S.C. § 1823(c)(4)(F): "Any determination which the Corporation may make under this paragraph"—*i.e.*, under § 1823(c)(4), which includes actions under § 1823(c)(4)(G)—"shall be made in the *sole discretion* of the Corporation." 12 U.S.C. § 1823(c)(4)(F) (emphasis added).

Moreover, each action or type of assistance generally authorized under § 1823 is explicitly defined as discretionary. *See, e.g.*, 12 U.S.C. § 1823(c)(1) ("in its sole discretion"); § 1823(c)(2)(A) ("in its sole discretion"); § 1823(c)(3) ("may"); § 1823(d)(4) ("in its discretion"); § 1823(h) ("may"); § 1823(k)(1)(A)(i) ("in its discretion"). There is no enforceable obligation on FDIC-C.

SVBFG recites a series of press releases and other statements (including many made well after SVBFG could no longer make withdrawals) concerning the ability of "all" Silicon Valley Bank depositors to access their deposits. *See, e.g.*, Compl. ¶¶ 2, 3, 45–62. None of those statements created any enforceable legal obligation on FDIC-C, let alone an enforceable obligation to pay SVBFG over $1.9 billion for its deposits. *See, e.g.*, *Pub. Util. Dist. No. 1 of Snohomish Cnty. v. Bonneville Power Admin.*, 250 F. App'x 821, 822–23 (9th Cir. 2007) (no legal consequences flow from agency's press release); *Arrow Reliance, Inc. v. Califf*, 2022 WL 18027595, at *5 (W.D. Wash. Dec. 30, 2022) (same).

**4.      Even if FDIC-C owed an enforceable obligation, FDIC-C satisfied it.**

The press releases and other public statements SVBFG recites state that FDIC-C would act to "protect" insured and uninsured depositors and provide them "access" to their accounts on March 13, 2023. *E.g.*, Compl. ¶¶ 2, 3, 46, 47. FDIC-C did precisely that. And FDIC-C discharged any insurance obligation to SVBFG by making its deposits available at Bridge Bank. So even assuming *arguendo* that FDIC-C owed an enforceable legal obligation to SVBFG, FDIC-C satisfied it.

After the Secretary of the Treasury authorized the systemic risk exception, the FDIC "rescind[ed] the purchase and assumption agreement with DINB (which would have protected only insured depositors)," and FDIC-C then "exercised its discretion to protect insured and uninsured depositors by facilitating the transfer of substantially all deposit accounts to the Bridge Bank, where all transferred deposits were accessible starting March 13, 2023." Dkt. No. 1-11 at 10–11. Indeed, SVBFG concedes that "it was provided with access to all its deposits on March 13, 2023." Compl. ¶ 67; *accord id.* ¶ 47 ("On Monday, March 13, 2023, SVBFG was among the depositors able to access all of the money in its deposit accounts."). SVBFG further concedes that it was able to withdraw "approximately $180 million, *i.e.*, monies well in excess of the $250,000 deposit insurance limit." *Id.* ¶ 69. The fact that FDIC-R1 subsequently exercised its rights to call back SVBFG's deposit liabilities on March 15, 2023, "does not change the fact that FDIC-C had already acted to protect depositors, nor does it impose on FDIC-C any legal obligation to pay SVBFG from the Deposit Insurance Fund." Dkt. No. 1-11 at 10–11.

Furthermore, FDIC-C was statutorily discharged from any further obligation to SVBFG by providing SVBFG "with access to all its deposits on March 13, 2023." *See* Compl. ¶ 67; *accord id.* ¶ 47. FDIC-C is expressly authorized to make "payment" of insured deposits to a depositor of a failed bank by "making available to each depositor a transferred deposit in a new insured depository institution . . . in an amount equal to the insured deposit of such depositor." 12 U.S.C. § 1821(f)(1). "Payment of an insured deposit to any person by the Corporation shall discharge the Corporation[.]" 12 U.S.C. § 1822(b). FDIC-C thus fully discharged any obligation it owed SVBFG by providing SVBFG with access to all its deposits at Bridge Bank on March 13, 2023.

