1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable Beth Labson Freeman, District Judge

4

5   SVB FINANCIAL GROUP,            )
                                    )
6            Plaintiff,             )
                                    )
7   vs.                            )   Case No. C 23-06543-BLF
                                    )
8   FEDERAL DEPOSIT INSURANCE       )
    CORPORATION,                    )
9                                   )
             Defendant.             )
10  _____ )

11
                                San Jose, California
12                              Thursday, March 21, 2024

13
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
14            RECORDING 11:02 - 11:33 = 31 MINUTES

15
    APPEARANCES:
16
    For Plaintiff:
17                              Sullivan & Cromwell, LLP
                                1888 Century Park East
18                              Los Angeles, California 90067
                          BY:   ROBERT ANDREW SACKS, ESQ.
19
    For Defendant:
20                              Quinn Emanuel Urquhart &
                                  Sullivan, LLC
21                              1300 I Street NW
                                Suite 900
22                              Washington, D.C. 20005
                          BY:   ERIC LYTTLE, ESQ.
23
    Transcribed by:             Echo Reporting, Inc.
24                              Contracted Court Reporter/
                                Transcriber
25                              echoreporting@yahoo.com

*Echo Reporting, Inc.*

2

                    P-R-O-C-E-E-D-I-N-G-S

                         --oOo--

        THE CLERK:  Calling Case 23-6543, SVC Financial
Group versus Federal Deposit Insurance Corporation.

        Counsel, if you would please state your appearances,
and if we could begin with Plaintiff and then move to
Defendant.

        MR. SACKS (via Zoom):  Good morning, your Honor.
Robert Sacks from Sullivan and Cromwell for the Plaintiff,
SVBFG as it's commonly known, but Silicon Valley Bank
Financial Group.

        THE COURT:  Good morning.

        MR. LYTTLE (via Zoom):  Good morning, your Honor.
Eric Lyttle, Quinn Emanuel Urquhart and Sullivan, for the
FDIC in its corporate capacity.

        THE COURT:  Hello, Mr. Lyttle.

        MR. LYTTLE:  Good morning.

        THE COURT:  All right.  I have a lot of things I
need to ask you about.  This is a piece of a much bigger and
more sprawling litigation, and I guess the two things I want
to ask about first are there's a -- there's a second case
that was just filed.  I think I related the case, but are
you -- are you both counsel in the second case?

        MR. SACKS:  Your Honor, we would be counsel in the

3

1  second case.  Mr. Lyttle's counsel is not a party in the

2  second case.  It's against the FDIC, R1 and R2 --

3          THE COURT:  The Receivers, right?

4          MR. SACKS:  -- and they have separate counsel.

5          THE COURT:  Then we're done with that

6  conversation.  Thank you.  That's -- that's all I wanted to

7  know.  Then I can -- then --

8          MR. SACKS:  Have you -- your Honor, have you

9  related them?  We have not gotten that notice.

10          THE COURT:  I was away for the couple of days, and

11  I --

12          MR. SACKS:  Okay.

13          THE COURT:  -- thought that I did, but if I -- if

14  I hadn't closed the loop on it, I will.  I think that's -- I

15  don't think -- I think I was waiting for the time period to

16  end on relating them, and I don't know that the Defendant's

17  been served.  So, I'll -- I'll take a look at it, but thank

18  you.

19      I -- I understand in -- and we're just dealing with the

20  case before us now -- that -- well, there's a lot going on

21  in New York, including the bankruptcy, but another case

22  there.  And there was the filing yesterday I guess of --

23  there's a statement in regard to dependency of another

24  action, with an indication that there's been a stay of the

25  New York action pending this case?  I was really a little

4

1 unclear.  So, I don't know who -- whether, Mr. Sacks or Mr.

