# EXHIBIT 3

NCKVSVBC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   In re:
 4   SVB FINANCIAL GROUP,                    23-10367 (MG)
 5                    Debtor.
 6   ------------------------------x
 7   SVB FINANCIAL GROUP,
 8                    Plaintiff,
 9           v.                              23 Civ. 7218 (JPC)
10   FEDERAL DEPOSIT INSURANCE
     CORPORATION, in its Corporate
11   capacity, and FEDERAL DEPOSIT
     INSURANCE CORPORATION, as
12   Receiver for Silicon Valley
     Bank and Silicon Valley Bridge
13   Bank, N.A.,
14                    Defendants.            Conference
15   ------------------------------x
16                                           New York, N.Y.
                                             December 20, 2023
17                                           4:35 p.m.
18   Before:
19                    HON. JOHN P. CRONAN,
20                                           District Judge
21
22                        APPEARANCES
23
     SULLIVAN & CROMWELL LLP
24        Attorneys for Debtor/Plaintiff
     BY:  ROBERT A. SACKS
25        JAMES L. BROMLEY
```

NCKVSVBC

APPEARANCES (continued)


QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Defendant Federal Deposit Insurance
     Corporation in its corporate capacity
BY:  BENJAMIN I. FINESTONE

FARRELL FRITZ PC
     Attorneys for FDIC as Receiver for Silicon
     Valley Bridge Bank
BY:  PATRICK T. COLLINS
     MARTIN G. BUNIN

REED SMITH LLP
     Attorneys for Federal Deposit Insurance Corporation as
     Receiver for Silicon Valley Bank and Silicon Valley Bridge
     Bank, N.A.
BY:  KURT F. GWYNNE
     DEREK J. BAKER
     CASEY D. LAFFEY

WHITE & CASE
     Attorneys for Interested Party Ad Hoc Cross-Holder Group
BY:  COLIN T. WEST

AKIN GUMP STRAUSS HAUER & FELD LLP
     Attorneys for Official Committee of Unsecured Creditors of
     SVB Financial Group
BY:  DAVID M. ZENSKY
     DAVID GILLER
     KATHERINE PORTER

DAVIS POLK & WARDWELL LLP
     Attorneys for Intervenor Ad Hoc Group of
     Senior Noteholders
BY:  MARSHALL S. HUEBNER
     ELLIOT MOSKOWITZ
     KATHRYN S. BENEDICT

NCKVSVBC

```
 1              (Case called)
 2              THE DEPUTY CLERK:  Can counsel please state your name
 3    for the record.
 4              MR. SACKS:  Good afternoon, your Honor.
 5              Robert Sacks and James Bromley from Sullivan &
 6    Cromwell for the plaintiff.
 7              THE COURT:  Good afternoon, Mr. Sacks and Mr. Bromley.
 8              MR. ZENSKY:  Good afternoon, your Honor.
 9              David Zensky of Akin Gump for the Official Committee
10    of Unsecured Creditors.  I'm here with my partner Katherine
11    Porter.
12              THE COURT:  Good afternoon, Mr. Zensky and Ms. Porter.
13              MR. HUEBNER:  Good afternoon, your Honor.
14              I'm Marshall Huebner of Davis, Polk & Wardwell, on
15    behalf of the Ad Hoc Committee.  Our clients own two-thirds or
16    so of the bonds and a good chunk of the preferred.  We are
17    intervenors in the underlying action.  We did not intervene in
18    the motion to withdraw because there seemed to be enough voices
19    on that one, but now we're here.
20              THE COURT:  Understood.  Thank you.
21              MR. WEST:  Good afternoon, your Honor.
22              Colin West of White & Case for intervenor plaintiff Ad
23    Hoc Cross-Holder Group.  Thank you.
24              THE COURT:  Thank you, Mr. West.
25              MR. FINESTONE:  Ben Finestone, Quinn Emanuel, on
```

1    behalf of FDIC in its corporate capacity, your Honor.

2              THE COURT:  Thank you, Mr. Finestone.

3              MR. COLLINS:  Hello.  Patrick Collins, Farrell Fritz,

4    along with Martin Bunin, on behalf of the FDIC as receiver for

5    Silicon Valley Bridge Bank.

6              THE COURT:  Thank you, Mr. Collins, Mr. Bunin.

7              MR. GWYNNE:  Good afternoon, your Honor.

8              Kurt Gwynne, along with my colleagues Casey Laffey and

9    Derek Baker, on behalf of FDIC-R1.

10             THE COURT:  Thank you, Mr. Gwynne, Mr. Laffey, and

11   Mr. Baker.

12             So the purpose of this conference really is to discuss

13   next steps in this case.  I, of course, issued my opinion about

14   a week ago withdrawing the reference.  I received also the

15   joint status letter from the parties a couple of days ago.

16             Maybe first just a housekeeping matter.  Mr. Sacks,

17   just to confirm, as was indicated in the letter, the plaintiff

18   is no longer seeking a preliminary injunction without prejudice

19   to renewing that application?

20             MR. SACKS:  Correct.

21             THE COURT:  So I'll deny that motion without

22   prejudice.

23             And SVB has filed the complaint in the Northern

24   District of California.  I received that last night as well; is

25   that correct?

1           MR. SACKS:  Correct, your Honor.

2           THE COURT:  And can you give me a brief overview of

3      that complaint.

4           MR. SACKS:  Certainly.

5           As your Honor is aware, the FDIC-C has taken the

6      position that we were required to file an administrative claim.

7      They denied that, what they call the claim.  And this is our

8      action seeking review of that denial.

9           The action asserts essentially the same underlying

10     wrong as here; we're entitled to $1.93 billion, and they owe it

11     to us.  It asserts multiple causes of action, the first being

12     that we were not -- at the termination we are not required to

13     assert a claim and so there is no claim process.  But beyond

14     that, if we were, we assert claims under the Administrative

15     Procedure Act, we have a constitutional claim, we have a claim

16     for -- an estoppel claim, we have a claim for violation of FOIA

17     because they haven't produced documents notwithstanding FOIA

18     requests.  And I think -- oh, yeah, we also reassert in that

19     action the bankruptcy claims that are the subject of -- so an

20     automatic stay and turnover claims that are set forth in the

21     complaint in this case, your Honor.  So they overlap in that

22     sense.  But the subject matter is entirely overlapping.

23          THE COURT:  And in terms of FDIC as receiver and the

24     administrative claim filed by the plaintiff there, I guess,

25     Mr. Gwynne, is it safe to assume that there will be a decision

1    on that by, I believe, January 8th?

