Robert A. Sacks (SBN 150146)
(sacksr@sullcrom.com)
Adam S. Paris (SBN 190693)
(parisa@sullcrom.com)
Diane L. McGimsey (SBN 234953)
(mcgimseyd@sullcrom.com)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:    (310) 712-6600
Facsimile:     (310) 712-8800

*Attorneys for Plaintiff SVB Financial Group*

Emily Kapur (Bar No. 306724)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone (*pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

Eric C. Lyttle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

*Counsel to the Federal Deposit Insurance
Corporation (in its corporate capacity)*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>                              Plaintiff,<br><br>          v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>                              Defendant. | Case No. 5:23-cv-06543-BLF<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>The Hon. Beth L. Freeman |

Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California, and the Court's Standing Order, Plaintiff SVB Financial Group ("SVBFG") and Defendant Federal Deposit Insurance Corporation ("FDIC"), in its corporate capacity ("FDIC-C," and collectively with SVBFG, the "Parties") jointly submit this Joint Case Management Statement in connection with the June 13, 2024 case management conference.[1]

**1.    Jurisdiction and Service.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**2.    Facts.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**3.    Legal Issues.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement, except FDIC-C notes that SVBFG withdrew its FOIA claim (Count VIII) in the opposition it filed on May 20, 2024, to FDIC-C's motion to dismiss, *see* Dkt. No. 55 at 25, so that is no longer a legal issue in this case.

**4.    Motions**

   **a.    Prior Motions.**  On January 12, 2024, FDIC-C filed a Motion for Extension of Time to Answer or Otherwise Respond to SVBFG's FOIA Claim (ECF No. 9), which the Court granted on January 17, 2024 (ECF No. 11). On February 23, 2024, FDIC-C filed a Motion for Extension of Deadlines under Civil Local Rule 16-5 (ECF No. 18), which the Court granted in part and denied in part on February 29, 2024 (ECF No. 22). On March 4, 2024, FDIC-C filed a Motion to Dismiss (ECF No. 25), which seeks to dismiss Counts I, II, III, IV, V, and VII of SVBFG's complaint. On May 20, 2024, SVBFG filed its opposition to the Motion to Dismiss (ECF No. 55). On March 6, 2024, the parties filed a Joint Stipulation and [Proposed] Order Setting Briefing Schedule on Defendant's Motion to Dismiss (ECF No. 26), which the Court granted the same day (ECF No. 27). On March 14, 2024, SVBFG filed an Administrative Motion to Consider Whether Cases Should be Related (ECF No. 29), which seeks to relate the FDIC-R

---

[1]    To avoid unnecessary duplication, except where as noted above, the Parties incorporate by reference their respective positions set out in the March 14, 2024 Joint Case Management Statement and Rule 26(f) Report (ECF No. 31) (the "March 14, 2024 Case Management Statement"). The Parties address herein only new matters or developments since the March 21, 2024 case management conference. Unless otherwise defined herein, all capitalized terms have the same meaning set forth in the March 14, 2024 Case Management Statement.

Action to this action, which the Court granted on March 21, 2024 (ECF No. 38). On March 27, 2024, the Parties filed a Stipulated Protective Order for the Administrative Record (ECF No. 40), which the Court so-ordered on the same day (ECF No. 41). On April 2, 2024, FDIC-C filed a Motion to Stay Discovery (ECF No. 45), which SVBFG opposed (ECF No. 50). On April 29, 2024, the Court denied the Motion to Stay Discovery (ECF No. 46).

    **b.**    **Anticipated Motions.** The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement. FDIC-C also anticipates seeking a protective order governing the confidentiality of documents produced in discovery.

