Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

*Counsel to the Federal Deposit Insurance
Corporation (in its corporate capacity)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP, <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, <br><br> Defendant. | CASE NO. 5:23-cv-06543-BLF <br><br> **FDIC-C'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS** <br><br> Judge: Hon. Beth Labson Freeman <br> Action Filed: December 19, 2023 <br><br> Hearing Date: July 11, 2024 <br> Time: 9:00 AM <br> Courtroom: 3 – 5th Floor |

1

## **Table of Contents**

2

                                                                                                    **Page**

3   Table of Authorities ................................................................................................................. ii

4   Introduction ............................................................................................................................. 1

5   Argument .................................................................................................................................. 2

6   I.      12 U.S.C. § 1821(f) bars SVBFG's other deposit-related claims against FDIC-C. .............. 2

7           A.      SVBFG misreads the plain text of the statute. ............................................... 2

8           B.      SVBFG ignores the structure of the statute. ................................................... 4

9   II.     SVBFG fails to state a plausible claim. .......................................................................... 5

10          A.      The turnover claim is not plausible (Count II). .............................................. 5

11                  1.   Even if FDIC-C owed an enforceable obligation, FDIC-C satisfied it. ............. 5

12                  2.   FDIC-C does not owe SVBFG an enforceable obligation. ................................. 7

13                  3.   FDIC-C does not possess any SVBFG "Account Funds" .................................. 9

14                  4.   The turnover claim is disputed .......................................................................... 10

15          B.      The automatic-stay claim is not plausible (Count III). ................................. 10

16          C.      The due process claim is not plausible (Count IV). ..................................... 10

17                  1.   SVBFG lacks a constitutionally protected property interest. ............................ 10

18                  2.   FDIC-C did not deprive SVBFG of a protected interest. .................................. 11

19                  3.   SVBFG received due process. .......................................................................... 11

20          D.      The APA claim is beyond this Court's jurisdiction and not plausible (Count V). ... 13

21          E.      The estoppel claim is not plausible (Count VII). .......................................... 14

22          F.      The claim for a declaratory judgment is not plausible (Count I). ............................ 15

23  III.    SVBFG withdrew its FOIA claim (Count VIII). .......................................................... 15

24  Conclusion ............................................................................................................................. 15

25

26

27

28

## Table of Authorities

Page(s)

## Cases

*Baccei v. United States*,
632 F.3d 1140 (9th Cir. 2011) ....................................................................................... 15

*Bateman v. FDIC*,
112 F. Supp. 2d 89 (D. Mass. 2000) ............................................................................. 14

*Battista v. FDIC*,
195 F.3d 1113 (9th Cir. 1999) ....................................................................................... 15

*Bazine v. Kelly Servs. Global, LLC*,
2023 WL 4138252 (N.D. Cal. June 21, 2023) .......................................................... 10, 15

*Benson v. JPMorgan Chase Bank, N.A.*,
673 F.3d 1207 (9th Cir. 2012) ......................................................................................... 5

*In re Bernard*,
96 F.3d 1279 (9th Cir. 1996) ....................................................................................... 9, 10

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ...................................................................................... 2, 6, 7

*Bullion Servs. v. Valley State Bank*,
50 F.3d 705 (9th Cir. 1995) ......................................................................................... 3, 6

*Ching v. Mayorkas*,
725 F.3d 1149 (9th Cir. 2013) ....................................................................................... 11

*Citizens Bank of Md. v. Strumpf*,
516 U.S. 16 (1995) ........................................................................................................... 9

*City of Chicago v. Fulton*,
592 U.S. 154 (2021) ....................................................................................................... 10

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ......................................................................................... 15

*Crocker-Citizens Nat'l Bank v. Control Metals Corp.*,
566 F.2d 631 (9th Cir. 1977) ........................................................................................... 9

*Dababneh v. FDIC*,
971 F.2d 428 (10th Cir. 1992) ......................................................................................... 6

*Dephix Corp. v. Actifio, Inc.*,
2014 WL 4628490 (N.D. Cal. Mar. 29, 2014) ............................................................... 7

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
    744 F.3d (9th Cir. 2014).................................................................................................4

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
    784 F. Supp. 2d 1142 (C.D. Cal. 2011)........................................................................6

*Erickson v. FDIC*,
    2010 WL 11596560 (C.D. Cal. Mar. 10, 2010)............................................................3

*FDIC v. Nichols*,
    885 F.2d 633 (9th Cir. 1989) .......................................................................................3

*FDIC v. Roldan Fonseca*,
    795 F.2d 1102 (1st Cir. 1986).......................................................................................6

*FDIC v. Royal Park No. 14*,
    2 F.3d 637 (5th Cir. 1993) .........................................................................................14

*Federal Crop Insurance Corp. v. Merrill*,
    332 U.S. 380 (1947) ...................................................................................................14

*Flexpand, LLC v. CREAM, Inc.*,
    2020 WL 13504975 (N.D. Cal. Sept. 9, 2020) .............................................................7

*GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JP Morgan Chase Bank, N.A.*,
    671 F.3d 1027 (9th Cir. 2012)................................................................................4, 12

*Hartford Cas. Ins. Co. v. FDIC*,
    21 F.3d 696 (5th Cir. 1994) .....................................................................................1, 6

*Heckler v. Community Health Servs. of Crawford County*,
    467 U.S. 51 (1984) .....................................................................................................14

*Hinck v. United States*,
    550 U.S. 501 (2007) .....................................................................................................2

*Howell v. FDIC*,
    986 F.2d 569 (1st Cir. 1993).......................................................................................14

*Jennings v. Mukasey*,
    511 F.3d 894 (9th Cir. 2007) .....................................................................................13

*Jones Motor Co. v. Teledyne, Inc.*,
    732 F. Supp. 490 (D. Del. 1990) ...............................................................................14

*Koroma v. Richmond Redevelopment & Hous. Auth.*,
    2010 WL 1704745 (E.D. Va. Apr. 27, 2010) .............................................................14

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) .......................................................................................3

*Little v. Pac Seafood Procurement, LLC*,
  2024 WL 2305603 (N.D. Cal. May 21, 2024) .................................................................. 15

*McCarthy v. FDIC*,
  348 F.3d 1075 (9th Cir. 2003) ........................................................................................ 4

*McKinley v. FDIC*,
  807 F. Supp. 2d 1 (D.D.C. 2011) .................................................................................... 8

*Menzel v. Scholastic, Inc.*,
  2018 1400386 (N.D. Cal. Mar. 19, 2019) ...................................................................... 7

