```
 1            IN THE UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                    SAN JOSE DIVISION

 4
     SVB FINANCIAL GROUP,            )   CV-23-6543-BLF
 5                                   )
                     PLAINTIFF,      )   SAN JOSE, CALIFORNIA
 6                                   )
              VS.                    )   JULY 11, 2024
 7                                   )
     FEDERAL DEPOSIT INSURANCE       )   PAGES 1-43
 8   CORPORATION,                    )
                                     )
 9                   DEFENDANT.      )
                                     )
10   _____

11                 TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE BETH LABSON FREEMAN
12               UNITED STATES DISTRICT JUDGE

13   A P P E A R A N C E S:

14
     FOR THE PLAINTIFF:     BY:  ROBERT ANDREW SACKS
15                               DIANE MCGIMSEY
                                 SULLIVAN & CROMWELL LLP
16                               1888 CENTURY PARK EAST
                                 LOS ANGELES, CA 90067
17

18   FOR THE PLAINTIFF:     BY:  SVERKER KRISTOFFER HOGBERG
                                 SULLIVAN & CROMWELL LLP
19                               550 HAMILTON AVENUE
                                 PALO ALTO, CA 94301
20

21            APPEARANCES CONTINUED ON THE NEXT PAGE

22

23   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                 CERTIFICATE NUMBER 13185
24

25          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
               TRANSCRIPT PRODUCED WITH COMPUTER
```

1    APPEARANCES CONTINUED:

2    FOR THE DEFENDANT:        **BY:  ERIC LYTTLE**
                               **JONATHAN COOPER**
3                              QUINN EMANUEL URQUHART & SULLIVAN, LLP
                               1300 I STREET NW, SUITE 900
4                              WASHINGTON, DC 20005

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1         SAN JOSE, CALIFORNIA                    JULY 11, 2024
2                     P R O C E E D I N G S
3         (COURT CONVENED AT 10:10 A.M.)
4             THE CLERK:  CALLING CASE 23-6543.  SVB FINANCIAL
5     GROUP VERSUS FEDERAL DEPOSIT INSURANCE CORPORATION.
6         COUNSEL, PLEASE STATE YOUR APPEARANCES.
7             MR. SACKS:  GOOD MORNING, YOUR HONOR.
8         ROBERT SACKS FROM SULLIVAN & CROMWELL FOR THE PLAINTIFF.
9             MS. MCGIMSEY:  GOOD MORNING, YOUR HONOR.
10        DIANE MCGIMSEY FROM SULLIVAN & CROMWELL FOR THE PLAINTIFF.
11            MR. HOGBERG:  GOOD MORNING, YOUR HONOR.
12        SVERKER HOGBERG, SULLIVAN & CROMWELL, ON BEHALF OF THE
13    PLAINTIFF.
14            THE COURT:  WELCOME.
15            MR. LYTTLE:  GOOD MORNING, YOUR HONOR.
16        ERIC LYTTLE, QUINN EMANUEL, ON BEHALF OF THE FDIC IN ITS
17    CORPORATE CAPACITY.
18            MR. COOPER:  GOOD MORNING, YOUR HONOR.
19        JONATHAN COOPER FROM QUINN EMANUEL FOR FDIC IN ITS
20    CORPORATE CAPACITY.
21            MR. LYTTLE:  YOUR HONOR, I WOULD JUST LIKE TO ALSO
22    NOTE FOR THE RECORD MR. ERIC BOND FROM THE FDIC IS WITH US AS
23    WELL TODAY.
24            THE COURT:  OH GOOD.  THANK YOU.  THANK YOU FOR
25    COMING.
```

