```
 1                  IN THE UNITED STATES DISTRICT COURT

 2               FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                          SAN JOSE DIVISION

 4
        SVB FINANCIAL GROUP,            )   CV-23-6543-BLF
 5                                      )
                     PLAINTIFF,         )   SAN JOSE, CALIFORNIA
 6                                      )
                VS.                     )   JULY 16, 2024
 7                                      )
        FEDERAL DEPOSIT INSURANCE       )   PAGES 1-55
 8      CORPORATION,                    )
                                        )
 9                   DEFENDANT.         )
                                        )
10      _____

11                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE BETH LABSON FREEMAN
12                  UNITED STATES DISTRICT JUDGE

13

14      A P P E A R A N C E S:

15      FOR THE PLAINTIFF:     BY:  ROBERT ANDREW SACKS
                                    DIANE MCGIMSEY
16                             SULLIVAN & CROMWELL LLP
                               1888 CENTURY PARK EAST
17                             LOS ANGELES, CA 90067

18      FOR THE PLAINTIFF:     BY:  SVERKER KRISTOFFER HOGBERG
                               SULLIVAN & CROMWELL LLP
19                             550 HAMILTON AVENUE
                               PALO ALTO, CA 94301

20

21                  APPEARANCES CONTINUED ON THE NEXT PAGE

22

23      OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                                     CERTIFICATE NUMBER 13185

24

25              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER
```

1    <u>APPEARANCES CONTINUED:</u>

2    FOR THE DEFENDANT:        **BY:  ERIC LYTTLE**
                              **JONATHAN COOPER**
3                             QUINN EMANUEL URQUHART & SULLIVAN, LLP
                              1300 I STREET NW, SUITE 900
4                             WASHINGTON, DC 20005

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              SAN JOSE, CALIFORNIA                JULY 16, 2024

2                      P R O C E E D I N G S

3         (COURT CONVENED AT 1:41 P.M.)

4              THE COURT:  GOOD AFTERNOON, EVERYONE.  THANK YOU FOR

5    RETURNING TO THIS ZOOM HEARING.  LET'S CALL THE CASE AND GET

6    YOUR APPEARANCES.

7              THE CLERK:  CALLING CASE 23-6543.  SVB FINANCIAL

8    GROUP VERSUS FEDERAL DEPOSIT INSURANCE CORPORATION.

9              COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES, AND

10   IF WE COULD BEGIN WITH PLAINTIFF AND THEN MOVE TO DEFENDANT.

11             MR. SACKS:  SURELY.

12        GOOD AFTERNOON, YOUR HONOR.  ROBERT SACKS FROM SULLIVAN &

13   CROMWELL FOR THE PLAINTIFF.

14             MS. MCGIMSEY:  GOOD AFTERNOON, YOUR HONOR.

15        DIANE MCGIMSEY FROM SULLIVAN & CROMWELL FOR THE PLAINTIFF.

16             MR. HOGBERG:  GOOD AFTERNOON, YOUR HONOR.

17        SVERKER HOGBERG, SULLIVAN & CROMWELL, FOR THE PLAINTIFF.

18             MR. LYTTLE:  GOOD AFTERNOON, YOUR HONOR.

19        ERIC LYTTLE FROM THE FDIC.  I AM HAVING A LITTLE PROBLEM

20   WITH MY VIDEO.  IT DID WORK, I APOLOGIZE, BEFORE THIS HEARING.

21   I CAN MOVE DOWN TO MY COLLEAGUE'S OFFICE AND BE ON VIDEO THERE

22   IF --

23             THE COURT:  I WOULD PREFER TO SEE YOU, THAT WOULD BE

24   EASIER.  SO IF YOU DON'T MIND DOING THAT, THAT WOULD BE GREATLY

25   APPRECIATED.
```

1          MR. LYTTLE:  GREAT.  THEN IF YOUR CLERK COULD PROMOTE

2    MR. COOPER TO PANELIST, AND WE WILL TURN ON HIS CAMERA.

3          MR. COOPER:  I'M ALREADY HERE.

4          MR. LYTTLE:  OKAY.  GREAT.  THANK YOU.

5          MR. COOPER:  GOOD AFTERNOON, YOUR HONOR.

6    JONATHAN COOPER FROM QUINN EMANUEL FOR FDIC AS WELL.

7          THE COURT:  HELLO.

8     ALL RIGHT.  WE WILL WAIT JUST A SECOND FOR MR. LYTTLE TO

9    BE ABLE TO BE ON CAMERA.

10     (PAUSE IN PROCEEDINGS.)

11          MR. LYTTLE:  GREAT.  I THINK I'M GOOD, YOUR HONOR.

12          THE COURT:  OKAY.  AND I HAVE YOUR APPEARANCE

13     ALREADY.

14     ALL RIGHT.  THANK YOU FOR RECONVENING TODAY.  I KNOW I

15    ASKED YOU TO DO IT, YOU DIDN'T HAVE A CHOICE, BUT HOPEFULLY BY

16    DOING IT ON ZOOM IT TOOK SOME OF THE BURDEN OFF OF SOME OF YOU

17    WITH LONG TRAVEL.

18     WE SPENT SIGNIFICANT TIME LAST WEEK GOING OVER THE

19    PREEMPTION ISSUE AND I WILL BE GETTING YOUR SUPPLEMENTAL BRIEFS

20    BY THE END OF THE WEEK, SO I'M NOT REALLY EXPECTING TO GO BACK

21    OVER ANY OF THOSE ISSUES BECAUSE I THINK WE HAVE PLENTY TO TALK

22    ABOUT WITH THE OTHER ISSUES.

23     SO IN THE EVENT THAT MR. SACKS'S ARGUMENTS ARE PERSUASIVE

24    THAT THERE'S NO PREEMPTION, THERE'S A LOT OF DETAIL IN THE

25    OTHER CAUSES OF ACTION AND WHETHER THEY GO FORWARD.  PARTLY, I

1    NEED TO DEAL WITH THEM ONE-BY-ONE, BUT THERE IS I THINK ONE

2    OVERARCHING CONCERN I HAVE ABOUT THE PLEADINGS THAT MAY AT THIS

3    POINT INFECT ALL OF THE CLAIMS SOMEWHAT EQUALLY, AND THEN THERE

4    ARE OTHER ISSUES THAT MAY ACTUALLY PRECLUDE SOME OF THE

5    INDIVIDUAL CLAIMS.

6        SO THAT ISSUE THAT I'M MOST CONCERNED ABOUT, AND THEN I

7    WILL GO OVER THE INDIVIDUAL CLAIMS, IS THAT IT APPEARS THAT

8    THROUGH THE PLEADING THAT IT IS THE FDIC RECEIVER THAT ACTED TO

9    BLOCK THE TRANSFER OF SVB FINANCIAL GROUP'S REMAINING FUNDS.

10   AND THE ALLEGATIONS IN THE COMPLAINT ON THE ROLE OF FDIC ARE

11   BASED ON INFORMATION AND BELIEF AND ARE TOO THIN FOR ME TO

12   ACTUALLY FIND THAT FDIC CORPORATION IS PLAUSIBLY CULPABLE FOR

13   THE CONDUCT ALLEGED.

14       AND I REALLY THINK THAT THAT MAY -- IT MAY BE SUBJECT TO

15   AMENDMENT, AND MR. SACKS CAN CURE THAT, BUT I REALLY THINK

16   THAT'S A BIG PROBLEM WITH I THINK VIRTUALLY ALL OF THESE OTHER

17   CLAIMS.

18       SO PUTTING THAT OVERLAY, LET ME JUST WALK THROUGH THE

19   CLAIMS ONE BY ONE.  I THINK THE TURNOVER CLAIM IS THE MOST

20   COMPLEX, YOU'VE DEVOTED THE MOST INK TO ARGUING IT, OF THESE

21   INDIVIDUAL CLAIMS.  AND I'M NOT GOING TO GO INTO DETAIL ON ALL

22   OF THESE ISSUES, AND AS I SAID, I'M INCLINED TO AT LEAST GRANT

23   WITH LEAVE TO AMEND ON THE ROLE OF FDIC, RECEIVER VERSUS

24   CORPORATION.

25       BUT I DO THINK THAT THE CALVIN CASE IS PERSUASIVE TO ME

1    THAT A BANK DEPOSIT IS PROPERTY OF THE ESTATE PAYABLE ON DEMAND

2    AND MAY BE SUBJECT TO TURNOVER.  THE ISSUE REALLY AGAIN BECOMES

3    WHETHER THIS DEFENDANT HAS CUSTODY OF THE ACCOUNT FUNDS.  I

4    DON'T THINK THE ISSUE OF WHETHER THE ACCOUNT FUND IS DISPUTED

5    IS DISPOSITIVE, IT REALLY HAS TO DO WITH THE CIRCUMSTANCES THAT

6    I TAKE FROM THE PLEADING ITSELF, NOT FROM ANYTHING FDIC IS

7    TELLING ME OUTSIDE THE PLEADINGS.

8        SO I THINK THAT IT IS A CLAIM THAT CAN BE MADE UNDER THESE

9    CIRCUMSTANCES, BUT I'M VERY CONCERNED THAT REALLY WHAT -- THE

10   ONLY THING WE ARE SHOWING IS THAT THE LIABILITY REMAINS WITH

11   FDIC IN ITS RECEIVERSHIP CAPACITY.

12       ON THE AUTOMATIC STAY ISSUE, AGAIN I THINK THE ROLE OF

13   FDIC RECEIVER AS TAKING THE MONEY FROM BRIDGE BANK MAY LEAVE

14   THE PLEADINGS BARE ON THIS DEFENDANT'S RESPONSIBILITY FOR THE

15   ALLEGED CONDUCT.

16       BUT I'M VERY DOUBTFUL ABOUT THIS CLAIM.  I DON'T SEE --

17   I'M NOT REALLY UNDERSTANDING, I THINK MAYBE I DISAGREE THAT A

18   REFUSAL TO PAY OVER THESE FUNDS ON DEPOSIT VIOLATES THE

19   AUTOMATIC STAY.  AND I DON'T THINK THE FACTUAL SITUATION IS

20   LIKE ANYTHING THAT YOU PROVIDED ME IN THE CASES YOU CITED, SO

21   I'M DOUBTFUL ABOUT THIS CLAIM, BUT EVEN IF IT GOES FORWARD, I

22   DON'T HAVE ENOUGH PLEADINGS AGAINST THIS DEFENDANT.

23       ON THE STANDALONE ADMINISTRATIVE PROCEDURE ACT CLAIM, I

24   DON'T THINK THAT A FINAL AGENCY ACTION HAS BEEN PLED THAT IS

25   SEPARATE FROM THE APA CLAIM IN THE SIXTH CAUSE OF ACTION, THAT

1    BEING THE DENIAL OF THE CLAIM, AND SO IT WOULD BE DUPLICATIVE.

2    I DON'T THINK IT'S PLAUSIBLY BEEN ALLEGED THAT THE FDIC HAD

3    ADOPTED A POLICY OF PICKING AND CHOOSING WHO THEY WOULD ALLOW

4    TO TAKE THEIR FUNDS OUT OF THE NEW BANK.  SO -- AND AGAIN, THE

5    FDIC RECEIVER ARGUMENT COMES UP AGAIN.

6        SO THE ESTOPPEL CLAIM, THE PLAINTIFF HAS CLARIFIED THIS IS

7    A CLAIM FOR PROMISSORY ESTOPPEL, THAT WAS HELPFUL, THANK YOU.

8    AND IT APPEARS TO ME THAT THE ONLY ARGUMENT THAT FDIC PUTS

9    FORTH IS THAT THERE IS NO WAIVER OF SOVEREIGN IMMUNITY.  BUT I

10   DISAGREE WITH THAT, I THINK MR. SACKS HAS ACCURATELY LAID OUT

11   THE CASE LAW.  THE STATUTE 12 USC SECTION 1819 DOES HAVE A SUE

12   AND BE SUED CLAUSE WHICH HAS BEEN INTERPRETED IN WOODBRIDGE

13   PLAZA TO BE A WAIVER OF SOVEREIGN IMMUNITY.  SO I WOULD

14   PROBABLY DENY THAT CLAIM.

15       AND THE LAST CLAIM FOR DECLARATORY JUDGMENT, IF ALL THE

16   REST OF THESE GO FORWARD, I'M NOT GOING TO TRY TO EVEN FIGURE

17   OUT WHY THAT ONE WOULDN'T, I THINK THAT ONE WOULD BE FINE.

18   IT'S A FOLLOW-ON CLAIM, I DON'T THINK IT ADDS ANYTHING.  AND IN

19   A CASE LIKE THIS, THAT'S NOT GOING TO BE DECISIVE, ULTIMATELY.

20       SO I THINK I'VE COVERED EVERYTHING AT A VERY HIGH LEVEL

21   JUST TO GIVE YOU A SENSE OF MY CONCERNS.

22       AND SO MR. LYTTLE, THIS IS YOUR MOTION SO I'M GOING TO LET

23   YOU START.

24       MR. LYTTLE:  SO THANK YOU, YOUR HONOR.

25       I DON'T THINK I HEARD ANYTHING ON THE DUE PROCESS CLAIM.

1      DID YOU --

2                THE COURT:  OH, I'M SORRY.  YOU ARE RIGHT.

3           WELL THAT SHEET SEEMS TO HAVE DISAPPEARED FROM ME.  THERE

4      IT IS.  SO I THINK THIS CLAIM FAILS ON THE FACT THAT THERE'S NO

5      CONSTITUTIONALLY PROTECTED PROPERTY INTEREST.

6           I DON'T THINK IT'S ENOUGH TO SAY THAT THE SECRETARY OF THE

7      TREASURY'S INVOCATION OF THE SYSTEMIC RISK EXCEPTION CREATED A

8      PROPERTY INTEREST IN WITHDRAWING ALL THE FUNDS.  PART OF IT IS

9      THAT -- AND THIS IS A PROBLEM FOR ME -- IS THAT WE DON'T REALLY

10     KNOW WHAT THE SECRETARY SAID AND DID.  BUT -- AND I APPRECIATE

11     THAT MR. SACKS HAS ARGUED AND SHOWN ME CASE LAW THAT EVEN AN

12     INFORMAL GUIDANCE CAN CREATE A PROPERTY INTEREST OR AN AGENCY

13     POLICY, BUT I'M NOT PERSUADED THAT THE INFORMATION I HAVE ABOUT

14     THE SECRETARY'S ACTION QUALIFIES TO CREATE A CONSTITUTIONALLY

15     PROTECTED PROPERTY INTEREST.

16          BUT EVEN IF WE GOT OVER THAT HURDLE AT THE PLEADING STAGE,

17     I AM CONCERNED THAT THE DUE PROCESS RESPONSIBILITY AGAIN WOULD

18     BE AN FDIC RECEIVER AND NOT THE CORPORATION AND THERE ARE

19     INADEQUATE ALLEGATIONS ABOUT THE CULPABILITY OF THIS DEFENDANT.

20     SO AGAIN, IT ALL COMES DOWN TO THE SAME DEFECT EVEN IN WE GET

21     PAST SOME OF THESE OTHER THINGS.

22          BUT I REALLY NEED TO KNOW MORE ABOUT -- I NEED YOU TO

23     FLESH OUT MORE THAN JUST HAVING FUNDS IN THE BANK, EVEN THOUGH

24     BEFORE THERE IS A BANK FAILURE, ANY DEPOSITOR CAN GO CLAIM

25     THEIR FUNDS AND THEY ARE DUE ON DEMAND.  BUT ONCE THE BANK GOES

```
1          UNDER, IT'S A WHOLE DIFFERENT THING.