**B.      The automatic-stay claim is not plausible (Count III).**

Section 362(a) of the Bankruptcy Code operates as a stay of, among other things, any act to obtain possession of property of the debtor's estate or of property from the estate, or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). SVBFG's failure to plead the existence of any undisputed property interest over which FDIC-C is allegedly exercising control bars it from stating a claim that FDIC-C has violated the § 362 stay. As a result, Count III must be dismissed.

As discussed in Section II.A.2 above, SVBFG's alleged "Account Funds" are merely deposit liabilities, not actual funds sitting in a bank account. But even if they *were* actual funds in FDIC-C's possession as of SVBFG's bankruptcy filing, FDIC-C's refusal to pay them would not constitute a stay violation. *See City of Chi. v. Fulton*, 592 U.S. 154, 161–62 (2021) (holding that mere retention of estate property after the filing of a bankruptcy petition does not violate 11 U.S.C. § 362(a)(3)); *Kent v. Worldwide Fin. Servs., Inc.*, 2017 WL 1044990, at *3 (E.D. Mich. Mar. 20, 2017) (finding no stay violation where estate did not have possession of property as of the petition date and, at best, merely had "a legal interest in the cause of action and the possibility of relief which might flow from success on the merits").

Of course, the "Account Funds" *are* liabilities, which have never been assumed by FDIC-C. FDIC-C's refusal to make payment on a disputed obligation is not a violation of 11 U.S.C. § 362. *See United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472–73 (D.C. Cir. 1991) (rejecting argument that "a party against whom the bankrupt holds a cause of action (or other intangible property right)" violates §362(a) by refusing to capitulate to the bankrupt's assertions). Even if SVBFG could prevail on its claim for turnover under Count II (which it cannot), FDIC-C's failure to honor any turnover or payover obligation under § 542 would not violate the automatic stay in § 362(a). *See In re Mountaineer Coal Co.*, 247 B.R. 633, 644 (Bankr. W.D. Va. 2000) ("If Congress had intended to make a failure to honor one's turnover or payover obligation under § 542 a violation of the automatic stay, it could have done so easily and clearly. The Court does not believe that Congress intended to convert a matter of contract dispute into a violation of the automatic stay.").

### C.    The due process claim is not plausible (Count IV).

To prevail on its due process claim, SVBFG "must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (cleaned up).

SVBFG lacks a constitutionally protected property interest that it was deprived of by FDIC-C. SVBFG contends it had two different property interests. First, it asserts a "property interest" in its "Account Funds." Compl. ¶ 128. Again, there were no funds for SVBFG to claim, only a deposit liability claim. So FDIC-C did not deprive SVBFG of those Funds. To the contrary, FDIC-C facilitated the transfer of SVBFG's deposit claims to Bridge Bank such that, as SVBFG concedes, it was able to access "all" its funds on March 13, 2023. *Id.* ¶¶ 47, 67. As SVBFG admits, it was FDIC-R1—not FDIC-C—that later placed the hold on SVBFG's deposit accounts at Bridge Bank and then directed those deposit accounts be transferred from Bridge Bank to FDIC-R1. *Id.* ¶¶ 70–71; *see also* Dkt. No. 1-11 at 3, 11. "Because FDIC Corporate and FDIC Receiver perform two different functions and protect wholly different interests, courts have been careful to keep the rights and liabilities of these two entities legally separate." *Bullion Servs.*, 50 F.3d at 709.

Second, SVBFG asserts it had a "property interest" flowing from the Secretary of the Treasury's invocation of the systemic risk exception. Compl. ¶ 127. But, as explained above in Section II.A.3, FDIC-C did not owe SVBFG any enforceable obligation—even after the invocation of the systemic risk exception—beyond providing it with access to its insured deposits of $250,000, which SVBFG admits it received at Bridge Bank. *See id.* ¶¶ 67, 69. Any assistance that FDIC-C might provide as a result of the systemic risk exception was within FDIC-C's sole discretion. *See* 12 U.S.C. § 1823(c)(4)(G) (after invocation of systemic risk exception, FDIC "may" take "action or provide under assistance under this section"); 12 U.S.C. § 1823(c)(4)(F) ("Any determination which the Corporation may make under this paragraph shall be made in the sole discretion of the Corporation."); *see also* 12 U.S.C. § 1823(c)(1) ("in its sole discretion").