2 Lyttle, you can tell me what's going on there.

3        MR. SACKS:  Sure.  I can speak to it, your Honor.

4 It's Robert Sacks.  So, originally, SVBFG filed an adversary

5 proceeding in the Bankruptcy Court in July of last year

6 against both the FDIC in its corporate capacity and the FDIC

7 in its capacities as receiver for Silicon Valley Bank and in

8 its capacity as receiver for Silicon Valley Bridge Bank.

9    That action was removed -- the reference was ultimately

10 removed to the District Court by the Defendants in that

11 case.  The judge, Judge Cronan in New York in the Southern

12 District granted that motion, and we've appeared in front of

13 Judge Cronan, and there is a -- we have requested that that

14 action be stayed pending a determination in this case and

15 the related case as to whether there is a required FDIC

16 claims process which would then require that the cases be

17 litigated in this court where there is not, in which case,

18 our view is that the case can be litigated in the Southern

19 District of New York or back in the Bankruptcy Court in the

20 Southern District of New York.  Judge Cronan has not ruled

21 on that.  He has -- the parties have submitted requests on

22 that.  He stayed the action temporarily pending a

23 determination by him as to whether he intends to proceed or

24 to stay the case, and there's no ruling on that at this

25 time.

5

1          MR. LYTTLE:  Your Honor, if I could add one point

2 on that.

3          THE COURT:  Yes.

4          MR. LYTTLE:  So, just both the FDIC-C in its

5 corporate capacity and receiver had moved to dismiss that

6 case largely on jurisdictional grounds that this Court was

7 the proper forum for SVBFG's claims.

8      So, while SVBFG has asked for a stay, the -- the FDIC,

9 both entities have asked Judge Cronan to rule on those

10 motions to dismiss and dismiss the case.

11          THE COURT:  I see.  So, it is FDIC's position this

12 Northern District of California is the proper forum?

13          MR. LYTTLE:  Correct.

14          THE COURT:  And I think -- is there a motion

15 pending on that issue now?

16          MR. LYTTLE:  So, there is a motion to dismiss

17 pending that the FDIC-C has filed making that point that it

18 is the proper forum.  Of course, our position is the only

19 proper claim is the 1821(f) claim.  We've moved to dismiss

20 all others.  But, yes, for that claim that we agree should

21 proceed in this court, this Court is the proper forum for

22 that claim.

23          THE COURT:  Okay.  And, of course, I'm not getting

24 into that now, but it --

25          MR. LYTTLE:  Understood.

6

1          THE COURT:  I'm trying to really figure out how

2 massive this case is.  It's a little bit hard to tell.  And

3 I will only say to you in regard to this case I -- clearly,

4 the sum of money that SVB is looking for is the same in the

5 two cases.  I -- and, so, if I relate them, the next

6 conversation will be consolidating them because I don't know

7 why I'd have two cases on the -- regarding the same pot of

8 money and (Zoom glitch) tell me about that.

9          MR. SACKS:  Your Honor, they clearly should be

10 related, and they should be coordinated for all purposes I

11 would think.  If SVB -- I'm sorry.  If the receiver --

12 strike that again.

13      If the FDIC in its corporate capacity is correct -- and

14 we believe they're not -- as to what the limitations are in

15 this action on our claims against them, then their claim is

16 under the APA.  The APA is not applicable to the claim

17 against the receivers.  The review of that is de novo.  So,

18 there's very different standards between the two of them.

19 So -- potentially, potentially, because obviously we dispute

20 the FDIC corporate's motion to dismiss or that there was a

21 claim process or that 1821(f) is applicable.