2              MR. GWYNNE:  Yes, your Honor.

3              THE COURT:  And at that point, Mr. Sacks, depending on

4    the decision, there may be another lawsuit filed?

5              MR. SACKS:  Or an amendment to the lawsuit in Northern

6    California.  Because with respect to the FDIC-R, it's a *de novo*

7    review and we have the option to go to Northern California

8    where the bank was headquartered, or D.C.  In the case of the

9    FDIC-C if, in fact, we were required to seek review, we have to

10   go to Northern District of California.

11             THE COURT:  Now, given that the allegations and claims

12   are very similar between this case and what's currently out

13   there and may be filed out there as well, don't we have a risk

14   of inconsistent rulings on opposite sides of the country here?

15             MR. SACKS:  It's a possibility, your Honor, which is

16   why we suggested that we defer -- schedule a conference for the

17   second half of January after we see what the FDIC-R does to our

18   claims.  Then we can make a judgment as to whether we're going

19   to amend the claim there or on what they do, they could grant

20   it and then we'd be done with all of this — surprises could

21   happen — in which case we may come to your Honor and ask to

22   stay this case pending the determination there.  We may ask the

23   court there to stay that case pending a determination here.

24             But I agree with you, proceeding simultaneously with

25   the same causes of action in both fora does not seem like the

NCKVSVBC

1    most efficient use.  But I think before we are in a position to

2    make a decision about that, we have to see what the FDIC-R does

3    in two and a half weeks.

4              THE COURT:  And there's no request to transfer this

5    case to California.

6              MR. SACKS:  No, your Honor, because if we -- at least

7    not at the moment.  Because we can, I believe, reassert the

8    same causes of action in that case.  I mean, the FDIC may take

9    the position that we can't assert the bankruptcy causes of

10   action in that case, in which case we'll have to have -- that

11   could affect what happens, quite honestly.

12             But no, because at some point in time, if we are

13   correct that we were not required to file an administrative

14   claim — and let's say that's determined either by your Honor or

15   by the court in California — we'll be asking you to send this

16   case back to the bankruptcy court for an adjudication of the

17   bankruptcy claims which won't involve any questions of

18   federal -- complex federal law any longer.

19             THE COURT:  And I assume nothing has happened yet in

20   Northern District of California since the complaint was just

21   filed.

22             MR. SACKS:  The case was assigned, but nothing else

23   has happened other than the case was filed, and it was filed

24   just yesterday.  And so administratively, a judge was assigned

25   and that's all that's happened.

1       THE COURT:  Can you also explain -- the joint letter

2  made reference to possible amendment to the complaint in this

3  case.  Would that amendment -- it sounds like the way it was

4  described in the letter would be focused largely on

5  developments in the administrative claims process and other

6  actions that have been filed or may be filed.  Is that what the

7  amended complaint would entail?

8       MR. SACKS:  I think fundamentally, in terms of facts

9  to be alleged additionally, it would allege additional facts

10  that relate to what did happen, both additional facts we've

11  learned about since we filed the complaint that happened in

12  March, and facts that have happened since then about additional

13  statements about what happened and the like.

14       Whether we would assert additional causes of action in

15  this complaint, frankly, that could depend on what the FDIC-R

16  does at the moment when we hear from them.  But at the moment I

17  hadn't been really focused on additional causes of action, more

18  in terms of factual -- additional buttressing factual

19  information.

20       THE COURT:  And there's obviously the threshold

21  jurisdictional question.  Would anything in the amended

22  complaint impact that issue?  In other words, what I'm getting

23  at is I'm wondering if it even makes sense to entertain an

24  amended complaint until the jurisdictional issue is resolved.

25       MR. SACKS:  I think the facts could bear on the

1    jurisdictional issue, including the basic issue of whether they

2    have a claims process or not.  And again, the FDIC-C -- I don't

3    want to treat them as the same, because they are different from

4    one another; and it could be that we had an obligation to file

5    a claim with the FDIC-R, but not with the FDIC-C.  And we do

6    have substantial additional facts that have come up that reveal

7    that the FDIC-C had no claims process whatsoever and so there

8    couldn't have been an obligation to file with them.  And I

9    think pleading those could bear on the FDIC-C's jurisdictional

10   motion, for example.

11         THE COURT:  Mr. Gwynne, given that more than 20 days

12   have passed since the service of the original complaint and

13   since service of the motion to dismiss, leave from the Court

14   would be required for an amendment to the complaint under Rule

15   15.  Do you anticipate opposing the requested amendment?

16         MR. GWYNNE:  Kurt Gwynne, for the record, on behalf of

17   FDIC-R1.

18         Yes, your Honor, jurisdiction is determined at the

19   time the complaint was filed.  Subsequent facts have nothing to

20   do with whether this Court had subject matter jurisdiction on

21   the day the debtor chose to file this complaint.  So they can't

22   cure anything by asserting post-filing facts in an amended

23   complaint.

24         In addition, the bases for our jurisdictional

25   challenges, 1821(d)(13) do -- sorry, (d)(13) -- (d)(313), sorry

1    your Honor, has nothing to do with subsequent facts that the

2    debtor may plead.  Our jurisdictional challenge under

3    1821(d)(6)(A), which says that after our claims process is

4    over, they have to go to either the Northern District of

5    California or the District of Columbia.  Sounds like counsel

6    for the plaintiff debtor agrees with that.  Because when he was

7    speaking, he didn't say they had an option to go to the

8    bankruptcy court in the Southern District of New York or to

9    your Honor.

10           The two options are the Northern District of

11   California or the District of Columbia.  The third basis under

12   1821(f) is an FDIC-C basis; and then we have 1821(j), our

13   argument that you can't interfere with our claims process.

14   None of that has anything to do with subsequent facts that they

15   may allege.  Those arguments have been fully briefed; an

16   amended complaint would be futile.

17           We would ask your Honor to decide the motions to

18   dismiss.  And not only were they briefed in connection with the

19   motion to dismiss, your Honor gave parties the opportunity to

20   file a supplemental brief on the motion to withdraw the

21   reference.  And the debtor and the committee used that

22   opportunity to file a supplemental brief on the motion to

23   dismiss.

24           So we'd be prepared, you know, as early as next week

25   to just have oral argument on the motions to dismiss, if that

1    works for your Honor.