**5.**    **Amendment of Pleadings.** The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**6.**    **Evidence Preservation.** The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**7.**    **Disclosures.**

    **a.**    **SVBFG's Position.**

    ***SVBFG's Initial Disclosures.*** Following the Court's April 29, 2024 order denying the FDIC-C's Motion to Stay Discovery (ECF No. 46), pursuant to the Parties' agreement, on May 17, 2024 SVBFG served its initial disclosures on FDIC-C. (SVBFG's initial disclosures are attached hereto as Plaintiff's Exhibit A.) SVBFG identified 50 non-expert individuals who may have discoverable information that SVFBG may use to support its claims, other than for impeachment purposes. SVBFG also identified the following categories of persons, subject to identifying them with specificity through discovery: (1) the directors, officers and employees of the FDIC-C who were involved with the application of systemic risk exception declared by the Secretary of the Treasury with respect to Silicon Valley Bank ("SVB"); (2) employees or agents of FDIC-C who ordered, advised, implemented or were otherwise involved in the holds placed on SVBFG's accounts at Silicon Valley Bridge Bank, N.A. ("Bridge Bank") and/or the seizure of SVBFG's account funds; (3) employees or agents of FDIC-C who processed, reviewed, adjudicated or were otherwise involved with the FDIC's deposit claims processes related to the closure of SVB, including but not limited to the persons involved with the decision to deny SVBFG's "deposit claim"; (4) the directors and officers of Bridge Bank who coordinated with FDIC-C and/or the

Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank of Santa Clara, California and Silicon Valley Bridge Bank, N.A. ("FDIC-R") with respect to actions taken with respect to SVBFG's deposit accounts; (5) employees or agents of Bridge Bank who ordered, advised, implemented, or were otherwise involved in the holds placed on SVBFG's accounts at Bridge Bank; (6) the directors, officers and employees of the Board of Governors of the Federal Reserve System who were involved with the recommendation that the Secretary of the Treasury invoke a systemic risk exception with respect to SVB; and (7) all persons named by FDIC-C in this action in their initial disclosures.

SVBFG identified the following categories of documents or things in its possession, custody or control that it may use to support its claims, other than solely for impeachment purposes:

1. Documents and communications concerning the Secretary of the Treasury's invocation of the systemic risk exception.
2. Documents and communications concerning the FDIC's application of the systemic risk exception with respect to SVB.
3. Documents and communications concerning SVBFG's accounts at SVB and Bridge Bank.
4. Documents and communications concerning the transfer of SVB's assets to First Citizens Bank & Trust Company.
5. Documents and communications concerning the resolution of deposit claims by depositors of SVB.
6. Communications between FDIC-C and FDIC-R concerning SVBFG's deposits.
7. Policies and procedures with respect to claims for payment of insured deposits.
8. Policies and procedures with respect to claims for payment of uninsured deposits.
9. Documents and communications concerning Bridge Bank's efforts to reverse SVBFG's lawfully initiated wire transactions.
10. Documents and communications concerning FDIC-C's treatment of SVBFG's demand for payment of its deposit funds as a claim for insured deposits.
11. Documents and communications demonstrating SVBFG's reliance on pronouncements by the FDIC that its funds were guaranteed.

SVBFG also set out its computation of damages, which comprises the approximately $1,933,805,708.13 in SVBFG's deposit accounts that FDIC-C has unlawfully withheld from SVBFG, plus accumulated interest in an amount to be determined at trial.

Finally, SVBFG disclosed that there are no applicable insurance agreements pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv).

***FDIC-C's Inadequate and Improper Initial Disclosures.*** SVBFG believes that FDIC-C has failed to fully and timely comply with the initial disclosure requirements under Fed. R. Civ. P. 26(a). FDIC-C initially refused to provide Rule 26(a) initial disclosures on the basis of its assertion that discovery should be stayed pending resolution of its Motion to Dismiss. Following this Court's order denying FDIC-C's motion to stay discovery pending resolution of its Motion to Dismiss, FDIC-C on May 17, 2024 served initial disclosures that failed to identify (1) a *single* individual likely to have discoverable information that FDIC-C may use to support its defenses; or (2) any categories of documents in FDIC-C's possession or control that it may use to support its defenses — apart from its 624-page administrative record. (FDIC-C's May 17, 2024 initial disclosures are attached hereto as Plaintiff's Exhibit B.) At the same time it refused to provide proper Rule 26(a) initial disclosures, FDIC-C purported to "reserve[] the right to supplement or amend these disclosures under Rule 26(e)."