*Metro County Title v. FDIC*,
  13 F.3d 883 (5th Cir. 1994) ........................................................................................... 13

*Nimon v. RTC*,
  975 F.2d 240 (5th Cir. 1992) ................................................................................. 2, 12, 13

*NorthBay Healthcare Group, Inc. v. Kaiser Found. Health Plan, Inc.*,
  305 F. Supp. 3d 1065 (N.D. Cal. 2018) ......................................................................... 7

*OPM v. Richmond*,
  496 U.S. 414 (1990) ....................................................................................................... 14

*Ross v. Abbott Vascular Inc.*,
  2022 WL 20275185 (N.D. Cal. Mar. 3, 2022) ............................................................... 6

*Rubalcava v. City of San Jose*,
  2021 WL 2987164 (N.D. Cal. July 15, 2021) (Freeman, J.) ....................................... 6, 7

*Santoni v. FDIC*,
  677 F.2d 174 (1st Cir. 1982) .......................................................................................... 14

*Shaw v. Bank of Am. Corp.*,
  946 F.3d 533 (9th Cir. 2019) .......................................................................................... 5

*Strohnik v. Woodside Hotel Grp., Ltd.*,
  2021 WL 11696238 (N.D. Cal. Apr. 15, 2021) (Freeman, J.) ...................................... 3

*In re SVB Fin. Grp.*,
  2023 WL 8622521 (S.D.N.Y. Dec. 13, 2023) ............................................................... 4

*SVB Fin. Grp. v. FDIC, as Receiver*,
  No. 5:24-cv-01321-BLF (N.D. Cal.), Dkt. Nos. 1-8 & 1-9 ......................................... 3, 7

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .......................................................................................... 15

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005) ....................................................................................................... 11

*United States v. Vantage Trust Fed. Credit Union*,
    2018 WL 306920 (M.D. Pa. Jan. 5, 2018) ................................................................. 14

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
    5 F.4th 997 (9th Cir. 2021) ...................................................................................... 13

## **Statutes**

12 U.S.C. § 1821(a)(4)(A)(ii) ..................................................................................... 4

12 U.S.C. § 1821(d) ................................................................................................. 4

12 U.S.C. § 1821(f) ........................................................................... 1, 2, 3, 4, 5, 12, 14

12 U.S.C. § 1821(f)(1) .............................................................................................. 5

12 U.S.C. § 1821(f)(2) ........................................................................................... 2, 3

12 U.S.C. § 1821(f)(3) ........................................................................................... 1, 2

12 U.S.C. § 1821(f)(4) ....................................................................................... 2, 4, 12

12 U.S.C. § 1821(f)(5) .............................................................................................. 2

12 U.S.C. § 1822(b) ................................................................................................. 5

12 U.S.C. § 1823 ...................................................................................................... 8

12 U.S.C. § 1823(c)(1) ........................................................................................... 8, 9

12 U.S.C. § 1823(c)(2)(A) ....................................................................................... 8, 9

12 U.S.C. § 1823(c)(3) ........................................................................................... 8, 9

12 U.S.C. § 1823(c)(4) .............................................................................................. 8

12 U.S.C. § 1823(c)(4)(A) ......................................................................................... 8

12 U.S.C. § 1823(c)(4)(E) ......................................................................................... 8

12 U.S.C. § 1823(c)(4)(F) ..................................................................................... 8, 9, 11

12 U.S.C. § 1823(c)(4)(G) ............................................................................... 4, 7, 8, 9, 11

12 U.S.C. § 1823(d)(4) ........................................................................................... 8, 9

12 U.S.C. § 1823(h) ............................................................................................... 8, 9

12 U.S.C. § 1823(k)(1)(A)(i) .................................................................................... 8, 9

## <u>Other Authorities</u>

Fed. R. Civ. P. 57 ................................................................................................................... 15

2 BANKS & THRIFTS: GOVT ENFORCE & RECEIVERSHIP § 11.03(3)(c) ........................... 8

## Introduction

In its opposition brief, SVB Financial Group (**SVBFG**) withdraws its FOIA claim in Count VIII. Dkt. No. 55 (**Opp.**) at 25. SVBFG tries to evade dismissal of its remaining claims at issue by distorting the governing statutes and by ignoring its own allegations in its complaint. But SVBFG does not—and cannot—overcome two overarching reasons why dismissal is warranted.

***First***, 12 U.S.C. § 1821(f) preempts SVBFG's other claims. SVBFG does not dispute that § 1821(f) preempts other claims within § 1821(f)'s scope. Instead, it argues that its claims are not within § 1821(f)'s scope because "[t]hey seek relief solely with respect to SVBFG's *uninsured deposits*," while SVBFG maintains that § 1821(f) is limited to "claims for *insured deposits*." Opp. 5. Yet the plain terms of § 1821(f)—which SVBFG ignores—state that it covers not only claims for "insured deposits" but also claims for insurance coverage of "any deposit," whether insured or uninsured. 12 U.S.C. § 1821(f)(3). SVBFG's claims seek insurance coverage from the Deposit Insurance Fund for its deposits, so its claims fall squarely within the bounds of § 1821(f).

***Second***, SVBFG's admissions in its complaint plead it out of court. Its claims rest on the premise that FDIC Corporate (**FDIC-C**) was obligated to use its "Deposit Insurance Fund to pay ***all*** deposits of . . . SVBFG" after Silicon Valley Bank failed. Dkt. No. 1 (**Complaint**) ¶ 15. But SVBFG concedes that happened: after the Bank failed, SVBFG admits it received "access to all its deposits" at the Bridge Bank. *Id.* ¶ 67. Simply put, SVBFG already got what it seeks from FDIC-C.

SVBFG complains that a separate legal entity—FDIC as receiver for Silicon Valley Bank (**FDIC-R1**)—later "instructed Bridge Bank to place a hold on SVBFG's accounts" and called back those accounts "to the FDIC-R1." *Id.* ¶¶ 70–71. But when a tax scoff or deadbeat dad has their wages garnished by the IRS or Social Security, they cannot demand that their employer pay their wages a second time or sue it for failing to do so; their gripe, if any, is with the IRS or Social Security. Just so here. FDIC-C already provided SVBFG with "access to all its deposits." *Id.* ¶ 67. Any further gripe SVBFG has lies with FDIC-R1. "FDIC-C may not be held liable for acts committed by the FDIC-R." *Hartford Cas. Ins. Co. v. FDIC*, 21 F.3d 696, 706 (5th Cir. 1994).