```
 1        ALL RIGHT.  THIS CASE IS COMPLICATED BUT LET ME GIVE YOU
 2   SOME INITIAL THOUGHTS.  I HAVE A LOT OF QUESTIONS AND I THINK
 3   YOU ALL KNOW I DIDN'T CUT MY TEETH ON THE BANKING INDUSTRY, I'M
 4   NOT A BANKING LAWYER, I'M TRYING TO LEARN ABOUT THIS AS QUICKLY
 5   AS I CAN.
 6        I THINK THAT THE PREEMPTION ISSUE, WHICH TAKES UP THE BULK
 7   OF YOUR BRIEFING, IS REALLY THE ISSUE I WANT TO FOCUS ON TODAY,
 8   BUT I WANT TO HEAR ABOUT ALL OF THE OTHER ISSUES.
 9        WE WILL BE DISCUSSING WHETHER SECTION 1821(F) CONTROLS THE
10   CLAIMS PROCESS THAT THIS PLAINTIFF CAN PURSUE.
11        AND I NEED TO HAVE AN UNDERSTANDING OF WHAT WE MEAN BY AN
12   "INSURED DEPOSIT" UNDER THIS SECTION WHEN THE SYSTEMIC RISK
13   EXCEPTION IS INVOKED.  BECAUSE IN THE BRIEFING, IT SUGGESTS
14   THAT THE FDIC ONLY PAYS INSURED -- ON INSURED DEPOSITS, AND THE
15   QUESTION FOR ME IS THEN UNDER THIS STATUTORY SCHEME, DOES THE
16   SECRETARY OF THE TREASURY'S INVOCATION OF THE SYSTEMIC RISK
17   EXCEPTION ALLOW THE FDIC TO TREAT ALL DEPOSITORS AS IF THEY
18   WERE INSURED?
19        BECAUSE IN READING THE CODE, IT LOOKS AS THOUGH THE FDIC
20   CAN ONLY PAY FROM THE DEPOSIT INSURANCE FUND, MEANING IT WOULD
21   ONLY PAY INSURED AMOUNTS.
22        IT ALSO -- I'M ALSO CONCERNED, AND I KEPT LOOKING THROUGH
23   THE DOCUMENTS, AND I THINK I HAD COME TO THE UNDERSTANDING
24   WHICH IS IN LINE WITH WHAT THE FDIC IS SAYING, THE SECRETARY OF
25   THE TREASURY, IT SEEMS TO ME, ACTUALLY HAS A VERY LIMITED ROLE
```

1    IN THIS ENTIRE CIRCUMSTANCE.  IT IS HER AUTHORITY WITH THE

2    ADVICE AND APPROVAL OF NOT ONLY THE PRESIDENT OF THE

3    UNITED STATES, BUT ALSO THE FDIC, TO INVOKE THE SYSTEMIC RISK

4    EXCEPTION.  BUT IT SEEMS TO ME IN READING THE CODE AND IN

5    READING SECTION 1823, THAT THE BEGINNING AND END OF HER

6    AUTHORITY IS TO RELEASE THE FDIC FROM ITS LEAST COST RESOLUTION

7    OBLIGATION AND HOW THE FDIC THEN PROCEEDS IS LEFT TO ITS

8    DISCRETION.  THAT'S WHAT IT SEEMS LIKE TO ME.

9        AND SO THAT THEN ADDRESSES A BROAD SWATH OF ARGUMENTS MADE

10    BY THE PLAINTIFF HERE THAT THERE WAS SOMEHOW A MANDATE FROM THE

11    SECRETARY OF THE TREASURY TO GUARANTEE PAYMENT TO ALL

12    DEPOSITORS.  WHEN I READ THE PRESS RELEASES, THE SECRETARY

13    DIDN'T ISSUE ANY PRESS RELEASE, THERE WAS A JOINT PRESS RELEASE

14    AND THERE WERE PRESS RELEASES FROM THE FDIC, BUT SHE'S NOT EVEN

15    QUOTED.  SO I DON'T KNOW HOW THERE'S A MANDATE ANYWHERE.

16        I ALSO KEPT LOOKING FOR THE DOCUMENT THAT WOULD SHOW ME

17    THAT THE SYSTEMIC RISK EXCEPTION HAD IN FACT BEEN INVOKED.  AND

18    SINCE THAT WOULD BE A PUBLIC DOCUMENT, YOU DIDN'T GIVE IT TO

19    ME, I HAVE TO PRESUME THERE ISN'T ONE.  IT'S A PROCLAMATION.

20    IT SEEMS LIKE IT'S IN THE ETHER, AND I WAS INTERESTED IN THAT

21    BECAUSE THAT WOULD BE THE ONLY SOURCE OF ANY MANDATE FROM THE

22    SECRETARY, NOT A PRESS RELEASE ISSUED BY THE FDIC.

23        SO TAKING ALL OF THAT, AND I MAY BE WRONG ON THAT, AND

24    MR. SACKS, I WILL WELCOME YOUR HELP ON THAT.  IN LOOKING AT THE

25    NATURE OF THE STATUTORY SCHEME HERE AND THE PROVISIONS IN

1    821(F), AND VERY LITTLE HELP FROM THE CASES, FRANKLY, IT

2    APPEARS TO ME THAT THE DEFENDANTS, THE FDIC, IS CORRECT THAT

3    ANY OTHER CLAIM AGAINST THE FDIC WOULD BE PREEMPTED AND WOULD

4    DEFER TO THIS 821(F) CLAIMS PROCEDURE.  BUT AS YOU CAN SEE,

5    IT'S ALL STACKED ON MY QUESTIONS ABOUT WHETHER THE FDIC IS

6    PAYING, I GUESS WE WILL CALL THEM QUASI-INSURED FUNDS, ONCE THE

7    SYSTEMIC RISK EXCEPTION IS LIFTED.

8         NOW THERE ARE A WHOLE HOST OF OTHER SEPARATE ISSUES ON THE

9    INDIVIDUAL CLAIMS THAT ARE IMPORTANT.  WHAT I WOULD LIKE TO DO

10   IS TO FOCUS ONLY ON THE PREEMPTION ISSUE FIRST AND THEN CIRCLE

11   BACK TO THE OTHER ISSUES BECAUSE I THINK IT'S GOING TO BE A

12   LITTLE CONFUSING TO ME AND I'M TRYING TO UNDERSTAND THIS.

13        AND OF COURSE I DON'T SEE ANY LEAVE TO AMEND IF I FIND

14   PREEMPTION.  I DON'T SEE THAT, BUT OF COURSE WE ALWAYS HAVE TO

15   ADDRESS THAT, BUT I DON'T KNOW WHERE THAT WOULD COME FROM.

16        WITH THE OTHER CLAIMS, I THINK VIRTUALLY ALL OF THEM WOULD

17   BE AMENABLE TO AMENDMENT, BUT WE CAN TALK ABOUT THAT.

18        SO MR. LYTTLE, LET'S START WITH YOU ON THE PREEMPTION

19   ISSUE ONLY.  AND I'M GOING TO START WITH THIS, ALTHOUGH I DON'T

20   THINK THE PREEMPTION ISSUE IS INFECTED BY IT, I STRUGGLED WITH

21   MANY OF YOUR CASE CITATIONS BECAUSE I DIDN'T FIND THEY ACTUALLY

22   REFLECTED WHAT YOUR BRIEF SUGGESTS.  I COULDN'T FIND QUOTED

23   PHRASES, I COULDN'T FIND DIRECT HOLDINGS.  I BELIEVE MR. SACKS

24   POINTS THAT OUT IN HIS BRIEF AS WELL.

25        AND I DON'T KNOW WHETHER YOU USED AI AND DIDN'T READ ALL

1    THE CASES OR WHETHER SOMEONE IN YOUR OFFICE TOOK EXCEPTIONAL

2    LIBERTIES WITH THE CITATIONS, BUT IT WAS DISTURBING TO ME.

3            MR. LYTTLE:  WELL YOUR HONOR, THAT'S NEVER GOOD TO

4    HEAR, I'M SORRY ABOUT THAT.  WE CERTAINLY DID NOT USE AI.  ARE

5    THERE PARTICULAR CASES THAT YOU RECALL THAT JUMP OUT AT YOU?

6            THE COURT:  YEAH.  SO YOU QUOTED FROM THE GECCMC CASE

7    AT 671 F.3D, 1027 AT PAGE 1036, QUOTING A STATUTORY MECHANISM

8    FOR CLAIMS AGAINST THE FDIC BY DEPOSITORS.  BUT THAT CASE

9    WASN'T ABOUT DEPOSITORS, IT WAS ABOUT A THIRD PARTY BENEFICIARY

10   IN A LANDLORD/TENANT ISSUE.  THAT WAS ONE THAT I WAS CONCERNED

11   ABOUT BECAUSE WHAT YOU WERE CITING TO ME LOOKED PRETTY

12   EXCITING, I WANTED TO SEE THAT CASE LAW.  SO THAT'S ONE THAT I

13   NOTED.

14       I NOTED THAT IN THE MCKINLEY V. FDIC AT 807, F.SUPP.2D,

15   PAGE 1, JUMP CITE PAGE 5, YOU ARE QUOTING THAT "THE CORPORATION

16   MAY TAKE OTHER ACTIONS OR PROVIDE ASSISTANCE UNDER THIS

17   SECTION," QUOTING 823(C)(4)(G), IT WAS A FOIA CASE, F-O-I-A, SO

18   THE CASE WASN'T EVEN ABOUT THE ISSUE AT HAND.

19       AND SO I EXPECT THAT WHEN I'M GIVEN A CITATION FOR A

20   STATEMENT OF THE LAW, THAT THE CASE IS ABOUT THAT ISSUE.  THOSE

21   WERE TWO, AND WE CAN MOVE ON, BECAUSE ACTUALLY ON THE

22   PREEMPTION ISSUE, I THINK YOU ARE WINNING.

23           MR. LYTTLE:  YEAH.  SO YOUR HONOR, LET ME JUST

24   QUICKLY.  CERTAINLY WE LOOK AT THAT.  I THINK YOUR HONOR

25   TOUCHED ON IT, THERE IS NOT A TON OF HELPFUL CASE LAW ON THE

1      PREEMPTION ISSUE, SO I THINK PERHAPS WE WERE EXTRAPOLATING, BUT

2      I TAKE YOUR HONOR'S POINT AND WE WILL CERTAINLY BE --

3              THE COURT:  SO LET'S TALK ABOUT THAT.  AND I'M DONE

4      WITH THAT OTHER ISSUE.

5              MR. LYTTLE:  YES, YOUR HONOR.

6              THE COURT:  I AM -- MR. SACKS CORRECTLY IDENTIFIES

7      THE LANGUAGE IN 21(F)AND THE FACT THAT IT IS -- IT INVOLVES

8      PAYMENT OF INSURED DEPOSITS.  I DON'T ACTUALLY THINK YOU