2              ALL RIGHT.  MR. LYTTLE, THANK YOU FOR REMINDING ME ABOUT

3      THAT CLAIM.

4                  MR. LYTTLE:  YES.  THANK YOU, YOUR HONOR.  I WAS

5      FURIOUSLY TAKING NOTES, SO I APOLOGIZE IF I REPEAT ANYTHING OR

6      ADDRESS ANYTHING YOU'VE ALREADY ADDRESSED.

7                  THE COURT:  I'VE LAID A LOT OUT THERE.

8                  MR. LYTTLE:  I WAS TRYING TO FURIOUSLY DO IT, AND MY

9      COLLEAGUE JONATHAN HERE WITH ME AS WELL.

10             LET ME TRY TO TAKE THEM IN TURN YOUR HONOR BECAUSE THERE

11     ARE A NUMBER OF THEM.  DOES THAT MAKE THE MOST SENSE, OR DO YOU

12     WANT TO DO THEM ONE AT A TIME?

13                 THE COURT:  NO, I'M GOING TO HAVE YOU GIVE ME YOUR

14     WHOLE ARGUMENT ON THESE CLAIMS AND THEN I WILL TURN TO

15     MR. SACKS.

16             AS ALWAYS, IT'S YOUR MOTION, I WILL GIVE YOU THE LAST

17     WORD.

18                 MR. LYTTLE:  SO ON THE TURNOVER ACCOUNT WE DID

19     IDENTIFY THREE PLEADING DEFECTS.

20             ONE IS THE CLAIM IS DISPUTED, OR IT IS NOT UNDISPUTED, TO

21     USE THE DOUBLE NEGATIVE.  THE NO POSSESSION OF ANY ACCOUNT

22     FUNDS AND OF COURSE NO LEGAL OBLIGATION.

23             I THINK YOUR YOUR HONOR IN YOUR OPENING COMMENTS TALKED

24     ABOUT THE NO POSSESSION.  WE CERTAINLY AGREE WITH YOU.

25     THESE -- BY DEFINITION, THERE IS NO POOL OF MONEY SITTING
```

```
 1      THERE, THESE ARE LEGAL OBLIGATIONS AND LIABILITIES.