It is black-letter law that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *accord Shanks*, 540 F.3d at 1091 ("Only if the governing statute compels a result upon compliance

with certain criteria, *none of which involve the exercise of discretion by the reviewing body*, does it create a constitutionally protected property interest.") (emphasis added) (cleaned up); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (statute "grant[ing] the reviewing body unfettered discretion to approve or deny an application does not create a property right"). SVBFG thus has not plausibly alleged that FDIC-C deprived it of a protected property interest.

SVBFG's due process claim also fails because it received an "opportunity to be heard at a meaningful time and in a meaningful manner." *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976) (citation omitted) (explaining the Court's three-factor balancing test for determining how much process is due). SVBFG submitted a written claim to FDIC-C, Dkt. No. 1-10, received a written final determination explaining FDIC-C's reasoning for denying its claim, Dkt. No. 1-11, and can now seek review of that determination in this Court under the APA, 12 U.S.C. § 1821(f)(4). SVBFG does not identify any evidence or argument that it did not have an opportunity to present to FDIC-C.

Instead, SVBFG complains that "FDIC-C never promulgated regulations governing a section 1821(f) claims process." Compl. ¶ 133. But due process does not require regulations, and Congress expressly left it up to the "discretion" of FDIC-C whether to promulgate such regulations. 12 U.S.C. § 1821(f)(3). Indeed, Congress amended § 1821(f) in 2006 to clarify "that the Administrative Procedures Act standard of review, the 60-day limitation period, and U.S. district court jurisdiction apply to the FDIC's final determination of insurance coverage *whether made pursuant to procedural regulations or not*." *Erickson v. FDIC*, 2010 WL 11596560, at *3 (C.D. Cal. Mar. 10, 2010) (emphasis added) (quoting S. Rep. No. 109-256, at 1230 (2006)).

Courts have repeatedly held that FDIC-C's informal resolution of § 1821(f) claims satisfies due process, even without "regulations formalizing insurance dispute resolution." *Nimon v. Resol. Tr. Corp.*, 975 F.2d 240, 247–48 (5th Cir. 1992); *accord, e.g.*, *DeCell & Assocs. v. FDIC*, 36 F.3d 464, 471–72 (5th Cir. 1994); *Metro Cnty. Title, Inc. v. FDIC*, 13 F.3d 883, 887–88 (5th Cir. 1994); *Kershaw v. Resol. Tr. Corp.*, 987 F.2d 1206, 1210 (5th Cir. 1993). This Court should likewise reject SVBFG's due process claim.

**D.      The standalone APA claim is beyond this Court's jurisdiction and is not plausible (Count V).**

The APA claim in Count V should be dismissed because it fails to challenge final agency action and impermissibly duplicates the § 1821(f) claim in Count VI. In this Circuit, the final agency action requirement is usually regarded as jurisdictional. *Doe I v. Mayorkas*, 530 F. Supp. 3d 893, 910 (N.D. Cal. 2021) (Freeman, J.) (collecting cases). But that "has been questioned." *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1318 n.15 (S.D. Cal. 2018). Either way, dismissal is warranted. *See Am. Small Bus. League v. Contreras-Sweet*, 2016 U.S. Dist. Lexis 145024, at *4 n.1 (N.D. Cal. Oct. 18, 2016), *aff'd*, 712 F. App'x 667 (9th Cir. 2018).