22          THE COURT:  Well, I guess what I'm saying is that

23 these cases are not going to proceed in parallel, maybe if

24 one and then the other, and that would be fine because then

25 we'll -- we'll know what issues remain for the receiver

7

1 action.  But they're either -- they're going to either be
2 one case -- and that sounds like there are good reasons why
3 it wouldn't be -- or --
4            MR. SACKS:  Well, no, they -- they should be one,
5 your Honor, then under those circumstances if that's the
6 case.  I'm only saying that the -- the nature of the claims
7 is somewhat different even though it --
8            THE COURT:  Okay.
9            MR. SACKS:  -- is for the same pot of money.  But,
10 to the extent of discovery, it's all interrelated to one
11 another.
12            THE COURT:  Then what I think I'm going to do --
13 and just, again, a place saver to inform you -- once, when I
14 have a case management conference set in the receiver case,
15 I'll probably also set at the same time case management in
16 this case, and then we can all have the conversation.
17            MR. SACKS:  Okay.
18            THE COURT:  Okay?  So --
19            MR. LYTTLE:  Your Honor, if I can be -- just be
20 briefly heard on that.
21            THE COURT:  Yeah.
22            MR. LYTTLE:  I think all that makes sense.  I just
23 -- you know, with Mr. Sacks, we -- we disagree with the
24 scope of discovery as the corporate entity here.
25            THE COURT:  Um-hmm.

8

1          MR. LYTTLE:  My (Zoom glitch) is much different,

2 but I don't think that affects your practical consolidation

3 decision.  We would proceed separate motions practice on

4 summary judgment for the one claim we think is viable.  But

5 -- but for, you know, general consolidation purposes, I

6 don't see any issue with that as well.

7          THE COURT:  So, part of this is me wrapping my

8 hands and controlling a case, and separate motion practice

9 where there's separate parties makes sense.  A lot of it has

10 to do with how many briefs and how long they are and how

11 much the issues overlap, and I don't know that yet.

12      So, in the newer case, I don't -- I don't think -- I'm

13 not even sure if service has been perfected against the

14 receiver or how long the receiver has to respond to the

15 complaint.

16          MR. SACKS:  It has been perfected, your Honor, and

17 I --

18          THE COURT:  Good.

19          MR. SACKS:  -- believe, though Mr. Lyttle is more

20 the administrative expert than I, I believe they get 60 days

21 to respond.

22          THE COURT:  That's my guess too.  So, we have a

23 little bit of time.

24          THE COURT:  Okay.  Thank you.

25      Now let's focus on this case, but I really -- I'm just

1 trying to make sure I'm not missing something with the two

2 of them.  All right.  There is an issue -- Mr. Lyttle, you

3 indicate that under the APA there's an exemption from

4 initial disclosures, and you argue that the only viable

5 claim is under the APA, which I will be deciding soon.  So,

6 you are, I presume, asking that I -- or maybe you're telling

7 me you're not going to be responding to initial disclosures

8 at this time, but we ought to have an agreement about what's

9 happening.

10          MR. LYTTLE:  Thank you, your Honor.  And we did in

11 the Rule 26(f) conference sort of, you know, hold in

12 abeyance any formal motions practice you would want to stay

13 discovery pending this discussion that we were going to have

14 on calendared with you.

15          THE COURT:  Okay.  Uh-huh.

16          MR. LYTTLE:  You're correct, though, it is or

17 position that the only claim here that should proceed is

18 that 1821(f) claim which is decided under APA standards.

19 You know, there's no discovery for those.  There is no

20 expert work for those.  And the other, our motions to

21 dismiss, raised, you know, facial jurisdictional challenges

22 to those other claims and should be ruled upon before we

23 proceed with any discovery for those claims.