2              THE COURT:  Mr. Finestone.

3              MR. FINESTONE:  Yes, your Honor.  I only moved because

4    there's no microphone by my chair.

5              Ben Finestone for FDIC corporate.

6              THE COURT:  Are you in agreement with Mr. Gwynne's

7    position there?

8              MR. FINESTONE:  Yeah, we agree with FDIC receiver in

9    the sense that we would ask the Court to schedule a hearing

10   with respect to the pending motions to dismiss as soon as the

11   Court's calendar allows it.  There's been 140 pages of briefing

12   that the parties have put in at the bankruptcy court even prior

13   to the supplemental content that was put in that Mr. Gwynne

14   referenced.  Subject matter jurisdiction is determined as of

15   the date of the complaint.

16             And the notion, your Honor -- I'll just touch on it

17   briefly.  The notion that we have no process is irrelevant as

18   of the filing of the complaint; but more importantly 1821(f),

19   which is the Title 12 section that I focused on slightly more

20   than Mr. Gwynne does, concerns for claims for insurance

21   coverage for any deposit.

22             So of course there's been a process, your Honor.  The

23   process is played out on the dockets.  But it's really

24   irrelevant whether there's been a process or not.  Their claims

25   are subject to Section 1821(f), and that's why they filed their

1     action in the Northern District of California.

2          Your Honor referenced the risk of inconsistent

3     rulings.  But from our perspective, the pendency of this action

4     is in violation of federal law.  And we'd, again, at the

5     Court's earliest convenience, like to present our motions to

6     that effect.

7          MR. HUEBNER:  Your Honor, may I be heard for just a

8     second?

9          THE COURT:  Yes.

10         MR. HUEBNER:  I think that, you know, it's actually

11    the intervenors whose money is actually at stake.  And I think

12    that we were respectful of the fact that it was a motion to

13    withdraw and did not participate.  You know, what's actually at

14    issue in the letter is really pretty small, which is a request

15    for a ten-page brief.

16         And you know, we're going to be talking a lot about

17    denial of process and shell games and the fact that, for

18    example, we're waiting until January 8th, when they probably

19    knew their answer four months ago, we're still sitting here

20    with nothing is, I think, very troubling.  I think there's

21    going to be a lot to talk about.

22         And I think that the procedural request that you've

23    heard and that are set forth in the letter for very short

24    briefs by parties who think that they were in front of a new

25    court, who expressed views, raised questions and concerns, we

1    think respect for the Court itself to actually attempt to

2    provide some of the things that your Honor may have speculated

3    are not yet fully there to your satisfaction, seems very

4    logical.

5           I think this is all about truth and facts coming out.

6    And there are obviously going to be some discovery things to

7    discuss in a few minutes.  But this whole thing is just very

8    troubling to me.  It seems very straightforward, like we're

9    finally about to hear.

10          We've been asking since the bankruptcy case was filed,

11   What is the rationale for this?  Is there a setoff claim?

12   What's the basis?  Judge Glenn asked them to file a pleading

13   explaining what their setoff rights were.  There was no content

14   in the response that was filed.

15          And to simply give a couple more weeks to sort out

16   what's happening in California, what's happening on January

17   8th, give the Court a little bit more information, and then

18   have a hearing -- also the request, honestly, on December 20th

19   to say, Let's have oral argument next week, like, am I the only

20   person that knows that next week is Christmas and New Year's

21   and we've been at this for nine months?  And it just seems not

22   right in lots of ways.

23          So I think the requests in the letter are entirely

24   modest and unbelievably appropriate, especially given -- and

25   we're not going to get into for the first few months we had

1     only one law firm for the FDIC, and we thought they spoke for

2     the FDIC.  Then, all of a sudden, No, sorry, we don't represent

3     them.  There's someone new.  You have to start the clock again.

4            And I just think it's just time for just one correct

5     fair process.

6            THE COURT:  What do you propose then in terms of

7     briefing?

8            MR. HUEBNER:  So your Honor, what was in the letter,

9     the debtors are in the lead on this and I think it was

10    straightforward.  I think they set forth a ten-page brief and

11    then a reply following a ten-page brief not limited by subject

12    matter.  And then I think it was January 22nd -- I didn't write

13    the letter so I don't want to profess to have it memorized.  I

14    might turn the microphone back to Mr. Sacks to articulate what

15    we thought was reasonable.

16           THE COURT:  I believe it was December 29th for the

17    lead -- for the first brief, and then January 12th for

18    followup.  But I guess my question is are we talking about one

19    brief from the front of the table?

20           MR. SACKS:  Yes, your Honor, we are.  We were talking

21    about that.  And we were talking about we both, we and they, if

22    they want to supplement would file a brief with a supplement to

23    it, a reply a week later.  If they don't want to do it that

24    way, they want to have us go and then they reply, as long as

25    their reply is limited to what's in our opening brief, that

NCKVSVBC

1    would be fine as well.  Either way, not looking for a long

2    period of time whatsoever to deal with this.  We want to

3    reflect the -- at least have an opportunity to reflect what's

4    occurred over the course of the last four-plus months.

5              THE COURT:  Mr. Zensky.

6              MR. ZENSKY:  Yeah, I'm sorry, your Honor.

7          I think there were competing proposals on the dates in

8    the debtor and intervenors' proposal.  It was that we have

9    until the 15th to alert the Court and parties whether there

10   would be a request to amend; and if not, to file a supplemental

11   brief a week later.  The dates your Honor recited were the

12   dates proposed by our adversaries who, as Mr. Huebner said, all

13   of a sudden are in a hurry when they had slow-played every

14   aspect of this case from the beginning.

15             MR. GWYNNE:  Your Honor, Kurt Gwynne.

16         May I respond to the slow play issue?  Because I think

17   the table is being set improperly.  The debtor had months to

18   file his claims in the FDIC-R claims process, filed them with

19   three hours or so to go on the very last day.  So for the

20   intervenors to argue that the FDIC as receiver or FDIC

21   corporate has held up the process is ridiculous.  We have

22   statutory time we're allowed to take to determine claims.  But

23   they waited until the last day to file the proof of claim.  So

24   to take the position that they're in a hurry during this case

25   is incorrect.