Given the inadequacy of FDIC-C's disclosures, on May 20, 2024 SVBFG asked that FDIC-C either (1) serve amended initial disclosures that comply with Rule 26(a) or (2) stipulate that FDIC-C would not offer any witnesses to provide evidence in support of any of its defenses in this action or any documents, beyond those it has identified previously as the administrative record, pursuant to Fed. R. Civ. P. 37(c)(1). *See id*. ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). In the alternative, SVBFG informed FDIC-C that it would ask the Court to compel proper Fed. R. Civ. P. 26(a) disclosures and award other appropriate sanctions for FDIC-C's failure to comply with its obligations under Rule 26(a). On May 23, 2024 the parties met and conferred regarding FDIC-C's inadequate initial disclosures, after which FDIC-C agreed to serve supplemental initial disclosures by May 29, 2024. (FDIC-C's May 29, 2024 supplemental initial disclosures are attached hereto as Plaintiff's Exhibit C.)

The FDIC-C's supplemental initial disclosures still are *not* compliant with Rule 26(a). It identifies just two individuals likely to have discoverable information that the FDIC may use to support its defenses — Luis A. Mayorga (Senior Complex Financial Institution Resolution Specialist at FDIC-R1) and Ryan Tetrick (Deputy Director for Resolution Readiness at FDIC-C). And FDIC-C still fails to identify *any* categories of documents in FDIC-C's possession or control that it may use to support its defenses, apart from its 624-page administrative record. These initial disclosures are facially incomplete given that SVBFG alleges in its Complaint, among other things, that FDIC-C either itself wrongfully denied SVBFG access to its $1.93 billion in Account Funds or permitted, enabled, or authorized the FDIC-R1 and/or the FDIC-R2 to do so. FDIC-C disputes and seeks to defend against these allegations — and, indeed, does so in its sections of this case management statement — yet refuses to identify the persons or categories of documents that it will use to support this defense.

FDIC-C's further contention that SVBFG's allegations somehow are inadequate because they are made on information and belief (an argument made nowhere in FDIC-C's pending Motion to Dismiss) or that FDIC-C somehow may unilaterally decide that it has no duty to make full initial disclosures under Rule 26(a) as to those allegations based on its unasserted (and incorrect) legal arguments is false on both counts. Information and belief pleading is expressly allowed under Fed. R. Civ. P. 8. *See Blantz* v. *California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 n.6 (9th Cir. 2013) ("Blantz alleges, on information and belief, that the poor recommendation she received included 'unwarranted and false information concerning her reputation for honesty and/or morality,' which we will accept as true for the purpose of the motions to dismiss."); *Waldo* v. *Eli Lilly & Co.*, No. CIV. S-13-0789 LKK, 2013 WL 5554623, at *5 (E.D. Cal. Oct. 8, 2013) ("From *Blantz*, one can reasonably infer that district courts may properly consider allegations pled on information and belief in determining whether claims have been adequately pled under Rule 8. That an allegation is pled on information and belief is neither dispositive nor particularly germane."). And far from being conclusory, SVBFG's allegations against FDIC-C concerning its likely involvement with withholding SVBFG's Account Funds are supported by well-pleaded facts. (*See*, *e.g.*, Compl. ¶ 72-73 ("Upon information and belief, the actions of the FDIC-R1 were undertaken with the knowledge of employees of the FDIC-C and could not have been undertaken without their acquiescence. . . . The FDIC-C, as the entity responsible

for obtaining a charter from the OCC, commencing the operations of Bridge Bank, and ensuring the payment of all uninsured deposits pursuant to the invocation of the systemic risk exception, is responsible for permitting this unlawful denial of access to and/or unlawful taking of SVBFG's Account Funds."). Regardless, FDIC-C may not simply decide unilaterally that it has no obligation to make initial disclosures as to causes of action it claims lack merit and may not ignore its initial disclosure obligations under Rule 26(a) based on its assumption that it will prevail in dismissing SVBFG's non-APA claims.