SVBFG contends that FDIC-C "worked together with FDIC-Rs to withhold SVBFG's Account Funds." Opp. 15. But SVBFG offers only conclusory allegations made "[u]pon information

and belief" that FDIC-C had anything to do with FDIC-R1's actions. Compl. ¶ 72. It is well-settled that where—as here—the only allegations linking a defendant to the alleged misconduct are "conclusory allegations" made "on information and belief," such allegations fail to state a claim against that defendant. *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013). For these and the other reasons below, SVBFG's claims should be dismissed.

To be clear, this does not mean that SVBFG does not have a claim for its account funds. But that claim is against FDIC-R1 and, notably, is subject to setoff. This lawsuit is a transparent attempt to avoid those setoff rights. This Court should not allow SVBFG—a bank holding company that was supposed to serve as a source of strength to a bank whose failure was one of the costliest in history—to invent causes of action that do not exist merely because it wishes to avoid setoff.

## Argument

### I.   12 U.S.C. § 1821(f) bars SVBFG's other deposit-related claims against FDIC-C.

#### A.   SVBFG misreads the plain text of the statute.

FDIC-C explained in its opening brief that, under *Hinck v. United States*, 550 U.S. 501, 506 (2007), § 1821(f) qualifies as a precisely drawn, detailed statute that preempts other remedies for the same type of grievance. Dkt. No. 25 (**MTD**) at 7–11. SVBFG does not dispute that § 1821(f)'s remedy is exclusive and has preemptive force. *See* Opp. 4–8. Instead, it argues that its claims are not preempted because they "seek relief solely with respect to SVBFG's *uninsured deposits*," while the scope of § 1821(f) is limited to "'claims for *insured deposits*.'" Opp. 5 (quoting § 1821(f)(2)).

The plain text of the statute says otherwise. Section 1821(f) repeatedly states that it covers not only "claims for insured deposits," § 1821(f)(2), but also "any claim for insurance coverage," § 1821(f)(3); *see also* § 1821(f)(4) ("any claim for insurance coverage"); § 1821(f)(5) ("any claim for insurance coverage"). A "claim for insurance coverage" includes not only "any disputed claim relating to *any insured deposit*," but also "any determination of insurance coverage with respect to *any deposit*." § 1821(f)(3) (emphasis added). The juxtaposition of "insured deposit" against "any deposit" shows that the statute sweeps beyond claims for insured deposits to also cover claims seeking insurance coverage for any deposit, whether insured or uninsured. *See also Nimon v. RTC*, 975 F.2d 240, 243–45 (5th Cir. 1992) (holding § 1821(f) applies to claim for insurance coverage of

uninsured deposits); *Erickson v. FDIC*, 2010 WL 11596560, at *2–5 (C.D. Cal. Mar. 10, 2010) (same). SVBFG's opposition brief discusses only § 1821(f)(2), which mentions "claims for insured deposits"; SVBFG completely ignores the other subsections of § 1821(f) that disprove its argument.

It is critical that the scope of § 1821(f) cover claims about all deposits, insured or uninsured, because depositors may not know whether their deposits are insured or uninsured until a final determination by FDIC-C. Depositors who believe they are entitled to insurance coverage must be allowed to file claims under § 1821(f), even if it turns out that their deposits are uninsured. FDIC-C may deny a claim under § 1821(f) if it determines that a deposit is uninsured, but that does not mean that the claim is outside the scope of § 1821(f), any more than a court's dismissal of a federal claim on the merits means that the claim was outside the court's federal-question jurisdiction.

SVBFG's claims seek insurance coverage within the meaning of § 1821(f). SVBFG itself characterized its demands as seeking to have FDIC-C pay it "pursuant to its obligations under 12 U.S.C. § 1821(f)." MTD 10. This concession is in a document attached to the complaint. *See* Dkt. No. 1-11 at 9. It is also in SVBFG's court filings in the FDIC-R case. *See SVB Fin. Grp. v. FDIC, as Receiver*, No. 5:24-cv-01321-BLF (N.D. Cal.), Dkt. Nos. 1-8 at 7 ¶ 20 & 1-9 at 7 ¶ 20. Those filings are subject to judicial notice. *See Strohnik v. Woodside Hotel Grp., Ltd.*, 2021 WL 11696238, at *3 (N.D. Cal. Apr. 15, 2021) (Freeman, J.). SVBFG apparently now regrets its invocation of § 1821(f) and insists it be ignored in favor of SVBFG's new allegation that § 1821(f) is inapplicable. Opp. 8. But it cites no authority for that proposition, and caselaw holds otherwise: Courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Even apart from its concession, it is clear that SVBFG's claims are covered by § 1821(f) because they seek insurance coverage. SVBFG is suing FDIC-C, which "acts in its corporate capacity to insure bank deposits, undertaking an obligation to pay depositors when an insured bank fails." *FDIC v. Nichols*, 885 F.2d 633, 636 (9th Cir. 1989). SVBFG explicitly seeks payment from FDIC-C's "Deposit Insurance Fund." Compl. ¶¶ 3, 15, 43, 44, 84, 107. As its name suggests, the Deposit Insurance Fund is "a pool of assets used to guarantee the safety of federally insured deposits." *Bullion Servs. v. Valley State Bank*, 50 F.3d 705, 708 (9th Cir. 1995). By statute, FDIC-C

1    "shall . . . use" the Fund "to carry out its insurance purposes." 12 U.S.C. § 1821(a)(4)(A)(ii). The

2    gravamen of SVBFG's claims is thus a demand for coverage by an insurer and its insurance fund of

3    deposits at a failed bank. *See* Compl. ¶¶ 1–4, 105–47, 162–69. That is an insurance coverage claim.

4    SVBFG also argues that § 1821(f) conflicts with the systemic risk exception in 12 U.S.C.

5    § 1823(c)(4)(G). Opp. 6. It does not. Nothing in § 1823(c)(4)(G) authorizes claims against FDIC-C

6    outside the § 1821(f) administrative process or in any way displaces that process. The provisions

7    work together. A depositor claiming entitlement to payment from FDIC-C and the Deposit Insurance

8    Fund based on the systemic risk exception in § 1823(c)(4)(G) can file a claim with FDIC-C under

9    § 1821(f). Indeed, that is precisely what happened here: SVBFG's § 1821(f) claim included its

10   argument about the systemic risk exception, *see* Dkt. No. 1-10 at 1–2, and FDIC-C determined that

11   claim in the administrative process, *see* Dkt. No. 1-11 at 9–11. SVBFG is entitled to judicial review

12   of that determination, *see* § 1821(f)(4), and it has sought judicial review in Count VI (which FDIC-

13   C has not moved to dismiss). There is thus no conflict between § 1821(f) and § 1823(c)(4)(G).

14       **B.     SVBFG ignores the structure of the statute.**

15   SVBFG's approach also is at odds with the statutory structure. MTD 10–11. Congress

16   enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (**FIRREA**), Pub.