9      QUOTED -- YOU QUOTED SUBSECTION 3 REGARDING -- WITH A PHRASE,

10     "WITH RESPECT TO ANY DEPOSIT."  HOWEVER, THAT WHOLE SENTENCE IN

11     SUBSECTION 3 HAS TO DO WITH THE DISCRETION TO PROMULGATE

12     REGULATIONS.

13          SO YOU'VE TAKEN LIBERTIES, I THINK, WITH HOW BROAD THIS

14     IS, THIS CLAIMS PROCEDURE, WHERE I'M REALLY TRYING TO LOOK AT

15     WHETHER, IN FACT, AS YOU ARGUE IN YOUR REPLY BRIEF, THAT WHEN

16     THE FDIC IS ACTING UNDER THE SYSTEMIC RISK EXCEPTION, IT'S

17     CREATING A QUASI INSURANCE POOL.

18          AND SO I WANT TO KNOW, AM I JUST OFF ON THAT?

19              MR. LYTTLE:  NO, I THINK YOUR HONOR IS EXACTLY RIGHT.

20     I ONCE HEARD FROM YOUR LEARNED COLLEAGUE IN THE NORTHERN

21     DISTRICT, JUDGE DONATO, WHO I TRIED A CASE BEFORE, TO NOT

22     SNATCH DEFEAT FROM THE JAWS OF VICTORY.  SO I DON'T WANT TO DO

23     THAT HERE.  BUT I THINK YOUR HONOR IS CORRECT, I THINK YOUR

24     TENTATIVE RULING IS CORRECT, OBVIOUSLY.

25              SECTION 3 THAT WE CITE IS ABOUT THE RESOLUTION OF

1    DISPUTES.  AND THAT TALKS ABOUT -- IN THE FIRST SENTENCE, IT

2    TALKS ABOUT ANY CLAIM FOR INSURANCE COVERAGE.

3         MR. SACKS AND SVBFG ONLY SITES SECTION 2.  I ACTUALLY HAVE

4    A COPY OF 1821 FOR YOUR HONOR IF YOU WOULD LIKE IT.  IT

5    CERTAINLY LOOKS LIKE YOU HAVE READ IT.

6         THE COURT:  I DIDN'T COPY ALL HUNDRED PAGES OF THAT

7    SECTION.

8         MR. LYTTLE:  YOUR HONOR, I WORKED HARD IN THE HOTEL

9    LOBBY TO COME UP WITH THE ONE PAGE I'VE GOT BUT IT SOUNDS LIKE

10   YOU'VE SEEN IT.  I'D ALSO NOTE THAT IN SECTION 4, IT ALSO TALKS

11   ABOUT ANY CLAIM FOR INSURANCE COVERAGE, AND IN SECTION 5 IT

12   TALKS ABOUT ANY CLAIM FOR INSURANCE COVERAGE.  AND YOUR

13   ANALYSIS OF THE SYSTEMIC RISK EXCEPTION IS EXACTLY RIGHT ON

14   MULTIPLE LEVELS.

15        FIRST, SECRETARY YELLEN, INVOKES IT.  BUT ONCE IT'S

16   INVOKED, ALL IT DOES IS GIVE ENHANCED DISCRETION TO THE FDIC TO

17   PAY DEPOSITS.  AND WHEN THE FDIC IS PAYING DEPOSITS, THAT'S

18   COMING FROM ONE PLACE.  IT'S A FACTUAL MATTER, AND AS ALLEGED

19   IN THEIR COMPLAINT, IT ONLY COMES FROM THE DEPOSIT INSURANCE

20   FUND, OR WHAT WE CALL THE DIF.

21        AND THAT WE HARPED ON AND YOUR HONOR DIDN'T RAISE THIS,

22   BUT THERE IS A CRITICAL DIFFERENCE HERE BETWEEN FDIC-C

23   CORPORATE AND THE FDIC RECEIVER.  WE SPENT AN HOUR AND TEN

24   MINUTES WITH THE RECEIVER.  ALL THE CORPORATION DOES IS MANAGE

25   THE DEPOSIT INSURANCE FUND AND PAY OUT OF THE DEPOSIT INSURANCE

1    FUND.

2         SO THIS, BY DEFINITION, THEIR CLAIM, AS ALLEGED AND JUST

3    PRACTICALLY SPEAKING, THE WHOLE GRAVAMEN OF THE COMPLAINT IS

4    FOR INSURANCE COVERAGE.  AND SO THAT IS WHAT 1821(F) DOES.  AND

5    CONGRESS WAS VERY CLEAR, VERY CLEAR THAT THIS STATUTORY

6    FRAMEWORK WAS MEANT TO BE COMPREHENSIVE, IT WAS MEANT TO BE

7    EXPENSIVE AND IT WAS MEANT TO CHANNEL ALL CLAIMS ABOUT THIS

8    INTO THAT 1821(F) FRAMEWORK.

9         THE COURT:  SO THE STATUTE ONLY GUARANTEES FUNDS,

10   INSURES FUNDS UP TO $250,000 PER DEPOSIT.

11        MR. LYTTLE:  CORRECT.

12        THE COURT:  SO HERE WE ARE NOT -- THERE IS NOTHING IN

13   THE STATUTE THAT I COULD SEE THAT THEN EXTENDS THE INSURANCE

14   OBLIGATION.

15        SO ARE YOU SAYING THAT THE FDIC HAS THE DISCRETION TO DEEM

16   THE FUNDS INSURED FOR PURPOSES OF DEALING WITH THE BANK FAILURE

17   UNDER THE SYSTEMIC RISK EXCEPTION.

18        MR. LYTTLE:  EXACTLY.

19        THE LOWEST COST RESOLUTION REQUIREMENT IS THERE TO SAY

20   FDIC-C, WHEN YOU ARE RESOLVING THE BANK, YOU'VE GOT TO RESOLVE

21   IT AT THE LOWEST COST TO THE DEPOSIT INSURANCE FUND.  THAT

22   KEEPS THINGS CAPPED AT 250.

23        WHEN THE SRE IS INVOKED, IT THEN GIVES THE FDIC DISCRETION

24   TO GO ABOVE THAT BECAUSE YOU NO LONGER HAVE TO COMPLY WITH

25   THESE COSTS.

```
 1              THE COURT:  AND IS IT STILL CONSIDERED INSURANCE?
 2         BECAUSE MR. SACKS MAKES A VERY STRONG ARGUMENT IN HIS
 3    OPPOSITION THAT THE 821(F) IS NOT DESIGNED TO ADDRESS THE
 4    SPECIFIC CLAIM IN THIS CASE.  THEY'RE NOT ASKING FOR INSURED
 5    DEPOSIT PAYMENTS, THEY ARE ASKING FOR PAYMENT OF DEPOSITS THAT
 6    WERE PROMISED, GUARANTEED BY THE SECRETARY.  I DON'T THINK THE
 7    SECRETARY -- THE SECRETARY IS A SEPARATE ISSUE THERE, DIFFERENT
 8    ISSUE.
 9              MR. LYTTLE:  SO YOUR HONOR, I THINK MR. SACKS IS ONLY
10    READING ONE PROVISION OF THAT STATUTE.  HE QUOTES SECTION 2,
11    1812(F)(2).  AND AS WE TALKED ABOUT, THE RELEVANT PROVISION ON
12    THE SCOPE, RESOLUTION OF DISPUTE, IS ANY CLAIM FOR INSURANCE
13    COVERAGE.
14              THE COURT:  WHAT IF HE SAYS THIS ISN'T INSURANCE
15    COVERAGE?
16              MR. LYTTLE:  BUT IT HAS TO BE.
17         YOUR HONOR, IT'S COMING FROM THE DEPOSIT INSURANCE FUND,
18    IT'S COMING FROM THE DIF, RIGHT.  HIS OWN CLAIM, RIGHT, THEY
19    FILED AN 1821(F) CLAIM, AND BY STATUTE, THE FDIC --
20              THE COURT:  THEY DID THAT BECAUSE THEY HAD TO.
21         I DON'T THINK THAT THAT'S A CONCESSION ON THE PLAINTIFF'S
22    PART THAT THEY BELIEVE THAT WAS THEIR EXCLUSIVE REMEDY.
23              MR. LYTTLE:  BUT BY STATUTE, WHEN THE FDIC PAYS OUT
24    FUNDS, AND I'M QUOTING HERE, 12 USC 1821(A)(4)(A)(2), THE FDIC
25    MAY ONLY, THE ONLY SOURCE OF FUNDS IS THE DEPOSIT INSURANCE
```

1    FUND.

2         SO WHEN THE FDIC IS PAYING OUT MONEY, WHETHER IT'S FOR

3    "INSURED DEPOSITS OR UNINSURED DEPOSITS," THAT'S A RED HERRING.

4    ONCE THEY DECIDE TO PAY, IT'S COMING OUT OF AND IT CAME OUT IN

5    THIS CASE, THE $22 BILLION WHEN THIS BANK FAILED, OKAY, TO BAIL

6    OUT SVB IN PROTECTING AMERICAN BANKING SYSTEM, FDIC PUT OUT

7    $20 BILLION OUT OF THE FUND, THAT COMES OUT OF THE DEPOSIT

8    INSURANCE FUND.  AND THE FDIC AND CONGRESS HAS SAID THAT IS

9    INCREDIBLY IMPORTANT TO OUR BANKING SYSTEM, RIGHT.  AND SO WHEN

10   YOU HAVE CLAIMS, WE GOT A PROCESS FOR THOSE CLAIMS.

11        IN ADDITION, YOUR HONOR, AS A PRACTICAL CONCERN, IF A

12   CREDITOR OR A DEPOSITOR DOESN'T KNOW IF THEIR CLAIM IS INSURED

13   OR UNINSURED, THEY HAVE TO BE ABLE TO FILE UNDER 1821(F) TO

14   PROTECT THEMSELVES.

15        SO AS A PRACTICAL CONCERN, THE FDIC-C MAY MAKE THE

16   DECISION IT WAS UNINSURED, I'M NOT GOING TO PLAY IT, BUT THEY

17   HAVE TO HAVE A PROCESS TO FILE THAT CLAIM, WHETHER IT'S

18   UNINSURED OR INSURED.  AND THAT PROCESS IS CLEARLY 1821(F), AND

19   CONGRESS CHANNELED EVERYTHING THERE FOR GOOD REASON, AND THAT

20   IS THE ARGUMENT.

21        SO THERE'S NO OTHER PLACE THIS MONEY COULD COME FROM.  AND

22   FRANKLY, ONCE THE SRE IS INVOKED, WHICH IT WAS HERE, THIS

23   DICHOTOMY BETWEEN INSURED AND UNINSURED, IT GOES AWAY, RIGHT.

24   IT'S MEANINGLESS AND IT'S A RED HERRING.

25            THE COURT:  SO THE SYSTEMIC RISK EXCEPTION HAS ONLY