 2              THE COURT:  SO I DON'T THINK IT'S BECAUSE THERE IS NO

 3      POOL OF MONEY SITTING THERE, I THINK IT'S BECAUSE OF THE

 4      CONDUCT ALLEGED IN THE COMPLAINT OF THE FDIC-R.

 5              MR. LYTTLE:  CORRECT.  AND OF COURSE NOTHING ALLEGED

 6      AGAINST FDIC-C, BUT ALSO I WOULD NOTE WHEN WE ARE TALKING ABOUT

 7      WHAT'S NOT ALLEGED, WHAT'S NOT ALLEGED HERE AGAINST THE FDIC-C

 8      IS THAT THEY EVER TOOK POSSESSION OF THOSE FOUNDS OR TOOK

 9      CONTROL OF THOSE FUNDS.  THE POSSESSION OR CONTROL OF THOSE

10      FUNDS TRANSFERRED TO THE FDIC.

11              THE COURT:  WELL I THINK YOUR EMPHASIS ON THIS WASN'T

12      A SAFE DEPOSIT BOX THAT WAS FILLED WITH MONEY IS REALLY NOT THE

13      RIGHT ANALOGY HERE.  AND AGAIN, YOU'VE NEVER DEALT WITH THE

14      CALVIN CASE WHICH I THOUGHT WAS PERSUASIVE.

15              MR. LYTTLE:  WELL, YOUR HONOR, LET ME GO BACK TO THE

16      DISPUTED POINT, THE OTHER TWO POINTS THAT I THINK I CAN

17      ADDRESS.  I THINK THOSE ARE ALSO ELEMENTS, EACH ONE OF THESE

18      HAVE TO BE ESTABLISHED.  A TURNOVER CLAIM HERE CAN ONLY STAND

19      IF IT IS UNDISPUTED THAT THE PROPERTY MUST BE TURNED OVER.

20              THE COURT:  WHY IS THE KEESE CASE WRONG?

21              MR. LYTTLE:  I'M SORRY?

22              THE COURT:  IS THE KEESE CASE WRONG?

23              MR. LYTTLE:  I DON'T THINK IT'S WRONG BUT I THINK

24      THERE IS DISPUTE HERE.  SVB ADMITS THERE IS A DISPUTE AS TO

25      WHETHER OR NOT IT HAS TO BE TURNED OVER FOLLOWING SECRETARY
```

1    YELLEN'S TERMINATION, BUT THERE'S ALSO OTHER DISPUTES FROM THE

2    FDIC-C, NAMELY --

3              THE COURT:  BUT THE NINTH CIRCUIT, IN RE KEESE, 671

4    F.SUPP --  I'M SORRY, DISTRICT COURT, BANKRUPTCY COURT,

5    F.SUPP.3D, 1053, THE COURT HOLDS, "WHETHER TURNOVER MOTIONS CAN

6    INVOLVE DISPUTED PROPERTY, IT'S A SUBJECT OF LONGSTANDING SPLIT

7    AUTHORITY.  THE COURT FINDS MORE PERSUASIVE THE DECISIONS OF

8    CALIFORNIA BANKRUPTCY COURTS THAT HAVE CONSIDERED THE SPLIT AND

9    FOUND THAT THE PLAIN LANGUAGE OF SECTION 542 DOES NOT CONTAIN

10   SUCH A LIMITATION.

11        SO I DON'T THINK YOU ADDRESS THAT IN YOUR PAPERS.

12              MR. LYTTLE:  SURE, YOUR HONOR.

13        I GUESS THE KEESE CASE IS TALKING ABOUT A SPLIT OF

14   AUTHORITY, BUT I THINK THERE IS CERTAINLY EXTENSIVE AUTHORITY

15   THE OTHER DIRECTION THAT STILL MUST BE DISPUTED.  IF YOUR HONOR

16   IS INCLINED TO FOLLOW THE KEESE CASE, WE COULD MOVE ON, BUT I

17   THINK THERE IS EXTENSIVE AUTHORITY.

18              THE COURT:  BUT WHEN WOULD THERE EVER BE A TURNOVER

19   CLAIM IF IT'S EASY ENOUGH TO SAY "I DISPUTE IT"?

20              MR. LYTTLE:  WELL THERE CERTAINLY COULD BE A TURNOVER

21   CLAIM, AND OFTEN TIMES -- THIS IS A BANKRUPTCY CONTEXT CLAIM --

22   OFTEN TIMES IT'S NOT DISPUTED, AND THAT'S WHAT THE TURNOVER

23   CLAIM IS MEANT TO BE, IT'S MEANT TO BE A QUICK CLAIM.

24        AND SO THAT'S OUR EXACT ARGUMENT HERE THAT WHEN IT IS

25   DISPUTED, AND WHEN THOSE DISPUTES ARE SERIOUS, AND IN GOOD

1    FAITH, A TURNOVER CLAIM IS NOT THE RIGHT REMEDY.  A TURNOVER

2    CLAIM, BY DEFINITION, IS FOR WHEN THERE REALLY IS NO DISPUTE

3    AND THE ESTATE NEEDS IT.  AND SO I JUST WANTED TO ADD ON THE

4    DISPUTE POINT, THAT SVB, THE HOLDING COMPANY, IDENTIFIES ONE

5    DISPUTE, BUT THERE ARE SEVERAL MATERIAL DISPUTES BEYOND THAT,

6    WHICH IS WHETHER OR NOT ANY DISCOUNT FUNDS ARE OWNED, WHETHER

7    OR NOT THE FDIC-C POSSESSES THOSE, WHETHER OR NOT THERE IS A

8    LEGALLY ENFORCEABLE OBLIGATION TO PAY THOSE, AND WHETHER OR NOT

9    THE FDIC-C ALREADY SATISFIED ANY SUCH OBLIGATION, IF IT

10   EXISTED, BY MAKING THESE AVAILABLE.

11        SO I DO THINK -- I UNDERSTAND THE KEESE CASE, I UNDERSTAND

12   THE HOLDING OF IT, BUT OUR POINT IS IF YOUR HONOR IS INCLINED

13   TO LOOK AT THE OTHER CASES THAT DO TALK ABOUT THE REQUIREMENT

14   FOR DISPUTE, WE THINK THAT IS SIGNIFICANT HERE.

15        I WOULD LIKE TO TURN ON ANOTHER ELEMENT OF THIS, THESE ARE

16   PLEADING ELEMENTS, THRESHOLD ELEMENTS.  AND WE TALKED ABOUT

17   THIS A LITTLE BIT, I WILL TRY NOT TO REHASH OUR DISCUSSION FROM

18   LAST THURSDAY, BUT THE SRE SIMPLY EXPANDS THE AVAILABLE

19   DISCRETIONARY ACTIONS THAT THE FDIC-C MAY TAKE BY FREEING IT

20   FROM THAT LEAST COST RESOLUTION REQUIREMENT.

21        AND WE GO THROUGH 1823 WHICH IS THE PERTINENT STATUTE,

22   1823(C)(4)(F), "ANY DETERMINATIONS MADE UNDER THIS SECTION"

23   WHICH IS 1821(C)(4), "SHALL BE MADE IN THE SOLE DISCRETION OF

24   THE CORPORATION" THAT'S FDIC-C.

25        SO ONCE INVOKED, FDIC-C MAY BUT NEED NOT TAKE OTHER ACTION

1    OR PROVIDE OTHER ASSISTANCE.  THAT'S 1824, THAT'S THE NEXT ONE,

2    (C)(4)(G).  AND THEN WHEN YOU GO THROUGH THE ACTIONS THAT ARE

3    ALLOWED AND PERMITTED UNDER 1823, EVERY SINGLE ONE OF THEM IS

4    EXPLICITLY DEFINED AS DISCRETIONARY.

5         SO YOU'VE GOT 1823(C)(1), "IN ITS SOLE DISCRETION."

6    (C)(2)(A), "IN ITS SOLE DISCRETION."  (C)(3), "MAY."  (D)(4),

7    "IN ITS DISCRETION."  (H), "MAY."  AND(K)(1)(A)(I), LITTLE ONE,

8    "IN ITS DISCRETION."

9         NOW SVBFG IN THEIR PAPERS, THEY COMPLETELY IGNORE THESE

10   DIRECTORY PROVISIONS, AND THE ONLY ONE THEY ADDRESS IS

11   (C)(4)(F), BUT THAT IS IN YET ANOTHER PROVISION THAT DESCRIBES

12   THE FDIC-C'S DISCRETION, IT PROVIDES THAT THEY HAVE SOLE

13   DISCRETION UNDER THAT 1823(C)(4).

14        AND SO YOUR HONOR, WHAT WE SEE IS THE CASE LAW IS CLEAR,

15   THAT WHEN AN OBLIGATION IS DISCRETIONARY, IT DOES NOT CREATE

16   ANY OBLIGATION.  WHEN A MANDATE OR A STATUTORY DIRECTIVE IS

17   DISCRETIONARY, IT DOES NOT CREATE ANY LEGALLY ENFORCEABLE

18   OBLIGATION.

19        SO WHEN WE LOOK HERE, COLLECTIVELY, NONE OF THESE

20   PROVISIONS IMPOSE ANY GUARANTEE ON DEPOSITS OR ANY OBLIGATION

21   TO TAKE ANY PARTICULAR COURSE OF CONDUCT SINCE EVERYTHING THE

22   FDIC-C DOES UNDER 1823 REMAINS DISCRETIONARY, NOT OBLIGATORY,

23   OKAY.

24        AND SO WHEN WE ALSO LOOK AT THE PRACTICAL CONSIDERATIONS

25   HERE, THE FDIC-C AGAIN, AS ALLEGED BY SVBFG ITSELF, IT MET ITS

1    OBLIGATIONS BY TRANSFERRING ALL THOSE OBLIGATIONS TO THE BRIDGE

2    BANK, AND THE HOLDING COMPANY CONCEDES THAT THEY WERE ALREADY

3    GRANTED ACCESS TO THAT MONEY.

4         SO YOUR HONOR WHEN WE LOOK AT A TURNOVER CLAIM JUST FROM A

5    PRACTICAL THING, THERE IS NOTHING MORE FOR THE FDIC TO DO,

6    THERE IS NOTHING MORE FOR IT TO TURN OVER.

7         AS YOUR HONOR NOTED, THE FDIC-R1 AND AS PLEAD BY THE

8    HOLDING COMPANY, THEY EXERCISE THE RIGHT, FDIC-R1, TO CALL

9    THOSE DEPOSIT BACKS.  BUT THAT DOES NOT IMPOSE ANY LEGAL

10   OBLIGATION ON THE CORPORATION TO PAY THE DIF.

11        WE TALKED ABOUT THIS A LITTLE BIT ON THURSDAY.

12             THE COURT:  BUT THAT ALONE MAY BE A REASON -- IT IS

13    THE REASON I'M GOING TO GRANT THIS MOTION AND I WOULD ALLOW

14    LEAVE TO AMEND UNLESS MR. SACKS PERSUADES ME OTHERWISE.

15        BUT WE ARE NOT TALKING ABOUT ME ORDERING TURNOVER NOW, WE

16   ARE TALKING ABOUT WHETHER THERE IS A CLAIM AND WHETHER -- I

17   MEAN, ALL OF THESE ISSUES YOU RAISE WOULD BE SUBJECT TO PROOF

18    BY THE PLAINTIFF.

19             MR. LYTTLE:  CORRECT.  BUT THEY HAVE TO ALLEGE AN

20    ENFORCEABLE OBLIGATION, AND THE CASE LAW IS CLEAR THAT THERE

21    CAN BE NO OBLIGATION WHEN IT IS SOLELY IN THE DISCRETION OF THE

22    AGENCY, WHICH IS WHAT THIS STATUTORY COULD NOT BE MORE CLEAR IN

23    MAKING ALL OF THOSE DECISIONS AND ALL OF THE ACTIONS IN

24    RESPONSE TO THIS SRE INVOCATION, WHEN IT MAKES IT ALL

25    DISCRETIONARY THERE IS NO LEGAL OBLIGATION FOR THEM TO ENFORCE

1    AS PART OF A TURNOVER CLAIM.  SO I JUST WANTED TO ADD THAT.

2         THE COURT:  OKAY.

3         MR. LYTTLE:  CERTAINLY THERE IS NO ALLEGATION, AS

4    YOU'VE NOTED, THAT WOULD TIE THE FDIC-C TO THESE FUNDS OR TO

5    THIS CONDUCT.  BUT INDEPENDENT OF THAT, ANOTHER ELEMENT IS AN

6    OBLIGATION, WHICH IS NOT THERE AND NOT ALLEGED AND NOT

7    AVAILABLE UNDER THE STATUTE.

8         THE COURT:  OKAY.

9         MR. LYTTLE:  SO WITH THAT, I WILL KIND OF MOVE ON TO

10   THE AUTOMATIC STAY, UNLESS THERE'S ANY MORE QUESTIONS.

11        THE COURT:  I GUESS WHAT I'M LOOKING AT HERE, LET'S

12   TAKE THE FDIC OUT FOR A MOMENT.  THIS IS JUST CITY BANK,

13   WHATEVER, I DON'T MEAN THE CITIBANK, IT'S JUST MY LOCAL TOWN

14   BANK HAS MY DEPOSITS IN IT, MY $500,000 AND I GO INTO

15   BANKRUPTCY.  ISN'T THAT -- ISN'T MY ACCOUNT PROPERTY OF THE

16   ESTATE IN BANKRUPTCY?

17        MR. LYTTLE:  THE LIABILITY IS OWED BY THE ESTATE TO

18   YOU, BUT IT'S NOT PROPERTY, THEY ARE NOT HOLDING ANY PROPERTY

19   FOR YOU.  A BANK ACCOUNT IS NOT PROPERTY, IT'S SOLELY A

20   LIABILITY THAT THAT BANK OWES YOU.

21        HERE IT WAS A LIABILITY THAT SVB OWED ITS HOLDING COMPANY.

22   THAT LIABILITY IS NOW, TO YOUR HONOR'S POINT, THAT LIABILITY IS

23   RETAINED BY THE RECEIVERSHIP AND IN THE RECEIVERSHIP BEING RUN

24   BY FDIC-R1.

25        THE COURT:  SO YOU REALLY ARE JUST TELLING ME THAT

1    THE CALVIN CASE IS JUST WRONG.  I KNOW IT'S FROM TEXAS, BUT

2    YOU'RE JUST TELLING ME IT'S WRONG.  IT'S RIGHT ON POINT, THAT'S

3    WHY.

4         MR. LYTTLE:  YES, I THINK IT'S WRONG, AND I THINK THE

5    OTHER POSITIONS WE CITED IN CALIFORNIA AND IN THE NINTH CIRCUIT

6    ARE THE RIGHT APPROACH TO THIS.

7         THE COURT:  OKAY.  OKAY, THANKS.

8         MR. LYTTLE:  SO MOVING ON TO THE AUTOMATIC STAY, I'M

9    LOOKING AT YOUR HONOR'S NOTES, REFUSAL TO PAY IS NOT ENOUGH.

10   WE CERTAINLY AGREE WITH THAT.  WE WOULD JUST ADD FOR THE

11   SIMILAR ARGUMENTS WE HAVE MADE, THAT THERE IS NO PROPERTY

12   INTEREST BEING WITHHELD HERE, IT'S STRICTLY A LIABILITY THAT

13   THE BANK OWED TO THE HOLDING COMPANY AND THAT THE FDIC DID NOT

14   ASSUME, AND THERE IS NO ALLEGATIONS THAT THE FDIC-C ASSUMED IT,

15   IT'S STRICTLY A CLAIM THAT THE HOLDING COMPANY OWES AGAINST THE

16   BANK, AND SO IT'S THE SAME ARGUMENT THERE.

17        AND AGAIN, OF COURSE WE DID MAKE THE ARGUMENT AND I THINK

18   YOUR HONOR NOTED THAT THERE IS NO CAUSE OF ACTION FOR MERELY

19   REFUSING TO PAY FUNDS.  AND I WOULD NOTE FROM MY READING OF

20   THEIR OPPOSITION, I DO NOT SEE SVBFG ADDRESSING THAT.  SO OUR

21   POSITION IS THAT POINT IS BOTH CORRECT AND CONCEDED AT THIS

22   POINT.

23        THE COURT:  OKAY.

24        MR. LYTTLE:  ON THE DUE PROCESS, WE CERTAINLY AGREE

25   THAT THERE IS NO PROPERTY IN THOSE ACCOUNT FUNDS, FOR THE

1    REASONS WE HAVE BEEN DISCUSSING THIS AFTERNOON.  BUT I WANT TO

2    POINT OUT, I THINK TO BE FAIR TO SVBFG, THEY DO ALLEGE A

3    SEPARATE PROPERTY INTEREST.  THEY ALLEGE ONE IN THE ACCOUNT

4    FUNDS, WHICH OUR POSITION IS IT IS NOT A PROPERTY INTEREST FOR

5    THE REASONS WE DISCUSSED, BUT THEY ALSO APPEAR TO ALLEGE A

6    PROPERTY INTEREST IN THE INVOCATION OF THE SRE ITSELF.

7         BUT THE CASE LAW IS CLEAR AND I THINK WE'VE CITED IN OUR

8    BRIEF FOR YOU THAT A BENEFIT IS NOT A PROTECTED ENTITLEMENT OR

9    A PROTECTED PROPERTY INTEREST IF GOVERNMENT OFFICIALS MAY GRANT

10   OR DENY IT IN THEIR DISCRETION.

11        AND I THINK THAT'S WHY WHEN WE JUST -- AND I WON'T REPEAT

12   IT -- BUT THE LITANY OF UNDER THE STATUTE AND UNDER THE SRE,

13   THE LITANY OF CLEAR DISCRETION, SOLE DISCRETION GIVEN TO THE

14   FDIC MEANS THAT IT DOES NOT CREATE ANY PROPERTY INTEREST FOR

15   DUE PROCESS RIGHTS.

16        THE COURT:  SO THAT'S INTERESTING.  I MUST HAVE

17   MISUNDERSTOOD THE PLAINTIFF'S CLAIM.  I DIDN'T SEE A PROPERTY

18   INTEREST IN THE INVOCATION OF THE SRE, RATHER I HAD UNDERSTOOD

19   THAT THE PROPERTY INTEREST WAS -- CAME INTO BEING BECAUSE OF

20   THE INVOCATION, NOT THAT THE INVOCATION ITSELF WAS ITSELF A

21   PROPERTY INTEREST.

22        SO MR. SACKS WILL TELL ME WHAT HIS CLAIM IS.

23        MR. LYTTLE:  YEAH.

24        THE COURT:  BUT I STILL AM NOT INCLINED TO SAY THAT

25   THERE'S ENOUGH ALLEGATION THAT THERE IS AN AGENCY, AND THE

1    AGENCY HERE IS NOT THE SECRETARY OF THE TREASURY, THE AGENCY

2    HERE IS THIS DEFENDANT, THAT THIS DEFENDANT HAS A POLICY OR

3    INFORMAL GUIDANCE THAT IS -- THAT HAS CAUSED -- THAT HAS

4    CREATED PROTECTED PROPERTY.

5            MR. LYTTLE:  SO I CERTAINLY AGREE WITH THAT,

6    YOUR HONOR, BUT I DO THINK THAT'S PROBABLY MORE PERTINENT TO

7    THE STANDALONE ADA CLAIM.  I WAS ATTEMPTING TO ADDRESS THE DUE

8    PROCESS CLAIM AND TRYING TO TAKE THEM IN TURN.  THERE IS A LOT

9    OF OVERLAP.

10           THE COURT:  RIGHT.  MR. SACKS ALLEGES THAT THE

11   INVOCATION OF THE SRE WAS -- CREATED A MANDATORY DUTY IN THE

12   FDIC TO MAKE THE FUNDS AVAILABLE, AND THAT'S WHAT -- THE ACTION

13   BY THE SECRETARY LEAD TO CREATING A PROTECTABLE PROPERTY

14   INTEREST.  THAT'S HOW I UNDERSTOOD IT.

15           MR. LYTTLE:  I THINK THAT'S RIGHT.  I THINK THAT'S A

16   LITTLE BIT DIFFERENT FROM THE ACCOUNT FUNDS PROPERTY INTEREST

17   WHICH THEY HAVE ALSO SEEMED TO HAVE ALLEGED.  WE WERE JUST

18   TRYING TO --

19           THE COURT:  OKAY.  WE WILL HEAR FROM MR. SACKS.

20           MR. LYTTLE:  I THINK EITHER WAY, HOWEVER IT'S FRAMED,

21   THE INVOCATION OF THE SRE OR WHAT THE SRE -- WHAT OBLIGATIONS

22   IT PUT ON TO THE FDIC-C, OUR POINT IS IT CANNOT CREATE A

23   PROPERTY INTEREST FOR A TURNOVER CLAIM AND IT CANNOT CREATE A

24   PROPERTY INTEREST FOR A DUE PROCESS.

25           AND WHEN WE LOOK AT BOOKS ON THE DUE PROCESS, IT'S THE

1    POINT OF -- THE CASE LAW IS CLEAR WHEN THE GOVERNMENT IS ACTING

2    IN A DISCRETIONARY CAPACITY, THAT DOES NOT CREATE AN

3    ENTITLEMENT OR ANY TYPE OF PROPERTY INTEREST.

4        AND THIS STATUTE IS CLEAR THAT IT IS THE FDIC'S

5    DISCRETION.  AND SO GIVEN THAT DISCRETION, THAT UNAMBIGUOUS

6    DISCRETION, THERE IS NO ENFORCEABLE PROPERTY RIGHT, THE

7    DEPRIVATION OF WHICH CAN LEAD TO OR GENERATE OR SUPPORT A DUE

8    PROCESS CLAIM.

9        THE COURT:  SO THAT WHOLE ISSUE OF THE SCOPE OF THE

10   DISCRETION VESTED IN FDIC, I WILL BE DETERMINING ON THE OTHER

11   ISSUE ON THE PREEMPTION, AND I DO APPRECIATE THAT THEY ARE

12   INTERTWINED BUT IF I AGREE WITH THE ARGUMENT YOU ARE MAKING

13   HERE, I WILL HAVE ALREADY AGREED WITH YOU ON THE PREEMPTION,

14   WON'T I?

15       MR. LYTTLE:  I THINK THAT'S RIGHT, YOUR HONOR.  I'M

16   TRYING NOT TO BE TOO DUPLICATIVE, BUT YES THERE IS A LOT OF

17   INTERTWINING.

18       THE COURT:  NO, NO, BUT IF THEY OVERLAP, I APPRECIATE

19   HEARING THAT FROM YOU NOW.

20       MR. LYTTLE:  THEY DO, ABSOLUTELY.

21       THE COURT:  OKAY.

22       MR. LYTTLE:  NOW THE OTHER PIECE OF THE DUE PROCESS

23   CLAIM IS THAT, YOU KNOW, SVB HAS TO ALLEGE, A HOLDING COMPANY

24   HAS TO ALLEGE THAT THEY HAVE BEEN DEPRIVED OF THE MEANINGFUL

25   OPPORTUNITY TO PROSECUTE THEIR CLAIM.  AND I JUST DON'T THINK

1       THEY CAN DO THAT HERE.

2           THEY HAVE SUBMITTED A WRITTEN CLAIM, THEY WERE NOTIFIED

3       THAT A FINAL DETERMINATION WAS BEING MADE, THEY DID NOT AT THAT

4       TIME ASK TO SUBMIT ANY EVIDENCE OR FURTHER ARGUMENT.  THEY THEN

5       RECEIVE THAT FINAL WRITTEN DETERMINATION.  AND I KNOW THEY

6       DESCRIBE IT IN THEIR BRIEF AS SUMMARILY DENIED, BUT THEY ALSO

7       ATTACHED IT, YOUR HONOR PULLED IT OUT AT THE HEARING THURSDAY,

8       IT'S 11 PAGES SINGLE-SPACED, I DON'T THINK IT WAS SUMMARILY

9       DENIED.  AND OF COURSE THEY CAN NOW SEEK REVIEW OF THAT

10      DETERMINATION UNDER THE APA, AND IN FACT ARE DOING SO HERE.

11          AND SO THEY HAVE HAD DUE PROCESS, COURTS HAVE REPEATEDLY

12      RECOGNIZED THAT THIS PROCESS SATISFIES DUE PROCESS.  AND STILL

13      TODAY, EVEN IN THEIR BRIEF, THEY HAVE IDENTIFIED NO EVIDENCE

14      AND NO ARGUMENT THAT THEY WERE NOT ABLE TO PRESENT TO THE

15      FDIC-C IN MAKING ITS DETERMINATION UNDER 1821(F).

16          NOW THEY MAKE SOME VAGUE ASSERTIONS ABOUT ADDITIONAL

17      PROCEDURAL SAFEGUARDS THAT THEY WOULD LIKED TO HAVE SEEN, BUT

18      AGAIN THAT CONTRADICTS THE CASE LAW THAT, ONE, SUGGESTS THIS

19      PROCESS DOES MEET DUE PROCESS; AND TWO, THEY DON'T SPECIFY WHAT

20      IT IS, WHAT PARTICULAR PROCEDURES ARE THEY LACKING.

21          THEY WERE GIVEN AN OPPORTUNITY TO PRESENT THEIR CASE,

22      THEIR CASE WAS HEARD, THEY DIDN'T ASK TO PRESENT ANY ADDITIONAL

23      EVIDENCE, AND THEY STILL TODAY HAVE NOT IDENTIFIED WHAT OTHER

24      EVIDENCE THEY WERE DENIED OR WOULD PRESENT.

25          WITH THAT, YOUR HONOR, I WILL MOVE ON TO THE STANDALONE

1    APA CLAIM, IF THAT'S OKAY.

2              THE COURT:  YEAH.

3              MR. LYTTLE:  SO I THINK YOUR HONOR IS EXACTLY RIGHT,

4    WE DON'T HAVE MUCH MORE TO ADD ON THIS.

5         THEY HAVE TO -- TO DO AN APA CLAIM, THEY HAVE TO IDENTIFY

6    A FINAL AGENCY ACTION.  THE ONLY FINAL AGENCY ACTION ALLEGED

7    HERE IS THE 1821(F) DETERMINATION, WHICH THEY ARE IN THIS

8    COURT, AS IS THEIR RIGHT TO DO, AND WE HAVE NOT MOVED TO

9    DISMISS, THEY ARE IN HERE CHALLENGING THAT.

10        THIS IDEA THAT THERE IS A POLICY, WELL THEY DON'T ALLEGE

11   WHAT THAT POLICY WAS, THEY DON'T ALLEGE THAT IT EXISTS.  AND OF

12   COURSE THE FACTS THEY DO ALLEGE CONTRADICT ANY SUCH POLICY

13   BECAUSE THEY ALLEGE, AND I'M QUOTING FROM PHOTOGRAPH 57 OF

14   THEIR COMPLAINT, "THAT SVBFG WAS TREATED LIKE ALL OTHER

15   DEPOSITORS, AND IT WAS PROVIDED WITH ACCESS TO ALL ITS

16   DEPOSITS."  WELL HOW CAN THAT SUPPORT A POLICY TO TREAT

17   DEPOSITORS DISCRIMINATORILY.  SO THERE IS NO POLICY.

18             THE COURT:  THE POLICY WAS TO THEN RENEGE BEFORE THE

19   ACCOUNT WAS BARE.

20             MR. LYTTLE:  WELL EVEN IF THAT'S A FAIR

21   CHARACTERIZATION OF THE ALLEGATION, THAT AT BEST WOULD BE AN

22   ALLEGATION AGAINST FDIC-R1, THE RECEIVER AS YOU NOTED.

23             THE COURT:  ALL ROADS LEAD BACK TO THAT ISSUE, YEAH.

24             MR. LYTTLE:  AND I THINK WHEN YOU LOOK AT THE

25   WHITEWATER CASE, IT'S RIGHT ON POINT ABOUT THE PLEADING

1        FAILURES HERE FOR A STANDALONE APA CLAIM.  AND IT ABSOLUTELY IS

2        A CRITICAL POINT, IT IS ABSOLUTELY DUPLICATIVE OF THE 1821(F)

3        CLAIM.  THAT'S WHAT'S GOING TO BE DECIDED IN THE 1821(F) CLAIM

4        AND IT'S DECIDED UNDER THOSE VERY SAME EQUITABLE STANDARDS.

5             ON ESTOPPEL, WE APPRECIATED THE CLARIFICATION THAT THEY

6        ARE NO LONGER SEEKING EQUITABLE ESTOPPEL.  IT IS PROMISSORY

7        ESTOPPEL, BUT PROMISSORY ESTOPPEL, IT'S A VALID CLAIM AGAINST

8        PRIVATE PARTIES BUT NOT, IN OUR RESEARCH, AGAINST FEDERAL

9        AGENCIES.  AND WE CITE A LONG LINE OF PRECEDENT THAT HAS

10       REJECTED ESTOPPEL CLAIMS.

11             THE COURT:  BUT NONE OF THEM DEAL WITH THE SUE AND BE

12       SUED CLAUSE, NONE OF THEM THAT YOU CITED.

13             MR. LYTTLE:  BECAUSE THE SUE AND BE SUED CLAUSE DOES

14       NOT ALLOW -- WELL, SO THE SUE AND BE SUED CLAUSE DOES NOT

15       CHANGE THE FACT THAT HERE THERE IS A REGULATION IN PLACE, AND

16       THAT REGULATION IN PLACE DEFINES WHAT THE AGENCY CAN DO AND NOT

17       DO.

18            AND SO THE AGENCY CAN'T BE ESTOPPED FROM FOLLOWING ITS OWN

19       REGULATIONS.  THAT'S WHAT THE SUPREME COURT SAID IN THE MERRILL

20       CASE, FEDERAL DEPOSIT INSURANCE, SO I THINK THOSE ARE NARROW,

21       TO ANSWER YOUR HONOR'S QUESTION, THOSE MORE NARROW HOLDINGS

22       APPLY VERSUS THE SUE AND BE SUED CLAUSE, WHICH ONLY GETS

23       AROUND -- IS MEANT TO GET INTO SOVEREIGN IMMUNITY.  WE ARE NOT

24       ASSERTING SOVEREIGN IMMUNITY HERE.

25             THE COURT:  YES, YOU DID.  IN YOUR PAPERS, YOU DID.