"It is axiomatic that Plaintiffs must identify an 'agency action' to obtain review under the APA." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010 (9th Cir. 2021) (citation omitted). "An agency action is 'circumscribed' and 'discrete,' such as 'a rule, order, license, sanction [or] relief.'" *Id.* (alteration in original) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004); citing 5 U.S.C. § 551(13)). "A plaintiff or petitioner 'must direct its attack against some *particular* "agency action" that causes it harm.'" *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)). "This limitation on judicial review precludes 'broad programmatic attack[s].'" *Id.* (alteration in original) (quoting *S. Utah Wilderness All.*, 542 U.S. at 64–65).

In Count V, SVBFG challenges FDIC-C's "purported policy" of "exercis[ing] discretion in determining which uninsured deposits of former Silicon Valley Bank depositors are guaranteed to be paid pursuant to the Treasury Secretary's determination and invocation of the systemic risk exception." *See* Compl. ¶ 136. Yet SVBFG does not identify any "discrete" and "particular" final agency action. SVBFG "point[s] to no written rules, orders, or even guidance documents of [FDIC-C] that set forth the supposed policies challenged here. Instead, [SVBFG] appear[s] to have attached a 'policy' label to [its] amorphous description of [FDIC-C's] practices." *Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014); *accord Pearl River Union Free Sch. Dist. v. King*, 214 F. Supp. 3d 241, 260 (S.D.N.Y. 2016). "While a single step or measure is reviewable, an on-going program or policy is not, in itself, a 'final agency action' under the APA." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (citation omitted); *accord In re Aiken Cnty.*, 645 F.3d 428, 437 (D.C. Cir.

2011). Without a discrete "order or regulation," the purported policy is "no more an identifiable 'agency action'—much less a 'final agency action'—than a 'weapons procurement program' of the Department of Defense or a 'drug interdiction program' of the Drug Enforcement Administration." *Nat'l Wildlife Fed'n*, 497 U.S. at 890. This kind of attack on a purported agency policy is not viable. *See Whitewater Draw*, 5 F.4th at 1010–11; *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1173 (D. Ariz. 2022) ("to the extent Plaintiffs attempt to challenge amorphous parole policies, those APA claims must be dismissed"); *Al Otro*, 327 F. Supp. 3d at 1318–20 (similar).

SVBFG alleges that FDIC-C's "purported policy" is "evidenced by, among other things, the FDIC-C's briefs submitted in support of its motion to dismiss SVBFG's adversary complaint and its October 20 letter." Compl. ¶ 144. The law is clear, however, that briefs submitted in judicial proceedings are not final agency action reviewable under the APA. *See Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1989) ("Agency advocacy in a judicial proceeding is obviously not such agency action as would be subject to judicial review under the Administrative Procedure Act.") (citation omitted); *United States v. AMC Ent., Inc.*, 1999 U.S. Dist. Lexis 21999, at *23 (C.D. Cal. Sept. 8, 1999) ("The filing of the brief . . . did not constitute final agency action subject to judicial review."); *Querim v. EEOC*, 111 F. Supp. 2d 259, 269–70 (S.D.N.Y. 2000) (agency's legal brief "cannot be construed as a regulation or as 'final agency action' of any kind"), *aff'd*, 9 F. App'x 35 (2d Cir. 2001).

As for the "October 20 letter," that is a reference to FDIC-C's § 1821(f) determination (*see* Dkt. No. 1-11), which FDIC-C agrees is a final agency action. *See* 12 U.S.C. § 1821(f)(4). But the "purported policy" at issue in Count V is nowhere in the § 1821(f) determination, so it cannot serve as the final agency action for Count V. *See* Dkt. No. 1-11 (not discussing any such policy).

Moreover, the § 1821(f) determination is the final agency action challenged by SVBFG's § 1821(f) claim in Count VI. *See* Compl. ¶¶ 148–61. Thus, to the extent Count V is seeking review of the same final agency action as Count VI, it should be dismissed as duplicative. A standalone APA claim (Count V) cannot be maintained when it duplicates a claim brought under a separate statute, such as § 1821(f) (Count VI). *See* 5 U.S.C. § 704 (APA claim unavailable when "other adequate remedy" is available); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did

not intend the general grant of review in the APA to duplicate existing procedures for review of agency action."); *City of Oakland*, 798 F.3d at 1166–67 (availability of "another adequate remedy" forecloses standalone APA claim).