24          THE COURT:  Mr. Sacks, you --

25          MR. SACKS:  Your Honor, it won't -- it won't shock

10

1 you to hear that we fundamentally disagree with that.  This
2 is not an 1821(f) case, notwithstanding the efforts of the
3 FDIC Corporate to make it one.  We did not make a claim
4 under 1821(f).  We made a claim for our money under the
5 obligation that the FDIC Corporate had based upon the
6 Secretary of the Treasury's invocation of a systemic risk.
7 The FDIC admits that it actually did what the Secretary of
8 the Treasury said they should do, which is make our money
9 available.  But it hasn't been paid.  1821(f) is limited to
10 insured deposits.  Our claim is not for insured deposits.
11     To resolve that issue, which is the foundation for the
12 entirety of their motion to dismiss, there's going to be
13 discovery that's necessary as to what their process --
14 limited discovery, and we've served it to them.  It's very
15 limited to what their process was, what evidence of their
16 process was, how they invoke that process, what rules, if
17 any, they have, and what they did.  It goes to the existence
18 of a process and to bad faith here.
19          THE COURT:  Um-hmm.
20          MR. SACKS:  And we don't believe you're going to
21 be able to adjudicate the motion to dismiss without hearing
22 that limited discovery, which we did so earlier this week.
23 Again, I think we served five, six requests for production
24 and one interrogatory going to that issue that we would ask
25 them to respond to -- or, excuse me -- six requests for

11

1    production and one interrogatory -- to respond to before

2    your Honor decides the motion to dismiss because, otherwise,

3    we're just going to indicate there are disputed issues of

4    fact in the motion that can't be resolved without discovery.

5         THE COURT:  So, largely in your case management

6    statement, you argued as a motion to stay.  And I want to be

7    really clear I'm not ruling on that now.  If you want to

8    file a motion to stay discovery and brief it, I'll try to

9    have a hearing on it or decide it before the hearing date

10   you'd get, but I'm setting in July right now.  So, that's

11   kind of a problem.  But I want to be really clear there's no

12   discovery stay right now, and I'm not going to rule on it.

13   Even though you gave me quite a thoughtful briefing in your

14   case management statement, this is not a motion hearing, and

15   you've alerted me to what the issue is, but I'm not ruling

16   on it.  So, there is propounded discovery, and Mr. Sacks

17   argues he needs it in order to present his opposition to the

18   pending motion.  So, I don't know how you're going to deal

19   with that, and you'll have to --

20        MR. LYTTLE:  Right.

21        THE COURT:  -- figure that out.

22        MR. LYTTLE:  Certainly, your Honor.  I guess

23   that's my question.  I have a number of responses to Mr.

24   Sacks' point.  I don't know if you'd like to hear those now

25   or it sounds like in a motion to stay.

1        THE COURT:  It needs to be a motion to stay.

2        MR. LYTTLE:  Understood.  Then I will -- I will

3  save the breath and the Court's time.

4        THE COURT:  Okay.  Recognize I have a 10-page

5  limit on that kind of a motion.  Please read my standing

6  orders.  It would really be a shame for you to file and have

7  things stricken, but that's what I do.  It's really --

8        MR. LYTTLE:  Thank you.

9        THE COURT:  And I do appreciate it.  I -- it just

10  makes things go smoother, but it's an important issue.  When

11  is your motion to dismiss set?  I didn't -- I neglected to

12  make a note of that.

13        MR. SACKS:  Sometime in July, your Honor.

14        THE COURT:  It is July, okay.

15        MR. SACKS:  I don't remember the precise date.

16        THE COURT:  Okay.  So, if discovery is allowed or

17  if limited discovery is allowed, there's ample time for Mr.

18  Sacks to receive that discovery and work out a more -- an

19  appropriate briefing schedule on the motion to dismiss

20  because I just need my -- I just need the reply brief two

21  weeks before the hearing.  So, you can keep that in mind,

22  and maybe you'll come to some agreement on some of this

23  initial discovery as a way of working this out.  So, I'm

24  going to urge you to do that as well.

25        MR. SACKS:  We'll try, your Honor.

13

1          THE COURT:  Okay.  All right.  So, in the case

2 management statement, you seem to believe that there will be

3 two separate rounds of summary judgment motions, and I don't

4 know why you think that would be the case.  So, the APA

5 claim would generally go by motion, wouldn't it?

6          MR. LYTTLE:  That's correct, your Honor.  That's

7 our position.

8          THE COURT:  All right.  But where would -- why

9 would there be a second motion for summary judgment?