1          We're not rushing the process.  It's already been

2     briefed months ago.  Before the motion to withdraw was heard in

3     this Court, those briefs were already pending.  So we just want

4     this to end.  And one of the reasons we want it to end, your

5     Honor, is they also want to take discovery.  They want to start

6     taking merits discovery in a case where jurisdiction is

7     lacking.  We believe for the reasons we set forth in the joint

8     letter that that's improper and that they shouldn't be able to

9     do that.  But that's all the more reason to just move along the

10    motion to dismiss process and have that resolved.

11         THE COURT:  What is the harm in waiting to see what

12    happens from the claim filed with the receiver?

13         MR. GWYNNE:  When they say the harm to do that, your

14    Honor, what's the harm for that, I mean, there's case law that

15    says that it's improper to stay a case if you don't have

16    jurisdiction.  So to stay it -- who knows when that case in the

17    Northern District of California and the subsequent one, whether

18    that's in the Northern District of California or whether that's

19    in the District of Columbia, how long it's going to be before

20    they are resolved, right.  They could take a year or more to

21    litigate and there could be appeals to the Ninth Circuit or the

22    district -- or the Columbia appellate court.  So we don't know

23    how long it's going to take for them to resolved.  It would be

24    improper to stay a case when jurisdiction is lacking.

25         THE COURT:  And I'm not talking about a stay anywhere

1    near that long.  What I'm talking about is their proposal that

2    the plaintiff notify defendants and the Court by January 15th

3    whether they plan to file an amended complaint after receiving

4    a determination on the claim.

5        MR. GWYNNE:  Oh, your Honor, by determination on the

6    claim, you mean whether FDIC-R1 and R2 make a determination by

7    January 8th.

8        Well, your Honor, I don't know that there's any harm,

9    other than wasting more time and money of the parties.  Because

10   for the reasons we said, amendment's futile.  I mean, all the

11   things that Mr. Huebner raised on behalf of the intervenors,

12   they have nothing to do with subject matter jurisdiction.  The

13   subject matter jurisdiction, those facts were set eight or nine

14   months ago when the complaint was filed.  So it's not an

15   emergency, your Honor, but it's a waste of time and a waste of

16   resources, both the Court's and the parties', to have the

17   debtor potentially file an amended complaint and start over

18   again with motions to dismiss.

19       THE COURT:  And is your view that the subsequent

20   exhaustion of the claims process that will have occurred by

21   January 8th would not cure any of the jurisdictional defects?

22       MR. GWYNNE:  Correct.  Because again, jurisdiction is

23   determined right at the time the complaint is filed.

24       But there are multiple jurisdictional defects.  One of

25   them was 1821(d)(6)(A), which says you have two courts to go

1    to.  And it doesn't include this one or the bankruptcy court,

2    right.  The Northern District of California and the district of

3    the District of Columbia.

4          But that's going to remain true regardless of what

5    they say in their brief.  That issue is there.  And nothing

6    they can say factually is going to change that issue, so why

7    are we waiting to decide it?

8          THE COURT:  Mr. Sacks.

9          MR. SACKS:  Your Honor, it's a question of efficiency

10   and proceeding.  As I mentioned, we assert in the action in

11   California cause of action number one.  It's nice that

12   Mr. Gwynne says it's all determined and that's their position.

13   If he's right, he will win on the issue of jurisdiction.  But

14   he may not be correct.  And it may not be correct for the

15   FDIC-C.

16         So the first cause of action there is to actually

17   determine that very issue.  There's no reason for two courts to

18   be deciding the same thing.  It may well be that after we see

19   what the FDIC-R does — and I think you know what they're going

20   to do based on what Mr. Gwynne has been saying, it's all hurry

21   up and wait — we may decide that since everything can be heard

22   and there's no opposition to jurisdiction, we ought to just go

23   forward, have that heard in the Northern District of

24   California, let that court decide whether it's required to do

25   it from a claims perspective under 1821 or not.  If they rule

1   that that's correct, then we'll proceed in that case as

2   everyone agrees they have the jurisdiction to hear it or not,

3   and we stay this case.

4           But if the Court determines — this Court or that court

5   — that, in fact, the claims process was not required, whether

6   it be for the FDIC-C -- FDIC-C or the FDIC-R, and they could

7   have -- you could reach or that court could reach different

8   determinations, then our case here is a bankruptcy case that

9   was properly brought against that defendant in bankruptcy court

10  and we should be permitted to proceed in bankruptcy court.

11          All we're saying is let's see what happens in a week

12  and a half or two and a half weeks, whatever the 8th is.  It's

13  a Monday.  We'll make a judgment, we said, within a week

14  thereafter as to whether we want a stay, whether we want to

15  proceed, whether we want to amend, and let's go from there.

16  We're talking about a minimal period of time.  And there are

17  unresolved factual circumstances at the moment that make that a

18  sensible way to proceed.  And it may be that your Honor is not

19  going to have to do anything further in this case.  I just

20  don't know until we see what happens.

21          MR. FINESTONE:  Your Honor, may I?

22          THE COURT:  Go ahead.

23          MR. FINESTONE:  Thank you, your Honor.

24          I don't know what -- first of all, let me just

25  clarify, the FDIC was not asking the Court to schedule a

1    hearing on the motions to dismiss over Christmas; that we were

2    just expressing the point that we should have that hearing

3    scheduled.  Late January is actually fine with us, your Honor.

4          There was nothing in that letter from my friends at

5    the first table that explained why what they -- what may happen

6    with respect to the FDIC-R's process will impact the propriety

7    from a subject matter jurisdiction of this action pending

8    before your Honor.  It may mean they have to file another suit

9    in D.C., it may mean that they modify the suit in Northern

10   District of California, but it doesn't have any impact not

11   explained in the letter or explained today as to the propriety

12   of this pending action with respect to subject matter

13   jurisdiction.

14         So they can do what they want; they can file a motion

15   to amend and explain it to the Court and to us then.  But for

16   now, there's been no articulation of anything that impacts this

17   current action, and we would just ask to have it -- end of

18   January is fine.  Let's deal with the motions to dismiss.  And

19   they can do what they are not willing to fully explain what

20   they are going to do in the Northern District of California or

21   D.C., but it doesn't impact the docket that's been opened up

22   first before Judge Glenn and now before your Honor.  That

23   action should be dismissed.