Because FDIC-C has had multiple opportunities to provide full and complete initial disclosures, but has failed to do so, FDIC-C should be automatically precluded under Fed. R. Civ. P. 37(c)(1) from using any undisclosed information or witnesses to supply evidence on a motion, at a hearing, or at a trial in support of its defenses. *See Rodriguez* v. *Akima Infrastructure Servs., LLC*, No. 16-CV-03607-PJH, 2019 WL 5212968, at *4 (N.D. Cal. Oct. 16, 2019) (imposing preclusion sanctions for failure to provide initial disclosures pursuant to Fed. R. Civ. P. 26(a)); *id*. ("The materials in the document production plaintiff served on defendants . . . are hereby excluded pursuant to Rule 37(c)(1), and plaintiff is not allowed to use those materials to supply evidence on a motion, at a hearing, or at trial.").

b.     **FDIC-C's Position.**

As explained in FDIC-C's pending partial motion to dismiss (Dkt. No. 25), Congress determined in 12 U.S.C. § 1821(f) to limit the available claims here to review under the Administrative Procedure Act ("APA"), which exempts the case from initial disclosures per Federal Rule of Civil Procedure 26(a)(1)(B)(i). Nevertheless, to avoid a needless dispute, FDIC-C agreed to serve initial disclosures, which it has done, and those disclosures satisfy Rule 26(a) and are complete in light of its current understanding of the case.

SVBFG spends pages complaining that FDIC-C's disclosures are inadequate (though they are not) and seeks "preclusion sanctions." That is both procedurally and substantively improper. Procedurally, a case management statement is not the proper venue to seek discovery sanctions. Substantively, SVBFG does not identify any deficiencies in FDIC-C's initial disclosures, let alone deficiencies that would justify sanctions—and there are none. SVBFG's criticisms boil down to its contention that FDIC-C should have disclosed more individuals and documents.

The small number of witnesses and documents identified in FDIC-C's initial disclosures reflects the fact the dispute in this case is factually straightforward. SVBFG and FDIC-C disagree over *legal* issues—such as the scope of 12 U.S.C. § 1821(f) and the legal consequences of the invocation of the systemic risk exception under 12 U.S.C. § 1823(c)(4)(G)—but those legal issues do not require discovery. Indeed, this Court already rejected SVBFG's arguments that it needed discovery to resolve FDIC-C motion to dismiss about these issues. Dkt. 54 at 5–6.

SVBFG has already admitted the facts showing that its dispute for $1.9 billion is with FDIC as Receiver of Silicon Valley Bank (FDIC-R1), not with FDIC Corporate (FDIC-C). FDIC-R1 and FDIC-C are "entirely separate and distinct," and "courts have been careful to keep the rights and liabilities of these two entities legally separate." *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 708 (9th Cir. 1995).[2]

Specifically, SVBFG admits that: (1) Silicon Valley Bank failed and FDIC-R1 was named receiver on March 10, 2023, *see* Compl ¶ 32; (2) the Secretary of the Treasury invoked the systemic risk exception under 12 U.S.C. § 1823(c)(4)(G) on March 12, 2023, which empowered FDIC-C to take actions to protect all depositors, *see id.* ¶ 41; (3) SVBFG then received access to "all its deposits" on March 13, 2023, because of FDIC-C's actions, *see id.* ¶ 67; and (4) SVBFG lost access to its account funds only later, on March 16, 2023, when "*FDIC-R1* instructed Bridge Bank to place a hold on SVBFG's accounts," and "*FDIC-R1*" called back "SVBFG's deposit accounts . . . to the *FDIC-R1*," *id.* ¶¶ 70–71 (emphasis added).

These facts, which are confirmed by the documents and individuals FDIC-C has disclosed, show that to the extent SVBFG has a grievance over access to its accounts, that grievance is with FDIC-R1. Indeed, SVBFG has separately sued FDIC-R1, and FDIC-R1's pleadings in that case acknowledge that SVBFG can plead a claim against FDIC-R1 "for breach of its [deposit account] contract, subject to the FDIC-R1's setoff rights and the limitations imposed by 12 U.S.C. § 1821(i)(2)." Dkt. 33 at 18 in *SVB Financial Group v. FDIC as Receiver*, No. 5:24-cv-01321-BLF (N.D. Cal.). Indeed, the entire purpose of

---

[2] "[I]t is well-settled that the FDIC operates in two separate and legally distinct capacities, each with very different responsibilities." *Miller v. FDIC*, 738 F.3d 836, 838 n.1 (7th Cir. 2013) (citation omitted). "FDIC Corporate's primary responsibility is to insure bank deposits and to pay depositors when an insured bank fails," and it "administers the federal deposit insurance fund, a pool of assets used to guarantee the safety of federally insured deposits." *Bullion*, 50 F.3d at 708. "FDIC Receiver, on the other hand, 'act[s] as a receiver for an insolvent state bank . . . possess[ing] all the rights, powers, and privileges granted by State law to a receiver of a State bank," and the "assets it administers in this wholly different capacity are limited to the funds making up the failed bank's estate." *Id.* at 708–09 (citation omitted).

this lawsuit is to try to avoid FDIC-R's setoff rights. SVBFG is free to pursue this legally unfounded gambit, but the only viable way to do so is through its 1821(f) cause of action.