17   L. No. 101-73, 103 Stat. 183, to place "a broad limit on the power of courts to interfere with the

18   FDIC's efforts" to wind up failed banks so as to "enable the FDIC to move quickly and without

19   undue interruption to preserve and consolidate the assets of the failed institutions." *Deutsche Bank*

20   *Nat'l Trust Co. v. FDIC*, 744 F.3d at 1128 (9th Cir. 2014). "FIRREA establishes a framework for

21   claims submitted for payment from the FDIC in each [of its] role[s]"—*i.e.*, as insurer and receiver.

22   *In re SVB Fin. Grp.*, 2023 WL 8622521, at *6 (S.D.N.Y. Dec. 13, 2023). The "statutory mechanism"

23   for claims against FDIC-C by "depositors" is "§ 1821(f)," *GECCMC 2005-C1 Plummer St. Office*

24   *Ltd. P'ship v. JP Morgan Chase Bank, N.A.*, 671 F.3d 1027, 1036 (9th Cir. 2012), while claims

25   against FDIC-R are governed by § 1821(d), *McCarthy v. FDIC*, 348 F.3d 1075, 1077 (9th Cir. 2003).

26       This statutory framework is comprehensive and exclusive. It purposefully channels all

27   claims against FDIC as insurer or receiver to administrative review followed by circumscribed

28   judicial review so that FDIC-C and FDIC-R can focus on their essential work—protecting the

stability of the nation's banking system—without facing disruption from a litany of judicial claims. Consistent with this statutory structure and purpose, Congress adopted in § 1821(f) a deferential standard of judicial review and remedial limits. *See* MTD 10 (collecting cases). SVBFG's "contrary interpretation" that it can file a boatload of claims against FDIC-C outside the § 1821(f) process— all in an attempt to avoid FDIC-R1's setoff claims—"would encourage the very litigation that FIRREA aimed to avoid." *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 539 (9th Cir. 2019) (citation omitted); *see also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1209 (9th Cir. 2012) ("Litigants cannot avoid FIRREA's administrative requirements through strategic pleading."). This Court should vindicate the words, structure, and purpose of the statute and stop SVBFG's non- § 1821(f) claims at the gate.

## II.     SVBFG fails to state a plausible claim.

### A.     The turnover claim is not plausible (Count II).

#### 1.     Even if FDIC-C owed an enforceable obligation, FDIC-C satisfied it.

SVBFG's turnover claim fails for many reasons. One is that SVBFG concedes it already received access to the deposits at issue. SVBFG's turnover claim seeks "access to or payment of its Account Funds." Compl. ¶ 116. Yet SVBFG admits "[t]here is no dispute . . . that the Account Funds were made available to SVBFG in its account at Bridge Bank." Opp. 9; *accord* Compl. ¶ 47 ("On Monday, March 13, 2023, SVBFG was among the depositors able to access all of the money in its deposit accounts."); *id.* ¶ 67 ("SVBFG was treated like all other depositors of Silicon Valley Bank, and it was provided with access to all its deposits on March 13, 2023."). This concession dooms its turnover claim—and its other claims too. SVBFG already received "access to . . . its Account Funds" because of FDIC-C. Compl. ¶ 116. There could be nothing more for FDIC-C to turnover.

FDIC-C was also statutorily discharged from liability once it made SVBFG's deposits available at Bridge Bank. *See* MTD 14 (citing 12 U.S.C. §§ 1821(f)(1), 1822(b)). SVBFG argues that § 1822(b) discharges FDIC-C's liability only "to the same extent that payment to such person by the depository institution in default would have discharged it from liability for the insured deposit." Opp. 13 (quoting § 1822(b)). But SVBFG admits it received access to "all of the money in its deposit accounts." Compl. ¶ 47. That access allowed SVBFG to withdraw approximately $180

1   million. *Id.* ¶ 69. Thus, the "extent" of the discharge was the entire amount of SVBFG's deposits.

2   SVBFG received access to all its funds, so FDIC-C could not have any more liability.

3        SVBFG pleads that, a few days after it received access to all its deposits, "**FDIC-R1**

4   instructed Bridge Bank to place a hold on SVBFG's accounts" and called back those accounts "to

5   the **FDIC-R1**." *Id.* ¶¶ 70–71 (emphasis added). But SVBFG cannot sue FDIC-C for FDIC-R1's

6   actions. "FDIC Corporate and FDIC Receiver perform two different functions and protect wholly

7   different interests," so "courts have been careful to keep the rights and liabilities of these two entities

8   legally separate." *Bullion*, 50 F.3d at 709. It is settled law that "FDIC-C may not be held liable for

9   acts committed by the FDIC-R." *Hartford Cas. Ins. Co. v. FDIC*, 21 F.3d 696, 706 (5th Cir. 1994);

10  *accord, e.g.*, *Dababneh v. FDIC*, 971 F.2d 428, 432 (10th Cir. 1992); *FDIC v. Roldan Fonseca*, 795

11  F.2d 1102, 1109 (1st Cir. 1986); *Deutsche Bank Nat'l Trust Co. v. FDIC*, 784 F. Supp. 2d 1142, 1160

12  (C.D. Cal. 2011) ("actions taken by FDIC-R are not attributable to FDIC-C").

13       SVBFG insists that FDIC-C "worked together with FDIC-R to withhold SVBFG's Account

14  Funds and that no funds could have been removed from SVBFG's account at Bridge Bank, which

15  was under FDIC-C control, without FDIC-C participation or approval." Opp. 15 (citing Compl.

16  ¶¶ 5–6, 72, 77). But the cited paragraphs do not plausibly support this assertion.

17       The Complaint alleges that FDIC-R1—and FDIC-R1 alone—was responsible for the hold

18  on SVBFG's deposit accounts and for recalling the accounts from Bridge Bank. Compl. ¶¶ 70–71.

19  Then, in Paragraph 72, SVBFG alleges—without any factual support or elaboration—that "[u]pon

20  information and belief, the actions of the FDIC-R1 were undertaken with the knowledge of the

21  FDIC-C and could not have been undertaken without their acquiescence." *Id.* ¶ 72. SVBFG repeats

22  similar conclusory allegations devoid of factual enhancement in Paragraph 5–6 and 77.