```
1     BEEN INVOKED, I THINK TWICE BEFORE, YOU TOLD ME.

2          MR. LYTTLE:  I BELIEVE THAT'S CORRECT.

3          THE COURT:  AND I ASSUME THAT YOU FOUND NO GUIDANCE

4     IN THE CASE AUTHORITY THERE AS TO THIS KIND OF ISSUE.

5          MR. LYTTLE:  THAT'S CORRECT, YOUR HONOR.

6        WE DID LOOK HARD.  BUT WHEN YOU LOOK HERE, YOU CAN LOOK AT

7     THE SRE STATUTE ITSELF, NOTHING IN THAT STATUTE AUTHORIZES

8     CLAIMS AGAINST THE FDIC OUTSIDE THE 1821(F) PROCESS OR

9     OTHERWISE DISPLACES THAT PROCESS.

10         THE COURT:  I'M LOOKING AT 823 -- 1823; IS THAT

11    CORRECT?

12         MR. LYTTLE:  1823(C)(4)(G) IS MY NOTES, YOUR HONOR.

13    BUT NOTHING IN THERE DISPLACES THAT 1821(F) PROCESS.

14         THE COURT:  IT JUST DOESN'T TALK ABOUT IT.

15         MR. LYTTLE:  IT DOESN'T TALK ABOUT IT, BECAUSE AS YOU

16    NOTED EARLIER, THE DISCRETION STILL VESTS WITH THE FDIC.

17       ALL THE SYSTEMIC RISK EXCEPTION DOES IS SAY, OKAY FDIC,

18    YOU NOW HAVE DISCRETION TO PAY MORE DEPOSITS THAN THE 250 CAP

19    IF YOU WANT TO.  BUT THAT DISCRETION IS STILL WITH YOU, AND THE

20    CHALLENGES TO THAT PROCESS AND TO THE FDIC'S DETERMINATION IS

21    1821(F).  OTHERWISE YOU HAVE EXACTLY WHAT CONGRESS DOESN'T WANT

22    WHICH IS A LITANY OF CLAIMS BROUGHT IN HERE TO TRY TO EVADE

23    THAT VERY CLEAR PROCESS, AND INTERFERING WITH THE FDIC'S

24    IMPORTANT ROLE.

25         THE COURT:  SO I DON'T THINK EITHER OF THE PRESS
```

1    RELEASES THAT I RECEIVED USE THE WORD "INSURANCE."

2         SO IF WE TAKE THIS PRESS RELEASE AS A STATEMENT FROM THE

3    FDIC AND NOT THE SECRETARY, ALL DEPOSITORS OF THE INSTITUTION

4    WILL BE MADE WHOLE, THAT'S WHAT THE PRESS RELEASE SAYS.

5         MR. LYTTLE:  CORRECT.  YOUR HONOR, THAT'S EXACTLY

6    WHAT HAPPENED HERE.  OVER THE WEEKEND.

7         THE COURT:  FOR A TIME.

8         MR. LYTTLE:  YES, BUT THAT CERTAINLY GIVES NO

9    PERPETUAL GUARANTEE THAT YOU WILL ALWAYS HAVE ACCESS TO

10   DEPOSITS.  THERE'S NOTHING IN THERE THAT SAYS THE FDIC RECEIVER

11   CANNOT --

12        THE COURT:  I DON'T THINK THAT'S A PREEMPTION ISSUE,

13   BECAUSE I REALLY DO WANT TO FOCUS ON THIS.

14        IT'S A REALLY IMPORTANT ISSUE, PREEMPTION IS GENERALLY TO

15   BE NARROWLY CONSTRUED, AND SO I'M GOING TO ASK YOU, I'M CALLING

16   THIS SOME KIND OF CONSTRUCTIVE INSURANCE, A GUARANTEE, A

17   PROMISE, I DON'T KNOW THAT THEY ARE ANY DIFFERENT.

18        BUT THOSE ARE MY WORDS, AND YOU'VE GOT TO LIVE WITH THIS

19   IN THE NINTH CIRCUIT, SO I WANT TO MAKE SURE THAT IF I WERE TO

20   ISSUE A RULING SAYING IT'S PREEMPTED BECAUSE THE FDIC WAS

21   EFFECTIVELY PAYING INSURANCE FROM THE FEDERAL DEPOSIT INSURANCE

22   FUND, THAT YOU ARE NOT GOING TO BE LEFT WITH SAYING -- HAVING

23   TO EXPLAIN TO THE NINTH CIRCUIT, WELL IT WASN'T REALLY

24   INSURANCE, SHE DIDN'T MEAN THAT.

25        I NEED TO KNOW FROM YOU WHAT THE STRONGEST ARGUMENT ON

1      PREEMPTION IS BECAUSE THIS CODE SECTION SEEMS TO REALLY BE

2      RELATED TO INSURANCE.

3              MR. LYTTLE:  SO IT IS, AND WE WOULD NOT HAVE THAT

4      ISSUE, BECAUSE YOUR HONOR, THERE IS NO OTHER PLACE THIS MONEY

5      COULD COME FROM OTHER THAN THE DEPOSIT INSURANCE FUND.

6          SO ONCE THE SRE IS INVOKED --

7              THE COURT:  IS THERE ANYTHING IN THE STATUTES ABOUT

8      THE CREATION AND PURPOSE OF THE FUND?

9              MR. LYTTLE:  SURE, ABSOLUTELY.  I THINK WE CITE THAT

10     THE PURPOSE OF THE FUND IS TO STABILIZE THE BANKING SYSTEM,

11     THERE'S ALL SORTS OF STATUTES, HOW IT'S FUNDED, ALL THESE

12     THINGS.  BUT THE BOTTOM LINE --

13             THE COURT:  IS IT GOING TO TELL ME ANYTHING ABOUT

14     WHAT THE FUNDS CAN BE USED FOR?

15             MR. LYTTLE:  YES, THE FUNDS CAN ONLY BE USED FOR --

16             THE COURT:  WHAT STATUTE ARE YOU LOOKING AT?

17             MR. LYTTLE:  LET ME LOOK AT --

18             THE COURT:  BECAUSE I DON'T THINK I HAVE THAT IN

19     FRONT OF ME.

20             MR. LYTTLE:  BY STATUTE, THE FDIC-C CORPORATION MAY

21     ONLY USE THE FUND TO "CARRY OUT ITS INSURANCE PURPOSES."  AND

22     THAT'S 12 USC 1821(A)(4)(A)(II), LITTLE ROMAN TWO.

23             THE COURT:  I DON'T HAVE THAT IN FRONT OF ME.

24             MR. LYTTLE:  I TRIED TO PRINT THAT ONE FOR YOUR HONOR

25     BUT THAT ONE WAS QUITE LARGE, AND THE HOTEL WAS GETTING ANGRY

1    AT ME THIS MORNING.

2         THE COURT:  YES, I LIKE PAPER.  WE WERE TALKING

3    YESTERDAY, WE SAVE PAPER, I ONLY PRINTED IT OUT -- I THINK THIS

4    AFTERNOON WE ARE PRINTING OUT THE WHOLE THING.  THAT'S WHAT I

5    WANT TO LOOK AT IS WHAT THE PURPOSE OF THE FUNDS IS.  AND I

6    THINK YOU'VE GIVEN ME SOMETHING THAT IS WORTH MY LOOKING AT

7    CAREFULLY.

8         MR. LYTTLE:  THE ONLY OTHER POINT I WOULD ADD,

9    YOUR HONOR, I THINK SETTING THIS UP AS A PREEMPTION ISSUE IS

10   CORRECT, IT'S A PREEMPTION ISSUE, BUT IT'S ALSO JURISDICTIONAL.

11   THIS IS A 12(B)(1) CHALLENGE, AND IF IT FALLS UNDER THIS, THERE

12   IS NO JURISDICTION.

13        THE COURT:  I DON'T EVEN EVALUATE THE OTHER ISSUES.

14        MR. LYTTLE:  RIGHT, THERE IS NOTHING TO LOOK AT

15   THERE.

16        AND WHEN I READ SVB'S OPPOSITION, AND OBVIOUSLY THEY WILL

17   SPEAK FOR THEMSELVES, BUT I READ THEM AS ESSENTIALLY AGREEING

18   THAT IF WE ARE RIGHT AND YOU ARE RIGHT ON 1821(F), THAT

19   PREEMPTS THEIR OTHER CLAIMS.

20        THE COURT:  RIGHT.

21        AND THEIR ARGUMENT IS THAT PREEMPTION APPLIES IF THIS IS A

22   CLAIM THAT IS DIRECTLY ADDRESSED BY SUBSECTION F, AND THEY

23   CLAIM THAT THEIRS IS NOT AN INSURANCE CLAIM.

24        MR. LYTTLE:  AGAIN, I THINK THAT'S A CREATIVE

25   PLEADING TO GET AROUND THE STATUTORY STRUCTURE AND TO TRY TO

1    FRANKLY, AVOID THE SETOFF RIGHTS IN THE OTHER CASE THE FDIC-R1

2    HAS.  BUT HERE, THAT MONEY WAS PAID OUT FROM THE DEPOSIT

3    INSURANCE FUND, THAT MONEY WAS AVAILABLE STARTING MONDAY

4    MORNING.  THE FDIC ACTED IN A MATTER OF HOURS ON SUNDAY NIGHT

5    AFTER SECRETARY YELLEN INVOKED IT.

6         THE COURT:  BEFORE THE SECRETARY INVOKED THE

7    EXCEPTION, THESE WERE UNINSURED FUNDS.

8         MR. LYTTLE:  CORRECT.

9         THE COURT:  SO I WOULD HAVE TO SAY THAT UNDER THE

10   STATUTORY SCHEME, WHEN THE FDIC EXERCISES ITS DISCRETION TO PAY

11   ABOVE IT IS $250,000 STANDARD, THAT THEY BECOME INSURED FUNDS

12   IN THAT SPECIFIC INSTANCE.

13        MR. LYTTLE:  THEY ARE PAID OUT OF THE DEPOSIT

14   INSURANCE FUND.

15        THE COURT:  AND SO THEY ARE CONSTRUCTIVELY INSURANCE.

16        MR. LYTTLE:  CORRECT.  THEY ARE PAID OUT OF THAT

17   FUND, THERE IS NOTHING ELSE THEY COULD COME FROM, THAT'S ALL

18   THE FDIC CAN DO.

19        THE COURT:  THE PLAINTIFFS ARGUE THAT FDIC WAS

20   MANDATED TO PAY THESE FUNDS AND THEY ARGUE THAT THE PAYMENT WAS

21   GUARANTEED, AND I DON'T KNOW THAT CALLING THEM "INSURED" VERSUS

22   "GUARANTEED" VERSUS "MANDATED" IS ANY DIFFERENT.

23        MR. LYTTLE:  I DON'T THINK IT IS, YOUR HONOR.  I

24   THINK IT'S A BIT OF A HEAD RED HERRING, I THINK IT'S A

25   DISTINCTION WITHOUT A DIFFERENCE HERE IN THIS CONTEXT.

1          AND I WOULD SAY THAT WHEN WE ARE LOOKING AT THE INTERPLAY

2      BETWEEN SRE AND 1821(F), LET'S ALSO LOOK AT THE SRE AND THE

3      STATUTE THERE.  AND AGAIN, NOTHING IN THAT AUTHORIZES A CLAIMS

4      PROCESS AGAINST THE FDIC OUTSIDE OF 1821(F).  NOTHING DISPLACES

5      THAT.  THERE'S NOTHING IN THAT STATUTE THAT SAYS THAT.

6          SO IT'S STILL IN PLAY, AND IT HAS TO BE BECAUSE IT'S THE

7      ONLY MECHANISM.  AND FRANKLY, YOUR HONOR, I THINK IT'S

8      COUNT 6 -- DID I GET THAT RIGHT?  WE ARE NOT MOVING TO DISMISS

9      THAT.  THAT'S A VALID CLAIM.  WE DON'T THINK IT'S GOING TO

10     SUCCEED AT THE MOTION TO DISMISS STAGE, IT'S GOING TO GO

11     FORWARD AND THEY HAVE THE RIGHT TO ADMINISTRATIVE REVIEW OF

12     THAT DECISION.  THAT'S WHAT 1821(F) SAYS, AND THERE IS NO OTHER

13     PROCESS IN PLAY HERE.

14          THE COURT:  OKAY.  THANK YOU.

15          MR. LYTTLE:  THANK YOU, YOUR HONOR.

16          THE COURT:  GOOD MORNING, MR. SACKS.

17          MR. SACKS:  GOOD MORNING, YOUR HONOR.

18          BEFORE I GET INTO IT, BECAUSE WITH ALL DUE RESPECT, I

19     THINK THIS BEGINS AND ENDS WITH THE LANGUAGE OF 1821(F).  THIS

20     IS NOT A CLAIM FOR INSURANCE, THESE ARE NOT INSURED FUNDS, THEY

21     CAN'T MAKE THEM INSURED FUNDS, AND IT'S PERFECTLY REASONABLE

22     THAT THIS IS NOT SUBJECT TO THE 1821(F) CLAIM.

23          BUT BEFORE WE GET TO THAT, LET ME START FROM THE REVERSE

24     JUST SINCE I HAVE IT IN MIND AND I DON'T WANT TO FORGET IT.

25     YOU WERE JUST TOLD THAT THE USES OF THE FUND WERE LIMITED TO

1    INSURANCE PURPOSES.  I BELIEVE UNDER 1821(A)(4)(A)(II), THAT'S

2    NOT CORRECT, THAT IS SOMETHING THAT THEY MUST USE THE FUND TO

3    CARRY OUT THEIR INSURANCE OBLIGATIONS.

4         BUT IF YOU LOOK AT 1821(A)(4(B), ENTITLED USES, IT SAYS

5    "THE DEPOSIT INSURANCE FUND SHALL BE AVAILABLE TO THE

6    CORPORATION FOR USE WITH RESPECT TO INSURED DEPOSITORY

7    INSTITUTIONS, THE DEPOSITS OF WHICH ARE INSURED BY THE DEPOSIT

8    INSURANCE FUND."

9         THE LIMITATIONS IS THE INSTITUTIONS FOR WHICH YOU CAN

10   BENEFIT USING THIS FUND, IT'S NOT REQUIRED AND LIMITED TO

11   INSURANCE PURPOSES ONLY.  AND I WILL GET TO IT IN A MINUTE, BUT

12   THAT'S OBVIOUS BECAUSE IF YOU LOOK AT PRIOR INVOCATIONS OF

13   SYSTEMIC RISK, THE THREE PRIOR OCCASIONS, NONE OF THEM WERE TO

14   INSURE DEPOSITS OF THE INSTITUTION, THEY WERE TO PROVIDE

15   ASSISTANCE IN CONNECTION WITH TRANSACTIONS RELATING TO THE

16   INSTITUTIONS TO BE GUARANTEED BY THE DEPOSIT INSURANCE FUND.

17        THE DEPOSIT INSURANCE FUND IS AVAILABLE FOR USE UNDER

18   SYSTEMIC RISK FOR PURPOSES TO BENEFIT AN INSTITUTION AND

19   RECEIVERSHIP, IT'S NOT NECESSARILY TO PROVIDE INSURANCE.

20        AND AGAIN, OUR CLAIM IS NOT FOR INSURANCE.  I WILL STATE

21   THAT UNEQUIVOCALLY, NOT FOR INSURANCE.

22        IF YOU LOOK AT EXHIBIT 7 TO OUR COMPLAINT WHICH IS ONE OF

23   THE PRESS RELEASES, AND YOU ASK WHY THERE IS NO DOCUMENT THAT

24   SHOWS WHAT THE SECRETARY DID?  BECAUSE THERE IS A PRIVATE

25   DOCUMENT, IT'S NOT A PUBLIC DOCUMENT, YOUR HONOR, AND WE DIDN'T

1    HAVE IT AT THE TIME, BUT IF YOU LOOK AT THE EXHIBIT 7 WHICH IS

2    ONE OF THE PRESS RELEASES, IT SAYS THE FDIC TRANSFERRED ALL

3    DEPOSITS, BOTH INSURED AND UNINSURED.

4        OURS WAS UNINSURED.  IT DIDN'T BECOME INSURED BECAUSE OF

5    WHAT THE SECRETARY OF THE TREASURY DID, THERE IS NO SUCH THING

6    AS A QUASI INSURANCE FUND.  THE LIMITATIONS OF 1821(F) ARE

7    LIMITATIONS ON WHEN YOU FILE A CLAIM AND IT IS A CLAIM FOR

8    INSURANCE COVERAGE, FULL STOP.  THERE IS NO CASE INVOLVING THE

9    USE OF 1821(F) THAT'S NOT FOR A QUESTION OF WHETHER THE PAYMENT

10   OF AN INSURED DEPOSIT OR WHETHER SOMETHING IS AN INSURED

11   DEPOSIT.  THAT'S NOT WHAT THIS CLAIM IS ABOUT.

12       THE COURT:  SO IT IS VERY DIFFICULT WHEN THE RISK

13   EXCEPTION HAS BEEN INVOKED.

14       MR. SACKS:  I'M GOING TO GET TO THAT, YOUR HONOR.

15       AGAIN, THE THREE PRIOR OCCASIONS, THIS NOTION THAT

16   ANYTHING THAT IS PAID OUT OF THE DIF, THE DEPOSIT INSURANCE

17   FUND, IS SOMEHOW INSURANCE, JUST LOOK AT THE THREE PRIOR

18   OCCASIONS ON WHICH -- WHICH ARE PLEADED IN OUR COMPLAINT, I

19   THINK IT'S PARAGRAPH 38 WE REFERENCE THEM, THAT THIS WAS

20   INVOKED, NONE OF THEM INVOLVE PAYMENT OF DEPOSITS.  THOSE ARE

21   NOT, UNDER NO CIRCUMSTANCES, INSURANCE.  AND THE USE OF

22   SYSTEMIC RISK IS TO PROVIDE ASSISTANCE, NOT TO PROVIDE

23   INSURANCE.

24       INSURANCE IS STATUTORILY LIMITED TO $250,000.  THE FDIC-C,

25   WHILE I DISAGREE WITH ALMOST EVERYTHING IN THEIR LETTER DENYING

1    OUR CLAIM, THE ONE THING THEY DO SAY IS THAT THE LIMIT IS

2    $250,000, AND THEY DIDN'T INCREASE THAT LIMIT.

3        SO NOW YOU ARE SITTING HERE SAYING, WELL WE PAID

4    INSURANCE.  NO, THEY DIDN'T PAY INSURANCE, THEY PAID BUT IT WAS

5    NOT INSURANCE.  AND 1821(F) IS LIMITED TO INSURANCE.

6        LET'S LOOK AT THE LANGUAGE.

7            THE COURT:  THAT'S AN IMPORTANT POINT AND I DO

8    APPRECIATE THAT.

9        BECAUSE I HAVE SOME DISCOMFORT IN CALLING THIS QUASI

10   INSURANCE WHERE THERE IS NOTHING IN THE CODE THAT GIVES ME THAT

11   GUIDANCE.  THAT'S WHY I PRESSED MR. LYTTLE ON WHETHER HE REALLY

12   WANTS TO GO TO THE NINTH CIRCUIT ON THAT.

13           MR. SACKS:  IT'S MADE UP.  IT'S A FABRICATION.  AND

14   THE WHOLE NOTION THAT ANYTHING PAID OUT OF THE DIF IS INSURANCE

15   OR SUBJECT TO 1821(F) IS WRONG.

16       SO FOR EXAMPLE, WOULD THE FDIC GET TO DETERMINE IN ITS

17   CLAIMS PROCESS WHETHER THE SUPPORT GIVEN TO CITIBANK IN THAT

18   PRIOR OCCASION WAS COMPLIED WITH OR NOT?  OF COURSE NOT, THE

19   PROCESS HAS NOTHING TO DO WITH THAT, IT HAS TO DO WITH WHETHER

20   SOMETHING WAS AN INSURED DEPOSIT OR A DEPOSIT THAT IS ENTITLED

21   TO INSURANCE.

22       AND WE ARE NOT CLAIMING INSURANCE, WE ADMIT THIS IS FOR

23   PAYMENT OF UNINSURED DEPOSITS.  AND IF THE SECRETARY OF THE

24   TREASURY HADN'T DONE WHAT SHE DID UNDER 1823(C)(4)(G), WE

25   WOULDN'T BE HERE BECAUSE WE WOULDN'T BE ENTITLED TO THIS MONEY.