```
 1              MR. LYTTLE:  OKAY.  THANK YOU.  SO THE POINT

 2     THOUGH -- WELL, I THINK THE POINT --

 3              THE COURT:  I THINK ACTUALLY -- SEE THE PROBLEM IS I

 4     THINK THAT'S REALLY THE ONLY ARGUMENT YOU MADE IN ADDITION TO

 5     THE LACK OF CLARITY ON THE FORM OF ESTOPPEL THAT WAS BEING

 6     ALLEGED.  AND WITH MR. SACKS'S CLARIFICATION IT'S ONLY

 7     PROMISSORY ESTOPPEL, THEN I THINK THAT THE WOODBRIDGE PLAZA

 8     CASE MAKES IT VERY CLEAR THAT THAT IS A WAIVER OF SOVEREIGN

 9     IMMUNITY.

10              MR. LYTTLE:  SO WE ARE NOT AWARE, AND SVB HAS -- WE

11     HAVE NOT SEEN ANY CASE THAT HAS ALLOWED, AND WE HAVE LOOKED, A

12     PROMISSORY ESTOPPEL CLAIM TO PROCEED AGAINST THE FDIC.

13              THE COURT:  THEN THIS WILL BE THE FIRST ONE MAYBE.

14              MR. LYTTLE:  COULD BE, BUT THERE ARE TWO EXISTING

15     PROBLEMS WITH THIS CLAIM BEYOND THAT ISSUE OF WHETHER OR NOT

16     THEY CAN EVEN ASSERT IT AGAINST AN AGENCY.  AND THOSE ARE TWO

17     ELEMENTS TO THE PROMISSORY ESTOPPEL CLAIM, BOTH OF WHICH ARE

18     MISSING HERE.

19          ONE, THERE'S NO ALLEGED AFFIRMATIVE MISCONDUCT AGAINST THE

20     GOVERNMENT -- AGAINST THE FDIC-C HERE.  AND YOU LOOK AT THE

21     MUKASEY CASE, I HOPE I'M PRONOUNCING THAT RIGHT, YOU HAVE TO

22     HAVE AN AFFIRMATIVE MISREP OR AFFIRMATIVE CONCEALMENT OF A

23     MATERIAL FACT.  THAT HAS NOT BEEN ALLEGED HERE.

24          THE SECOND POINT IS THEY HAVE NOT ALLEGED THAT THE EFFECTS

25     OF ESTOPPEL HERE WILL NOT UNDULY DAMAGE THE PUBLIC INTEREST.
```

1          THE COURT:  OKAY.  IF I AGREE WITH YOU, THAT WOULD

2     PROVIDE LEAVE TO AMEND.

3          MR. LYTTLE:  AND YOUR HONOR, I JUST WANT TO BE CLEAR,

4     THE MUKASEY CASE, MY COLLEAGUE SAID THAT IS EQUITABLE ESTOPPEL,

5     BUT WE DO CITE CASES IN OUR BRIEF WHERE THE SAME CONCEPT -- I

6     JUST WANT TO BE CLEAR FOR YOUR HONOR -- THE SAME CONCEPT OF

7     REQUIRING AFFIRMATIVE MISCONDUCT IS REQUIRED UNDER PROMISSORY

8     ESTOPPEL.  THAT IS NOT MET HERE, FOR THE REASONS YOU'VE ALREADY

9     TALKED ABOUT.

10         THEY DON'T FRANKLY, IN OUR OPINION, AND I THINK AS

11    YOUR HONOR RECOGNIZED, THERE IS NO ALLEGATIONS OF MISCONDUCT

12    AGAINST FDIC-C OTHER THAN THIS VAGUE ON INFORMATION AND BELIEF.

13         SO THERE IS NO ALLEGATION OF MISCONDUCT AND WHAT

14    ALLEGATIONS THERE ARE CERTAINLY DO NOT RISE TO THE LEVEL OF

15    AFFIRMATIVE MISCONDUCT SUFFICIENT TO WARRANT ANY KIND OF

16    PROMISSORY ESTOPPEL HERE.

17         THE COURT:  OKAY.

18         WELL, YOU KNOW, I AM -- THERE ARE A LOT OF REALLY

19    DIFFICULT ISSUES HERE, AND EVEN IF I WORK THROUGH ALL OF THEM

20    IN THE PLAINTIFF'S FAVOR, I STILL COME BACK TO THIS ESSENTIAL

21    ISSUE THAT IS A THREAD THROUGH ALL OF THESE CLAIMS, IS THE ROLE

22    OF FDIC-R VERSUS FDIC CORPORATION.  SO THAT MAKES THIS ALL

23    DIFFICULT.

24         OKAY.  AND THEN THE DECLARATORY JUDGMENT, I DON'T THINK

25    IT'S REALLY WORTH SPENDING ANY TIME ON THAT.

1          MR. LYTTLE:  I DON'T HAVE MUCH MORE TO ADD, YEAH.

2          THE COURT:  THAT'S NOT DRIVING THIS.

3      OKAY.  ALL RIGHT.  MR. LYTTLE, THANK YOU.

4      MR. SACKS, I THINK YOU KNOW --

5          MR. SACKS:  I KNOW WHERE TO START, YOUR HONOR, AND SO

6  LET ME START RIGHT THERE.

7      AND I APOLOGIZE IF WE HAVE NOT ALLEGED THIS WITH THE

8  REQUISITE SPECIFICITY, BUT LET ME TELL YOU WHAT WE WILL ALLEGE

9  IF YOU GIVE US LEAVE TO AMEND.  AND I'M GOING TO TRY TO BE

10  CAREFUL BECAUSE SOME OF THIS INFORMATION IS GLEANED FROM

11  DOCUMENTS THAT WERE GIVEN TO US PURSUANT TO A PROTECTIVE ORDER.

12          THE COURT:  OKAY.

13          MR. SACKS:  IT ALLOWS THEM TO BE USED IN THIS CASE,

14  BUT SINCE WE ARE ON A PUBLIC -- UNLESS THERE IS NO ONE ON THIS

15  RECORD.

16          THE COURT:  NO, THERE ARE A LOT OF PEOPLE THAT HAVE

17  PARTICIPATED.

18          MR. SACKS:  SO I NEED TO BE CAREFUL WHAT I SAY, AND I

19  WILL TRY TO DO THE BOUNDARIES, AND I WOULD BE HAPPY TO SUBMIT

20  THEM TO YOUR HONOR IF THAT WOULD BE APPROPRIATE, BUT THEY WILL

21  BE IN PART THE BASIS FOR WHAT WE WOULD ALLEGE WITH MORE

22  SPECIFICITY.

23      THIS WAS NOT -- SO LET ME START AT THE BEGINNING.  WE

24  ALLEGE THAT THE MONEY, THE $2.1 BILLION WAS MADE AVAILABLE TO

25  US IN THE BRIDGE BANK.  THE BRIDGE BANK IS NOT THE FDIC-R, IT

1    IS THE FDIC-C.  WE ALLEGE PROPERLY THAT THE BRIDGE BANK IS AN

2    INSTRUMENTALITY OF THE FDIC-C.  THEY CHARTERED IT, THEY OPERATE

3    IT AND THEY MANAGE IT, FULL STOP.  SO THE FUNDS WERE IN THE

4    CUSTODY OF THE FDIC-C WHEN THEY WERE PUT INTO THE BRIDGE BANK.

5         NOW I'M NOT GOING TO GO ARGUE WHEN WE GET TO TURNOVER

6    ABOUT THAT.  I MEAN, CLEARLY THIS IS A DEBT OWED TO SVBFG,

7    BUT -- SO THE FUNDS WERE OUT OF THE RECEIVERSHIP, THEY WERE NOT

8    IN THE RECEIVERSHIP.

9         THEN WHAT HAPPENED?  WHAT HAPPENED WAS THE FDIC-C, NOT THE

10   FDIC-R, WE HAVE LEARNED, THE INDIVIDUAL THAT THEY IDENTIFY AS

11   WORKING FOR THE FDIC-C, AND IT'S HARD SOMETIMES TO TELL WHETHER

12   THEY ARE WORKING FOR THE FDIC OR THE FDIC-R OR BOTH, BUT THE

13   INDIVIDUAL THAT THE FDIC-C HAS IDENTIFIED AS WORKING FOR THE

14   FDIC-C, OVERSEES PUTTING A HOLD ON OUR MONEY.  HE ASKS THAT IT

15   BE DONE, HE DEALS WITH PEOPLE FROM THE FDIC-R ABOUT IT BEING

16   DONE.  HE COMMENDS PEOPLE FOR THE WORK THEY DO ON IT, AND HE

17   ACKNOWLEDGES THAT -- AND THERE IS ACKNOWLEDGEMENT THAT THE

18   MONEY LEFT THE RECEIVERSHIP AND WENT INTO THE FDIC-C'S

19   POSSESSION AT BRIDGE BANK.

20        NOW WHAT HAPPENED BEYOND THAT --

21             THE COURT:  SO THIS IS THE MONEY GOING IN, YOU ARE

22    SAYING THAT THERE'S AN EMPLOYEE OF FDIC-C THAT OVERSAW THE

23    TRANSFER OF THE MONEY FROM SVB TO BRIDGE.

24             MR. SACKS:  NO, NO, I WASN'T CLEAR.  ONCE THE MONEY

25    IS IN BRIDGE, IN THE CUSTODY OF THE FDIC-C, THERE IS AN

1    INDIVIDUAL, MORE THAN ONE INDIVIDUAL, AN INDIVIDUAL AS WELL AS

2    THE PERSON WHO DENIED OUR CLAIM, I WOULD ADD, WHEN WE GET TO

3    DUE PROCESS AND THE LIKE, WHO ARE HEAVILY INVOLVED, AND IN FACT

4    OVERSEEING AND DIRECTING PUTTING A HOLD ON OUR MONEY, PUTTING A

5    HOLD ON OUR ACCOUNTS, OUR ABILITY TO ACCESS OUR MONEY AND

6    WORKING WITH THE FDIC-R TO ASSURE THAT THE MONEY IS LOCKED

7    DOWN.

8        NOW THIS WAS NOT THE ACT OF THE FDIC-R BECAUSE IT WASN'T

9    THEIR MONEY ANYMORE, IT WAS IN THE CUSTODY OF THE FDIC-C.

10       NOW YOU HEARD MR. LYTTLE THE OTHER DAY SORT OF SAY, THIS

11   IS ALL US CREATIVELY PLEADING TO AVOID A SETOFF CLAIM THAT THE

12   FDIC-R WANTS TO MAKE.  WELL I WOULD SUGGEST JUST THE OPPOSITE,

13   THIS IS ALL CREATIVE MANEUVERING BY THE FDIC-C AND THE FDIC-R

14   TO CREATE A SETOFF CLAIM, BECAUSE ONCE OUR FUNDS WERE NO LONGER

15   IN THE RECEIVERSHIP, THE RECEIVER DOESN'T HAVE A SETOFF CLAIM.

16       AND THERE ARE SIGNIFICANT ISSUES AS TO WHETHER THAT

17   VIOLATES VARIOUS RULES, BUT AS TO THIS HERE, THE MONEY WAS IN

18   THE RECEIVERSHIP.  INDIVIDUALS RESPONSIBILE FROM THE FDIC-C

19   WERE HEAVILY INVOLVED IN LOCKING DOWN THAT MONEY.  WHAT DO THEY

20   DO WITH IT?  WELL WE ALLEGE THAT THE FDIC-R ASKS FOR IT BACK.

21   MAYBE THEY GAVE IT BACK AND MAYBE THEY DIDN'T, WHAT WE SEE IS

22   MONEY IS PUT INTO AN -- OR THE RECEIVABLE, THE OBLIGATION OWED

23   TO US IS PUT INTO AN FDIC GENERAL LEDGER ACCOUNT.

24       NOW I DON'T KNOW WHAT THAT MEANS, DISCOVERY IS GOING TO

25   TELL US WHAT THAT MEANS AT SOME POINT, BUT THEY SEEM TO BELIEVE

1    THAT THEY CAN SAY THAT THE FDIC HAD A LEGAL RIGHT OVER OUR

2    RIGHTS AS THE POSSESSOR OF THIS ACCOUNT WITH THIS MONEY IN IT

3    OWED TO US, TO TAKE IT BACK AND THERE IS NOTHING WE CAN DO WITH

4    ABOUT IT.

5        THEY COULDN'T DO THAT WITHOUT THE FDIC SAYING, OKAY YOU

6    CAN DO THAT, IF THAT'S WHAT HAPPENED.

7            THE COURT:  SO I'M GETTING A LITTLE CONFUSED WHEN YOU

8    JUST SAY FDIC BECAUSE WE HAVE GOT CORPORATE AND RECEIVER.  SO

9    IF YOU CAN HELP ME ON THAT, I WOULD APPRECIATE IT.

10           MR. SACKS:  THE ABILITY TO DO WHATEVER HAPPENED TO

11    THE MONEY ONCE IT WAS AT THE BRIDGE BANK WAS ENTIRELY A

12    FUNCTION OF THE ACT OF THE FDIC-C, IT WAS MONEY IN THEIR

13    CUSTODY.  NOTHING COULD HAPPEN TO THAT MONEY UNLESS THE FDIC-C

14    SAID OKAY, DO IT.

15        AND SO OUR ARGUMENT IS, OBVIOUSLY, THIS IS THE

16    RESPONSIBILITY, AND WE WILL ALLEGE IT WITH MORE SPECIFICITY FOR

17    YOU, OF THE FDIC-C.

18        NOW THIS NOTION THAT WE ALLEGED IN OUR COMPLAINT THAT THIS

19    WAS DONE PROPERLY BY THE FDIC-R THAT THE FDIC-C ALLEGES HERE,

20    THEY ARE CONTRADICTING OUR PLEADING TO A CERTAIN EXTENT.

21        NOW YOUR HONOR, IF YOU LOOK AT 70 TO 73 PARAGRAPHS AS WELL

22    AS PARAGRAPH 77 TO 78, WE ALLEGE, AGAIN WITHOUT FACTUAL

23    SPECIFICITY, BUT WE WILL ADD IT FOR YOUR HONOR IF NECESSARY,

24    THAT NOTHING COULD HAVE HAPPENED TO OUR FUNDS WITHOUT THE

25    INVOLVEMENT AND PARTICIPATION AND APPROVAL OF THE FDIC-C.