### E.    The estoppel claim is not plausible (Count VII).

Count VII, for estoppel, is not a viable claim against FDIC-C, for at least two reasons.

First, although SVBFG fails to specify whether it is asserting an "equitable estoppel" or "promissory estoppel" theory, neither is an independent cause of action against FDIC-C. Equitable estoppel is a defense—not an affirmative claim. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 659 (9th Cir. 1992); *Lawrence v. Wells Fargo Bank, N.A.*, 2014 WL 2705425, at *13 (N.D. Cal. June 13, 2014). And equitable estoppel is generally unavailable against the government even as a defense. *Johnson v. Williford*, 682 F.2d 868, 871 (9th Cir. 1982); *see also FDIC v. Isham*, 782 F. Supp. 524, 530–32 (D. Colo. 1992) (collecting cases rejecting estoppel affirmative defenses against FDIC in both its corporate and receiver capacities).

As for promissory estoppel, it is a valid claim against *private parties*, but not *federal agencies*. *Jablon v. United States*, 657 F.2d 1064, 1069 (9th Cir. 1981) (finding no Ninth Circuit precedent "for an independent cause of action against the government founded upon promissory estoppel"). In *Jablon*, the Ninth Circuit held that "the United States has not waived its sovereign immunity with regard to a promissory estoppel cause of action." *Id.* at 1070; *see also Harris v. Sec'y of Hous. & Urb. Dev.*, 2014 WL 6060171, at *7 (E.D. Cal. Nov. 12, 2014).

Two Supreme Court cases drive home the invalidity of SVBFG's estoppel claim. In *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), the Supreme Court rejected a virtually identical argument to the one SVBFG presents in Count VII: that a government corporation's alleged dissemination of misinformation to an insured party about its insurance coverage estops the government from later refusing to pay the insurance claim. *See* Compl. ¶¶ 162–69. In *Merrill*, the government corporation refused to pay out an insurance claim because its regulations barred coverage, even though the agency had previously told the plaintiff it would be covered. 332 U.S. at 383–86. The Supreme Court ruled that the government could not be estopped from following its regulations. *See id*. Similarly, here, even though SVBFG alleges it understood from FDIC-C press

releases and public statements that its deposits were covered, FDIC-C denied SVBFG's claim because "SVBFG's insured deposit is statutorily defined not to exceed $250,000" and invoking the systemic risk exception "imposed no enforceable payment obligation on FDIC-C." Dkt. No. 1-11 at 1.

And in *OPM v. Richmond*, the Supreme Court held that "judicial use of the equitable doctrine of estoppel cannot grant [a party suing a federal agency] a money remedy that Congress has not authorized." 496 U.S. 414, 426 (1990). Here, Count VII attempts to bypass § 1821(f), which provides SVBFG with a congressionally authorized process to seek a remedy: judicial review of FDIC-C's final determination under APA standards, which do not include monetary relief. *See Veluchamy*, 706 F.3d at 815–16. SVBFG's offensive assertion of estoppel seeking damages against FDIC-C would impermissibly create an alternative remedy that Congress has not authorized.

Second, even if SVBFG could plead an estoppel claim against FDIC-C in theory, it has failed to plausibly allege two necessary elements. SVBFG has not plausibly alleged any "affirmative misconduct going beyond mere negligence." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000). Nor has SVBFG plausibly alleged that "the effects of estoppel"—namely, having the Deposit Insurance Fund pay SVBFG $1.9 billion—will "not unduly damage the public interest." *Johnson*, 682 F.2d at 871. These pleading failures are further grounds to dismiss SVBFG's estoppel claim.

**F.    The claim for a declaratory judgment is not plausible (Count I).**

Count I for declaratory judgment must be dismissed because it is subsumed by SVBFG's APA and constitutional due process claims. But even if Count I could stand on its own, it still fails because SVBFG has not pleaded facts showing that it is entitled to the declaration that it seeks.