10          MR. LYTTLE:  Well, I'm looking at ours now.  I

11 don't think we proposed one.  We, of course, think those

12 other claims, all but that APA claim, subject to the summary

13 judgment that we've proposed a date for, in our opinion, the

14 Court has no subject matter jurisdiction, and those will be

15 dismissed.  So, we did not propose a separate summary

16 judgment motion date to my knowledge.

17          THE COURT:  Okay.  I'm looking then -- Mr. Sacks,

18 I'm looking at yours.

19          MR. SACKS:  I mean, your Honor, the whole issue

20 involves this notion that they have that the entirety of the

21 case other than a single count will be dismissed on their

22 motion.  And, so, their approach presumes they win.  We

23 think they're going to lose.  And, so, we're then going to

24 have a case that's here, your Honor, that has an

25 adjudication not on an administrative record but on a full

14

1 factual record --

2           THE COURT:  Okay.

3           MR. SACKS:  -- of that.  And, so, that's going to

4 have to be determined at that point in time.  We believe

5 that the issue of whether --

6           THE COURT:  Won't I be determining that at the

7 motion to dismiss, as to whether it's an APA claim only or

8 the broader -- or the -- the case you pled?

9           MR. SACKS:  Or that you can't determine it without

10 a -- a hearing on that issue.  That's the third possibility.

11 It could be --

12          THE COURT:  An evidentiary hearing?

13          MR. SACKS:  It could be because some of the

14 questions of whether they have, in fact, an 1821 -- there is

15 a threshold legal issue as to whether 1821(f) in any event

16 applies here.  But, assuming they surmount that, and I don't

17 believe that that will be dispositive if we're correct and

18 they're not.

19          THE COURT:  Um-hmm.

20          MR. SACKS:  But, beyond that, there are factual

21 questions as to whether this is, in fact, an 1821(f) process

22 or this is, in fact, made up and whether -- which we believe

23 to be the case since we are the only ones subjected to it.

24 No one else is subjected to it.

25          THE COURT:  Um-hmm.

1      MR. SACKS:  And whether they acted in good faith

2 as part of that process, and it's conceivable that that

3 could require the presentation of evidence to your Honor.  I

4 can't say it will at this point, but it's possible.

5      THE COURT:  Okay.  So, here's what I want to make

6 clear to you.  Each side gets one summary judgment motion in

7 the life of the case, and if it's -- if it's on the APA

8 claim, that's fine.  If it's on the other claims, that's

9 fine.  It looks as though they're mutually exclusive.  At

10 some point I will either agree with FDIC that it's only an

11 APA consideration under 1812(f) and we'll go down that road

12 or I'll agree with Mr. Sacks that it's not and let him

13 litigate the case he filed.  But I don't think we're doing

14 both.  Is that correct?

15      MR. LYTTLE:  So, your Honor, just briefly, I think

16 the issue we've got is Local Rule 16-5, which requires on an

17 APA claim for the summary judgment briefing to come 28 days

18 after the answer and administrative record.  So, we're -- we

19 thought we were bound.  We sought to -- to alleviate some of

20 the pressure over Local Rule 16-5.  Mr. Sacks didn't agree.

21 We -- we moved the court, and, your Honor, likewise, wanted

22 us to move forward with production of that -- that

23 administrative record under Local Rule -- and comply with

24 Local Rule 16-5.  The issue here is --

25      THE COURT:  That was provided in the record, yes.

1 The briefing I wasn't --

2          MR. LYTTLE:  Right.

3          THE COURT:  So, the briefing has to be done.  Does

4 the Rule also require when I have to give a hearing date?

5          MR. LYTTLE:  I need to look at -- I know it

6 requires a schedule for the briefing.  I can check on the

7 hearing date.  Let me see if I can pull it up.  But the

8 Local Rule 16-5, which we understood we had to comply with,

9 especially in light of your Honor's order on our motion to

10 extend it, does have a set briefing schedule --

11         THE COURT:  So, there's no --

12         MR. LYTTLE:  -- for summary judgment.

13         THE COURT:  -- APA claim plead, though, isn't that

14 right?