24         They seem to want to use this action as some sort of

25   ancillary platform for discovery in aid of another action in

1   another U.S. docket, and that's obviously inappropriate,

2   especially with the subject matter jurisdiction concerns.  So

3   threshold issue timing doesn't matter.  We'd ask your Honor to

4   consider our motions.

5          THE COURT:  Thank you.

6          Mr. Sacks, in terms of the possibility of an amended

7   complaint, what is your response to the point that jurisdiction

8   is determined at the time the complaint is filed and there's

9   nothing that could really address in an amended complaint the

10  jurisdictional flaws?

11         MR. SACKS:  I don't disagree with the principle that

12  jurisdiction is determined as of the date of filing.  But for

13  example, there is a presumption here that there's a claims

14  process that we were required -- let's take the FDIC-C for a

15  moment, that there was a claims process that we were required

16  to follow.  That may be something you can determine in a

17  vacuum, but there may be facts that are relevant to whether

18  there was a claims process at all that we were required to

19  follow.

20         So there are facts that have been revealed that bear

21  on whether there was at the time of the filing of this

22  complaint a claims process.  And those facts are things that we

23  should be able to identify and plead.  That's an example of how

24  that would affect the jurisdictional motion at issue here.  I

25  don't believe there will be additional facts as they relate to

NCKVSVBC

the FDIC-R unless something comes up in the manner in which
they purport to adjudicate the claim itself.

I would say as well, your Honor, that one thing that
has become more apparent as time has gone on here is that the
way in which our deposits were handled is not that those were
deposits at the receivership; they were deposits that were
transferred to a different institution for which the FDIC-R2 is
now the receiver but was not a receiver at the time our
deposits were taken away.  That too is something that we would
like a chance to address to your Honor because it bears upon
the issue of jurisdiction in this particular case for these
claims.

But again, I don't believe that we're going to ask two
courts to resolve this issue.  And if, in fact, when we see the
FDIC-R's determination and see what they do and how they do
what they're going to do, and it makes sense for that to be
combined, we will amend our complaint in California.  Nobody
will complain that California is going to hear this.  They will
make the same argument that we're required to be in California,
but that will have to -- that's going to get adjudicated
somewhere at some point in time.  But there's no reason for us
to have two things.

I think, again, there are just a few things that are
open at the moment and we ought to resolve those, get those
facts before we decide what's going to proceed where so we

1     don't have dueling decisions on both sides of the country.

2             THE COURT:  Since this is a jurisdictional motion

3     though, and not a 12(b)(6) motion, I'm not limited to the

4     complaint.  Why would you need to allege those additional facts

5     in an amended complaint for them to be considered?

6             MR. SACKS:  They may not have to be in an amended

7     complaint; they could be in what we're referring to as the

8     supplemental briefing.  I could point you to those facts as

9     well, your Honor, on a 12(b)(2) -- is it a 12(b)(2) motion?  I

10     guess it is, technically.  But yeah, you can refer to those and

11     you could also say there needs to be some discovery on that

12     issue, I agree.

13             MR. ZENSKY:  Just so the record is clear, your Honor,

14     there are 12(b)(6) motions that are before you, in addition to

15     their jurisdictional motion.  So certainly that's something

16     that an amendment could relate to.

17             THE COURT:  But it seems like what I'm hearing is what

18     will be included in an amended complaint would be mainly

19     relevant to the jurisdictional issue, or am I wrong about that?

20     Would it also be relevant to the 12(b)(6) part?

21             MR. SACKS:  Probably both.  But initially I've been

22     focused on the jurisdictional issues at the moment.  And

23     certainly as it relates to the FDIC-C, it would relate to that.

24             THE COURT:  Mr. Zensky.

25             MR. ZENSKY:  I'm sorry, your Honor.

NCKVSVBC

1          It just seems not appropriate to decide today whether

2     an amendment could properly lie or a supplemental pleading.

3     The standards are different.  All the debtor and the

4     intervenors are asking for is to kick that issue three weeks

5     down the road.  We may be in full agreement with our

6     adversaries about what claims should proceed where — possibly

7     some here, some in California, all in California, or none in

8     California.  And all that the debtor and the intervenors are

9     saying today is let's report back whether we see what the

10    FDIC-R does.

11          THE COURT:  Go ahead.

12          MR. ZENSKY:  I'm sorry.

13          The other thing, just to sort of level set the -- my

14    friends at the second table seem to feel that they have their

15    wind at their back after the decision on withdrawing the

16    reference.  And I state the obvious when I say I know the Court

17    did not intend or rule on the merits of anything that's

18    happening.  The Court was not required to consider the

19    bankruptcy statutes that say the opposite of what the FIRREA

20    provisions say.  The Court was required to see whether there is

21    substantial amount of nonfederal -- nonbankruptcy federal law,

22    not what the other side of the equation is.  So I know that

23    this Court has not considered the merits yet.  And if we decide

24    to proceed here, everything is an open issue as far as we see.

25          THE COURT:  So I do think the plaintiff's proposal

1    here makes sense.  I will require a status letter from the

2    plaintiff by January 15th, 2024, letting me know how the

3    plaintiff proposes proceeding from their perspective.  I do

4    though think it's important that this case moves at an

5    appropriate speed for many reasons.

6          So what will follow January 15th is that the motion to

7    dismiss will remain pending here and I need to decide it.  I

8    will allow for supplemental briefing, a ten-page brief.

9          I hesitate to ask this but did you have in mind

10   single-spaced or double-spaced?

11         MR. SACKS:  Double-spaced, your Honor.

12         THE COURT:  So that's what I was hoping too and

13   thinking too.

14         MR. SACKS:  Eight point font, of course, your Honor.

15         THE COURT:  Yes.  I'll get new glasses for that.

16         So January 22nd for the plaintiffs and plaintiff

17   intervenors, plaintiff and plaintiff intervenors.  January 29th

18   for the defendants.

19         I also think it would make sense to have on the

20   calendar a date for an oral argument.  I would propose February

21   8th at 10 a.m., but let me see if that -- given the many people

22   here and the calendars, if that works.  I'm pretty flexible the

23   week of February 5th, because I have a trial.  I had it blocked

24   out for a trial that looks like it's going away, so I have a

25   bit of flexibility there.  But February 8th at 10, does that

 1    work, Mr. Sacks, for you?

 2            MR. SACKS:  I don't have my calendar but we'll make it

 3    work, your Honor.