SVBFG's assertion that its complaint alleges that "FDIC-C" is the entity responsible for "den[ying] SVBFG access to its $1.93 billion in Account Funds" was pleaded on "information and belief." Compl. ¶ 72. That is the only allegation in SVBFG's complaint that was pleaded on "information and belief" because it has no factual basis. That allegation is insufficient to create a duty to respond, whether in initial disclosures or otherwise. *See Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (holding that "conclusory allegations" that a defendant took action that forms the basis of the complaint that are pleaded "on information and belief" are "insufficient to state a claim"). In any event, as explained above, the documents and individuals FDIC-C has disclosed confirm that it was FDIC-R1, not FDIC-C, that was responsible for placing the hold on SVBFG's accounts and calling back those accounts to FDIC-R1.

Given these facts, FDIC-C is not currently aware of additional documents or individuals to include in its initial disclosures under Rule 26(a), but if its understanding changes as this litigation progresses, FDIC-C will supplement or amend its disclosures as necessary in accordance with Rule 26(e).

**8.    Discovery**

   **a.    Discovery to Date**

      **i.    SVBFG's Statement of Discovery to Date.** On March 19, 2024, SVBFG served an initial set of interrogatories and requests for production. (together, the "Discovery Requests"). On May 29, 2024, SVBFG served additional requests for production on FDIC-C (the "Second Discovery Requests"). On April 18, 2024, FDIC-C served responses and objections to the Discovery Requests, objecting to all of the discovery requests, in part, on the grounds of FDIC-C's pending Motion to Stay Discovery. Following the Court's April 29, 2024 order denying FDIC-C's Motion to Stay Discovery (ECF No. 46), on May 17, 2024 FDIC-C served supplemental responses and objections to the Discovery Requests. The Discovery Requests were served over 75 days ago, and some of the Discovery Requests seek information that FDIC-C collected and reviewed for production in response to discovery served in SVBFG's Chapter 11 bankruptcy proceeding over nine months ago. Thus, the documents should be produced promptly without delay. Yet, in the more than 75 days since the Discovery Requests were

served, FDIC-C has made just a single production of only *eight pages* consisting solely of print-outs from FDIC's public website. On the basis of this single, token production, FDIC-C now tells the Court that it has "begun rolling productions." Furthermore, FDIC-C's claim that it has already produced documents responsive to each request in SVBFG's Initial Set of Requests for Production is not true. For example, SVBFG requested "Documents created by You or provided to You by the Treasury Department concerning the payment to former depositors of Silicon Valley Bank of all or any portion of their deposits at Silicon Valley Bank in excess of the $250,000 Limit as of the Closure Date." FDIC-C has not produced any such documents. In the event FDIC-C does not agree to a date certain by which it will substantially complete its productions in response to the Discovery Requests, SVBFG intends to seek relief from the Court for the FDIC-C's persistent and ongoing delays in producing responsive documents. SVBFG currently is also preparing additional discovery, including Fed. R. Civ. P. 30(b)(6) deposition notices and third-party deposition subpoenas, which it will serve shortly.

**ii.    FDIC-C's Statement of Discovery to Date.** SVBFG has served over 60 discovery requests, including 55 requests for production served on May 29, 2024, for which FDIC-C's deadline to respond and object is June 28, 2024, the day after its reply in support of its motion to dismiss is due. FDIC-C is currently evaluating those requests and preparing its responses and objections. SVBFG's assertion that FDIC-C has failed to timely respond to SVBFG's Initial Discovery Requests served on March 19, 2024, is false and misleading for multiple reasons.