23       That is not enough. The Ninth Circuit and this Court have repeatedly held that a plaintiff

24  fails to state a claim against a defendant when the only allegations linking that defendant to the

25  alleged misconduct are "conclusory allegations"—such as those on "information and belief." *Blantz*

26  *v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013); *accord, e.g.*, *Rubalcava v.*

27  *City of San Jose*, 2021 WL 2987164, at *7 (N.D. Cal. July 15, 2021) (Freeman, J.) (refusing to credit

28  "information and belief" allegations); *Ross v. Abbott Vascular Inc.*, 2022 WL 20275185, at *8 (N.D.

Cal. Mar. 3, 2022) (same); *Flexpand, LLC v. CREAM, Inc.*, 2020 WL 13504975, at *7 (N.D. Cal. Sept. 9, 2020) (same); *Menzel v. Scholastic, Inc.*, 2018 1400386, at *2 (N.D. Cal. Mar. 19, 2019) (same); *NorthBay Healthcare Group, Inc. v. Kaiser Found. Health Plan, Inc.*, 305 F. Supp. 3d 1065, 1074 n.61 (N.D. Cal. 2018) ("The fact that an assertion devoid of factual enhancement might not include the words 'upon information and belief' does not make it non-conclusory or render it sufficient to state a claim.").

For example, in *Blantz*, the plaintiff alleged "on information and belief" that a defendant (Dr. Hill) "'directed' the other defendants to take these actions." 727 F.3d at 926–27. The Ninth Circuit dismissed the claims against Dr. Hill because "no factual assertions support this allegation" and "the conclusory allegations are insufficient on their own to defeat a motion to dismiss." *Id.* at 927. "One judge in this district has gone so far as to opine that use of the phrase 'information and belief' creates an 'inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree.'" *Rubalcava*, 2021 WL 2987164, at *7 (quoting *Dephix Corp. v. Actifio, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 29, 2014)). That is the case here. SVBFG's "information and belief" allegations that FDIC-R1 could not have acted without FDIC-C are conclusory, speculative, and fail to state a plausible claim against FDIC-C.

Tellingly, SVBFG did not make even this conclusory assertion against FDIC-C in its complaint against FDIC-R; instead, it alleged there that FDIC-R alone is responsible for taking away its accounts. *See SVB Fin. Grp. v. FDIC, as Receiver*, No. 5:24-cv-01321-BLF (N.D. Cal.), Dkt. No. 1 ¶¶ 91–98. These inconsistent and self-serving pleading tactics further underscore why the conclusory "information and belief" allegations here are especially unworthy of credence.

In sum, SVBFG admits that FDIC-C provided it access to all its deposits, and it fails to allege plausibly that FDIC-C participated in FDIC-R1's later actions to preserve its setoff claims by recalling SVBFG's deposit liabilities. SVBFG thus fails to state a plausible claim against FDIC-C.

### 2.    FDIC-C does not owe SVBFG an enforceable obligation.

In any event, FDIC-C does not owe SVBFG any enforceable obligation. SVBFG's assertion that the Secretary of the Treasury obligated FDIC-C to pay its deposits by invoking the systemic risk exception in 12 U.S.C. § 1823(c)(4)(G) reflects a fundamental misunderstanding of the statutory

1  text. Opp. 11–13. As FDIC-C has explained, invocation of the systemic risk exception expands the

2  available *discretionary* actions that FDIC-C *may* undertake by freeing it from adhering to the least-

3  cost resolution requirement of 12 U.S.C. § 1823(c)(4)(A) and (E). *See* MTD 12–13.

4        SVBFG points out that the Secretary of the Treasury must be the one to invoke the systemic

5  risk exception. Opp. 12–13 (citing § 1823(c)(4)(G)). That is true, but irrelevant. The Secretary must

6  invoke the systemic risk exception, but once she does, nothing in the statute bestows any power or

7  authority on the Secretary to dictate the actions of FDIC-C. Indeed, Congress could not have been

8  clearer that all further steps are within FDIC-C's discretion. The statute expressly provides that when

9  the systemic risk exception is invoked, "the Corporation *may* take other action or provide assistance

10  *under this section*." § 1823(c)(4)(G) (emphasis added); *see also McKinley v. FDIC*, 807 F. Supp. 2d

11  1, 5 (D.D.C. 2011) (systemic risk exception "*authorizes* the FDIC to provide emergency assistance")

12  (emphasis added); 2 BANKS & THRIFTS: GOVT ENFORCE & RECEIVERSHIP § 11.03(3)(c)

13  (2024) ("The FDIC *may* provide assistance to a financial institution if the Secretary of the Treasury

14  . . . conclude[s] that the failure of a particular depository institution would pose a systemic risk to

15  the financial system.") (emphasis added). And the statute further provides that each of the other

16  actions and assistance authorized "under this section" are within FDIC-C's "discretion." *See* MTD

17  13 (quoting § 1823(c)(1), (c)(2)(A), (c)(3), (d)(4), (h), and (k)(1)(A)(i)). Treating the Secretary's

18  invocation of the systemic risk exception as obligating FDIC-C to take a particular action would

19  thus be irreconcilable with the many provisions of § 1823 specifying that any action by FDIC-C is

20  discretionary. SVBFG completely ignores these statutory provisions. *See* Opp. 11–13.

21        The only provision SVBFG deigns to address is § 1823(c)(4)(F), which is yet another

22  provision confirming that FDIC-C's actions are discretionary. It provides that any determinations

23  FDIC-C makes under § 1823(c)(4) "shall be made in the sole discretion of the Corporation."

24  § 1823(c)(4)(F). SVBFG argues that § 1823(c)(4)(F) does not grant FDIC-C "discretion to undo or

25  ignore Secretary Yellen's determination" to invoke the systemic risk exception. Opp. 12. That is a

26  straw man. Nobody is suggesting that FDIC-C could "undo" the invocation of the systemic risk

27  exception. Rather, the question is whether FDIC-C owed a legally enforceable obligation to SVBFG

28  when exercising the authority bestowed on it by the invocation of the systemic risk exception. The

1    answer is that it did not. Any action FDIC-C takes is discretionary under § 1823(c)(4)(G) as well as

2    under § 1823(c)(4)(F), and under § 1823(c)(1), (c)(2)(A), (c)(3), (d)(4), (h), and (k)(1)(A)(i).