```
 1          BUT SHE DID AND WE ARE.
 2                   THE COURT:  SO LET'S TALK ABOUT THAT FOR A SECOND.
 3              SO YES, THE SECRETARY OF TREASURY DID INVOKE THE RISK
 4          EXCEPTION.
 5                   MR. SACKS:  YES.
 6                   THE COURT:  BUT SHE DID NOT -- THERE IS NOTHING IN
 7          THE STATUTE THAT SHOWS THAT THE SECRETARY HAS AUTHORITY TO
 8          DICTATE THE IMPLEMENTATION OF THE RISK EXCEPTION.
 9                   MR. SACKS:  I COULDN'T DISAGREE WITH YOU MORE,
10          YOUR HONOR.
11                   THE COURT:  OKAY GOOD.  WALK ME THROUGH THAT.
12                   MR. SACKS:  YES, I WILL.  IF YOU WANT ME TO START
13          WITH 1823(C)(4)(G), I WILL DO SO.
14              SO IF YOU LOOK AT 1823 (C)(4)(G) -- LET ME FIND MY NOTES
15          ON THAT TOO, IF I COULD, FOR JUST ONE MINUTE.
16              THE SECRETARY OF THE TREASURY IS EMPOWERED TO ACT.  I'VE
17          GOT TO GET THE RIGHT STATUTE IN FRONT OF ME.  OKAY.  THERE WE
18          GO.  "IS EMPOWERED TO ACT."
19                   THE COURT:  LET'S LOOK AT THE LANGUAGE.
20                   MR. SACKS:  YES, THAT'S EXACTLY WHAT I'M GOING TO.
21          "EMERGENCY DETERMINATION BY SECRETARY OF THE TREASURY."  OKAY.
22          AND HERE, THE SECRETARY OF THE TREASURY, IN CONSULTATION WITH
23          THE PRESIDENT, DETERMINES THAT.  AND THEN IT DEFINES IT.  IT
24          SAYS WHAT SHE HAS TO FIND, AND THEN PART TWO IS "ANY ACTION OR
25          ASSISTANCE UNDER THIS SUBPARAGRAPH WOULD AVOID OR MITIGATE SUCH
```

```
1         ADVERSE EFFECTS."

2              YOU HAVE TO DETERMINE WHAT THE ACTION OR ASSISTANCE IS IN

3         ORDER TO DETERMINE WHETHER THEY WOULD MITIGATE THE EFFECTS.

4              AND HERE, YOUR HONOR, WHAT THE RECORD SHOWS -- AND I'M

5         GOING TO GO ON WITH THE LANGUAGE FOR A MINUTE -- BUT WHAT THE

6         RECORD SHOWS IS THAT IN THE PROCESS OF DETERMINING SYSTEMIC

7         RISK, THERE WAS DISCUSSION AS TO WHETHER THERE SHOULD BE A

8         GUARANTEE OF ONLY PARTIAL DEPOSITS, NOT A HUNDRED PERCENT.

9              SO THIS IS NOT AN ON/OFF SWITCH, AND THEY DETERMINED THAT

10        WOULD BE INADEQUATE.  SO THERE WAS A SPECIFIC DETERMINATION

11        THAT WE NEEDED TO GUARANTEE ALL DEPOSITS, AND THAT'S REFERENCED

12        IN THE GAO REPORT ATTACHED TO OUR COMPLAINT WHICH IS

13        STATUTORILY MANDATED TO BE PREPARED UNDER 1823 (G)(4).

14             THE COURT:  SO YOU INDICATED THAT THERE WAS A PRIVATE

15        DOCUMENT.  WHAT DID THE SECRETARY DECIDE?  IN THE SECRETARY'S

16        WORDS?

17             MR. SACKS:  I DON'T KNOW.

18             THE COURT:  AND SO THESE ARE NOT PUBLIC DOCUMENTS?

19             MR. SACKS:  NO.

20             YOUR HONOR, YOU KNOW WE FILED A FOIA CLAIM, NOW WE FILED A

21        SECOND FOIA CLAIM UNDER THE NAME SILICON VALLEY BANK FINANCIAL

22        GROUP, WHICH THEY STILL HAVEN'T COMPLIED WITH AND WE ARE GOING

23        TO BRING A LAWSUIT ON THAT TOO, THEY HAVEN'T COMPLIED WITH

24        THAT, SO THEY CAN'T SAY WE FILED IT UNDER YOUR NAME, EVEN

25        THOUGH THEY KNOW FULL WELL WHO IT WAS FILED ON BEHALF OF.
```

```
 1            THE COURT:  BUT THIS SAYS "ANY ACTION," IT DOESN'T

 2     SAY "SPECIFIC ACTION AUTHORIZED WOULD MITIGATE."

 3            MR. SACKS:  NO.  BUT THAT'S A FAIR READING OF IT,

 4     YOUR HONOR, BECAUSE IT TIES THE DETERMINATION OF THE ACTION,

 5     WHICH IS THE DETERMINATION AND DISCRETION OF THE SECRETARY OF

 6     THE TREASURY AT THE END OF THE DAY, WHICH SHE HAS TO DO AFTER

 7     CONSULTING AND ON THE ADVICE OF BOTH THE FDIC AND THE FEDERAL

 8     RESERVE AND IN CONSULTATION WITH THE PRESIDENT.

 9            THE COURT:  SO YOU WANT ME TO PRESUME, BECAUSE YOU

10     HAVEN'T ALLEGED FACTS, THAT THE SECRETARY DID DEFINE THE ACTION

11     THAT WOULD BE TAKEN UNDER THE INVOCATION OF THE RISK EXCEPTION.

12            MR. SACKS:  THIS IS A MOTION TO DISMISS, YOUR HONOR.

13            THE COURT:  THAT'S RIGHT.

14            MR. SACKS:  AND WE DON'T HAVE THOSE DOCUMENTS AND

15     THIS IS NOT STATUTORY.  AND SO YES, YOU WILL HAVE TO FIGURE

16     THAT OUT AND YOU CAN DETERMINE THAT, BUT WHATEVER HAPPENED

17     HERE, WHAT IS CLEAR IS THIS CAN'T BE AN ON/OFF SWITCH.  IT'S

18     NOT POSSIBLE.

19         LET'S ASSUME YOU HAVE PUBLIC PRONOUNCEMENTS OF WHAT THE

20     FDIC AND THE DEPARTMENT OF THE TREASURY AND THE FEDERAL RESERVE

21     REPRESENTED TO THE COUNTRY TO GET THE COUNTRY TO RELY ON WAS

22     DONE.  WE WILL GUARANTEE PAYMENT OF ALL DEPOSITS INSURED AND

23     UNINSURED.  NOT WE WOULD INSURE THEM, WE WOULD GUARANTEE

24     PAYMENT OF INSURED AND UNINSURED DEPOSITS.  THAT'S WHAT THEY

25     SAID.  ON THIS RECORD, THAT'S WHAT YOU SHOULD PRESUME WAS DONE
```

1    BECAUSE THERE IS NOTHING THAT CONTRADICTS THAT AT THE PRESENT

2    TIME.

3         BEYOND THAT, YOUR HONOR, THAT'S WHAT'S CONTEMPLATED BY THE

4    STATUTE.  THE SECRETARY CAN'T ACT IN A VACUUM, THEY HAVE TO

5    JUSTIFY WHAT WAS DONE TO CONGRESS.  IT'S NOT JUST, I JUSTIFY

6    GIVING THE FDIC -- ADMINISTRATORS AT THE FDIC DISCRETION TO

7    PICK AND CHOOSE AND DO WHAT THEY WANT.

8         LET'S ASSUME, YOUR HONOR, THAT THE SECRETARY OF THE

9    TREASURY HAD DETERMINED, AFTER THIS CONSULTATION, WE SHOULD

10   GUARANTEE HALF OF THE UNINSURED DEPOSITS, WHAT THEY REJECTED IN

11   THE PROCESS, THEY DID, WOULD THE ADMINISTRATORS OF THE FDIC

12   HAVE THE DISCRETION TO PAY A HUNDRED PERCENT OF THE UNINSURED

13   DEPOSITS?  NO.

14        THE COURT:  I GUESS IN MY INITIAL COMMENTS IN READING

15    THIS, IT LOOKED TO ME THAT THE SECRETARY ONLY HAS THIS, AND

16    IT'S MASSIVE AUTHORITY TO INVOKE THE EXCEPTION WHICH THEN

17    PROVIDES ALL THE DISCRETION TO THE FDIC ON HOW TO ADDRESS IT.

18        YOUR ARGUMENT OF THE ANY ACTION OR ASSISTANCE WOULD AVOID,

19   I THINK IT'S A REASONABLE ARGUMENT THAT THAT MEANS THAT HER

20   DECISION HAD TO BE BASED ON ARTICULATED ACTION OR ASSISTANCE.

21        MR. SACKS:  CORRECT.  SHE'S RECITING SPECIFIC ACTION

22    OR ASSISTANCE, AND THE FDIC THEN HAS TO EXECUTE ON THAT, AS

23    DETERMINED.

24        AND IT GOES ON, BECAUSE THAT'S JUST THE -- THE LANGUAGE,

25    THERE IS AN ENABLING STATUTE BECAUSE YOU DON'T KNOW WHAT ACTION

1    OR ASSISTANCE IS GOING TO BE DETERMINED TO BE APPROPRIATE IN

2    ANY PARTICULAR CASE, THIS IS AN EXTRAORDINARY EXCEPTION HERE,

3    BASICALLY.

4              THE COURT:  SURE, IT IS.

5              MR. SACKS:  SO YOU DON'T KNOW.

6         AND AS PRIOR -- IT DOESN'T GET INVOKED FREQUENTLY, AND AS

7    PRIOR INVOCATION SHOW, IT'S DIFFERENT EACH TIME WHAT THEY

8    DETERMINE IS APPROPRIATE.

9         BUT IF YOU GO ON WITH THE STATUTE, IT HAS A WHOLE SERIES

10   OF THINGS THAT MUST BE DONE THAT INCLUDES DOCUMENTING IT.  THE

11   SECRETARY OF THE TREASURY, IF YOU GO ON.

12             THE COURT:  WHERE ARE YOU READING?

13             MR. SACKS:  I'M GOING ON TO (G) -- THESE THINGS ARE

14   SO HARD TO READ.  (C)(4)(G)(3), DOCUMENTATION REQUIRED.  "THE

15   SECRETARY OF THE TREASURY SHALL DOCUMENT DETERMINATIONS UNDER

16   CLAUSE ONE."

17        SO IT'S THE SECRETARY OF THE TREASURY WHO IS DOCUMENTING

18   WHAT IT IS SHE DID, RETAIN THE DOCUMENTATION.  THEN THE GAO,

19   WHICH IS WHAT I REFERENCED AND THAT'S ATTACHED TO OUR

20   COMPLAINT, REVIEW THE DETERMINATION AND REPORT TO THE BASIS FOR

21   THE DETERMINATION.

22        WELL YOU CAN'T MAKE A DETERMINATION -- YOU HAVE TO HAVE A

23   BASIS THAT CONNECTS TO WHAT YOU ARE SAYING YOU SHOULD BE DOING,

24   IT DOESN'T HAPPEN IN A VACUUM, IT'S ALL CONTEXTUAL.  THE

25   PURPOSES FOR WHICH THE ACTION WAS TAKEN, THE LIKELY EFFECT OF

1    THE DETERMINATION.  YOU CAN'T ADDRESS THOSE ISSUES UNLESS THERE

2    IS SPECIFIC ACTION THAT YOU ARE TALKING ABOUT.

3         THIS ISN'T JUST YES, NO, WE WILL INVOKE IT, THE SWITCH

4    GOES ON, THE SWITCH GOES OFF, FDIC ADMINISTRATORS.  THIS IS THE

5    HIGHEST LEVEL OF THE GOVERNMENT AND THEY ARE MAKING PUBLIC

6    STATEMENTS TO THE UNITED STATES.

7         THE IDEA THAT THEY CAN -- THAT ADMINISTRATORS WITHIN THE

8    FDIC CAN DEFY WHAT THE SECRETARY OF THE TREASURY, THE TREASURY

9    DEPARTMENT AND THE FDIC AND THE FEDERAL RESERVE SAY TO THE

10   AMERICAN PUBLIC BECAUSE THEY THINK THEY CAN AND THEY HAVE THE

11   DISCRETION, NOBODY SAID WE ARE -- NOBODY REPORTED WE ARE GIVING

12   DISCRETION TO THE FDIC TO DETERMINE WHAT THEY BELIEVE TO BE

13   APPROPRIATE TO DO TO ADDRESS THE SITUATION, THEY SAID WE ARE

14   GUARANTEEING THE PAYMENT OF ALL DEPOSITS, INSURED AND

15   UNINSURED.

16        AND I THINK YOU HAVE TO, PARTICULARLY ON A MOTION TO

17   DISMISS, ACCEPT THAT AS WHAT IN FACT HAPPENED.

18        THE COURT:  I MEAN, THE PROBLEM WITH PREEMPTION IS

19   THAT WE GENERALLY DON'T DEVELOP FACTS TO DETERMINE IF

20   PREEMPTION APPLIES.

21        MR. SACKS:  I DON'T THINK YOU HAVE TO DEVELOP FACTS

22   BECAUSE I THINK 1821(F), YOUR HONOR, UNDER EVERY SCENARIO,

23   CANNOT APPLY BY ITS TERMS.

24        YOU DO NOT HAVE TO GO -- I UNDERSTAND WHAT YOU ARE

25   WRESTLING WITH, AND I UNDERSTAND THE PROBLEMS, TRUST ME, I'M

1    HAVING SOME OF THE SAME PROBLEMS, NOT LIKE I DEAL WITH THIS ON

2    A DAILY BASIS, SOME OF THE SAME PROBLEMS, BUT IF YOU LOOK AT

3    1821(F) AND THE LANGUAGE, AND THE STATUTORY INTERPRETATION,

4    RULE NUMBER ONE IS YOU INTERPRET STATUTES AS THEY ARE WRITTEN,

5    NOT AS YOU WOULD WANT THEM TO BE WRITTEN OR AS SOMEBODY SAYS

6    THEY SHOULD BE WRITTEN OR AS CONGRESS TODAY MIGHT WANT TO WRITE

7    THEM.

8         AND THIS ONE YOU INTERPRET AS ITS WRITTEN, THE LANGUAGE

9    COULD NOT BE CLEARER.  AND THEY HAVE CITED NOT A SINGLE CASE

10   THAT SHOWS AN 1821(F) PROCESS BEING USED FOR ANYTHING OTHER

11   THAN INSURED DEPOSITS.  AND THEY ADMIT, UNTIL TODAY, THIS QUASI

12   INSURED, THEY HAVE SAID VERY CLEARLY INSURED DEPOSITS ARE

13   $250,000, THIS IS NOT SUBJECT TO THAT.

14        AND IF YOU LOOK AT THE LANGUAGE, THE WHOLE STATUTE,

15   1821(F), ITS TITLED "PAYMENT OF INSURED DEPOSITS."  IN GENERAL,

16   PAYMENT OF INSURED DEPOSITS.  THE CORPORATION, IN ITS

17   DISCRETION, MAY REQUIRE PROOF OF CLAIMS TO BE FILED AND MAY

18   APPROVE OR REJECT SUCH CLAIMS FOR INSURED DEPOSITS.

19        IT DOESN'T SAY YOU CAN REQUIRE A CLAIM FOR AN UNINSURED

20   DEPOSIT.  IT DOESN'T SAY -- IT COULD HAVE SAID A CLAIM FOR

21   ANYTHING THAT'S GOING TO BE PAID FROM THE DIF.  THAT'S NOT WHAT

22   CONGRESS WROTE.

23        AND SO YOU HAVE TO INTERPRET THIS STATUTE AS ITS WRITTEN.

24   AND I UNDERSTAND WHY THEY WANT THIS DISCRETION, BUT THEY DON'T

25   GET THE RIGHT UNDER THIS STATUTE TO REQUIRE US TO FILE A CLAIM.