```
1              THE COURT:  RIGHT.  BUT THERE ARE NO FACTS THERE
2     BECAUSE THE PROBLEM -- THESE --
3              MR. SACKS:  BUT WE WILL PLEAD THEM.
4              THE COURT:  OKAY.  I THINK THAT'S GREAT BECAUSE WHAT
5     YOU ACTUALLY SAY IS -- IN PARAGRAPH 70 -- IS THE BRIDGE BANK
6     REJECTED WIRE TRANSFERS THAT WERE PROPERLY INITIATED
7     PURPORTEDLY BECAUSE FDIC-R INSTRUCTED BRIDGE BANK TO PUT A
8     HOLD.
9              AND NOW YOU ARE TELLING ME THAT IT WAS FDIC-C THAT ORDERED
10    THE HOLD.  AND YOU CAN MAKE THAT AMENDMENT, AND I WILL LET YOU
11    DO THAT, YOU CERTAINLY LEARNED MORE FACTS SINCE YOU FILED THIS
12    COMPLAINT.
13             PARAGRAPH 72 IS REALLY WHAT I THINK CAUSED ME TO HAVE THIS
14    TENTATIVE RULING.  "UPON INFORMATION AND BELIEF, THE ACTIONS OF
15    FDIC-R WERE UNDERTAKEN WITH KNOWLEDGE OF EMPLOYEES OF FDIC-C
16    AND COULD NOT HAVE BEEN UNDERTAKEN WITHOUT THEIR ACQUIESCENCE."
17             NOW YOU ARE TELLING ME FDIC-C WAS THE DRIVER.  THAT'S A
18    VERY DIFFERENT ALLEGATION.  AND IF YOU CAN REASONABLY ALLEGE
19    IT, OF COURSE I WILL LET YOU DO THAT, BUT THAT'S WHY THE
20    PROBLEM -- THAT'S WHY YOU HAVE THIS PROBLEM NOW ON THE
21    PLEADING, I THINK.
22             MR. SACKS:  UNDERSTOOD, YOUR HONOR.  AND I'M NOT
23    GOING TO SAY THIS WAS THE MOST FULSOME PLEADING ON THAT
24    PARTICULAR POINT, BUT I'M HAPPY TO AMEND TO BE MORE SPECIFIC ON
25    THAT AND TO ALLEGE MORE EVIDENTIARY FACTS, GIVEN SOME OF THE
```

```
1        INFORMATION WE HAVE SUBSEQUENTLY LEARNED ABOUT EXACTLY WHAT

2        HAPPENED WHERE.

3             WE STILL DON'T HAVE ALL OF THE FACTS --

4                 THE COURT:  OF COURSE.

5                 MR. SACKS:  -- BUT I THINK WE HAVE ENOUGH TO PROPERLY

6        ALLEGE A BASIS AND GET BEYOND YOUR CONCERNS ABOUT INFORMATION

7        AND BELIEF.

8                 THE COURT:  OKAY.

9                 MR. SACKS:  SO THAT ROLLS INTO THE TURNOVER CLAIM,

10       YOUR HONOR, AS WELL.

11            I THINK WE CAN PROPERLY ALLEGE AT THIS POINT THAT THE

12       MONEY WAS WITHIN THE CUSTODY OF THE FDIC-C, AT THE BRIDGE BANK,

13       AND AT THE TIME WE FILED FOR BANKRUPTCY, IT APPEARS TO BE IN AN

14       ACCOUNT, THEY CLAIM THEY MOVED IT OUT IN SOME WAY, SHAPE OR

15       FORM.  WE HAVEN'T SEEN EVIDENCE THAT CLEARLY INDICATES THAT,

16       BUT WE CLAIM THAT THE MONEY WAS STILL SITTING THERE, THEY HAD

17       NO ABILITY OR RIGHT TO MOVE THE MONEY OUT OF THAT ACCOUNT.

18                THE COURT:  WE ARE TALKING ABOUT MONEY, BUT A -- YOU

19       KNOW, IT'S IN THE WIND, IN THE SENSE THAT IT GETS INVESTED ALL

20       OVER THE WORLD, AND THAT'S WHY BANKS STAY IN BUSINESS.

21            SO IT IS A RIGHT TO MAKE A DEMAND, BUT IT'S NOT A SAFE

22       DEPOSIT BOX WITH --

23                MR. SACKS:  I MIS -- I DON'T MEAN TO SUGGEST THAT I

24       HAVE GOLD BRICKS SITTING IN THE BANK, I MEAN TO SUGGEST THAT WE

25       HAVE AN ACCOUNT AT THE BANK WHICH HAS FUNDS CREDITED TO IT BY
```

1          THE BANK THAT ARE A DEBT OWED TO US.

2              AND JUST TO BE CLEAR WHEN MR. LYTTLE SUGGESTS THAT'S NOT

3      PROPERTY OF THE ESTATE, 542(B) IS VERY CLEAR THAT AN ENTITY

4      THAT OWES A DEBT THAT IS PROPERTY OF THE ESTATE, THE DEBT IS

5      THE ACCOUNT BALANCE OF THE FUNDS IN THE ACCOUNT.  THERE IS NO

6      DISPUTE HERE AS TO ANY OF THOSE.

7              AND WHEN YOU GET TO THE TURNOVER CLAIM, YOU ARE A HUNDRED

8      PERCENT RIGHT THAT YOU CAN PLEAD -- THEY CAN'T JUST SAY WE

9      DISPUTE IT AND WE DON'T PLEAD A TURNOVER CLAIM, WE HAVE

10     PROPERLY PLEADED THE ELEMENTS OF A CLAIM.  WE HAVE PLEADED A

11     DEBT OWED TO US IN AN AMOUNT THAT IS PAYABLE ON DEMAND.  THAT'S

12     WHAT A TURNOVER CLAIM IS.  THEY HAVE DEFENSES TO IT, THEY CAN

13     ASSERT THOSE DEFENSES TO IT, OKAY.

14             AND SO THAT --

15                 THE COURT:  MAY I -- I'M SORRY TO INTERRUPT,

16     BECAUSE --

17                 MR. SACKS:  NO, GO AHEAD.

18                 THE COURT:  -- BECAUSE THIS IS MY LACK OF FAMILIARITY

19     WITH BANKRUPTCY.

20             SO OUR PLAINTIFF, SVB FINANCIAL GROUP, CLAIMS TO BE THE

21     OWNER OF THESE ACCOUNT FUNDS, BUT IT IS IN BANKRUPTCY AND I'M

22     NOT DEALING WITH THE RECEIVER OR THE TRUSTEE OF THAT BANKRUPTCY

23     ESTATE.  AND I'M JUST A LITTLE CONFUSED ABOUT HOW THE MONEY

24     COULD GO DIRECTLY TO THE -- YOUR CLIENT IS A DEBTOR IN ITS OWN

25     BANKRUPTCY.

1          MR. SACKS:  YOU AREN'T DEALING WITH THE DEBTOR, YOU

2     ARE DEALING WITH THE BANKRUPTCY ESTATE, YOUR HONOR, SO WE ARE

3     UNDER THE AUSPICES OF THE BANKRUPTCY COURT AND WE ARE THE

4     DEBTOR.

5          SO THERE IS NOT A SEPARATE TRUSTEE, IT'S THE DEBTOR IN

6     POSSESSION, IT'S SUBJECT TO A BANKRUPTCY.  SO YOU ARE DEALING

7     WITH THE BANKRUPT ENTITY, IF YOU WILL.  THAT'S WHO WE ARE,

8     THAT'S WHO WE REPRESENT IN THIS.

9          THE COURT:  RIGHT.

10          MR. SACKS:  SO IF WE RECOVER, WE RECOVER FOR THE

11     BENEFIT OF THE BANKRUPTCY ESTATE.

12          THE COURT:  ALL RIGHT.

13     I ASSUMED THAT.  AND SO TO THE EXTENT YOUR CLIENT AS A

14     DEBTOR WHO HAS CREDITORS THAT ARE STANDING IN LINE, THEY ARE

15     PROTECTED SEPARATELY BY THE BANKRUPTCY COURT.

16          MR. SACKS:  CORRECT.  THERE IS -- ACTUALLY THERE IS A

17     HEARING NEXT WEEK ON CONFIRMING A BANKRUPTCY PLAN FOR THIS

18     DEBTOR IN WHICH THE CREDITOR'S RIGHTS ARE DETERMINED IN A

19     CERTAIN WAY.

20          THE COURT:  OKAY.

21          MR. SACKS:  THAT'S WHERE WE ARE.  BUT THIS IS HERE,

22     AND YOU KNOW, AS --

23          THE COURT:  FOR ALL PRACTICAL PURPOSES, I SHOULD

24     THINK OF THIS PLAINTIFF AS IF IT -- WHEN I LOOK AT OTHER CASES,

25     AS IF THIS WAS THE TRUSTEE OF THE BANKRUPT DEBTOR.

1           MR. SACKS:  CORRECT.

2           THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.  I

3    JUST WANTED TO BE SURE I WASN'T MISUNDERSTANDING.

4           MR. SACKS:  CORRECT.

5       SO I THINK -- I HOPE I'VE ADDRESSED THE TURNOVER ISSUE.  I

6    DON'T KNOW THAT THERE'S MORE TO SAY ABOUT THAT.

7           THE COURT:  I ACTUALLY THOUGHT THAT THIS IS A VALID

8    CLAIM THAT NEEDS SOME AMENDMENT.  I WASN'T SO WORRIED ABOUT

9    THAT.  I'M GOING TO LOOK AT THE NINTH CIRCUIT CASES THAT

10   MR. LYTTLE WANTS ME TO LOOK AT.  HE DOESN'T LIKE THE CALVIN

11   CASE, AND HE DOESN'T THINK KEESE IS CORRECT, BUT I DON'T KNOW,

12   I THOUGHT THEY WERE GOOD.  SO LET'S MOVE ON.

13          MR. SACKS:  WELL, THERE'S KEESE, THERE'S IN RE

14   PROCESS, IN RE SONOMA, THERE ARE A BUNCH OF CASES IN THE

15   NINTH CIRCUIT, WE CITE THEM ALL, ALL OF WHICH ARE MORE RECENT

16   THAT SAY THAT YES, YOU CAN HAVE A DISPUTE, CAN YOU PROPERLY

17   ALLEGE A CLAIM THAT IS FOR A SUM CERTAIN AND PAYABLE ON DEMAND,

18   WHICH IS THE BASIS FOR A TURNOVER CLAIM, AND WE HAVE DONE THAT,

19   I BELIEVE, AND COURTS RECOGNIZE THAT THERE IS TURNOVER FOR

20   ACCOUNT -- BANK ACCOUNT BALANCES AS JUST SORT OF BASIC TURNOVER

21   CLAIM.

22      ON THE ISSUE OF THE AUTOMATIC STAY, AGAIN WE ARE GOING TO

23   REPLEAD AND DEAL WITH THE ISSUE ABOUT THE RECEIVER TAKING THE

24   FUNDS FROM A BRIDGE BANK FOR YOUR HONOR AND THE UNCERTAINTY, AT

25   BEST, THAT EXISTS ON THAT.