The Declaratory Judgment Act is procedural only; it does not create a cause of action for affirmative relief where one does not exist. *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–89 (9th Cir. 2022). The Act provides a remedy, not an additional cause of action with respect to the underlying claim. *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc) ("the law makes clear that—although the Declaratory Judgment Act provides a *remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim").

Thus, where an adequate remedy exists under some other statute, a claim for declaratory relief is foreclosed. *See Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707–08 (N.D. Cal. 2009) (granting motion to dismiss claim for declaratory relief because it "is entirely commensurate with the relief sought through [plaintiffs'] other causes of action"). Here, SVBFG's claim for declaratory relief duplicate its other claims. *Compare* Compl. ¶¶ 105–10, *with id.* ¶¶ 111–69. So it should be dismissed. *See Pelletier v. United States*, 2013 WL 425874, at *5 (D. Colo. Feb. 4, 2013) ("The Court has reviewed the basis for Plaintiffs' request for a declaratory judgment, and finds its arguments to be contained within Plaintiffs' APA and Constitutional Claims. Therefore, the Court construes Plaintiffs' Declaratory Judgment Claim as a request for declaratory relief under Plaintiffs' APA and Constitutional Claims, and dismisses any independent Declaratory Judgment claim pursuant to Rule 12(b)(6), as it does not state a cause of action for which relief can be granted.") (citation omitted), *rev'd in part on other grounds*, 588 F. App'x 784 (10th Cir. 2014).

Even if Count I were not subsumed by SVBFG's other claims, SVBFG is still not entitled to the declaratory judgment it seeks that:

> (i) the uninsured Account Funds are not subject to section 1821(f); (ii) the FDIC-C has no right to, and is estopped from attempting to, ignore the Treasury Secretary's invocation and determination of the systemic risk exception to protect all uninsured deposits; and (iii) the FDIC-C must restore SVBFG's deposit accounts, including all interest earned on the Account Funds since the date the Account Funds were blocked or taken.

Compl. ¶ 110.

*First*, for the reasons discussed above in Section I, § 1821(f) does apply to SVBFG's claims that FDIC-C and the Deposit Insurance Fund must pay for SVBFG's deposits.

*Second*, for the reasons discussed above in Sections II.A.3 and II.A.4, FDIC-C did not ignore the Secretary of the Treasury's invocation of the systemic risk exception and, in fact, acted to protect uninsured deposits (including SVBFG's deposits) by facilitating their transfer to Bridge Bank, where depositors (including SVBFG) were able to access them starting on March 13, 2023.

And to the extent SVBFG is seeking a declaration regarding estoppel, for the reasons discussed above in Section II.E, SVBFG does not have a viable "estoppel" claim against FDIC-C.

*Third*, for the reasons discussed above in Sections II.A.3 and II.A.4, FDIC-C has no obligation to restore SVBFG's deposit accounts beyond the $250,000 insurance cap, and FDIC-C satisfied that obligation by providing SVBFG with access to all of its deposits at Bridge Bank on March 13, 2023, *see* Compl. ¶¶ 47, 67, at which point SVBFG withdrew "approximately 180 million, *i.e.* monies well in excess of the $250,000 deposit insurance limit," *id.* ¶ 69.

Under no circumstance would SVBFG be entitled to "interest earned on the Account Funds since the date the Account Funds were blocked or taken." *See id.* ¶ 110. "[T]he longstanding 'no-interest rule' holds that '[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.'" *In re NSA Telecommunications Recs. Litig.*, 2010 WL 11475732, at *13 (N.D. Cal. Dec. 21, 2010) (quoting *Libr. of Cong. v. Shaw*, 478 U.S. 310, 314 (1986)).