15         MR. SACKS:  No, we plead --

16         THE COURT:  You did?

17         MR. SACKS:  We plead one in the alternative.

18         THE COURT:  Okay.

19         MR. SACKS:  That's correct.  And, your Honor, I

20 believe your Honor has the discretion to determine because

21 of these other preliminary issues a different schedule for

22 filing those motions on -- on the APA claim.  That's not

23 bound in stone.  I mean, it's the Rule, but you can deviate

24 from that.

25         MR. LYTTLE:  Well, I'm sure that's true.  It's in

17

1   your Honor's discretion.  We attempted to come to some kind

2   of agreement, and -- and that was rebuffed.  And, so, our

3   understanding is we're proceeding under Local Rule 16-5, and

4   that sets deadlines for summary judgment, and that's what we

5   were attempting to do in our case management order and

6   comply with the --

7           THE COURT:  All right.  Thank you, but I have no

8   intention of -- I mean, I -- I'm going to hear the motion to

9   dismiss before I do anything.  And, so, I am going to stay

10  the filing of summary judgment motions under the APA until

11  after I -- and I'm going to stay it and not even let it be

12  scheduled until after I rule on this pending motion, and I

13  think that -- but -- but the record has to be provided.  I

14  think that's -- that's -- I want to  uncouple that from the

15  briefing, because I think Mr. Sacks is entitled to that

16  record.

17      If I -- now, at the -- I gather at the motion to

18  dismiss, Mr. Lyttle, you'll be asking me to -- to dismiss

19  all of the other claims other than the APA claim?

20          MR. LYTTLE:  That's correct, your Honor, other

21  than the 1821(f) claim.

22          THE COURT:  1821(f) claim, right.  And if -- and,

23  Mr. Sacks, your 1821(f) claim is only pled in the

24  alternative?

25          MR. SACKS:  It's one of the alternative claims,

18

1  correct.

2          THE COURT:  So, if I deny the motion to dismiss, I

3  guess it's possible you'd even dismiss your claim under

4  1821(f).

5          MR. SACKS:  It depends how you deny the motion,

6  your Honor.

7          THE COURT:  Got it.

8          MR. SACKS:  On what grounds you deny the motion.

9          THE COURT:  Okay.  That's fair.  All right.  So,

10 then -- and I'll put out an order on this under Local -- I'm

11 going to -- I'm going to suspend the briefing on the 1821(f)

12 claim until after I rule on the pending motion to dismiss,

13 and we will set a briefing schedule on that shortly after I

14 issue that ruling.

15         MR. SACKS:  Very well.

16         MR. LYTTLE:  Understood.

17         THE COURT:  Okay.

18         MR. LYTTLE:  Thank you, your Honor.

19         THE COURT:  Good.  I think that helps.  That

20 probably puts things a little bit better order.

21     So, what -- before I get in -- I'm not going to be

22 setting a trial date in this case.  I don't even know where

23 we're going yet, but -- or what cases they are or whether

24 there is a trial, but are there other issues, Mr. Sacks,

25 that you wanted to address?

19

1          MR. SACKS:  No, I don't think so, your Honor.  I
2  think that these preliminary issues need to get cleared out
3  and we'll have a better idea of where we are at that point
4  -- at that point un time, and I do think that when you --
5  I'd urge you to set the case management conference in the
6  FDIC-R case at the earliest possible date.
7          THE COURT:  That's probably already been set, and
8  I'll ask Tiffany for that date in just a minute.
9          MR. SACKS:  Okay.
10          THE COURT:  Okay.  Mr. Lyttle, did you have
11  anything else?
12          MR. SACKS:  I don't think so, your Honor.  I
13  appreciate the clarity.
14          THE COURT:  Okay.  So, Tiffany, the other case is
15  -- oh, I -- oh, that's bad.  I didn't write down the case
16  number, and I apologize.  I thought I put that in my notes.
17          MR. SACKS:  I can probably give it to your Honor.
18  It's 241321.
19          THE CLERK:  That case, your Honor, currently has a
20  case management conference date of June 4th.
21          THE COURT:  So, does -- is that a reasonable time
22  for us to come back together at case management?  I won't
23  have ruled on the motion to dismiss, but at least I'll have
24  everybody in front of me.
25          MR. SACKS:  It does make sense.  I think that