 4            THE COURT:  And does anyone think that date does not

 5    work?

 6            MR. FINESTONE:  Works for FDIC corporate, your Honor.

 7            THE COURT:  Great.  So we'll do that February 8th at

 8    10 a.m., assuming that there is still a motion to resolve.

 9            With respect to discovery, it appears to me that the

10    only remaining issue is request eight, the request seeking

11    documents created by FDIC-C or provided to FDIC-C by Treasury

12    or the Federal Reserve that deal with the Secretary's

13    invocation and determination under the systemic risk exception.

14    Am I right that that's the only issue that really remains here?

15            MR. FINESTONE:  That's right, your Honor.

16            THE COURT:  Okay.  Can you, Mr. Finestone, give me a

17    little bit of a -- give more flavor of what volume of

18    discovery -- what discovery has been produced so far.

19            MR. FINESTONE:  So we satisfied all of the other

20    requests that have been propounded upon us.  And if I could

21    just touch on process for a moment, your Honor.

22            The other side is right that Judge Glenn indicated

23    that he wasn't going to stay discovery.  And the other side is

24    right that we did argue to Judge Glenn that given the serious

25    threshold jurisdictional issues in the case, discovery should

1    be stayed.

2            What I will say — and I don't think I'll get

3    disagreement — is he declined to stay discovery not based upon

4    a substantive review of the jurisdictional arguments, but

5    because it was his default chambers' rule that he's not going

6    to rule really on discovery until he has to.

7            And so our request that threshold jurisdictional

8    issues be considered before the FDIC-C, the FDIC-R, and the

9    FDIC-R2, have to incur the expense of additional discovery was

10   short of shelved more than rejected.  So we make the same

11   request of your Honor, and we make it with an eye towards the

12   fact that we have — even though no scheduling order was entered

13   in this action because now it's all one action, your Honor, we

14   did satisfy all of those requests other than eight.

15           The reason eight was taking a longer time is not feet

16   dragging, as lawyers feel comfortable to say without any real

17   foundation, your Honor, it's because we have -- these are

18   really complex privilege reviews.  There's a deliberative

19   process privilege that the FDIC must consider.  It's the first

20   time I've gone through something like this before.  There's a

21   bank examination privilege.  There's, of course, normal

22   attorney work product and attorney-client communication

23   privilege.  All of that was extremely expensive.  And we felt

24   that given that this action was wrongly commenced, should not

25   be incurred now, but should be under the auspices of the

1    Northern District of California.  And so that eight has not

2    been satisfied, your Honor, the privilege review, the

3    multidimensional privilege review is pending, and we would ask

4    your Honor to put that on freeze at least through the end of

5    January.

6          THE COURT:  Wouldn't these be materials that would

7    need to be produced in -- either in this case or in the case in

8    California?  Putting aside possibly any litigation as to

9    whether a privilege is being properly invoked, isn't this going

10   to get produced in one venue or the other?

11         MR. FINESTONE:  It's actually not, your Honor, because

12   the true essence of this action, of the action challenging the

13   determination that we issued with respect to the deposits, is

14   that it's a review of -- it's a review of the decision of an

15   administrative agency of the U.S. government.  That's an APA

16   review.  And the record in those actions — I don't know if your

17   Honor has presided over one — is limited to the analyses and

18   the materials that the FDIC actually considered.

19         So they'll get that, but -- and that may be, in fact,

20   why they ignored Title 12 and filed the action where they did.

21   But the discovery they are looking for they are probably not

22   going to get.  And that was actually my comment earlier about

23   seeking to use the docket that they've opened up in the

24   Southern District of New York as a discovery platform in aid of

25   another U.S. docket.  It's inappropriate for that reason as

1     well, your Honor.

2              MR. SACKS:  Your Honor, I couldn't disagree more

3     fundamentally with Mr. Finestone.  I'm sure that won't shock

4     you.

5              But these requests have been outstanding for four

6     months plus.  They are entirely going to be requests in

7     California.  The idea that they take the position that they

8     have unbridled discretion to do whatever the FDIC wants,

9     regardless of what the Treasury Secretary did, is at the core

10    of this.  It's going to be at the core of this case, if we're

11    here; it will be at the core of a case in California as to

12    whether they were arbitrary and capricious.

13             The question is whether the Treasury Secretary, from

14    our perspective, dictated that you will guarantee all uninsured

15    deposits.  They say they don't have to follow that; we say they

16    do.  What was said to them and what they said to the Secretary

17    of the Treasury is at the core of that.  There may be privilege

18    issues as to some of it, there may not.  But that review is

19    going to have to be done no matter where these claims are

20    litigated, one.

21             Two, this has been outstanding, as I said, for at

22    least four months, longer if you consider the fact that we

23    served them as Rule 2004 requests before and then they got

24    pushed off.  And Judge Glenn said produce this stuff.  We've

25    already been through it.  And they've just been doing it

1    slowly.

2             My partner Adam Paris had a conversation with

3    Mr. Finestone who said they would, even if the reference was

4    withdrawn, continue to respond to the discovery they were

5    required to respond to.  I appreciate they want to renew the

6    request, but this is a single request, it's narrow, it's at the

7    core of this.

8             We have not served broad-based discovery.  We're not

9    taking depositions of anyone at this point.  It's a review

10   that's going to have to be done.  And what we'll get is

11   whether, we're here or elsewhere, they're going to say I need

12   another six months.  And they are the ones who -- it is our

13   money.  I appreciate that they've tried to portray this as

14   we're delaying for -- at least we want a few weeks.  But we

15   want the $1.9 billion, not them.  So we want to move

16   expeditiously.  They should continue and finish their review

17   and response to that one outstanding request.

18            MR. FINESTONE:  Your Honor, briefly.

19            I'm not going to respond and allow this to devolve

20   into what lawyers said to each other.  I'm a little

21   disappointed that that was said.  It's not true.

22            But more importantly, both with respect to the motion

23   to withdraw the reference that the Court considered, both with

24   respect to all of the motions to dismiss on the pleadings, your

25   Honor is going to take all of the factual allegations that they

1    have asserted in their complaint as true.  The legal conclusion

2    about whether or not any one of those allegations that they

3    made is that the Secretary of Treasury directed the FDIC to

4    effectuate the systemic risk exception in a certain way, we're

5    stuck with that on the pleadings.  He doesn't need discovery

6    for it because we're forced to credit it.