First, FDIC-C has already fully responded to SVBFG's Initial Set of Interrogatories, and it has begun rolling productions in response to SVBFG's Initial Set of Requests for Production.

Second, there are no discovery deadlines, let alone a document production deadline.

Third, SVBFG's suggestion that it immediately needs documents responsive to its Initial Set of Requests for Production is baseless. SVBFG previously told this Court that its Initial Set of Requests for Production seeks "limited jurisdictional discovery" that SVBFG asserted it needed to resolve the pending motion to dismiss. Dkt. No. 31 at 11. This Court rejected SVBFG's argument that "jurisdictional discovery is necessary," concluding that "FDIC-C's motion to dismiss can be decided without discovery." Dkt. No. 54 at 5–6.

Fourth, in any event, FDIC-C has already produced documents responsive to each request in SVBFG's Initial Set of Requests for Production (other than one that FDIC-C objected to producing responsive documents to), including the hundreds of pages in the administrative record, which SVBFG's statement above completely ignores. The administrative record contains many documents discussing how FDIC-C acted to protect all depositors, including SVBFG and other depositors with over $250,000 in deposit accounts, who received access to their accounts at Bridge Bank on March 13, 2023. *See, e.g.*, https://www.fdic.gov/news/press-releases/2023/pr23019.html, which is reproduced in the administrative record, *see* Dkt. 45-2 at 1 (citing AR-00000262–263). SVBFG's statement that FDIC-C has not produced such documents is simply false, and reflective of the fact that it ignores all the documents FDIC-C has produced in the administrative record. The eight additional pages that FDIC-C produced that SVBFG complains about fully responded to another one of SVBFG's requests.

Fifth, additional productions will contain confidential materials, so those cannot be completed until the parties agree on a protective order governing confidentiality of documents produced in discovery (as distinct from the protective order governing the administrative record) and electronic discovery protocol. Despite telling this Court months ago that it would work with FDIC-C to prepare a protective order and electronic discovery protocol, *see* Dkt. No. 31 at 12–13, SVBFG has taken no steps to do so. FDIC-C has undertaken the process of drafting these materials and will seek to reach agreement with SVBFG.

Sixth, for efficiency, FDIC-C does not intend to review the same documents twice for responsiveness. SVBFG just propounded 55 new requests for production, which FDIC-C is currently evaluating, and for which its responses and objections are due June 28, 2024. To have an efficient review process, FDIC-C is combining its review of custodial documents for materials responsive to the Initial Set of Requests for Production with its review of custodial documents for materials responsive to the latest set of requests for production, which necessarily means that production of those materials will take time.

    b.    **Scope of Anticipated Discovery:**

        i.    **SVBFG's Position.** SVBFG incorporates by reference its position from the March 14, 2024 Case Management Statement.

        ii.    **FDIC-C's Position.** FDIC-C incorporates by reference its position from the March 14, 2024 Case Management Statement.

      **c.**    **Proposed limitations or modifications of the discovery rules.**

           **i.**    **SVBFG's Position.**  In light of the Court's April 29, 2024 order denying FDIC-C's Motion to Stay Discovery (ECF No. 46), SVBFG intends to proceed expeditiously with merits discovery in this action.  SVBFG presently does not believe that any limitations or modifications of the default discovery rules are necessary.

           **ii.**    **FDIC-C's Position.**  FDIC-C presently does not believe that any limitations or modifications of the default discovery rules are necessary.

      **d.**    **Protective Order.**  The Parties will negotiate the terms of a protective order for this case and anticipate that they will be able to reach agreement on the terms of an appropriate protective order.  If the Parties are unable to reach agreement, they will submit a joint letter to the Court.  On March 27, 2024, the Parties filed a Stipulated Protective Order for the Administrative Record (ECF No. 40), which the Court so-ordered on the same day (ECF No. 41).

      **e.**    **Stipulated Electronic Discovery Protocol.**  The Parties intend to negotiate the terms of an electronic discovery protocol that will govern the production of documents and electronically stored information and anticipate that they will be able to ultimately reach agreement on the terms of a stipulated protocol.  If the Parties are not able to reach agreement, they will submit a joint letter to the Court.