### 3.    FDIC-C does not possess any SVBFG "Account Funds"

4            Another reason for dismissal of the turnover claim is that there is no plausible allegation that

5    FDIC-C possesses SVBFG's "Account Funds," and thus FDIC-C has nothing to "turnover." MTD

6    12. SVBFG's claims are premised on a fundamental misunderstanding of what a bank deposit is. As

7    a matter of law, a deposit does not "consist[] of money belonging to the depositor and held by the

8    bank"; instead, "it consists of nothing more or less than a promise to pay, from the bank to the

9    depositor." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21 (1995) (collecting cases).

10           SVBFG tries to distinguish *Citizens Bank* on its facts because it involved only a "temporary"

11   account hold. Opp. 14–15. But *Citizens Bank* is clear that its ruling turns not on the duration of the

12   hold but rather on the fact that it is a "false premise" to assert—as SVBFG does here—that a bank

13   possesses "property that belonged to the [depositor]." 516 U.S. at 21. When a bank refuses to pay a

14   deposit, it is "neither a taking of possession of [the depositor's] property, nor an exercising of control

15   over it, but merely a refusal to perform its promise." *Id.* Many other cases make the same point. *See,*

16   *e.g.*, *In re Bernard*, 96 F.3d 1279, 1283 (9th Cir. 1996) ("Instead of owning money sitting in their

17   accounts, the Bernards owned claims against the Bank."); *Crocker-Citizens Nat'l Bank v. Control*

18   *Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977) ("[W]hen funds are deposited, title to those funds

19   passes immediately to the bank. . . . [T]he money thus becomes the literal property of the bank.").

20   The only SVBFG property at issue is a "promise to pay," not actual funds that could be turned over.

21           Moreover, even if SVBFG funds were at issue, SVBFG fails to plausibly allege that ***FDIC-***

22   ***C*** possesses them. MTD 12. SVBFG pleaded that ***FDIC-R1*** called back "SVBFG's deposit accounts

23   and all associated assets and liabilities ***to the FDIC-R1***." Compl. ¶ 71 (emphasis added). SVBFG

24   does not (and could not) plead that those accounts or funds transferred onward to FDIC-C. So, again,

25   there is nothing for FDIC-C to turnover. SVBFG argues that this assertion "disputes the Complaint's

26   factual allegations," Opp. 11, but SVBFG does not cite any factual allegations that FDIC-C

27   possesses SVBFG's account funds. SVBFG also asserts that FDIC-C "conceded in its Motion that

28   it possessed the Account Funds," Opp. 11, but that is false. FDIC-C made no such concession.

**4.      The turnover claim is disputed.**

A turnover claim can stand only if it is undisputed that the property must be turned over. MTD 11–12. That is not the case here. SVBFG admits that there is a dispute as to "whether, as a matter of law, FDIC-C must turn over the Account Funds to SVBFG following Secretary Yellen's determination." Opp. 9. But that is obviously not the only dispute. As is clear from the above, FDIC-C also disputes whether (1) SVBFG owns any account funds, (2) FDIC-C possesses SVBFG's account funds, (3) FDIC-C owes a legally enforceable obligation to pay SVBFG its account funds, and (4) FDIC-C already satisfied any obligation it owed to SVBFG. *See* Sections II.A.1–3, above.

**B.      The automatic-stay claim is not plausible (Count III).**

SVBFG asserts that FDIC-C violated the automatic stay "by cutting off SVBFG's access to the Account Funds." Opp. 14. SVBFG cites no factual allegations to support this assertion and, as explained above in Section II.A.1, SVBFG does not plausibly allege that FDIC-C had anything to do with SVBFG's loss of access to its deposit accounts. Moreover, as explained above in Section II.A.3, SVBFG cannot plausibly allege that FDIC-C is exercising control over property belonging to SVBFG. As a depositor, SVBFG owns only "*claims* against the Bank" (Silicon Valley Bank, now FDIC-R1), not "money sitting in [its] accounts." *In re Bernard*, 96 F.3d at 1283 (emphasis added).

SVBFG also completely failed to respond to FDIC-C's argument that, even if FDIC-C did exercise control over SVBFG property (it did not), any retention by FDIC-C of property belonging to the debtor does not constitute a stay violation. *See* MTD 15 (citing *City of Chicago v. Fulton*, 592 U.S. 154, 161–62 (2021)). By failing to respond, SVBFG has conceded the argument, which is a further reason to dismiss this claim. *See, e.g.*, *Bazine v. Kelly Servs. Global, LLC*, 2023 WL 4138252, at *4 (N.D. Cal. June 21, 2023) (Freeman J.) (party concedes argument by failing to respond to it).

**C.      The due process claim is not plausible (Count IV).**

SVBFG's due process claim fails because it lacks a constitutionally protected property interest, was not deprived of any such interest by FDIC-C, and received due process. MTD 16–17.

**1.      SVBFG lacks a constitutionally protected property interest.**

As explained above in Section II.A.3, SVBFG does not own any property right in the funds it deposited at Silicon Valley Bank. SVBFG argues that the Secretary of the Treasury's invocation

of the systemic risk exception created an enforceable property interest against FDIC-C. Opp. 16. But as explained above in Section II.A.2, that is incorrect. The systemic risk exception empowered FDIC-C to take certain discretionary actions; it did not bestow any entitlements on SVBFG.

SVBFG cites *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013), but *Ching* supports FDIC-C's position. *Ching* teaches that "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Id. Ching* further observed that "Supreme Court 'cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Id.* (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). Here, the statute expressly vests FDIC with *discretion* as to what actions to take. *See* Section II.A.2 above (discussing § 1823(c)(4)(G), (c)(4)(F), and other sections vesting FDIC with "discretion"). So there is no protected interest.

### 2.    FDIC-C did not deprive SVBFG of a protected interest.

Even if it had a property interest, SVBFG has not plausibly alleged that FDIC-C deprived it of that interest. SVBFG asserts that it was deprived of a protected property interest in having "access to all of [its] money starting Monday, March 13." Opp. 16 (quoting Sacks Decl. Ex. 1). Yet SVBFG concedes that it received access to all of the money in its deposit accounts on March 13. Compl. ¶ 47 ("On Monday, March 13, 2023, SVBFG was among the depositors able to access all of the money in its deposit accounts."); *id.* ¶ 67 (similar).

It is true that a few days later FDIC-R1 called back the deposit liability for SVBFG's accounts. Compl. ¶ 71. But SVBFG does not contend that it had a perpetual property interest in access to its deposit accounts. The press release SVBFG cites as establishing its property interest provides that depositors would have access to their accounts on March 13, 2023, not forever (and not freed from all rights, claims, and defenses of the bank or any successor, including its receiver). Opp. 16 (quoting Sacks Decl. Ex. 1). In any event, as explained above in Section II.A.1, SVBFG cannot plausibly allege that FDIC-C had anything to do with SVBFG's loss of access to its accounts.