```
1         IT DOES NOT APPLY.

2              AND KEEP GOING ON.  RESOLUTION OF DISPUTES.  "ANY CLAIM

3    FOR INSURANCE COVERAGE RELATING TO INSURED DEPOSIT OR INSURANCE

4    COVERAGE."  WE ARE NOT ASKING FOR INSURANCE COVERAGE.

5              REVIEW OF THE TERMINATION.  AGAIN, "EACH SECTION REGARDING

6    ANY CLAIM FOR INSURANCE COVERAGE."

7              STATUTE OF LIMITATIONS, "REVIEW ANY CLAIM FOR INSURANCE

8    COVERAGE."

9              THERE IS NO WAY TO STICK THE SQUARE PEG OF A CLAIM FOR

10   UNINSURED DEPOSITS INTO THE ROUND HOLE OF A STATUTORY SCHEME

11   THAT IS LIMITED TO INSURED DEPOSITS.

12             THE COURT:  AND YOU ARE NOT AWARE OF ANY CASE WHERE A

13    DEPOSITOR HAS SUED OUTSIDE OF THE 1821(F)?

14             MR. SACKS:  WELL, I'M SURE DEPOSITORS HAVE SUED THE

15    FDIC-C FOR MANY THINGS OUTSIDE OF 1821(F).  BUT NOT --

16             THE COURT:  BUT NOT THIS RISK EXCEPTION.

17             MR. SACKS:  NO, THAT'S NEVER HAPPENED BEFORE.

18         BUT YOUR HONOR, THERE IS A PERFECTLY GOOD REASON WHY

19   1821(F) WOULDN'T APPLY, BECAUSE THE DETERMINATION IN 1823

20   (C)(4)(G) -- SORRY, IT'S LIKE ALPHABET SOUP -- THE

21   DETERMINATION THERE IS A DETERMINATION BY THE SECRETARY OF THE

22   TREASURY, ULTIMATELY, AND YOU ARE NOT GIVING ADMINISTRATORS AT

23   THE FDIC THE AUTHORITY TO MAKE JUDGMENTS ABOUT WHAT THE

24   SECRETARY OF THE TREASURY DID.

25             SO IF YOU WANTED TO LOOK BEYOND THIS, THERE IS A PERFECTLY
```

1    PLAUSIBLE REASON, IT IS LIMITED AS IT IS, BUT IT IS LIMITED.

2    AND WHO GETS TO DECIDE THIS?  THE COURT GETS TO DECIDE OUR

3    CLAIMS, NOT THE FDIC.

4         AND IT'S JUST SIMPLY WHO DECIDES.  THIS IS NOT SUBJECT TO

5    AN ADMINISTRATIVE PROCESS.  A CLAIM FOR UNINSURED RIGHTS

6    RELATING TO THIS ISN'T DECIDED, JUST AS THOUGH IF CITIBANK OR

7    WACHOVIA IN THOSE PRIOR INSTANCES HAD A PROBLEM AND THEY DIDN'T

8    GET WHAT THEY WERE TOLD THEY WOULD GET AND THEY HAD A RIGHT TO

9    IT, THEY WOULD SUE, THEY WOULDN'T GO TO THE FDIC-C AND FILE AN

10   1821(F) CLAIM, THAT'S NOT WHAT HAPPENS.

11        AND THIS NOTION THAT ANYTHING OUT OF THE DIF IS SUBJECT TO

12   THE PROCESS IS MADE UP AND IT'S NOT WITHIN THE SCOPE OF THE

13   LANGUAGE, YOUR HONOR.

14        THANK YOU.

15        THE COURT:  IN TERMS OF TIMING, I DO WANT --

16   MR. LYTTLE, I DO WANT TO HEAR YOUR REPLY.  I HAVE AN 11:00

17   CALENDAR.  I CAN PUSH THAT A COUPLE OF MINUTES.  HERE'S MY

18   CIRCUMSTANCE, I THINK MR. SACKS HAS MADE SOME VERY STRONG

19   POINTS, SO I THINK I'M GOING TO WANT ARGUMENT ON ALL OF THE

20   INDIVIDUAL CLAIMS.

21        AND I WOULD -- I AM AVAILABLE THIS AFTERNOON.  WOULD YOU

22   ALL BE ABLE TO COME BACK AT 1:30 TO CONTINUE THE ARGUMENT THAT

23   WE ARE CLEARLY NOT GOING TO FINISH IN THE NEXT SEVEN MINUTES?

24        MR. SACKS:  YES, YOUR HONOR.

25        THE COURT:  I'M SORRY TO TAKE SUCH A LONG BREAK, I

```
1        APOLOGIZE.

2                MR. SACKS:  NO, THAT'S OKAY.  NOT A PROBLEM.

3                THE COURT:  MR. LYTTLE?

4                MR. LYTTLE:  SURE, YOUR HONOR.

5                THE COURT:  I DON'T KNOW HOW FAR -- WHETHER YOU HAD

6        FLIGHTS.

7                MR. SACKS:  WE DO.

8                THE COURT:  YOU ALL DO.

9                MR. LYTTLE:  I HAVE TWO YOUNG DAUGHTERS WAITING FOR

10       ME ON VACATION, BUT I WILL SEE THEM ON FRIDAY AT SOME POINT.

11               MR. SACKS:  WE CAN DO THIS ANOTHER TIME IF

12       YOUR HONOR --

13               THE COURT:  SO I WANT TO CONCLUDE THIS ARGUMENT,

14       BUT --

15               MR. LYTTLE:  I WOULD LIKE A CHANCE TO REPLY BEFORE

16       11.