```
 1          BUT I WOULD SUGGEST THE FOLLOWING ON THE ISSUE ABOUT JUST

 2     SIMPLY A FAILURE TO PAY.  AND I THINK ONE OF THE CASES YOU CAN

 3     LOOK AT THAT WOULD BE DIFFERENT IS -- THAT ILLUSTRATES IT IS

 4     STRUMPF, IN SOME WAY.  THEY SAY THAT IF YOU POSSESS PHYSICAL

 5     PROPERTY, CERTAINLY, AND YOU DO NOTHING ABOUT IT AND YOU ARE

 6     HOLDING IT POST-BANKRUPTCY, THAT CAN'T VIOLATE THE AUTOMATIC

 7     STAY; HOWEVER, WHEN YOU OWE A DEBT TO SOMEBODY ELSE THAT IS

 8     PAYABLE ON DEMAND, THE CONTINUING REFUSAL TO HONOR THAT DEBT,

 9     WHICH IS PAYABLE ON DEMAND AND CONTINUES TO BE PAYABLE ON

10     DEMAND POST-BANKRUPTCY, I WOULD URGE IS DIFFERENT.  AND IF IT

11     WERE NOT DIFFERENT, THE SUPREME COURT IN STRUMPF WOULD NOT HAVE

12     HAD TO GO THROUGH THE MACHINATIONS OR ANALYSIS THEY WENT

13     THROUGH TO CONCLUDE THAT THE TEMPORARY RETENTION OF A BANK

14     ACCOUNT UPON DEMAND THAT IT BE RETURNED FOR A FIVE-DAY PERIOD

15     TO FILE A MOTION FOR RELIEF FROM THE AUTOMATIC STAY WAS

16     PERMISSIBLE BECAUSE THAT WASN'T ACTUALLY EXERCISING RIGHTS OF

17     SETOFF.

18          THE COURT:  I GUESS WHEN I READ STRUMPF, I AGREED

19      WITH MR. LYTTLE THAT THAT CASE REALLY IS LIMITED TO THE

20      CIRCUMSTANCE OF THIS INTERIM PERIOD WHERE THERE WAS -- IN THIS

21      VERY TEMPORARY FEW-DAY PERIOD.

22         SO WHAT CASE ARE YOU REFERRING ME TO POST -- THAT RELIES

23      ON STRUMPF THAT'S MORE LIKE OUR CASE?

24          MR. SACKS:  I DON'T KNOW THAT THERE IS A CASE THAT IS

25      MORE LIKE OUR CASE ONE WAY OR ANOTHER, YOUR HONOR, OTHER THAN
```

```
 1        THE CASES HOLDING THAT A LONGER PERIOD OF RETENTION, THE

 2   REFUSING TO PAY, IS NOT A TEMPORARY HOLD, BUT IMPERMISSIBLE

 3   SELF HELP.  I THINK WE CITED CREDIT UNION V. WICKS IS ONE OF

 4   THEM, AND I THINK WE CITED ANOTHER CASE AS WELL, YOUR HONOR.

 5             THE COURT:  OKAY.

 6             MR. SACKS:  BUT ALL I'M SUGGESTING ON THIS WAS THAT

 7   WHILE THE SUPREME COURT WAS VERY CLEAR, AND I'M NOT TRYING TO

 8   SUGGEST IT WAS NOT IN CHICAGO V. FULTON, THAT WAS A CASE WHERE

 9   THERE WERE CARS IN AN IMPOUND LOT AND IF ALL THEY DO IS SIT IN

10   THE IMPOUND LOT, YOU ARE NOT VIOLATING THE AUTOMATIC STAY.

11        IT'S DIFFERENT WHEN YOU OWE A DEBT TO SOMEBODY ELSE

12   BECAUSE THE DEBT IS NECESSARILY SOMETHING THAT YOU HAVE A RIGHT

13   TO BE PAID, AND IF IT'S NOT BEING PAID, THAT'S DIFFERENT AND

14   ONGOING.  AND SO THE ONGOING FAILURE TO PAY IT IS AN ONGOING

15   ACT EACH TIME, ON AN ONGOING BASIS.

16        IF THAT WEREN'T THE CASE, THEN IN STRUMPF THEY WOULDN'T

17   HAVE HAD TO GO SEEK RELIEF FROM THE AUTOMATIC STAY, THEY COULD

18   HAVE JUST HELD ON TO THE ACCOUNT.

19        AND STRUMPF WAS, I AGREE WITH YOUR HONOR, IT WAS UNIQUE,

20   IT WAS A CASE WHERE IT WAS A TEMPORARY ACT.  AND THE COURT

21   SAID, YOU KNOW, IF YOU HOLD SOMETHING FOR FIVE DAYS, YOU ARE

22   NOT EXERCISING A RIGHT OF SETOFF, YOU ARE NOT REFUSING TO GIVE

23   IT BACK PERMANENTLY, IT'S JUST A TEMPORARY HOLD.

24        AND WHAT DID THEY DO IN THAT PERIOD?  THEY WENT AHEAD AND

25   SOUGHT RELIEF FROM THE AUTOMATIC STAY.  THEY HAD NO NEED TO
```

1    SEEK RELIEF FROM THE AUTOMATIC STAY IF HOLDING A BANK ACCOUNT

2    IS NOT A VIOLATION OF THE AUTOMATIC STAY.

3              THE COURT:  FAIR ENOUGH.  I WILL TAKE A LOOK.

4    THANK YOU.

5              MR. SACKS:  OKAY.

6    LOOKING AT THE APA CLAIM, I'M NOT GOING TO BELABOR THIS.

7    I DO BELIEVE WE HAVE ALLEGED SEPARATE AGENCY ACTION IN THE

8    SENSE THAT THE FDIC-C IS ALLEGING THAT THEY HAVE ALLEGED IN

9    COURT PAPERS AND THEY HAVE ALLEGED IN DENYING OUR CLAIM THAT

10   THEY HAVE COMPLETE DISCRETION.  THEY ACTED, SUPPOSEDLY IN

11   DENYING OUR CLAIM, PURSUANT TO SOME DETERMINATION AND SOME

12   POLICY.  AND I BELIEVE THAT WE HAVE PROPERLY ALLEGED OR THEY

13   HAVE PROPERLY ASSERTED THAT THEIR POLICY IS THAT THEY HAVE THE

14   DISCRETIONARY RIGHT TO DENY ANYONE ACCESS TO THEIR FUNDS BASED

15   UPON THE DISCRETION GIVEN TO THEM.  THAT'S WHAT THEY HAVE SAID.

16   THAT'S A POLICY.  AND THAT POLICY HAS BEEN IMPLEMENTED AS IT

17   RELATED TO OUR FINAL CLAIM, BUT IT IS A BROADER POLICY.  AND I

18   THINK THAT WE CAN ASSERT AND MAINTAIN A SEPARATE CLAIM AGAINST

19   THAT THAT WOULD RESULT IN A DETERMINATION THAT THAT POLICY IS,

20   IF WE ARE CORRECT, UNENFORCEABLE.

21             THE COURT:  SO AGAIN, WHAT DOES A SEPARATE STANDALONE

22   APA CLAIM GET YOU THAT YOU CAN'T ARGUE TO ME IN YOUR CLAIM SIX

23   UNDER THE DENIAL OF YOUR 821(F) DENIAL?

24             MR. SACKS:  ARGUABLY, IT COULD AFFECT THE

25   ADMINISTRATIVE RECORD, YOUR HONOR.

 1           SO THE RECORD THAT LEAD THE FDIC-C TO THE DETERMINATION

 2     THAT IT WAS WITHIN THEIR POWER TO ADMIT OR TO GRANT OR DENY

 3     CLAIMS FOR UNINSURED DEPOSITS IN THEIR DISCRETION, IS NOT

 4     NECESSARILY THE SAME AS THE ADMINISTRATIVE RECORD THAT IS

 5     APPLICABLE TO THE DETERMINATION OF OUR SPECIFIC CLAIM.

 6           THE COURT:  IF THEY ARE ARGUING TO ME THAT THEIR

 7     DISCRETION IS STATUTORY, I GUESS I'M JUST -- YOU THEN WANT TO

 8     BE ABLE TO ESTABLISH THAT THEY WERE ARBITRARY AND CAPRICIOUS IN

 9     EXERCISING WHAT THEY CLAIM TO BE THEIR STATUTORY DISCRETION.

10           MR. SACKS:  OR BEYOND THAT, THAT THEY VIOLATED THE

11     LAW BECAUSE THEY DON'T HAVE STATUTORY DISCRETION.

12           THE COURT:  RIGHT.  OKAY.

13           MR. SACKS:  BOTH OF THE ABOVE.

14           THE COURT:  I JUST -- I'M STILL NOT UNDERSTANDING HOW

15     THOSE ARGUMENTS CAN'T BE MADE IN THE ONE CLAIM, THAT THESE

16     AREN'T DUPLICATIVE, AND THAT THERE ISN'T REALLY A DISCOVERY

17     BATTLE.

18           AND YOU'VE MADE YOUR ARGUMENT.  I MEAN, I'M NOT ISSUING A

19     DISCOVERY ORDER, CERTAINLY, BUT THAT REALLY THIS IS AN ISSUE

20     THAT ON DISCOVERY, THAT YOU SHOULD BE ALLOWED TO EXPAND THE

21     ADMINISTRATIVE RECORD SO THAT YOU CAN HAVE A FAIR DUE PROCESS

22     HEARING ON THE FULL SCOPE OF YOUR CLAIM.

23           MR. SACKS:  UNDERSTOOD, YOUR HONOR.  I'M NOT GOING TO

24     BEAT MY HEAD AGAINST THE WALL ON THIS BECAUSE THE DISTINCTIONS

25     ARE NOT THAT SIGNIFICANT.

1          ON ESTOPPEL, I THINK YOU'VE GOT IT A HUNDRED PERCENT

2     RIGHT.  I'M HAPPY TO ANSWER ANY FURTHER QUESTIONS YOU WANT TO

3     ASK ME ABOUT THAT, BUT I THINK YOU HAVE IT RIGHT ON THE WAIVER

4     OF SOVEREIGN IMMUNITY.  IN WOODBRIDGE, THE SUE AND BE SUED,

5     WHILE THERE IS NOTHING, YOU KNOW, THAT HAS BEEN ASSERTED THAT

6     I'M AWARE OF THAT INVOLVES THE FDIC SPECIFICALLY, THERE IS THE

7     POSTAL SERVICE WHICH HAS BEEN SUBJECT TO SUCH CLAIMS.  NOT THAT

8     THEY NECESSARILY PREVAIL, AND WE ACKNOWLEDGE THIS IS NOT AN

9     EASY CLAIM FOR US TO PREVAIL UPON, BUT IT'S THERE.

10          IF YOU NEEDED TO ALLEGE SPECIFICALLY MISCONDUCT, I MEAN --

11     IF THERE IS EVER A CASE FOR HOLDING AN AGENCY RESPONSIBLE ON AN

12     ESTOPPEL BASIS, THIS ISN'T A STRAY COMMENT BY SOME OFFICER OF

13     AN AGENCY, THIS IS A SITUATION WHERE WE ALLEGE THAT THE AGENCY

14     WENT OUT PUBLICLY AND FOR THE VERY SPECIFIC PURPOSE OF INDUCING

15     RELIANCE, NOT JUST BY MY CLIENT BUT BY THE WORLD AND NATION AT

16     LARGE AND MADE AFFIRMATIVE STATEMENTS, AND AT A TIME WHERE WE

17     ARE BEING TOLD THAT THE ADMINISTRATORS AT THE FDIC-C DIDN'T

18     BELIEVE THAT WAS THE CASE AND THEY HAD THE DISCRETION TO DO

19     WHAT THEY WANTED TO DO.

20          AND SO IF THERE IS EVER A CASE WHERE YOU CAN HAVE ESTOPPEL

21     AGAINST AN AGENCY, THE HIGHEST LEVELS OF THE AGENCY, NOT SOME

22     PERSON THAT YOU ARE WORRIED IS GOING TO SUBJECT THE GOVERNMENT

23     TO UNWANTED OR UNEXPECTED LIABILITY, THIS IS THAT CASE,

24     YOUR HONOR.

25          AND AGAIN, I RECOGNIZE WE HAVE A HURDLE, IT'S SIGNIFICANT,

```
 1    AND YOU KNOW, WE WILL -- BUT I THINK WE HAVE PROPERLY PLEADED

 2    THIS CLAIM.

 3         ON THE DUE PROCESS --

 4           THE COURT:  OKAY.  BEFORE YOU GET THERE, MR. LYTTLE

 5    SUGGESTS THAT THERE ARE ELEMENTS TO AN ESTOPPEL CLAIM THAT YOU

 6    HAVE NOT PLED.  I DON'T ACTUALLY THINK HE RAISED THAT IN HIS

 7    PAPERS.

 8           MR. SACKS:  HE DID NOT.

 9           THE COURT:  OKAY.  THAT'S ALL I NEED.  BECAUSE

10    THERE'S STILL ELEMENTS, WHETHER YOU PLED THEM OR NOT, YOU HAVE

11    TO PROVE THEM, BUT I'M NOT GOING TO MAKE YOU AMEND IF IT WASN'T

12    PART OF HIS CLAIM OR HIS MOTION.

13         OKAY.

14           MR. SACKS:  AND ON DUE PROCESS, FINALLY ON DUE

15    PROCESS, WE BELIEVE THAT -- AND AGAIN, WE ARE LIMITED TO WHAT

16    WE CAN PLEAD AT THE MOMENT BECAUSE OF WHAT WE HAVE ACCESS TO.

17           THE COURT:  SURE.

18           MR. SACKS:  SO WE ARE PLEADING THAT THE ENTITLEMENT

19    IS A GOVERNMENT BENEFIT AND WE ARE RELYING ON THE PUBLIC

20    PRONOUNCEMENTS BY THE PEOPLE WHO CREATED THAT ENTITLEMENT THAT

21    EVERYONE WOULD BE PROTECTED AND NO ONE WOULD LOSE ANY MONEY.

22         NOW FOR PLEADING PURPOSES, WE BELIEVE THAT PROPERLY STATES

23    A CLAIM FOR A SUBSTANTIVE RIGHT.  IT'S POSSIBLE THAT WE WON'T

24    BE ABLE, ULTIMATELY, TO SUSTAIN THAT, BUT WE BELIEVE IT

25    PROPERLY STATES A CLAIM FOR A SUBSTANTIVE RIGHT.
```

```
1            THE COURT:  SO YOUR POINT IS, JUST SO THAT I CAN BE
2    CLEAR, WHAT I WAS GIVEN WAS JOINT PRESS RELEASES FROM THE FDIC
3    AND THE SECRETARY'S OFFICE.  YOU ARE SEEKING UNDER THIS CLAIM
4    TO APPLY THAT PUBLIC PRONOUNCEMENT TO THE FDIC.  SECRETARY HAS
5    NOTHING TO DO WITH THE CREATION OF THE ENTITLEMENT HERE; IS
6    THAT RIGHT, OR AM I MISUNDERSTANDING?
7            MR. SACKS:  SO THE SECRETARY CREATED THE ENTITLEMENT
8    AS BINDING ON THE FDIC-C WHICH THEN WENT AHEAD AND CONFIRMED
9    THAT THAT WAS THE RIGHT THAT WE HAVE.
10           THE COURT:  WELL LET'S BACK UP, AND I KNOW THIS GOES
11   BACK TO THE ISSUES WE TALKED ABOUT THAT WHERE I HAVE THE TWO
12   PRESS RELEASES, THAT'S ALL WE HAVE, AND THAT'S WHAT YOU RELIED
13   ON FOR YOUR PLEADING.
14      SO WE HAVE EVIDENCE THAT THE SECRETARY INVOKED THE
15   SYSTEMIC RISK EXCEPTION, AND WE HAVE EVIDENCE THAT THE TWO
16   AGENCIES JOINTLY SAID ALL DEPOSITORS WILL GET FULL ACCESS TO
17   THEIR ACCOUNT DEPOSITS.  BUT WE DON'T HAVE ANY EVIDENCE THAT
18   THE SECRETARY ORDERED ANY PARTICULAR ACTION VERSUS THE FDIC
19   DECIDING THAT THAT WAS THE ACTION IT WOULD TAKE.  THAT'S THE
20   PIECE IN THE MIDDLE THAT WE TALKED ABOUT LAST WEEK THAT REMAINS
21   MISSING.
22      AND I APPRECIATE THAT YOU ARE NOT GETTING ACCESS TO THESE
23   DOCUMENTS, BUT IT SEEMS TO ME THAT I'VE GOT A JOINT STATEMENT
24   AND THAT A REASONABLE INFERENCE COULD BE THAT THE FDIC CREATED
25   THE ENTITLEMENT AND IT WAS THE FDIC'S PROMISE TO MAKE EVERYONE
```

1    WHOLE.  AM I WRONG ON THAT?  IS THAT NOT WHERE YOU WANT TO GO?

2    IT'S YOUR CASE, NOT MINE.

3              MR. SACKS:  I MEAN, I THINK YOU CAN GO EITHER WAY,

4    YOUR HONOR, BECAUSE THE FDIC DID MAKE THAT PROMISE.

5         WE THINK IT'S FAIRLY -- IT FAIRLY FLOWS FROM THE ACTION OF

6    THE SECRETARY OF THE TREASURY TO THEM BECAUSE REMEMBER THE FDIC

7    RECOMMENDS TO THE SECRETARY OF THE TREASURY, ALONG WITH THE

8    FEDERAL RESERVE, THEY BOTH RECOMMEND IN WRITING, IN WRITING WE

9    HAVE NEVER SEEN, TO THE SECRETARY OF THE TREASURY, THAT SHE

10   TAKE ACTION AND WHAT ACTION SHE SHOULD TAKE.

11             THE COURT:  SO THAT'S WHERE WE -- THAT'S WHAT YOU ARE

12   GOING TO GIVE ME IN THE SUPPLEMENTAL BRIEF IS THAT THE ROLE --

13   RECOMMENDING THAT THE EXCEPTION BE INVOKED IS ONE THING, FDIC

14   WOULD SAY THAT MERELY SPRINGS THEM INTO ACTION TO EXERCISE

15   THEIR DISCRETION AND THAT THE SECRETARY DOESN'T MANDATE

16   ANYTHING.  THAT'S WHAT I UNDERSTOOD MR. LYTTLE'S ARGUMENT TO

17   BE.

18             MR. SACKS:  CORRECT.  AND THAT'S THE DISPUTE THAT

19   EXISTS BETWEEN US.  THAT'S WHAT WE SPENT A LOT OF TIME ARGUING

20   ABOUT LAST WEEK, AND YOU'VE ASKED US IN PART TO ADDRESS, WHICH

21   I ASSUME BOTH OF US WILL BE ADDRESSING IN OUR FIVE PAGE

22   SUBMISSIONS ON FRIDAY.

23             THE COURT:  YES.

24             MR. SACKS:  AND YES, WE DO ATTACH VARIOUS PRESS

25   RELEASES, WE ALSO IDENTIFY IN OUR PLEADING ADDITIONAL

```
 1         STATEMENTS THAT WENT -- THAT GO BEYOND THOSE PRESS RELEASES.