The Ninth Circuit has squarely held that "sovereign immunity bars an award of interest against the FDIC" because "Congress has not expressly waived the FDIC's immunity against prejudgment interest, nor does the FDIC fall under the exception of the government's waiver immunity when it operates as a commercial enterprise." *Battista v. FDIC*, 195 F.3d 1113, 1120 (9th Cir. 1999) (citing *Far W. Fed. Bank, S.B. v. Off. of Thrift Supervision-Dir.*, 119 F.3d 1358, 1366–67 (9th Cir. 1997)); *accord, e.g.*, *Com. Law Corp. v. FDIC*, 716 F. App'x 383, 386–87 (6th Cir. 2017) (collecting cases); *Nee v. FDIC*, 2012 WL 1986289, at *12 (C.D. Cal. May 31, 2012).

SVBFG's bankruptcy does not bolster its rights here. While Congress expressly abrogated governmental units' sovereign immunity with respect to certain Bankruptcy Code provisions, including sections 362 and 542, *see* 11 U.S.C. § 106(a), that waiver does not extend to an award of prejudgment interest. *See United States v. Pullman Constr. Indus., Inc.*, 210 B.R. 302, 309 (N.D. Ill. 1997).

### III.    This Court lacks jurisdiction over the FOIA Claim (Count VIII).

SVBFG's FOIA claim should be dismissed for lack of jurisdiction because SVBFG lacks standing to sue. SVBFG alleges that "SVBFG" made a FOIA request to FDIC-C on June 29, 2023. Compl. ¶ 102. In fact, the request was made by Robert Sacks, and it did not state that it was made on behalf of SVBFG or anyone other than Mr. Sacks. *See* Decl. of Jeannette Wise ¶ 3 & Ex. 1. Later

communications about the request referred to only Mr. Sacks as the requester. *See id.* ¶¶ 4–5 & Exs. 2 & 3. "Where, as here, the subject matter jurisdiction of the court is challenged under Fed. R. Civ. P. 12(b)(1), the court may consider evidence outside the complaint pertaining to this issue, and resolve factual disputes if necessary." *Mahtesian v. OPM*, 388 F. Supp. 2d 1047, 1047 n.1 (N.D. Cal. 2005); *see also N.A. for Gun Rts.*, 632 F. Supp. 3d at 1095.

In this lawsuit, Mr. Sacks is SVBFG's attorney. While there is "no dispute that an attorney can submit a FOIA request on the express behalf of a *clearly identified* client, and the client will have standing to bring a FOIA action independently if the request is denied," the issue here is "whether a person or entity who is *undisclosed* in the FOIA request—or disclosed only as an anonymous 'client'—has standing to sue under FOIA in federal court." *Mahtesian*, 388 F. Supp. 2d at 1048. "[E]very court that has considered the issue has held that the answer is no." *Id.* (collecting cases). As a result, "courts routinely dismiss FOIA cases for lack of standing where plaintiff's counsel failed to clearly indicate that the FOIA request was filed on the plaintiff's behalf." *Osterman v. U.S. Army Corps of Eng'rs*, 2014 WL 5500396, at *2 (W.D. Wash. Oct. 30, 2014) (collecting more cases); *accord, e.g.*, *Smallwood v. DOJ*, 266 F. Supp. 3d 217, 220 (D.D.C. 2017) (collecting still more cases); *Thome v. FDA*, 2011 WL 3206910, at *2–3 (N.D. Cal. July 27, 2011) (another case dismissing a FOIA claim on this ground).

Because the FOIA request at issue was made by Mr. Sacks without clearly identifying that it was made on behalf of SVBFG, SVBFG lacks standing to sue under FOIA in federal court.

**Conclusion**

The Court should dismiss Counts I, II, III, IV, V, VII, and VIII.

Dated: March 4, 2024

Respectfully submitted,

**OF COUNSEL:**

*/s/ Jonathan G. Cooper* (*pro hac vice*)

Andrew J. Dober (CA Bar No. 229657)
Senior Counsel
adober@fdic.gov
Telephone: (703) 562-2545
Erik Bond, Counsel
erbond@fdic.gov
Telephone: (703) 562-6461
Jason Benton, Senior Attorney
jabenton@fdic.gov
Telephone: (703) 501-6256

Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226

Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

*Counsel to the Federal Deposit Insurance
Corporation (in its corporate capacity)*