20

1 would make sense, your Honor.  And if -- if we determine for
2 some reason that it might make sense to change that, we can
3 make an application to your Honor.

4          THE COURT:  Okay.  And I -- that sounds good.  So,
5 I will set a further case management conference in this case
6 for June 4 at 11:00 to coincide with the initial case
7 management conference in the other case.  Okay.

8     So, I'm not going to -- I don't even know what kind of
9 a case we're trying yet.  So, I'm not going to set a
10 schedule.  There were just things in your schedule that were
11 surprising to me.  It led me to believe you hadn't had the
12 opportunity to read my standing orders.  There was a -- it
13 looked as though you wanted to file <u>Daubert</u> motions 28 days
14 after I rule on summary judgment, and although there's
15 nothing actually wrong with that, you should understand that
16 then your trial will necessarily be about eight months later
17 because I require the <u>Daubert</u> motions be heard at least 60
18 days before trial, and I don't give preferential setting.
19 So, if you filed a motion, it would be five months till you
20 got a hearing date.  So, this -- this isn't the way I do it,
21 and don't worry about it now, but it's -- you'll get a trial
22 date at some point, and we will work backwards from that.
23 And at the next case management conference, I'm going to
24 hope we can do that, but I think it may be after the motion
25 to dismiss is ruled on then I'll be setting more of a

21

1   schedule.  Okay.

2           MR. SACKS:  Yes.

3           THE COURT:  So, that's a -- it just --

4   everything's a little complicated, and I don't know whether

5   I've got two cases or one.  I still don't under -- I'll have

6   to learn why this case is here and not in New York.  That

7   doesn't make any sense to me when everything else is in New

8   York.  I'm not sure why it needs to be filed here.  I don't

9   know.  Mr. Sacks, maybe you want it filed here.

10          MR. SACKS:  No, your Honor.  If, in fact, this is

11  an APA --

12          THE COURT:  Uh-huh.

13          MR. SACKS:  -- appeal, statutorily it would be

14  required to be filed here because this was the principle

15  place of business of Silicon Valley --

16          THE COURT:  Okay.

17          MR. SACKS:  -- Bank.  If it's not, then it can

18  proceed in New York when other things are, but the FDIC-C's

19  position is that this is -- we were required to file a claim

20  and that this is an administrative appeal from that claim,

21  which is why it's here.

22          THE COURT:  Got it.

23          MR. SACKS:  With respect to the FDIC-R case,

24  again, their position is we were required to file a claim,

25  different claim, different procedure, but against the R's,

22

1   and in that case, the standard of review is de novo.  It's

2   not an administrative standard of review.  But, again, if

3   they deny the claim, we have a choice to file in this

4   District or in D.C.

5              THE COURT:  Oh.

6              MR. SACKS:  So -- so, we're required -- so --

7              THE COURT:  All right.

8              MR. SACKS:  -- we could had three jurisdictions --

9              THE COURT:  All right.

10             MR. SACKS:  -- just to completely --

11             THE COURT:  That -- that's very helpful actually,

12  right.  Well, that's --

13             MR. SACKS:  But, again, it's because of the FDIC

14  in its various capacities position that we were required to

15  file claims against them.

16             THE COURT:  Okay.

17             MR. SACKS:  These are here, but if we are correct,

18  we believe we can go back to New York.

19             MR. LYTTLE:  So, your Honor, agree with in

20  substance.  It's statutorily required to be here.