7          The legal conclusion whether that matters or not, your

8    Honor is obviously capable of concluding, just as the Northern

9    District of California is capable of concluding, there's really

10   no need for this discovery especially given serious subject

11   matter jurisdiction issues at this stage in the case.  And if

12   your Honor decides that it may be us that needs discovery on

13   this to test this factual assertion, but we're stuck with it

14   for now.  I don't really understand why they want discovery to

15   test and blow up their own incorrect factual allegations that

16   we're stuck with.  It makes no sense to me.

17          THE COURT:  Mr. Huebner.

18          MR. HUEBNER:  Yes, your Honor.  A couple of things,

19   because I've actually been in it from the first day of this

20   case, which is not true of everyone in the room here.

21          Number one, just to understand from our perspective

22   how serious the costs of delay are here, just to do simple

23   arithmetic, this is -- we'll round up to $2 billion.  At ten

24   percent, that's $200 million a year that we are currently

25   losing, which is hundreds of thousands of dollars every day

1    that this proceeding goes on.  And you can pick a different

2    interest rate, it's still hundreds of thousands.  So to say

3    that we're not in a hurry here is obviously just sort of not

4    worth responding to.

5          Number two, what Judge Glenn actually did — and the

6    transcripts are very clear on this — he denied the request to

7    stay discovery; and then on the motions to dismiss, he said:  I

8    have read every single pleading and I have decided to wait for

9    Judge Cronan to rule on the motion to withdraw.

10         He absolutely did not say:  And I'm going to stay

11   discovery therefore.

12         And it is not correct, as was just told to you, that

13   he never thought about any of this and that was just by

14   default, that he specifically said — reversing what he had said

15   a few weeks prior — that it was all systems go unless

16   (indiscernible) withdrew the reference, that he was sort of

17   splitting the decision as it were, and that he was not

18   proceeding with, I think it was, the -- whatever it was,

19   October 19th hearing on the motion to dismiss, but most

20   definitely did not stop discovery.  That was a ruling of the

21   federal court that I think deserves respect.  I think it

22   deserves it for very good reasons.

23         One, as your Honor already noted, we're going to need

24   this for California; we need this no matter where it's

25   adjudicated.  And if you actually read page 8 of the letter,

1    just as a citizen, it's pretty surprising.

2            What we know from the last hearing — where I was not

3    intervening, so I couldn't say a word — you heard a fair amount

4    of:  This was just a press release.  This was just a website.

5    They had disclaimers.  Read the fine print on page 29.

6            What your Honor knows, because it's in your opinion,

7    it's very important, thank God it was there, is that the

8    officials of every relevant federal agency testified before

9    Congress again and again and again, and said flatly, the United

10   States of America took action on that Sunday, and all

11   depositors will have full access to their money.  That wasn't a

12   press release.  That was testimony before the Congress of the

13   United States by Mr. Hsu, Mr. Barr, Mr. Gruenberg, Secretary

14   Yellen, everyone you could want, right.

15           Now they're saying essentially, Ha ha, we didn't mean

16   it.  You can't relay on it.  What they actually told you at the

17   last hearing — and the transcript is pretty shocking — is that

18   was just said to calm the markets; that's not really a bankable

19   promise.  We'll be talking a lot about that when it goes on,

20   but to suffice it, when you check the transcript from today,

21   your Honor, from about 20 minutes ago, you heard Mr. Gwynne

22   say, "They want to start taking discovery."

23           And that actually reveals a pretty fundamental truth

24   of what's not going right here.  We started taking discovery in

25   April.  But the things that are important, which is, isn't it

1    true that the United States of America promised the country and

2    all these federal officials promised Congress that they were

3    going to pay us is real.  We deserve the few documents from a

4    very cabined time period.  And when you read this letter, your

5    Honor, they talk about burden.  This is like March 8th to March

6    13th or whatever it was when these decisions were made.  And I

7    think we all know what it's going to reveal; it's going to

8    reveal what they testify to again and again, which is we

9    promise to make all depositors' money available starting Monday

10   morning.  And they did it for everyone in the world except for

11   us.  And it's not right.

12          It's one request on one set of issues in a narrow time

13   period.  And I think that there's a very good reason why we've

14   been asking for months and months.  And if you read page 8,

15   your Honor, what it says is all they've sent us is nothing.

16   The FDIC-C has produced no internal documents of any kind,

17   zero, none, on this core issue.  And I think there's a very

18   good reason they are desperately trying to get you to overrule

19   Judge Glenn and turn off discovery.

20          MR. GWYNNE:  Your Honor, Kurt Gwynne.

21          We don't have a pending discovery request.

22          First of all, Mr. Huebner is starting to, I think,

23   kind of argue the motion to dismiss or the merits.  But this is

24   the first danger of a potentially inconsistent judgment.  We

25   may face the same issues with discovery in California,

1  asserting the same privileges.  So your Honor may reach a

2  conclusion that could potentially differ from the judge in

3  California.  It's not our issue today, but we would ask your

4  Honor not to decide this discovery issue and let that issue be

5  decided by whatever court ultimately presides over the

6  litigation.

7        THE COURT:  I must say that I do agree with what

8  Mr. Gwynne just said.  I am reluctant to rule on privilege

9  issues here that may potentially arise around in other courts

10  before I assure myself that I have jurisdiction.

11        MR. SACKS:  We're not asking for any rulings on

12  privilege.  We're only asking for the documents to be produced

13  that they are not claiming privilege on.  If they claim

14  privilege, by that point in time we'll know whether we're here

15  or elsewhere.  So there is no -- we're not asking for any

16  ruling, quite frankly.  We just want to do what Judge Glenn

17  said.  He said respond to these requests, don't respond to that

18  request.  This is the one outstanding one.

19        THE COURT:  Can you address the burden here?  Like

20  what volume are we talking about here?  It's not a long time

21  frame at all.

22        MR. FINESTONE:  Your Honor, it's a lot of documents.

23  I'll try to get you a cite in terms of quantity.  When I walk

24  over to my client, I just want to say, high-level observation,

25  this table is asking your Honor to shelve the motions to

1    dismiss on subject matter jurisdiction, but go forward on

2    discovery.  It's really a double-edged whipsaw.  I'm not sure

3    of the right legal analogy that lawyers like me like to use,

4    but that's telling.  Let's avoid the statute that says this

5    action shouldn't be pending, but let's use it for discovery.