**9.**    **Class Actions.**  This matter does not involve or concern a class action.

**10.**    **Related Cases.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**11.**    **Relief Sought.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**12.**    **Settlement and ADR.**

      **a.**    **SVBFG's Position.**  The Parties met and conferred regarding settlement and ADR on February 28, 2024.  SVBFG is willing to engage in mediation to see if a resolution is possible but understands that FDIC-C does not want to engage in settlement discussions at this time.  Thus, an out-of-court resolution appears unlikely at this time because FDIC-C is unwilling to discuss any out-of-court resolution.

      **b.**    **FDIC-C's Position.**  The Parties met and conferred regarding settlement and ADR on February 28, 2024, and agree that out-of-court resolution of this case is unlikely at this time.

**13.**    **No Consent to Proceed Before Magistrate Judge.**  The Parties do not consent to proceed before a Magistrate Judge.

**14.**    **Other References.**  The Parties agree that this case in not suitable for binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.**    **Narrowing of Issues.**

      **a.**    **SVBFG'S Position.**  At this time, SVBFG is not aware of any issues that can be narrowed by agreement or by motion, does not have any suggestions to expedite the presentation of evidence at trial, and does not agree to bifurcate issues, claims, or defenses.  SVBFG agrees to continue to meet and confer, however, to discuss any means by which the issues can be narrowed or streamlined to conserve judicial resources.

      **b.**    **FDIC-C's Position.**  As explained in FDIC-C's pending partial motion to dismiss, all claims except Count VI should be dismissed because (1) § 1821(f) bars other claims against FDIC-C for payment of its deposits (*i.e.*, Counts I, II, III, IV, V, and VII); and (2) SVBFG fails to state a plausible claim. Because Count VI is subject to APA review, there is no trial.

**16.**    **Expedited Trial Procedure.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**17.**    **Scheduling.**

      **a.**    **SVBFG's Position.**  SVBFG proposes the following deadlines, which sets out a comprehensive case schedule based on the claims currently alleged in the Complaint.  By contrast, FDIC-C's proposed schedule assumes, without basis, that only a single claim under the APA will remain after resolution of its pending motion to dismiss and will be adjudicated by this Court.  In the event that FDIC-C is wrong, its schedule is plainly inadequate to conduct the discovery necessary to adjudicate SVBFG's claims, particularly given FDIC-C's repeated failures to timely produce documents responsive to SVBFG's discovery requests.

| Event | SVBFG Proposal |
|---|---|
| Deadline for FDIC-C to Answer Complaint | 14 days after the Court's decision on FDIC-C's motion to dismiss |
| Deadline to Serve Rule 26(a) Disclosures | May 17, 2024 (*already past*) |
| Deadline to Seek Leave to Amend Pleadings | To be set following service of FDIC-C's answer |
| Deadline to Serve Opening Expert Reports | 30 days after the Deadline to Amend Pleadings |
| Deadline to Serve Rebuttal Expert Reports | 60 days after the Deadline to Amend Pleadings |
| Deadline to Serve Replies to Expert Reports | 90 days after the Deadline to Amend Pleadings |
| Close of Fact Discovery | 120 days after the Deadline to Amend Pleadings |
| Deadline to File Dispositive Motions | 141 days after the Deadline to Amend Pleadings |
| Deadline to File Oppositions to Dispositive Motions | 21 days after the deadline to file dispositive motions |
| Deadline to File Replies in Support of Dispositive Motions | 21 days after the deadline to file opposition to dispositive motions |
| Deadline to File *Daubert* Motions | Within 28 days after a ruling on the last outstanding dispositive motion |
| Deadline to File Oppositions to *Daubert* Motions | Within 21 days after filing of *Daubert* motions. |
| Deadline to File Replies in Support of *Daubert* Motions | Within 14 days after filing of oppositions to *Daubert* motions |
| Deadline to File Joint Pretrial Statement | 2 weeks before final pretrial conference |
| Final Pretrial Conference | 2 months after hearing on *Daubert* motions |
| Trial | 30 days after pretrial conference |

    **b.**     **FDIC-C's Position.** In accordance with the limits on judicial review provided in § 1821(f), and with the scheduling requirements of Local Rule 16.5 and this Court's Orders at Dkt. No. 22 and Dkt. No. 37, FDIC-C proposes the following schedule:

        **i.**     FDIC-C files its answer to the complaint 14 days after the Court's decision on FDIC-C's partial motion to dismiss.