### 3.    SVBFG received due process.

As ample case law confirms, to the extent SVBFG believes that FDIC-C deprived it of protected property interests in its deposit accounts, it had meaningful process available to it by filing

an § 1821(f) claim. *See GECCMC*, 671 F.3d at 1036 (§ 1821(f) is the "statutory mechanism" for depositors to seek relief from FDIC-C); MTD 17 (collecting cases affirming that FDIC-C's resolution of deposit claims under § 1821(f) satisfies due process). SVBFG argues that § 1821(f) is "not relevant because SVBFG seeks recovery of the uninsured deposits." Opp. 18. But as explained above in Section I.A., § 1821(f) covers claims for uninsured deposits.

SVBFG depicts the risk of erroneous deprivation under § 1821(f) as "high." Opp. 17. That is "exaggerated." *Nimon*, 975 F.2d at 248 (rejecting due process challenge to § 1821(f) determination). FDIC-C's administrative process gave SVBFG the chance to submit arguments and evidence. SVBFG submitted its § 1821(f) claim on June 26, 2023, and FDIC-C fully considered the arguments and evidence it cited. On September 19, FDIC-C notified SVBFG that it anticipated making a final determination within 30 days. Compl. ¶ 95; Opp. 17. SVBFG did not ask to submit further evidence or argument or otherwise respond. Ultimately, FDIC-C denied SVBFG's claim in a thorough 11-page single-spaced opinion. Dkt. No. 1-11. (It was not, as SVBFG asserts, "summarily denied." Opp. 18.) SVBFG was then entitled to seek judicial review, *see* § 1821(f)(4), and it did so in this very case in Count VI (which FDIC-C has not moved to dismiss). SVBFG thus has had ample process to minimize the risk of erroneous deprivation. Yet to this day, SVBFG has not identified *any* arguments or evidence it was unable to submit or that FDIC-C failed to address.

SVBFG complains that "FDIC-C did not inform SVBFG what had been done to its Account Funds or why, or what claim it should file or with whom if it disagreed." Opp. 17. FDIC-C did not contact SVBFG about the hold and FDIC-R1's election to rescind Bridge Bank's assumption of the SVBFG deposit liability because FDIC-C was not responsible for that. *See* Section II.A.1, above. And the suggestion that SVBFG did not know what claim to file is contradicted by its pleadings: it timely filed (1) administrative claims with FDIC-R1 and FDIC-R2, *see* Dkt. 1-11 at 3, and (2) an § 1821(f) administrative claim with FDIC-C, *see* Dkt. 1-10, which FDIC-C resolved, *see* Dkt. 1-11. SVBFG evidently dislikes the result of the process, but its insistence that "SVBFG was afforded no procedures" is frivolous. Opp. 17.

SVBFG vaguely argues that more procedural safeguards would be valuable—but it does not identify any particular procedures that were lacking but constitutionally required. Opp. 19–20. In

any event, courts disagree. "FIRREA does not require FDIC to prescribe regulations governing the resolution of these disputes," and "we are not persuaded that the Constitution requires . . . more in these circumstances." *Nimon*, 975 F.2d at 248. Imposing "additional procedural requirements" in this context could "unduly burden[]" the government, such as by affecting "[p]rompt payment of deposit insurance in general." *Id.* Because SVBFG was "afforded an adequate opportunity to offer information relevant to the FDIC's determination," there "was no due process violation." *Metro County Title v. FDIC*, 13 F.3d 883, 888 (5th Cir. 1994).

**D.      The APA claim is outside this Court's jurisdiction and not plausible (Count V).**

SVBFG's APA claim must be dismissed because it fails to identify an agency action. MTD 18–19. SVBFG purports to challenge an unwritten FDIC-C "policy" of "exercis[ing] discretion in determining which uninsured deposits of former Silicon Valley Bank depositors are guaranteed to be paid." Opp. 22 (quoting Compl. ¶ 136). But it does not plausibly allege that any such "policy" exists. Nor could it, given its concession that FDIC-C made all deposits of all depositors—including SVBFG—available at Bridge Bank. *See* Compl. ¶ 67 ("SVBFG was treated like all other depositors . . . , and it was provided with access to all its deposits."). SVBFG's failure to identify a discrete agency action bars its APA claim. *See Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1010–11 (9th Cir. 2021); MTD 18–19 (collecting cases).

Recognizing the inadequacy of its pleadings, SVBFG contends that it needs "[d]iscovery" to determine if there is an agency action for it to challenge. Opp. 22–23. But discovery is improper for an APA claim: "The general rule is that agency actions are to be judged on the agency record alone, without discovery." *Jennings v. Mukasey*, 511 F.3d 894, 900 (9th Cir. 2007). Indeed, this Court already rejected SVBFG's arguments that "this is a case in which discovery on an APA claim is warranted," Dkt. No. 54 at 3, and that discovery is necessary to resolve FDIC-C's motion to dismiss, *id.* at 5–6. Needless to say, neither of the two cases SVBFG cites delayed dismissal of an APA claim to allow discovery into whether there was an agency action. Opp. 22–23.

Finally, even if SVBFG had pleaded a final agency action (it has not), this APA claim must be dismissed as duplicative of Count VI. MTD 19–20. SVBFG asserts that it "alleges numerous legal consequences that flowed from FDIC-C's unlawful exercise of discretion, including

1  interference with SVBFG's property rights, violation of the Bankruptcy Code's protections, and

2  infringement of SVBFG's due process rights," Opp. 22, but each of these purported consequences

3  flows from the FDIC-C's final § 1821(f) determination challenged in Count VI. SVBFG also argues

4  that Count V challenges the violation of "Secretary Yellen's unambiguous mandate to guarantee *all*

5  deposits at SVB." Opp. 23. But, as explained above in Section II.A.2, the Treasury Secretary did

6  not—and could not—issue any such mandate that bound FDIC-C.

7        **E.**     **The estoppel claim is not plausible (Count VII).**

8       SVBFG does not dispute that it fails to state an equitable estoppel claim. Opp. 23–25; MTD

9  20. Accordingly, its claim for equitable estoppel must be dismissed.