17               THE COURT:  YOU KNOW WHAT MIGHT MAKE SENSE THEN IS TO

18       FINISH AT 11, OR A COUPLE MINUTES AFTER, AND CONTINUE THE

19       ARGUMENT BY ZOOM AT A DATE SOON IN TIME.  I MEAN, IN THE

20       NEXT -- I DON'T KNOW HOW MUCH LONGER --

21               MR. LYTTLE:  JUST UNTIL SUNDAY.

22               THE COURT:  BUT IF WE CAN DO THIS EVEN NEXT WEEK, AND

23       THAT WAY YOU CAN MAKE THAT FLIGHT.

24           WHY DON'T YOU THINK ABOUT THAT IN THE NEXT COUPLE MINUTES

25       AND THEN WE CAN DECIDE.
```

1          MR. SACKS:  I'M ONLY IN L.A., I WOULD BE HAPPY TO

2     COME UP, YOUR HONOR, ANY DAY.  I THINK IT'S BETTER TO ACTUALLY

3     SIT --

4          THE COURT:  WELL I DO, AND IT'S BEEN HELPFUL TO ME

5     TODAY.

6          MR. SACKS:  SO HOWEVER WE DO --

7          THE COURT:  AND MR. LYTTLE IS THE ONE WHO HAS COME

8     ACROSS COUNTRY.

9          MR. LYTTLE:  I'M HAPPY TO COME BACK, YOUR HONOR.

10         THE COURT:  OKAY.  LET ME HEAR YOUR CLOSING THOUGH ON

11    THE PREEMPTION ISSUE.

12         MR. LYTTLE:  OKAY.

13         THE COURT:  MR. LYTTLE, I THINK MR. SACKS MAKES SOME

14    VERY STRONG POINTS.

15         ON THE SCOPE OF THE SECRETARY'S ACTION UNDER SECTION 1823,

16    I'M OPERATING ON SOME INFERENCES BECAUSE THE DOCUMENTS HAVE NOT

17    BEEN PRODUCED.  AND IT CERTAINLY COULD BE THE SITUATION THAT

18    WHEN WE ALL LOOK AT THE DOCUMENTS, IT BECOMES CLEAR THAT THE

19    SECRETARY MANDATED IT BE TREATED AS INSURANCE.  SHE COULD HAVE

20    USED SOME WORDS THAT ARE HELPFUL TO US, WE DON'T KNOW.

21         MR. LYTTLE:  ALL THOSE DOCUMENTS HE'S REFERRING TO,

22    AND I'M NOT SURE WHICH ONES ARE IN HIS MIND, BUT THEY ARE ALL

23    PART OF THE ADMIN RECORD WHICH WOULD BE BEFORE THIS COURT ON AN

24    1821(F) CLAIM.

25         SO I DON'T THINK THIS COURT IS DEPRIVED OF ANY INFORMATION

```
1       BY CORRECTLY APPLYING A JURISDICTIONAL --

2               THE COURT:  BUT I DON'T KNOW MR. SACKS HAS IT NOW.

3               MR. LYTTLE:  I THINK HE'S REFERRING TO SOMETHING IN

4       THE ADMIN RECORD, BUT HE CAN CLARIFY THAT.

5               THE COURT:  I DON'T KNOW THAT YOU WILL BE GIVING THAT

6       IN THE ADMINISTRATIVE RECORD.

7               MR. LYTTLE:  WE HAVE ALREADY PRODUCED THE

8       ADMINISTRATIVE RECORD.

9               THE COURT:  OKAY.  AND HE STILL HAS A FOIA REQUEST.

10          YOU PRODUCED DOCUMENTS FROM THE SECRETARY UNDER HER

11      INVOCATION OF THE SYSTEMIC RISK EXCEPTION AND HER DISCUSSION OF

12      AND REPORT ON THE MEASURES TAKEN?

13              MR. LYTTLE:  THERE IS NO SUCH DOCUMENT, YOUR HONOR.

14              THE COURT:  WELL THE SECRETARY IS REQUIRED TO

15      DOCUMENT ANY DETERMINATION UNDER CLAUSE 1 AND RETAIN THE

16      DOCUMENTATION FOR REVIEW, SO SHE DIDN'T VIOLATE THAT, I'M SURE.

17              MR. LYTTLE:  MY UNDERSTANDING, YOUR HONOR, I'M

18      TALKING TO MY COLLEAGUE, IS THERE IS NO DOCUMENT ON THAT.

19          IT'S NOT IN THE FDIC'S POSSESSION.

20              THE COURT:  OKAY.  THAT'S A DIFFERENT STANCE.

21              MR. LYTTLE:  THANK YOU.  I WANT TO CLARIFY FOR

22      YOUR HONOR.

23              THE COURT:  WELL I GUESS, MR. SACKS, YOU MAY NEED THE

24      FOIA REQUEST FROM THE SECRETARY OF THE TREASURY.

25              MR. SACKS:  OR WE CAN JUST SERVE A DISCOVERY REQUEST,
```

```
1    YOUR HONOR.