 2             WE BELIEVE THAT GIVES US, AT LEAST FOR PLEADING PURPOSES,

 3         A SUBSTANTIVE RIGHT.  AND WHEN YOU GET BEYOND THAT, THEN THE

 4         QUESTION BECOMES, MR. LYTTLE ARGUES, WE DON'T ALLEGE ANY

 5         VIOLATION OF IT.  I THINK WE DO FAIRLY CLEARLY ALLEGE A

 6         VIOLATION OF THOSE RIGHTS THAT WE HAVE THAT WE ALLEGE THERE WAS

 7         NO PROCESS GIVEN TO US, JUST TO BE VERY CLEAR, YOUR HONOR,

 8         AND --

 9             THE COURT:  LET'S -- I DO WANT TO TALK ABOUT WHAT

10         PROCESS YOU'VE GOT, BUT I WANT TO BE SURE THAT I UNDERSTAND THE

11         ACTUAL CLAIM YOU PLED --

12             MR. SACKS:  YES.

13             THE COURT:  -- AS TO WHOSE POLICY WE ARE TALKING

14         ABOUT.

15         SO I'M LOOKING AT COUNT 4.

16             MR. SACKS:  ALL RIGHT.  LET ME LOOK AT IT,

17         YOUR HONOR.  OKAY.  GOT IT.

18             THE COURT:  "SO FDIC REFUSES," PARAGRAPH 126, "TO

19         PROVIDE PLAINTIFF COMPLETE ACCESS TO ITS FUNDS ON THE BASIS

20         THAT THE SECRETARY'S INVOCATION DID NOT IMPOSE A LEGAL

21         OBLIGATION."

22         AND YOU ALLEGE THAT IT WAS THE SECRETARY'S INVOCATION THAT

23         WAS THE GUARANTEE.

24             MR. SACKS:  CORRECT.  WELL THAT'S THE ONLY ONE WHO

25         CAN MAKE THAT DETERMINATION, YOUR HONOR.
```

1          THE COURT:  SO THAT'S -- WELL --

2          MR. SACKS:  IT CAN'T BE MADE BY ANYONE ELSE.

3    SECTION 1823(C)(4)(G) SAYS THE SECRETARY HAS TO MAKE THE

4    DETERMINATION, THE FDIC DOESN'T HAVE THE POWER TO ITSELF.

5          THE COURT:  BUT THAT WAS OUR WHOLE -- THAT'S WHERE

6    I'M REALLY STRUGGLING, I SUPPOSE, AS TO WHETHER THE SECRETARY

7    SIMPLY LIFTS THE LEAST COST OBLIGATION AND THEN TURNS IT OVER

8    TO FDIC TO IMPLEMENT, WHICH IS MR. LYTTLE'S ARGUMENT, OR YOUR

9    ARGUMENT THAT I WILL LEARN MORE ABOUT IS THAT NO, IT'S THE

10   SECRETARY WHO HAS FULL RESPONSIBILITY FOR DECIDING THE CONTOURS

11   OF THE EXCEPTION.

12         MR. SACKS:  RIGHT.

13         AND YOUR HONOR, I MEAN, THE EVIDENCE OF THAT, FOR PLEADING

14   PURPOSES, AGAIN, WE ARE HERE ON A MOTION TO DISMISS, IS

15   REFLECTED IN THE STATEMENTS THAT WERE MADE BY THE -- INCLUDING

16   THE FDIC, ITS OWN STATEMENTS THAT ALL MONEY OF ALL DEPOSITORS

17   WILL BE MADE AVAILABLE AND NO ONE WILL LOSE ANY MONEY.  THAT IS

18   THEIR STATEMENTS OF WHAT WAS HAPPENING.  AND SO YES, WE WILL

19   ADDRESS THAT.

20         THE COURT:  SO IT SEEMS TO ME, I GUESS THERE'S

21   ANOTHER THOUGHT THAT I HAVE, IF IT IS THE SECRETARY WHO MADE --

22   WHO CREATED THE ENTITLEMENT, THEN WHY AREN'T YOU SUING THE

23   SECRETARY AND NOT FOLLOWING THROUGH ON THE GUARANTEE?

24         MR. SACKS:  THE ENTITLEMENT IS THAT THE MONEY WILL BE

25   PAID OR MADE AVAILABLE AND THE GUARANTEE IS COMING FROM THE

1      DEPOSIT INSURANCE FUND WHICH IS ADMINISTERED BY THE FDIC.

2             THE COURT:  ALL RIGHT.  OKAY.  THAT'S FAIR.

3             MR. SACKS:  SO IT'S AN OBLIGATION IMPOSED ON THE

4      FDIC-C TO MAKE THOSE FUNDS AVAILABLE PURSUANT TO THE ACTION

5      THAT WAS TAKEN ON THEIR RECOMMENDATION AND ON THE

6      RECOMMENDATION OF THE FEDERAL RESERVE AND WITH THE CONCURRENCE

7      OF THE PRESIDENT OF THE UNITED STATES.  THIS IS NOT SOME

8      MID-LEVEL PERSON WHO IS MAKING THE JUDGMENT, THIS IS THE

9      COUNTRY'S HIGHEST LEVEL, AND IT'S A STATUTORY PROVISION THAT

10     GIVES THAT -- THE ABILITY OF THE SECRETARY OF THE TREASURY TO

11     MAKE THAT DETERMINATION IN TIMES OF, CALL IT NATIONAL CRISIS,

12     FOR LACK OF A BETTER WORD, BUT --

13            THE COURT:  AND THIS IS JUST A MOTION TO DISMISS, BUT

14     IF IT WERE TO TURN OUT THAT THE SECRETARY IN FACT DID NOT

15     DEFINE THE CONTOURS OF THE OBLIGATION OF THE FDIC, THEN YOU

16     JUST LOSE ON THIS CLAIM.

17            MR. SACKS:  YEAH.  I MEAN, I CAN'T SAY THAT AS A

18     HUNDRED PERCENT CERTAINTY, BUT I BELIEVE THAT OF NECESSITY, BUT

19     PROBABLY YES, YOUR HONOR.

20            THE COURT:  SO LET'S MOVE TO THE OTHER ISSUE

21     MR. LYTTLE BROUGHT.  HE SAID WELL EVEN IF THERE'S A PROTECTED

22     PROPERTY INTEREST, YOU GOT DUE PROCESS.  AND YOU ALLEGE IT IN

23     YOUR COMPLAINT BECAUSE YOU HAD AN OPPORTUNITY TO BE HEARD, YOU

24     GOT AN 11-PAGE DECISION AND YOU CAN APPEAL THAT TO FEDERAL

25     DISTRICT COURT.

1          MR. SACKS:  SO LET ME ADDRESS THAT BECAUSE WE WERE

2     AFFORDED NO PROCESS, YOUR HONOR.  WE WEREN'T TOLD THAT WE HAD

3     TO MAKE THE CLAIM AND WHERE TO MAKE A CLAIM.

4          WE DIDN'T MAKE A CLAIM.  OUR LETTER WAS NOT INTENDED AS A

5     CLAIM TO THEM AND IT WASN'T TREATED BY THEM AS A CLAIM UNTIL

6     AFTER THE BANKRUPTCY COURT SAID, WHAT'S GOING ON HERE GUYS, AND

7     THEN THEY SUDDENLY DECIDED THREE MONTHS LATER THAT THEY WOULD

8     TREAT IT AS A CLAIM.

9          SO WE WERE AFFORDED NO PROCEDURES.  WE WERE GIVEN NO

10    NOTICE OF WHAT THEY HAD DONE, WHAT THEY DID TO OUR FUNDS OR

11    EXPLANATION OF WHY THEY DID IT.

12         WE WERE GIVEN NO NOTICE OF WHAT TO DO TO MAKE A CLAIM, WHO

13    TO MAKE IT TO OR EVEN WHERE TO MAKE IT.  WE HAD NO NOTICE OF

14    WHAT THE CLAIM SHOULD INCLUDE.  WE WERE GIVEN NO

15    ACKNOWLEDGEMENT OF OUR LETTER BEING TREATED AS A CLAIM UNTIL

16    SEVERAL MONTHS LATER AFTER THE BANKRUPTCY COURT RAISED IT.

17         EVEN THEN, WE WERE GIVEN NOTHING, THEY SAID THEY WOULD

18    ADDRESS OUR CLAIM WITH NO PROCEDURES AND NO POLICIES AND THEY

19    DID WHATEVER THEY WANTED TO.  AND AS I TOLD YOUR HONOR BEFORE,

20    THE PERSON WHO AT LEAST SIGNED THE REJECTION OF OUR CLAIMS WAS

21    SOMEBODY WHO WAS INVOLVED IN THE ACTIONS OF WITHHOLDING OUR

22    FUNDS.

23         SO WE WERE GIVEN NO ABILITY TO INTERACT, WE WERE ASKED NO

24    QUESTIONS BY THEM, AND SO WE ARE SITTING THERE WITH NO

25    EXPLANATION OF WHAT THEY HAVE DONE OR WHY ON A LETTER THAT WAS

1    A ONE AND A HALF PAGE LETTER THAT BASICALLY SAID PAY US OUR

2    MONEY OR WE WERE GOING TO SUE YOU, SEVERAL DAYS BEFORE WE

3    TURNED AROUND AND SUED THEM.

4        AND THAT'S NOT DUE PROCESS, YOUR HONOR, THAT'S JUST

5    ARBITRARY CONVENIENT DETERMINATIONS.  AND IF THERE'S DUE

6    PROCESS, THERE HAS TO BE SOME EXPLANATION ABOUT WHAT A CLAIM

7    OUGHT TO INCLUDE, WHERE YOU SUBMIT IT, WHEN YOU SUBMIT IT, WHAT

8    PROCEDURES ARE GOING TO BE APPLICABLE TO IT, THE TYPES OF

9    THINGS EVEN MINIMALLY, I'M NOT SAYING WE WERE ENTITLED TO A

10   HEARING ON OUR CLAIM OR ANYTHING LIKE THAT, BUT YOU ARE

11   ENTITLED TO SOME PROCESS AT THIS POINT.

12       YOU ARE ALSO ENTITLED TO A DECISION MAKER WHO IS NOT THE

13   PERSON WHO WAS INVOLVED IN THE CONDUCT THAT LEAD TO THE

14   DECISION, I WOULD SUGGEST AS WELL, WHICH IS ALSO A DUE PROCESS

15   PROBLEM THAT -- IF WE SUPPLEMENT --

16       THE COURT:  THAT I DON'T THINK YOU ALLEGED.

17       MR. SACKS:  WELL WE WILL SUPPLEMENT OURSELVES TO

18   ALLEGE THAT, YOUR HONOR.

19       SO I THINK THAT WE HAVE, AGAIN, PROPERLY ALLEGED THIS

20   CLAIM.  WHETHER WE CAN PREVAIL ON IT IS A VERY DIFFERENT ISSUE.

21   WE ARE NOT HERE --

22       THE COURT:  YES, IT IS.

23       MR. SACKS:  WE ARE NOT HERE ON A MOTION FOR SUMMARY

24   JUDGEMENT, WE ARE NOT HERE AT TRIAL IN THIS CASE, WHICH WILL BE

25   A NONJURY TRIAL, SO YOUR HONOR, IF WE GET TO TRIAL, YOU WILL