21             THE COURT:  Okay.

22             MR. LYTTLE:  So, that -- that's why we're here.

23             THE COURT:  That's good enough.

24             MR. LYTTLE:  There -- there is one other issue,

25  your Honor, that I --

23

1          THE COURT:  Okay.

2          MR. LYTTLE:  -- I did want to raise briefly if I

3  could.

4          THE COURT:  Yes.

5          MR. LYTTLE:  The admin record is currently due

6  April 1st.

7          THE COURT:  Okay.

8          MR. LYTTLE:  We are -- we are hard at work putting

9  that together to meet your Honor's deadline.  We need a

10 protective order for that.

11         THE COURT:  Okay.

12         MR. LYTTLE:  We have sent that to Mr. Sacks and

13 his team and just haven't heard back.

14         THE COURT:  You did that this week?

15         MR. SACKS:  I spoke to Ms. McGimsey, who's looking

16 at it this morning, and you will have comments, if not

17 today, tomorrow.

18         MR. LYTTLE:  Right.  Just want to have that in

19 place before we're able to produce it.

20         MR. SACKS:  Understood.  We -- we understand that.

21         THE COURT:  Okay.  Well, that's good.  So, yes,

22 that's very important.  And, frankly, if you need an extra

23 few days on producing the administrative record, I hope you

24 can work that out between yourselves, but I know this is a

25 big job.

1      So, I've sent a further case management conference, and
2  hopefully a lot more will come into relief by then.  It's
3  not clear to me whether there are going to be some -- any
4  discovery disputes that come up.  I think there may be a
5  motion to stay discovery.  That would come to me.  If
6  there's any actual discovery dispute about what is produced,
7  not whether there's an obligation at all, that would go to
8  -- I'll assign those issues to the Magistrate Judge assigned
9  to the case, but the motion to stay would come to me.  So, I
10  don't want -- I don't want that to be unclear.
11      And if you file it, I -- I will certainly give you --
12  I'll look -- I'll work hard to find an earlier spot to hear
13  that motion or to see if I can decide it on the papers.  So
14  -- because it's no good if you can't get a ruling soon.  But
15  I need it filed.  Okay.
16      All right.  Well, thank you both.  I -- I appreciate
17  it, and I'll see you in June, unless something else arises
18  before then.
19          MR. SACKS:  Your Honor, could I just ask one
20  question?
21          THE COURT:  Of course.
22          MR. SACKS:  Are all of your hearings remote or on
23  the motion to dismiss, will you hear that in person?
24          THE COURT:  So, I do all of my CMC's remotely, and
25  I think -- I appreciate that.  I'm just now beginning to

1  transition to in person.  I welcome your request to do it in

2  person, and I've got one right now.  They're waiting for me

3  to go back, but probably by July, I'll be doing everything

4  in person.  Okay.

5          MR. SACKS:  So, should we -- should we make a

6  request?  I mean, I certainly would prefer to do a -- a

7  motion to dismiss in person as opposed --

8          THE COURT:  Go ahead and make that request.  That

9  way, in case I haven't switched over, we'll know.

10          MR. SACKS:  Maybe -- I'll speak to Mr. Lyttle, and

11  maybe we have agreement on making a joint request.

12          MR. LYTTLE:  I think we -- we'd like to do it in

13  person too if your Honor's open to that.

14          THE COURT:  Absolutely.

15          MR. SACKS:  Okay.

16          MR. LYTTLE:  Great.

17          MR. SACKS:  Thank you very much, your Honor.

18          THE COURT:  Thank you both.  Look forward to

19  handling the case with you.

20          ALL:  Thank you, your Honor.

21      (Proceedings adjourned at 11:33 a.m.)

22

23

24

25

26

## CERTIFICATE OF TRANSCRIBER

     I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by the
U.S. District Court, Northern District of California, of the
proceedings taken on the date and time previously stated in
the above matter.

     I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.

              Echo Reporting, Inc., Transcriber
                   Monday, April 1, 2024