6    What are we asking for?  Let's deal with the threshold issue.

7           One second, your Honor.

8           Your Honor, it's thousands of documents.  And I don't

9    really know what else to say other than that.  There are search

10   terms to negotiate, there are -- and then three-prong privilege

11   analyses to take.  And we feel that we've got a powerful motion

12   that -- counsel says we think we have our wind -- we think your

13   Honor put wind in our sales.  With respect, your Honor, I don't

14   think your Honor put wind in our sales.  Congress did that a

15   long time ago with Title 12.  And they refuse to reckon with

16   Congress, and they want to continue to push us on discovery.

17   That should take place in the right court.

18          THE COURT:  Let me also ask if anybody wishes to brief

19   the discovery issue any further?  Obviously I have your

20   arguments and also the joint letter.

21          MR. SACKS:  I don't think so, your Honor.

22          I would point out simply that they complain about

23   burden, and Mr. Finestone didn't even know how much there was

24   when you asked that question of him.  It's a discrete thing.

25   It's already been ruled on by Judge Glenn.  Nothing has

1    changed. We're not delaying this case; we're trying to deal

2    with it sensibly over the course of a couple of weeks. You're

3    going to have a decision by then. Nobody is asking you to rule

4    on the issue of whether something is or is not a privilege

5    issue.

6            Just don't stop the review that's going on because

7    these documents have to be produced anyway. And to delay it

8    again, and we'll have another four months. These have been

9    outstanding for four months, your Honor.

10           But no, we don't need to brief it any further.

11           THE COURT: Haven't these documents been subject to

12   review for months now?

13           MR. FINESTONE: No, I don't think it's been months at

14   all. In fact, they commenced -- they commenced the action in

15   late July, I believe, your Honor. And we have been producing

16   documents, even though we don't think it's appropriate.

17           I suspect that this Court respects the doctrine of law

18   of the case, it's my sense. If it's material to the Court,

19   it's been repeatedly told to your Honor that Judge Glenn ruled

20   on this issue. It's not the case. Judge Glenn just said

21   discovery goes forward. There was no request for discovery

22   stayed or anything like that. So that's material. I would

23   like to clear up that record.

24           Your Honor, we were conducting the process in view of

25   that ruling. And all we're saying, your Honor, really is that

1    they're saying there's a chance this action doesn't go forward

2    in mid January.  We're saying if it does go forward, we believe

3    it's going to be dismissed at the end of January.  That's the

4    time period, one month, your Honor.  If we're wrong and this

5    action stays before your Honor, I suspect your Honor is not

6    staying discovery for the pendency of the action.  I think we

7    understand that.

8            MR. HUEBNER:  Your Honor, to be precise about the

9    dates, we're going to give them the benefit of the doubt in the

10   biggest possible way and just pretend that the first few months

11   of 2004 footsie.  And we have a new lawyer and you have to

12   re-serve everything.  Didn't happen.  We'll just direct you to

13   the exhibit, to the letter to you, Plaintiff and Intervenor

14   Exhibit No. 2, which is the first request dated August 16th,

15   2023.  I think that is four months and four days, to be

16   precise, so slightly over four months.

17           And again, that's giving them the benefit of the doubt

18   in the biggest way.  We're not going to burden you with, We

19   thought Mr. Gwynne was the FDIC's counsel and we waited weeks

20   and weeks and weeks and weeks for answers, and then were told,

21   Actually, there's someone brand-new; you need to start

22   everything all over again.

23           As I said, the core documents here, this all started

24   on March 8th.  And on Sunday, March whatever it was, 12th or

25   13th, they made the determination and made a very critical

1    announcement at 4:52 p.m. to invoke the exception.

2              I mean, you've been dealing with cases that have

3    millions of documents, tens of millions of documents, hundreds

4    of thousands.  After going to get you the answer, he came back

5    and said, Your Honor, it's thousands.  I mean, we can review

6    thousands in two days.

7              MR. GWYNNE:  Your Honor, Kurt Gwynne.

8              Just for the record, again, Mr. Huebner just implied

9    that we had told him we represented FDIC corporate.  We never

10   did.  Our entry of appearance in the bankruptcy case from day

11   one said we represented FDIC as receiver.  So if Mr. Huebner

12   wants to testify about facts, he should take the stand, but

13   that's a misrepresentation.

14             MR. HUEBNER:  Let me be clear, your Honor, because

15   it's important they do know this.  I didn't say that.  I said

16   we believe we were dealing with the relevant counsel for the

17   FDIC, and then we're told actually, that's not me, I'm just R;

18   there's going to be someone brand-new you didn't know about

19   coming in.

20             I've known Mr. Gwynne for 25 years.  I'm going to go

21   hug him the minute this is over.  I would never, ever suggest —

22   nor did I say — that he misrepresented anything.  We just

23   thought that was who we were dealing with and then we got R2

24   and then we got C, and now we've got two really full tables and

25   lots of taxpayer money being spent.

NCKVSVBC

1          THE COURT:  I am going to hold off ordering completion

2     of this discovery request until I receive the letter on January

3     15th from the plaintiff.  I want to figure out where this case

4     is going to be proceeding.

5          Now, I will say though that I think Mr. Huebner is

6     right that this doesn't sound like a huge volume of materials.

7     And if I do not stay discovery pending resolution of the motion

8     to dismiss, I most likely will set a pretty short timeline for

9     the production of responsive materials that are not determined

10    to be privileged, but I'm not going to order that just yet.  I

11    want to see what I get from Mr. Sacks on January 15th.

12         Are there any other issues that we need to then

13    address today?  Anything further from the plaintiff's table?

14         MR. SACKS:  No, your Honor.

15         THE COURT:  And from the FDIC?

16         MR. FINESTONE:  Nothing from FDIC corporate, your

17    Honor.  Thank you.

18         THE COURT:  Mr. Gwynne?

19         MR. GWYNNE:  Nothing from FDIC-R1, your Honor.

20         THE COURT:  Thank you all.  I hope everyone stays

21    well.  Have good holidays.  I'm sorry we won't be having oral

22    argument the day after Christmas, but best wishes for the new

23    year and I'll see, I'm sure, everyone soon enough.

24                         *    *    *

25