        **ii.**     SVBFG files its motion for summary judgment 28 days later.

         **iii.**    FDIC-C files its cross-motion for summary judgment and opposition to SVBFG's motion for summary judgment 28 days later.

         **iv.**    SVBFG files its opposition to FDIC-C's cross-motion for summary judgment and reply brief in support of SVBFG's motion for summary judgment 28 days later.

         **v.**    FDIC-C files its reply brief in support of FDIC-C's motion for summary judgment 14 days later.

**18.**    **Trial.**

     **a.**    **SVBFG's Position.**  SVBFG has not demanded a jury trial. SVBFG anticipates that a Court trial would last 5-7 days.

     **b.**    **FDIC-C's Position.**  Any trial would be improper and contrary to 12 U.S.C. § 1821(f). As explained in FDIC-C's pending partial motion to dismiss, Congress determined in § 1821(f) that the exclusive remedy here is a claim subject to APA review, for which there is no trial.

**19.**    **Disclosure of Non-Party Interested Entities or Persons.**  The parties incorporate by reference their respective positions from the March 14, 2024 Case Management Statement.

**20.**    **Professional Conduct:**  The attorneys of record for the Parties acknowledge that they have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.**    **Other Matters:**  The Parties do not have any additional matters to raise at this time.

| | | |
|---|---|---|
| 1 | Dated: June 6, 2024 | Respectfully submitted, |
| 2 | | /s/ Robert A. Sacks |
| | | Robert A. Sacks |
| 3 | | Adam S. Paris |
| | | Diane L. McGimsey |
| 4 | | **SULLIVAN & CROMWELL LLP** |
| | | 1888 Century Park East |
| 5 | | Los Angeles, California 90067 |
| | | Telephone:   (310) 712-6600 |
| 6 | | Facsimile:    (310) 712-8800 |
| 7 | | Sverker K. Hogberg |
| | | **SULLIVAN & CROMWELL LLP** |
| 8 | | 550 Hamilton Avenue |
| | | Palo Alto, California 94301 |
| 9 | | Telephone:   (650) 461-5600 |
| | | Facsimile:    (650) 461-5700 |
| 10 | | |
| 11 | | *Attorneys for Plaintiff SVB Financial Group* |
| 12 | | /s/ Emily Kapur |
| | | Emily Kapur (Bar No. 306724) |
| 13 | | **QUINN EMANUEL URQUHART** |
| | | **& SULLIVAN, LLP** |
| 14 | | 555 Twin Dolphin Dr., 5th Floor |
| | | Redwood Shores, CA 94065 |
| 15 | | Telephone: (650) 801-5000 |
| | | Facsimile: (650) 801-5100 |
| 16 | | Email: emilykapur@quinnemanuel.com |
| 17 | | Benjamin I. Finestone (*pro hac vice*) |
| | | **QUINN EMANUEL URQUHART** |
| 18 | | **& SULLIVAN, LLP** |
| | | 51 Madison Avenue, 22nd Floor |
| 19 | | New York, NY 10010 |
| | | Telephone: (212) 849-7000 |
| 20 | | Facsimile: (212) 849-7100 |
| | | Email: |
| 21 | | benjaminfinestone@quinnemanuel.com |
| 22 | | Eric C. Lyttle (*pro hac vice*) |
| | | Jonathan G. Cooper (*pro hac vice*) |
| 23 | | **QUINN EMANUEL URQUHART** |
| | | **& SULLIVAN, LLP** |
| 24 | | 1300 I Street NW, Suite 900 |
| | | Washington, DC 20005 |
| 25 | | Telephone: (202) 538-8000 |
| | | Facsimile: (650) 538-8100 |
| 26 | | Email: ericlyttle@quinnemanuel.com |
| | | Email: jonathancooper@quinnemanuel.com |
| 27 | | |
| | | *Counsel to the Federal Deposit Insurance* |
| 28 | | *Corporation (in its corporate capacity)* |

**Attestation Pursuant to Local Rule 5-1(i)(3)**

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory.

Dated: June 6, 2024

*/s/ Robert A. Sacks*
Robert A. Sacks