10       As for promissory estoppel, the Supreme Court has long rejected all estoppel claims against

11  federal agencies. MTD 20–21; *see, e.g.*, *OPM v. Richmond*, 496 U.S. 414, 426 (1990); *Heckler v.*

12  *Community Health Servs. of Crawford County*, 467 U.S. 51, 60 (1984); *Federal Crop Insurance*

13  *Corp. v. Merrill*, 332 U.S. 380 (1947). SVBFG tries to distinguish *Richmond* and *Merrill* on their

14  facts, but SVBFG does not identify a single case allowing a promissory estoppel claim to proceed

15  against the FDIC. Opp. 23–25. To the contrary, courts have repeatedly rejected promissory estoppel

16  claims against the FDIC. *See, e.g.*, *FDIC v. Royal Park No. 14*, 2 F.3d 637, 641 (5th Cir. 1993);

17  *Howell v. FDIC*, 986 F.2d 569, 574–75 (1st Cir. 1993); *Santoni v. FDIC*, 677 F.2d 174 (1st Cir.

18  1982); *Bateman v. FDIC*, 112 F. Supp. 2d 89, 94–95 (D. Mass. 2000).

19       SVBFG also fails to plead the necessary elements. SVBFG asserts that FDIC-C conceded

20  this issue (Opp. 25), but that is false. FDIC-C expressly argued that SVBFG failed to plausibly allege

21  the necessary elements of *any* "estoppel claim," including "affirmative misconduct." MTD 21.

22  "Affirmative misconduct" is a requirement not only for claims of equitable estoppel but also

23  promissory estoppel. *See, e.g.*, *Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 WL

24  1704745, at *12 (E.D. Va. Apr. 27, 2010) ("To prevail on a claim of promissory estoppel against the

25  federal government, one must satisfy the traditional elements of estoppel as well as affirmative

26  misconduct."); *United States v. Vantage Trust Fed. Credit Union*, 2018 WL 306920, at *6 (M.D. Pa.

27  Jan. 5, 2018) (dismissing promissory estoppel claim against federal agency for lack of "affirmative

28  misconduct"); *Jones Motor Co. v. Teledyne, Inc.*, 732 F. Supp. 490, 495–96 (D. Del. 1990) (same).

1    Here, as explained above in Section II.A.1, SVBFG has not plausibly alleged *any* misconduct

2  by FDIC, let alone *affirmative* misconduct. "Affirmative misconduct on the part of the government

3  requires an affirmative misrepresentation or affirmative concealment of a material fact, such as a

4  deliberate lie or a pattern of false promises." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir.

5  2011) (citations omitted). SVBFG does not plausibly allege anything of the sort here.

6           **F.        The claim for a declaratory judgment is not plausible (Count I).**

7           SVBFG argues that Federal Rule of Civil Procedure 57 authorizes its freestanding claim for

8  declaratory relief. Opp. 20. That conflates a *cause of action* with a *remedy*. Both the Declaratory

9  Judgment Act and Rule 57 authorize a declaratory judgment as a *remedy* for a separate cause of

10  action; they do not create a freestanding *cause of action* for declaratory relief. *See City of Reno v.*

11  *Netflix, Inc.*, 52 F.4th 874, 878–89 (9th Cir. 2022); *Little v. Pac Seafood Procurement, LLC*, 2024

12  WL 2305603, at *5 (N.D. Cal. May 21, 2024); Fed. R. Civ. P. 57; MTD 21–22. Count I must

13  therefore be dismissed. To the extent SVBFG pleads a separate valid claim, it may be able to seek a

14  declaratory judgment as a remedy for that claim, but it cannot pursue a standalone declaratory claim.

15          In any event, most of the declaratory relief SVBFG seeks is duplicative, which is a separate

16  basis to dismiss. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007); MTD 22–23.

17          The only part of Count I not directly addressed by SVBFG's other claims is its request for a

18  declaratory judgment that it is entitled to "interest" on any recovery from FDIC-C. Compl. ¶ 110.

19  FDIC-C explained in its opening brief that "sovereign immunity bars an award of interest against

20  the FDIC." MTD 23 (quoting *Battista v. FDIC*, 195 F.3d 1113, 1120 (9th Cir. 1999)). SVBFG does

21  not contest or respond to that argument, so it has conceded the point. *See, e.g.*, *Bazine*, 2023 WL

22  4138252, at *4. SVBFG's claims for interest should therefore be dismissed.

23  **III.     SVBFG withdrew its FOIA claim (Count VIII).**

24          In response to FDIC-C's motion to dismiss, SVBFG has withdrawn its FOIA claim. Opp.

25  25. If it had not, then its claim would have to be dismissed for lack of jurisdiction. MTD 23–24.

26                                           **Conclusion**

27          The Court should dismiss Counts I, II, III, IV, V, VII, and VIII.

28

1   Dated: June 27, 2024                          Respectfully submitted,

2   **OF COUNSEL:**                               */s/ Jonathan G. Cooper*

3   Andrew J. Dober (CA Bar No. 229657)           Emily Kapur (CA Bar No. 306724)
    Senior Counsel                                **QUINN EMANUEL URQUHART**
4   adober@fdic.gov                               **& SULLIVAN, LLP**
    Telephone: (703) 562-2545                     555 Twin Dolphin Dr., 5th Floor
5   Erik Bond, Counsel                            Redwood Shores, CA 94065
    erbond@fdic.gov                               Telephone: (650) 801-5000
6   Telephone: (703) 562-6461                     Facsimile: (650) 801-5100
    Jason Benton, Senior Attorney                 Email: emilykapur@quinnemanuel.com
7   jabenton@fdic.gov
    Telephone: (703) 501-6256                     Eric C. Lyttle (admitted *pro hac vice*)
8                                                 Jonathan G. Cooper (admitted *pro hac vice*)
    Federal Deposit Insurance Corporation         **QUINN EMANUEL URQUHART**
9   Legal Division                                **& SULLIVAN, LLP**
    3501 Fairfax Drive                            1300 I Street NW, Suite 900
10  Arlington, VA 22226                           Washington, DC 20005
                                                  Telephone: (202) 538-8000
11                                                Facsimile: (650) 538-8100
                                                  Email: ericlyttle@quinnemanuel.com
12                                                Email: jonathancooper@quinnemanuel.com

13                                                Benjamin I. Finestone (admitted *pro hac vice*)
                                                  **QUINN EMANUEL URQUHART**
14                                                **& SULLIVAN, LLP**
                                                  51 Madison Avenue, 22nd Floor
15                                                New York, NY 10010
                                                  Telephone: (212) 849-7000
16                                                Facsimile: (212) 849-7100
                                                  Email: benjaminfinestone@quinnemanuel.com

17
                                                  *Counsel to the Federal Deposit Insurance*
18                                                *Corporation (in its corporate capacity)*

19

20

21

22

23

24

25

26

27

28