2            MR. LYTTLE:  I'M NOT SURE HOW RELEVANT THAT IS TO THE

3    OVERLYING SORT OF THRESHOLD JURISDICTIONAL PREEMPTION ISSUE,

4    BUT --

5            THE COURT:  SO I THINK -- YOU KNOW, MR. SACKS MAKES A

6    STRONG ARGUMENT THAT CALLING THIS INSURANCE IN ORDER TO

7    SHOEHORN IT INTO THE 1821(F) IS A MISTAKE, SO THAT'S WHAT I

8    WANT YOU TO ADDRESS.

9            MR. LYTTLE:  SO I DON'T KNOW WHAT ELSE IT COULD BE

10   CALLED, YOUR HONOR.  THESE REMAIN UNINSURED DEPOSITS, BUT THE

11   SRE GIVES THE FDIC-C DISCRETION TO TREAT THEM AS INSURED

12   DEPOSITS.

13           THE COURT:  THEN WHY DID YOU DENY THE CLAIM IN THE

14   FIRST CLAIM WHEN IT CAME IN UNDER 1821(F).  YOU SAID THAT YOU

15   PAID THE INSURED DEPOSITS.  NOW YOU'RE SAYING IT'S INSURED --

16   IF IT'S INSURED, PAY IT.

17           MR. LYTTLE:  THEY HAVE DISCRETION TO TREAT IT.

18        YOUR HONOR, THE FDIC-C MADE THIS MONEY AVAILABLE FOR THREE

19   DAYS.  IT WAS AVAILABLE IN THE BRIDGE BANK.  THERE IS NO

20   DISPUTE ABOUT THAT.  THEY ALLEGE THAT.  IT WAS THEN -- A SETOFF

21   RIGHT WAS ASSERTED BY FDIC-R1, THAT'S THEIR CLAIM AGAINST R1,

22   THEY COULD NOT ASCRIBE LIABILITY TO THE CORPORATION FOR THAT

23   DECISION.

24           THE COURT:  I DON'T DISAGREE WITH YOU ON THAT.  BUT

25   THAT GOES TO THE OTHER CLAIMS THAT THE PLAINTIFFS HAVE ALLEGED
```

1    AND WHETHER THEY ARE VIABLE.  I'M DEALING WITH PREEMPTION,

2    WHICH IS -- AND SO I HAVE TO FIND A WAY UNDER THE STATUTORY

3    SCHEME, IF I AGREE WITH YOU, TO SHOW THAT -- TO DETERMINE THAT

4    THIS CLAIM FOR MONEY ABOVE THE STATUTORY INSURED RATE IS

5    TANTAMOUNT TO INSURANCE, AND I'M NOT SURE I HAVE THAT.

6          MR. LYTTLE:  IF I COULD SPEAK TO THAT, YOUR HONOR.

7        SO SUBSTANTIVELY WHAT THEY WANT, WHAT THIS CLAIM FOR IS

8    THEY WANT CLAIM -- MONEY FROM A FAILED BANK PAID OUT OF THE

9    DEPOSIT INSURANCE FUND.  AND THAT'S WHAT'S CRITICAL,

10   YOUR HONOR.

11       IN PARAGRAPHS 3, 15, 43, 44, 84, AND 107, IN EVERY SINGLE

12   ONE OF THOSE THEY ALLEGE THEY WANT MONEY OUT OF THE DEPOSIT

13   INSURANCE FUND.

14       NOW YOUR HONOR, THAT'S INSURANCE COVERAGE.  WHAT ELSE

15   COULD IT BE?  AND MR. SACKS --

16          THE COURT:  MR. SACKS CITED SECTIONS TO ME INDICATING

17   THAT THE FDIC HAS AUTHORITY TO PAY MONEY OUT THAT IS OTHER THAN

18   INSURED FUNDS FROM THE FUND.

19          MR. LYTTLE:  THAT'S RIGHT.  BECAUSE IF YOU LOOK AT

20   WHAT I QUOTED, IF YOU LOOK AT 1821(A)(4)(A)(II), IT SPEAKS IN

21   TERMS OF INSURANCE PURPOSES.  WHAT HE TALKS ABOUT IS PROPPING

22   UP BANKS.  SURE, THAT'S FOR INSURANCE PURPOSES, THAT'S

23   PERMITTED UNDER THE DIF BY THE STATUTE.  BUT WHEN YOU PAY IT TO

24   A DEPOSITOR, LIKE THEY WANT, THEY'RE NOT ANOTHER BANK, THEY ARE

25   A DEPOSITOR THAT LET THIS BANK FAIL AND NOW THEY WANT INSURANCE

1    COVERAGE, WHAT ELSE COULD IT BE, YOUR HONOR?  THEY PLEAD IT'S

2    COMING FROM THE DIF.

3        AND WHEN WE LOOK AT 1821, THE PASSIONATE SPEECH ABOUT

4    TEXTUAL INTERPRETATION APPLIES HERE AS WELL.  1821, SECTION 3,

5    WHICH IS THE SCOPE, TALKS ABOUT THE TERMINATION OF INSURANCE

6    COVERAGE.  1821(4) TALKS IN TERMS OF INSURANCE COVERAGE.  AND

7    1821(5), STATUTE OF LIMITATIONS, TALKS ABOUT DETERMINATIONS OF

8    INSURANCE COVERAGE.

9        WHETHER OR NOT IT'S INSURED OR UNINSURED IS A

10   DETERMINATION OF INSURANCE COVERAGE.  AND 1821(F),

11   UNAMBIGUOUSLY SPEAKS IN TERMS OF INSURANCE COVERAGE AND

12   DETERMINATIONS ABOUT COVERAGE.

13       AND THAT'S PRECISELY WHAT HAPPENED HERE.  AND THAT'S

14   PRECISELY WHAT YOUR HONOR'S REVIEW WOULD BE IN THAT APA CONTEXT

15   BASED ON THAT APA RECORD.

16       NOW IF I COULD, YOUR HONOR --

17           THE COURT:  BUT THE PROBLEM IS THAT IN YOUR AGENCY'S

18   DETERMINATION IT SAID THE INSURED AMOUNT IS $250,000, WE PAID

19   YOU THAT, SO YOU HAVE NO INSURANCE COVERAGE.  THEY CAN'T SAY

20   YOU HAVE NO INSURANCE AND THEN SAY IT'S ALL INSURED SO YOU HAVE

21   TO MAKE THIS CLAIM.  THAT'S THE PROBLEM HERE.

22           MR. LYTTLE:  BUT 1821 SPEAKS -- THAT'S A

23   DETERMINATION OF COVERAGE.  LIKE IF YOU HAVE A CAR WRECK, IS

24   YOUR INSURANCE COMPANY GOING TO COVER YOU OR NOT.  WHETHER OR

25   NOT YOU ARE INSURED OR UNINSURED IS A SEPARATE DETERMINATION

1       FROM WHETHER OR NOT THERE IS COVERAGE.

2               THE COURT:  YOU ARE ARGUING THAT THERE IS NO CLAIM TO

3       BE MADE BECAUSE YOU ARE SAYING THAT THE CLAIM FOR THE

4       TWO BILLION DOLLARS HAS TO GO UNDER 1821(F).

5               MR. LYTTLE:  CORRECT.

6               THE COURT:  AND THEN WHEN YOU DENIED THE 1821(F)

7       CLAIM --

8               MR. LYTTLE:  CORRECT.

9               THE COURT:  -- YOU SAID, WE ARE SORRY, WE ALREADY

10      PAID YOU THE $250,000.

11          SO YOU HAVE DEFINED, YOUR AGENCY HAS ALREADY DEFINED THE

12      INSURED AMOUNT IN THIS CASE.

13          SO I THINK MY ENTIRE MUSINGS ON WHETHER THIS COULD BE

14      CONSTRUCTIVE INSURANCE IS PROBABLY COMPLETELY INCORRECT UNDER

15      YOUR AGENCY'S OWN PRONOUNCEMENT IN THE DENIAL.  THEY HAVE

16      DEFINED WHAT'S INSURED, AND THEY HAVE NOT EXTENDED IT TO THE

17      TWO BILLION DOLLAR LEVEL.

18              MR. LYTTLE:  CORRECT.  BUT THAT'S A DETERMINATION OF

19      COVERAGE, YES OR NO.  AND 1821(F) SPEAKS OF TERMINATION OF NOT

20      DEPOSITS, IT SPEAKS IN TERMS OF DETERMINATION OF INSURANCE

21      COVERAGE.

22              THE COURT:  I'M SORRY, BUT YOUR ARGUMENT HAS BECOME

23      CIRCULAR BECAUSE IF THERE'S NO COVERAGE BECAUSE OF THE $250,000

24      LIMIT, YOU ARE SAYING YOU HAVE NO CLAIM THAT YOU CAN'T MAKE A

25      CLAIM FOR THE TWO BILLION.

1          MR. LYTTLE:  YOUR HONOR, WE ARE IN HERE, WE ARE NOT

2     MOVING TO DISMISS THE 1821(F) COUNT.  THEY CAN MAKE A CLAIM.

3     THEY ARE IN HERE MAKING THAT CLAIM.

4          THE COURT:  BUT I CAN JUST SEE, YOU ARE GOING TO SAY

5     WE WEREN'T ARBITRATING CAPRICIOUS BECAUSE WE PAID THE $250,000.

6          MR. LYTTLE:  I DON'T WANT TO SPEAK TO THE MERITS OF

7     OUR APA CLAIM, THIS IS A JURISDICTIONAL ISSUE.  THE ONLY ISSUE

8     HERE, AS YOUR HONOR CORRECTLY IDENTIFIED, IS THIS THE ONLY

9     THING YOUR COURT CAN HEAR.  THIS IS THE CHANNELLING MECHANISM.

10    THE FDIC MADE A DETERMINATION OF INSURANCE COVERAGE, 1821(F)

11    TALKS ABOUT INSURANCE COVERAGE, THAT IS WHERE WE GO.

12         NOW IF I COULD TALK BRIEFLY ABOUT THE SRE, BECAUSE I'M

13    COGNIZANT OF MY TIME.

14          THE COURT:  OKAY.

15          MR. LYTTLE:  THANK YOU, YOUR HONOR.

16         SO IT IS A CIRCUIT BREAKER, RIGHT, IT IS AN ON/OFF SWITCH.

17    THE SRE, ONCE INVOKED, 1823(C)(4)(G) THAT WE TALKED ABOUT, MAY

18    BUT NOT NEED TO TAKE ACTION.  AND OTHER PROVISIONS OF THAT

19    STATUTE ARE CLEAR THAT ANYTHING AUTHORIZED IS UP TO THE FDIC'S

20    DISCRETION.

21         SO I'M TALKING ABOUT 1823(C)(1), TALKS ABOUT THE FDIC'S

22    DISCRETION.  1823(C)(1), (C)(2)(A), (C)(3), (D)(4), (H) AND

23    (K)(1)(A)(I).  EVERY ONE OF THOSE TALKS ABOUT ONCE THE CIRCUIT

24    BREAKER GOES ON, IT'S UP TO THE FDIC, IT'S IN THEIR DISCRETION.

25          AND SVB AND MR. SACKS'S ARGUMENT, HE COMPLETELY IGNORES

THOSE PROVISIONS, HE POINTS YOU TO ONE, (C)(4)(F), BUT EVEN

(C)(4)(F) IS ANOTHER DISCRETIONARY PROVISION.  IT SAYS THAT ANY

DETERMINATIONS MADE UNDER THIS SHALL BE MADE IN THE SOLE

DISCRETION OF THE CORPORATION.

SO COLLECTIVELY, YOUR HONOR, NONE OF THIS IMPOSES A

GUARANTEE ON DEPOSITS OR ANYTHING, EVERYTHING REMAINS

DISCRETIONARY, NOT OBLIGATORY.  AND THAT'S WHY IT'S CHANNELED,

THAT'S WHY IT'S APA, THAT'S WHY IT'S ARBITRARY AND CAPRICIOUS,

THAT DETERMINATION OF THAT INSURANCE COVERAGE.

AND ANYTHING, FRANKLY, THEIR VIEW OF THE SYSTEMIC RISK

EXCEPTION WOULD BE COMPLETELY IRRECONCILABLE, THAT THE FDIC HAS

NO DISCRETION, THAT IT'S A MANDATE.  THERE IS NOTHING IN THE

STATUTE THAT SAYS THAT, IT'S SAYS JUST THE OPPOSITE, IT SAYS IT

REMAINS IN THE FDIC DISCRETION.  AND THEIR POSITION IS

COMPLETELY IRRECONCILABLE WITH THE TEXT OF THAT STATUTE.

THE COURT:  SO I DON'T LIKE SUPPLEMENTAL BRIEFING

BECAUSE I GET PLENTY, I NEED SOME MORE HELP ON THIS.  AND I

THINK YOU CAN BEST DO IT IN SOME FAIRLY SHORT SUPPLEMENTAL

BRIEFS, BUT THEY ARE ONLY HELPFUL TO ME IF I CAN GET THEM IN

ONE WEEK.  IF YOU ARE NOT AVAILABLE IN ONE WEEK, THEN I WILL

JUST DO IT ON MY OWN.

MR. LYTTLE:  WE ARE HAPPY TO DO THAT, YOUR HONOR.

THE COURT:  I NEED MORE HELP ON THE STATUTORY SCHEME,

THE INVOCATION OF THE RISK EXCEPTION, WHAT THE SECRETARY'S ROLE

IS, WHAT THE CORPORATION'S ROLE IS, THE CORPORATION, THE EXTENT

1      OF THE CORPORATION'S DISCRETION, BECAUSE THAT'S WHERE THE

2      PREEMPTION IS GOING TO LIVE HERE.  I KNOW WHAT THE CLAIM WAS,

3      THAT IT WAS MADE, AND WHAT THE REJECTION OF IT WAS, BUT I NEED

4      SOME MORE HELP ON THAT.

5           AND I THINK YOU'VE HELPED ME BY GOING THROUGH IT WITH ME

6      HERE BUT I THINK YOU ARE GOING TO DO -- IT WILL HELP ME MORE IF

7      I CAN ACTUALLY SEE IT IN A RELATIVELY SHORT SUPPLEMENTAL BRIEF.

8           MR. SACKS?

9                MR. SACKS:  THAT'S FINE, YOUR HONOR.

10     I ASK THOUGH INSTEAD OF NEXT THURSDAY, NEXT FRIDAY?

11               THE COURT:  FRIDAY IS FINE.

12               MR. SACKS:  WE ARE GOING TO BE IN COURT ON THURSDAY.

13               THE COURT:  FRIDAY IS COMPLETELY FINE, AND THEN WE

14     WILL GET IT.  IF YOU FILE IT AT MIDNIGHT, WE WILL GET IT.

15          OKAY.  SO I HAVE MY ZOOM CASE MANAGEMENT AND THEN I HAVE A

16     12:00.  DO YOU WANT TO COME BACK AT 1:30 OR DO YOU WANT TO COME

17     BACK BY ZOOM OR IN PERSON NEXT WEEK?  IT SOUNDS LIKE NEXT WEEK

18     IS NOT GOING TO WORK FOR YOU.

19               MR. SACKS:  NO, NEXT WEEK WOULD BE FINE, AS LONG AS

20     IT'S MONDAY OR TUESDAY.  I GUESS WE COULD DO IT WEDNESDAY TOO.

21     I JUST HAVE TO FLY TO NEW YORK ON WEDNESDAY AFTERNOON.

22               THE COURT:  WHAT'S WITH YOUR --

23               MR. LYTTLE:  I WOULD JUST PREFER NOT MONDAY, BUT

24     TUESDAY WOULD BE FINE.

25               THE COURT:  AND DO YOU WANT TO DO IT ON ZOOM?  I AM

```
 1      MORE THAN GLAD TO DO THIS ON ZOOM.
 2              MR. SACKS:  I WOULD RATHER DO IT IN PERSON IF WE
 3      COULD.
 4              THE COURT:  YOU'RE THE TRAVELLER.
 5              MR. LYTTLE:  I'M HAPPY -- IF YOU WOULD RATHER DO IT
 6      IN PERSON, I'M HAPPY TO COME.
 7          I DON'T KNOW IF IT MAKES SENSE TO HOLD OFF UNTIL AFTER THE
 8      SUPPLEMENTAL BRIEFING.
 9              MR. SACKS:  THAT'S WHAT I WAS WONDERING.
10          DO YOU WANT US TO DO THE SUPPLEMENTAL BRIEFING AND THEN
11      HAVE US ARGUE IT AFTER THAT?  SO DO IT THE WEEK AFTER THAT?
12              THE COURT:  I'M STARTING TRIAL, SO I CAN'T.  NEXT
13      WEEK IS MY WINDOW.
14              MR. SACKS:  OKAY.
15              THE COURT:  BUT WE ARE DONE WITH THIS.  WE ARE GOING
16      TO MOVE ON TO THE OTHER ISSUES, THAT'S WHY I'M OFFERING IT ON
17      ZOOM.
18              MR. SACKS:  OKAY.  AGAIN, I'M HAPPY TO COME ON
19      TUESDAY IF YOUR HONOR WANTS, OR WEDNESDAY TO ACCOMMODATE
20      MR. LYTTLE.
21              THE COURT:  YOU KNOW, LET'S DO IT ON ZOOM, BECAUSE
22      IT'S A LOT OF WEAR AND TEAR TO TRAVEL ACROSS THE COUNTRY, AND
23      THANK YOU FOR BEING SO GRACIOUS.
24              MR. LYTTLE:  THANK YOU, YOUR HONOR.
25          AND I APPRECIATE YOUR ACCOMODATION THIS AFTERNOON.
```

```
1              THE COURT:  WHY DON'T -- SO WHY DON'T SEE SET THIS ON

2      TUESDAY, THE 16TH.  CAN WE SET IT AT 1:30?

3              MR. SACKS:  SURE.

4              MR. LYTTLE:  YES, YOUR HONOR.  THANK YOU.

5              THE COURT:  OKAY.  THAT'S WHAT WE WILL DO.  YOU CAN

6      MAKE YOUR FLIGHTS TODAY, WHICH I --

7              MR. SACKS:  YOUR HONOR, ON THE SUPPLEMENTAL BRIEFS,

8      IS THERE A PAGE --

9              THE COURT:  YES, I'M GOING TO LIMIT YOU TO FIVE

10     PAGES.

11             MR. SACKS:  DOUBLE-SPACED, FIVE PAGES.

12             THE COURT:  THAT WILL BE PLENTY.

13         BUT I REALLY -- I'M INTERESTED IN THE INTERPLAY OF THE

14     ROLE OF THE SECRETARY.  I WILL TAKE BRIEFING ON ANY ISSUE

15     REGARDING THE PREEMPTION IN YOUR FIVE PAGES.  SO IF YOU REALIZE

16     THERE IS SOMETHING ELSE YOU WANT TO SAY, IT'S FINE.  AND YOU

17     WILL FILE THEM BY FRIDAY, THEY WILL BE SIMULTANEOUS BRIEFING.

18             AND WE WILL BE TOGETHER AGAIN ON TUESDAY, SO IF YOU REALLY

19     HAVE TO SAY SOMETHING IN RESPONSE, YOU CAN SAY IT ORALLY.

20         ALL RIGHT.  THANK YOU ALL.  THIS HAS BEEN REALLY VERY

21     HELPFUL TO ME AND I WILL SEE YOU ON TUESDAY.

22             MR. LYTTLE:  THANK YOU, YOUR HONOR.

23             MR. SACKS:  THANK YOU, YOUR HONOR.

24         (THE PROCEEDINGS WERE CONCLUDED AT 11:09 A.M.)

25
```

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM

15   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

16   MATTER.

17

18

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 7/12/24