```
 1        GET THE --
 2                THE COURT:  THE HONOR.
 3                MR. SACKS:  YOU GET THE PRIVILEGE OR HONOR OF
 4        RESOLVING ALL OF THIS AND LISTENING TO MR. LYTTLE AND I SCREAM
 5        AND YELL AT EACH OTHER.
 6            SO I THINK I'VE ADDRESSED BASICALLY EVERYTHING,
 7        YOUR HONOR.
 8                THE COURT:  OKAY.  I THINK YOU HAVE.
 9            ALL RIGHT.  THANK YOU.  THAT'S VERY HELPFUL.
10            MR. LYTTLE, I AM GOING TO GIVE YOU THE LAST WORD.
11                MR. LYTTLE:  THANK YOU.  AND I WILL TRY TO BE BRIEF.
12        AND AGAIN, I WAS TAKING NOTES HERE, SO I HOPE I WILL COVER WHAT
13        I CAN, AND IF YOUR HONOR HAS ANY QUESTIONS, I'M HAPPY TO ANSWER
14        THOSE AS WELL.
15            WE ARE TALKING ABOUT THE ENFORCEABLE LEGAL OBLIGATION FOR
16        THE TURNOVER CLAIM.  THEY KEEP ALLUDING TO THESE INSTRUCTIONS
17        FROM THE SECRETARY OF TREASURY, YOUR HONOR HAS ZEROED IN AS
18        THIS AS A KEY POINT.  THE FACT OF THE MATTER IS, YOUR HONOR,
19        THE FDIC-C NEVER SAW THOSE INSTRUCTIONS IF THEY EXISTED, THEY
20        NEVER CAME TO THE FDIC-C.
21            IF YOU LOOK AT THE STATUTE 1823(C)(4)(G), ANY
22        DOCUMENTATION IS HELD BY THE SECRETARY.  IT'S HELD BY THE
23        SECRETARY, NOT SENT TO THE FDIC-C, AND IT'S HELD BY THE
24        SECRETARY FOR THE GAO TO LOOK AT.  AND THAT'S BECAUSE -- SO THE
25        FDIC-C GOT NO INSTRUCTIONS FROM THE TREASURY, THAT IS WHAT OUR
```

1    UNDERSTANDING IS.  WE HAVE GONE BACK AND TALKED TO --

2            THE COURT:  THAT GOES BEYOND THE PLEADING.  I DON'T

3    KNOW THAT I CAN ACTUALLY DEAL WITH THAT.

4            MR. LYTTLE:  BUT IT'S IN THE STATUTE, YOUR HONOR.

5    I'M TALKING ABOUT THE STATUTE.  THE STATUTE ITSELF, WHICH IS IN

6    THE PLEADING AND AT ISSUE HERE, SAYS THAT THE SECRETARY HOLDS

7    ANY DOCUMENTATION ON THIS AND KEEPS IT FOR GAO REVIEW.

8        AND THERE'S NOTHING TO GIVE THE FDIC-C BECAUSE SHE DOESN'T

9    TELL THEM ANYTHING OTHER THAN THE SRE IS INVOKED.  SO THERE IS

10   NO MAGICAL SET OF INSTRUCTIONS.  YOU DON'T HAVE --

11           THE COURT:  WELL I'M STRUGGLING WITH THAT,

12   MR. LYTTLE, BECAUSE OF THE JOINT PRESS RELEASES.

13           MR. LYTTLE:  SO THE JOINT PRESS RELEASES ARE ONLY, AS

14   YOUR HONOR NOTED, SPEAKING TO THE INVITATION OF THE SRE.  THAT

15   IS A SEPARATE QUESTION OF WHAT FOLLOWS ON.

16       AND WHAT WE ARE TRYING TO POINT OUT IS WHY IT'S IN THE

17   PLEADING IS THE STATUTE SAYS ANY DOCUMENTATION IS HELD BY THE

18   SECRETARY OF THE TREASURY OR THE GAO TO REVIEW, IT DOESN'T GO

19   TO FDIC-C.  AND OF COURSE THERE IS NO INSTRUCTION, BECAUSE THE

20   STATUTE, AS WE HAVE BEEN THROUGH, TALKS ABOUT --

21           THE COURT:  GIVE ME THE STATUTE NUMBER AGAIN ON

22   HOLDING THE PAPERS.

23           MR. LYTTLE:  SO IT'S 1823(C)(4)(G).

24           THE COURT:  OKAY.

25           MR. LYTTLE:  ON THE DUE PROCESS POINT, YOUR HONOR,

1    I'M REALLY STRUGGLING WITH THIS.  THE HOLDING COMPANY HERE WAS

2    GIVEN NOTICE BY FDIC-R1 AS PART OF THE RECEIVERSHIP ON HOW TO

3    FILE A CLAIM, IT'S ALL OVER THE FDIC-C'S WEBSITE ON HOW TO FILE

4    A CLAIM.  THEY HAVE SAID IN THEIR OWN PLEADING -- I KNOW

5    YOUR HONOR SAID YOU CAN'T FAULT THEM FOR FILING AN 1821(F)

6    CLAIM, BUT PUTTING THAT ASIDE, THEY THEMSELVES HAVE

7    CHARACTERIZED IN THE BANKRUPTCY COURT ALL JUDICIAL NOTICE IN

8    THE PLEADINGS, THEY HAVE CHARACTERIZED THIS AS AN 1821(F)

9    CLAIM.

10        AND THEN THE FDIC SAID, BEFORE IT RESPONDED IN THAT

11    11-PAGE LETTER, THE FDIC-C WROTE BACK IN SEPTEMBER AND SAID

12    HEY, WE ARE TREATING THIS AS AN 1821(F) CLAIM.  YOU'VE TOLD

13    US -- YOU HAVE CHARACTERIZED IT AS AN 1821(F) CLAIM.  I REALLY

14    FIND IT HARD TO BELIEVE THAT SOMEHOW THEY WERE UNAWARE OF THIS

15    PROCESS.  THE FACTS, AS THEY ALLEGED THEM, SIMPLY DON'T BEAR

16    THAT OUT.

17        ON THE ESTOPPEL POINT, YOUR HONOR, IT WAS -- THE TWO

18    POINTS ABOUT THEIR PLEADING FAILURES ON THE TWO ELEMENTS ARE

19    ADDRESSED IN OUR BRIEFING.  IT'S IN THE OPENING BRIEF ON

20    PAGE 21, AND IT'S ON PAGE 14 AND 15 OF THE REPLY.  AND THE

21    CONFUSION, AS YOUR HONOR NOTED, IT'S BECAUSE THEIR ESTOPPEL

22    CLAIM WASN'T CLEAR.  WHAT WERE THEY ALLEGING?  AND WHAT THEY

23    SAID IN OPPOSITION, THEY DIDN'T TRY TO PLEAD, THEY DIDN'T TRY

24    TO ARGUE, AND THEY STILL HAVE NOT TRIED TO ARGUE THAT THEY HAVE

25    PLED AFFIRMATIVE MISCONDUCT.  THAT IS A HIGH, HIGH BAR.

1    SUPREME COURT AND NINTH CIRCUIT VERY CLEAR ON THE

2    GOVERNMENT, AFFIRMATIVE MISCONDUCT IS AN EXTREMELY HIGH BAR.

3    AND IN OPPOSITION, THEY DIDN'T TRY TO ARGUE THAT THEY MET THAT

4    HIGH BAR, INSTEAD, THEY FAULTED US FOR CITING ONLY CASES

5    PERTAINING TO EQUITABLE ESTOPPEL.

6    FAIR ENOUGH. WE WEREN'T CLEAR. IT WASN'T CLEAR. BUT THE

7    SAME PRINCIPLES OF AFFIRMATIVE MISCONDUCT APPLY TO PROMISSORY

8    ESTOPPEL. AND THEY HAVE NOT ARGUED AND IN FACT DO NOT ALLEGE

9    THAT THEY HAVE MET THAT HIGH BAR.

10   I THINK THE LAST POINT I WOULD LIKE TO MAKE FOR YOUR HONOR

11   IS ON THE CALVIN CASE. I HAD A LITTLE MORE TIME TO GO BACK AND

12   LOOK AT IT HERE DURING MR. SACKS'S ARGUMENT.

13   CALVIN IS A TEXAS BANKRUPTCY COURT CASE. IT'S

14   IRRECONCILABLE WITH THE STRUMPF DECISION BY THE SUPREME COURT

15   AND IT'S IRRECONCILABLE WITH BINDING NINTH CIRCUIT PRECEDENT IN

16   IN RE BERNARD AND THE CROCKER-CITIZENS CASE. ALL THREE OF

17   THOSE CASES STAND FOR THE PROPOSITION THAT DEPOSITS ALONE, THE

18   FUNDS THEMSELVES, ARE NOT A PROPERTY INTEREST BUT RATHER THEY

19   ARE A LIABILITY.

20   SO YES, THE ESTATE HERE HAS A PROPERTY INTEREST IN THE

21   CLAIM FOR THOSE FUNDS. IT'S PROSECUTING THAT CLAIM AND THAT

22   PROPERTY INTEREST IN THE BANKRUPTCY AND IT'S PROSECUTING THAT

23   PROPERTY INTEREST HERE IN THIS CASE. BUT WHAT THEY ARE SEEKING

24   HERE AND WHAT THEY DON'T HAVE A PROPERTY INTEREST IN IS THE

25   FUNDS THEMSELVES. THE PROPERTY INTEREST LIES IN THE CLAIM FOR

1    THE FUNDS, NOT THE FUNDS THEMSELVES.  AND THAT'S WHAT STRUMPF

2    SAYS, THAT'S WHAT THE NINTH CIRCUIT SAYS IN IN RE BERNARD AND

3    IN THE CROCKER-CITIZENS CASE.

4         UNLESS YOUR HONOR HAS ANY QUESTIONS, I THINK THAT'S WHERE

5    WE ARE.

6         THE COURT:  THAT'S VERY HELPFUL.

7         MR. LYTTLE:  THANK YOU, YOUR HONOR.  I WILL SAY I'M

8    ANXIOUS TO SEE THESE ALLEGATIONS.  THE BRIDGE BANK IS A

9    STANDALONE ENTITY CHARTERED BY THE OCC, BUT I GUESS WE WILL SEE

10   WHAT THEY HAVE TO SAY.  I'M VERY DUBIOUS, BUT LET'S SEE WHAT

11   THEY HAVE TO SAY.

12        THE COURT:  YEAH.  ALL RIGHT.  THAT'S HELPFUL.

13        WELL, I WILL GET YOUR BRIEF, IT'S GOING TO TAKE ME A

14   LITTLE BIT OF TIME TO WORK THROUGH ALL OF THIS.  THESE ARE

15   IMPORTANT ISSUES, AND AS YOU LEARNED IN BRIEFING IT, THERE IS

16   NOT A LOT OF GUIDANCE ON THE VERY SPECIFIC THINGS HERE.  SO WE

17   WILL GIVE IT OUR BEST SHOT AND PROCEED.

18        ALL RIGHT.  THANK YOU AGAIN FOR COMING BACK FOR FURTHER

19   ARGUMENT.  I REALLY BENEFIT FROM THE EXTRA OPPORTUNITY TO HEAR

20   YOUR ARGUMENTS, SO I'M VERY APPRECIATIVE.

21        MR. SACKS:  CAN I ASK JUST ONE QUESTION?

22        THE COURT:  OF COURSE.

23        MR. SACKS:  I THINK YOU ARE GOING TO SAY NO, BUT

24   THESE ARE COMPLEX ISSUES AND IS THERE ANY WAY YOU MIGHT BE OPEN

25   TO GIVING US A LITTLE MORE THAN FIVE PAGES TO ADDRESS THEM?

```
 1        EVEN A COUPLE --
 2                THE COURT:  WHAT DO YOU HAVE IN MIND?
 3                MR. SACKS:  WELL JUST A COUPLE MORE, SEVEN MAYBE.  WE
 4        ARE TRYING TO SQUEEZE IT IN THERE, YOUR HONOR, BUT I DON'T WANT
 5        TO SHORTCHANGE YOUR HONOR ON THIS.
 6                THE COURT:  ALL RIGHT.
 7            AND MR. LYTTLE, WOULD THAT HELP YOU AS WELL?
 8                MR. LYTTLE:  WE WERE HAVING A LITTLE -- WE WOULD LIKE
 9        A LITTLE MORE TOO, YOUR HONOR, WE CAN AGREE ON THAT.
10                THE COURT:  THE SEVEN PAGES IS FINE.  THANK YOU FOR
11         ASKING.
12            MR. SACKS, LET ME ASK YOU ONE MORE QUESTION, I THINK NO
13        MATTER WHAT, WITH SOME OF THESE CLAIMS, EVEN THOUGH I WILL BE
14        GRANTING A MOTION TO DISMISS, IT WILL BE WITH LEAVE TO AMEND.
15            WE ARE GETTING INTO AUGUST, AND I WANT TO MAKE SURE YOU
16        HAVE ENOUGH TIME TO GIVE ME YOUR BEST AMENDMENT, AND I DON'T
17        KNOW THAT -- I'M WILLING TO GIVE YOU THE TIME YOU NEED, SO WHAT
18        WOULD YOU BE REQUESTING?
19                MR. SACKS:  LET ME LOOK AT MS. MCGIMSEY AND ASK,
20        THREE WEEKS?
21                MS. MCGIMSEY:  I THINK THREE WEEKS WOULD BE MORE THAN
22        SUFFICIENT.
23                THE COURT:  GOOD.  GLAD TO DO IT.  OKAY.  I SEE NO
24        POINT IN CUTTING YOU BY A WEEK AND THEN HAVING YOU STRUGGLE
25        WITH IT, ESPECIALLY IF PEOPLE HAVE SOME TIME OFF PLANNED.
```

```
 1              OKAY.  GOOD.  THEN --

 2              MR. LYTTLE:  YOUR HONOR, I'M SORRY, JUST TO MAKE ONE

 3    POINT OBVIOUSLY, AND AT THE RISK OF STATING THE OBVIOUS, IF

 4    YOUR HONOR GRANTS US ON THE PREEMPTION ON THE 1821(F), THERE

 5    WOULD BE NO REASON TO AMEND.

 6              THE COURT:  THAT'S RIGHT.

 7              MR. LYTTLE:  SO THERE MAY BE A WAY TO SEQUENCE THAT

 8    THAT'S MORE EFFICIENT FOR THE COURT AND THE PARTIES.

 9              THE COURT:  WELL IF I DECIDE TO GRANT PREEMPTION, I

10    WON'T EVEN BE CONSIDERING THE OTHER ISSUES, SO THEN IT WOULD BE

11    A GRANT WITHOUT LEAVE TO AMEND AND I'M DONE WITH THIS CASE

12    UNTIL THE NINTH CIRCUIT TELLS ME OTHERWISE.

13         SO THAT IS CORRECT AND THAT IS THE THRESHOLD ISSUE.  AND

14    MR. SACKS MADE COMPELLING POINTS AT THE HEARING LAST WEEK AND

15    SO THAT'S WHY I ASKED YOU TO COME BACK AND GIVE ME THOROUGH

16    ARGUMENT ON THESE OTHER ISSUES, BECAUSE AS MUCH AS I WAS

17    WALKING DOWN THE LINE WITH YOU, MR. LYTTLE, HE GAVE ME REAL

18    REASON TO PAUSE ON MY INITIAL THOUGHTS ON IT.

19         SO THAT'S WHY WE DID THIS.

20              MR. LYTTLE:  UNDERSTOOD, YOUR HONOR.  HOPEFULLY WE

21    WILL BRING YOU BACK.

22              THE COURT:  OKAY.  ALL RIGHT.  I WILL LOOK FORWARD TO

23    YOUR BRIEFS AT THE END OF THE WEEK.  I WILL A LITTLE BIT EXPAND

24    IT.  AND I DON'T THINK I NEED TO SAY THIS, I HATE FOOTNOTES,

25    PLEASE DON'T USE ANY.  YOU CAN TELL YOUR STAFF RIGHT NOW, IT'S
```

1    REALLY UNNECESSARY, AND IF YOU WANT ME TO READ WHAT YOU WROTE,

2    YOU WON'T PUT IT IN A FOOTNOTE.

3              MR. SACKS:  THANK YOU, YOUR HONOR.

4              MR. LYTTLE:  THANK YOU, YOUR HONOR.

5              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU ALL, AND I

6    I'M SURE I WILL SEE YOU SOON ON THE NEXT ISSUES THAT ARISE.

7              MR. LYTTLE:  THANK YOU.

8         (THE PROCEEDINGS WERE CONCLUDED AT 3:05 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8          I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13          THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM

15   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED

16   MATTER.

17

18

19

20

21

22

23

24   _____
     SUMMER A. FISHER, CSR, CRR
25   CERTIFICATE NUMBER 13185          DATED: 7/17/24