Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

*Counsel to the Federal Deposit Insurance Corporation (in its corporate capacity)*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>Defendant. | CASE NO. 5:23-cv-06543-BLF<br><br>**FDIC-C'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**<br><br>Judge: Hon. Beth Labson Freeman<br>Action Filed: December 19, 2023 |

# ARGUMENT

FDIC-C submits this supplemental brief on preemption in accordance with the Court's Order of July 12, 2024, Dkt. No. 75, as modified by the Court at the hearing on July 16, 2024, Dkt. No. 80 at 52:10–11. For the reasons below, as well as in FDIC-C's opening and reply briefs (Dkt. Nos. 25, 66), the Court should hold that 12 U.S.C. § 1821(f) preempts SVBFG's non-§ 1821(f) claims.

## I. SVBFG'S Claims Are For Insurance Coverage Under 12 U.S.C. § 1821(f).

A close reading of § 1821(f), coupled with the (limited) caselaw delineating the scope of § 1821(f), shows that it covers any claim by a depositor of a failed bank seeking insurance coverage from FDIC-C for its deposits at the failed bank. Dkt No. 25 at 8; Dkt. No. 66 at 2–3.

Under § 1821(f), when a bank fails, FDIC-C makes payments of insured deposits to each "depositor" of the failed bank. § 1821(f)(1). A dissatisfied depositor may file an administrative claim with FDIC-C, and any determination by FDIC-C regarding "any claim for insurance coverage" is a "final determination." § 1821(f)(3). A final determination "regarding any claim for insurance coverage" is reviewable in federal district court under APA standards, § 1821(f)(4), within 60 days of the final determination, § 1821(f)(5). The text of § 1821(f) thus shows that it encompasses any claim for insurance coverage by a depositor of a failed bank. SVBFG's claims here fit that bill.

In its briefing and during the hearing on July 11, 2024, SVBFG did not dispute that § 1821(f) preempts claims that fall within its scope, but it argued that its claims do not fall within that scope. Those arguments are irreconcilable with the statutory provisions and with caselaw on preemption.

*First*, SVBFG contends that § 1821(f) is limited to claims for "insured deposits." Not so. The statute does not explicitly define "any claim for insurance coverage," but § 1821(f)(3) authorizes FDIC-C to promulgate regulations "for resolving any disputed claim relating to any insured deposit *or any determination of insurance coverage with respect to any deposit*." In so providing, the statute makes clear that a "claim for insurance coverage" is not limited to claims for "insured deposits" but also encompasses claims seeking insurance coverage for "any deposit," whether insured or uninsured. That is consistent with caselaw, as courts regularly adjudicate claims under § 1821(f) by depositors of failed banks seeking larger deposit payments than the amount that FDIC-C administratively determined were insured deposits. *See, e.g., Lambert v. FDIC*, 847 F.2d

604 (9th Cir. 1988) (adjudicating claim under § 1821(f) seeking payments "in excess of $100,000, the statutory limit [at the time] for deposits by an individual"); *Aviva Life & Annuity Co. v. FDIC*, 654 F.3d 1129 (10th Cir. 2011) (adjudicating claim under § 1821(f) seeking coverage for millions of dollars in deposits); *Tam v. FDIC*, 830 F. Supp. 2d 850 (C.D. Cal. 2011) (similar).

By contrast, SVBFG fails to cite, and FDIC-C is not aware of, *a single case* in which any court has allowed a depositor of a failed bank to proceed with claims against FDIC-C for payments for deposits, whether insured or uninsured, outside of § 1821(f).

It also is consistent with common sense. When one makes a claim for, say, homeowners or auto insurance, the insurer determines whether the claim is covered by insurance. Even if the insurer decides that the claim is not covered, that outcome does not change the fact that the process was a determination of insurance coverage. So too here: § 1821(f) sets out a *process* for "determin[ing] . . . insurance coverage with respect to any deposit." The ultimate outcome does not change the § 1821(f) process that must be followed.

**Second**, SVBFG tries to frame its lawsuit as "not claiming insurance," but as instead seeking a non-insurance "payment of uninsured deposits." Dkt. No. 76 (July 11 Tr.) 21:22–23. This word game does not work. When "distinguishing between pre-empted and non-preempted claims," courts do not look at the "particular label affixed to them," as that "would 'elevate form over substance and allow parties to evade' the pre-emptive scope of [the statute] simply 'by relabeling their . . . claims." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) (ERISA case) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (LMRA case)). To decide if a statute covers a claim, "[w]hat matters is the crux—or in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Ward v. Stanislaus*, 2024 WL 1543195, at *2 (N.D. Cal. Apr. 8, 2024) (FCRA case) (quoting *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017) (IDEA case)). "The Ninth Circuit 'looks beyond the labels used to determine whether a proposed claim is barred.'" *Id.* (quoting *Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (FTCA case)).

The gravamen of SVBFG's claims is that SVBFG was a depositor of a bank that failed (Silicon Valley Bank), and it wants an insurer (FDIC-C) to use its insurance fund (the Deposit Insurance Fund) to pay for its deposits at the failed bank. *See* Compl. ¶¶ 1–4, 105–47, 162–69. That

is a claim for deposit insurance coverage. "Insurance" in the deposit context refers to protecting depositors of failed banks from losing money they deposited. *See, e.g.*, Dkt. No. 1-2 (FDIC FAQs) at 2 ("FDIC deposit insurance protects customers in the event that an FDIC-insured depository institution fails."); "Deposit Insurance," Black's Law Dictionary (12th ed. 2024) ("A federally sponsored indemnification program to protect depositors against the loss of their money, up to a specified maximum, if the bank or savings-and-loan association fails or defaults."). By seeking FDIC-C protection for its deposits at a failed bank, SVBFG is seeking insurance coverage.

If SVBFG were allowed to proceed with its deposit claims outside of § 1821(f), then ***every depositor of a failed bank*** could likewise easily circumvent § 1821(f) by re-labeling its claims as seeking a "noninsurance payment from the Deposit Insurance Fund." SVBFG's claims are not unique—it pleads a due process claim for deprivation of its deposit accounts, an estoppel claim for an alleged breach of a promise to protect its deposits, and so forth. Any dissatisfied depositor could press similar claims. The substantive basis for SVBFG's claims—the systemic risk exception—is less common, but "a claim [under § 1821(f)] does not cease to be so because of the substantive issue raised by the specific claim or the number of claims made." *Massachusetts v. FDIC*, 47 F.3d 456, 460 (1st Cir. 1995). If the Court allows SVBFG's claims to proceed outside § 1821(f), then any other depositor of a failed bank could likewise evade § 1821(f) by filing their own due process claims, estoppel claims, and similar claims, in which they contend § 1821(f) is inapplicable because they do not seek "insurance" but instead merely a non-insurance "payment" based on some FDIC statute, regulation, press release, or other substantive theory. This Court should not open those flood gates.

That is exactly what Congress sought to avoid with the administrative channeling provisions in § 1821(f). Congress adopted § 1821(f) as one of several statutory "limitations on judicial intervention" in the FDIC's work. *Massachusetts*, 47 F.3d at 459. As the Ninth Circuit has explained in the analogous context of claims against FDIC-R under 12 U.S.C. § 1821(d), these administrative channeling processes are essential parts of the statute to prevent a litany of claims from impeding the FDIC's important work of protecting depositors and resolving failed banks. *Deutsche Bank Nat'l Trust Co. v. FDIC*, 744 F.3d at 1128 (9th Cir. 2014); *see also Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1209 (9th Cir. 2012) ("Litigants cannot avoid FIRREA's administrative requirements

through strategic pleading."); *Battista v. FDIC*, 195 F.3d 1113, 1116–20 (9th Cir. 1999) (rejecting attempt to circumvent § 1821(d) claims process by filing claim under separate provision § 1821(e)).

The Ninth Circuit has never discussed § 1821(f) in detail, but it has twice indicated in passing that § 1821(f) is the statutory mechanism for depositors of failed banks to seek relief from FDIC-C. In *GECCMC 2005-C1 Plummer St. Office Ltd. P'Ship v. JP Morgan Chase Bank, N.A.*, the FDIC entered a purchase and assumption (P&A) agreement to transfer assets and liabilities of a failed bank to JP Morgan. 671 F.3d 1027, 1029–30 (9th Cir. 2012). A putative third-party beneficiary argued that allowing it to enforce the agreement was important "to protect the assets of depositors." *Id.* at 1036. The Ninth Circuit disagreed, concluding that "depositors need not rely on the P&A Agreement for a remedy" because "FIRREA provides a statutory mechanism for such relief," namely "12 U.S.C. § 1821(f)." *Id.*; *see also Battista*, 195 F.3d at 1118 ("§ 1821(f) establishes a separate track for the making and paying of claims" for "depositors"). The descriptions of § 1821(f) in *GECCMC* and *Battista* are consistent with treating § 1821(f) as the exclusive remedy for claims by depositors of failed banks, such as SVBFG's claims here. Although the Court expressed concern with *GECCMC*, this is why it was previously cited in the FDIC-C's briefs and remains relevant.

**Third**, SVBFG argues that "the whole notion that anything paid out of the [Deposit Insurance Fund] is insurance or subject to 1821(f) is wrong." Dkt. No. 76 (July 11 Tr.) at 21:14–15. That is a straw man. FDIC-C's position is ***not*** that anything paid out of the Fund is a deposit insurance payment or subject to § 1821(f); SVBFG is correct that Fund money can be used for other "insurance purposes", including, for example, to facilitate bank mergers. *See* 12 U.S.C. § 1823(c)(2)(A). And, claims about non-deposit payments are not within the scope of § 1821(f) because, as explained above, § 1821(f) covers only claims **by depositors of failed banks**. But, unlike those examples, SVBFG's claims **are about deposits** and thus fall squarely within § 1821(f)'s preemptive scope.

## II. The Deposit Insurance Fund is Used Only for Insurance Purposes.

The Deposit Insurance Fund is "a pool of assets used to guarantee the safety of federally insured deposits." *Bullion Servs. v. Valley State Bank*, 50 F.3d 705, 708 (9th Cir. 1995). Although not every payment from the Fund is a deposit insurance payment (*e.g.*, payments to facilitate mergers, payments for operating expenses, staff salaries, building leases and the like), the law is

clear that the Fund may be used only for insurance purposes. By statute, FDIC-C "shall . . . use" the Fund "to carry out its insurance purposes." 12 U.S.C. § 1821(a)(4)(A)(ii). "Shall" signals that FDIC-C *must* "use" the Fund for "its insurance purposes." *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1177 (2024) ("shall" typically connotes a requirement). The statute further provides that the Fund is available for FDIC-C to "use with respect to insured depository institutions the deposits of which are insured by the Deposit Insurance Fund." § 1821(a)(4)(B). That mandate and use aligns with "FDIC Corporate's primary responsibility," which "is to insure bank deposits and to pay depositors when an insured bank fails." *Bullion*, 50 F.3d at 708.

Even when FDIC-C uses the Deposit Insurance Fund to make a payment that is not deposit insurance, the payment still must advance FDIC-C's "insurance purposes." § 1821(a)(4)(A)(ii). For example, FDIC-C can use the Fund to facilitate a failing bank's merger with a non-failing bank. § 1823(c)(2)(A). Such a use may advance FDIC-C's insurance purposes by protecting depositors of the failed bank from needing insurance payments. When taking such actions, FDIC-C must comply with the least-cost resolution requirements, *see* 12 U.S.C. § 1823(c)(4)(A), (E), which, among other things, prohibit FDIC-C from using the Fund to "protect[] . . . depositors for more than the insured portion of deposits." § 1823(c)(4)(E)(i)(I). Invocation of the systemic risk exception frees FDIC-C from the least-cost resolution requirements, *see* 12 U.S.C. § 1823(c)(4)(G) (empowering FDIC-C to act "[n]otwithstanding subparagraphs (A) and (E)"), but it does ***not*** somehow set up a pool of money separate from the Deposit Insurance Fund or otherwise eliminate the statutory requirement that FDIC-C use the Fund to carry out "its insurance purposes," § 1821(a)(4)(A)(ii).

### III. The Treasury Secretary's Authority Under the Systemic Risk Exception Is Limited.

It is clear from both the statute and secondary sources that the Secretary of the Treasury's role in the systemic risk exception is important but sharply limited. The relevant statute—§ 1823(c)(4)(G)—operates as an "if-then" clause. The statute provides that "if" the Secretary invokes the systemic risk exception, then FDIC-C "may," notwithstanding the least-cost resolution requirements , "take other action or provide assistance under this section for the purpose of winding up the insured depository institution for which the Corporation has been appointed receiver as necessary to avoid or mitigate such effects." § 1823(c)(4)(G). The Secretary's role is therefore

essential—she is part of a condition precedent—but once she fulfills the condition by invoking the systemic risk exception, authority to determine any further actions resides solely with FDIC-C. The statute is explicit that it is in FDIC-C's "sole discretion," § 1823(c)(4)(F)—not "shared discretion" or "discretion constrained by instructions from the Secretary of the Treasury," but "sole discretion"—to act. Consistent with that, every specific action or assistance then authorized under § 1823 is expressly discretionary. *See* 12 U.S.C. § 1823(c)(1) ("in its sole discretion"); § 1823(c)(2)(A) ("in its sole discretion"); § 1823(c)(3) ("may"); § 1823(d)(4) ("in its discretion"); § 1823(h) ("may"); § 1823(k)(1)(A)(i) ("in its discretion").

In deciding whether to invoke the systemic risk exception, the Secretary of the Treasury must determine that "any action or assistance under this subparagraph would avoid or mitigate such adverse effects." § 1823(c)(4)(G)(i)(II). That determination is ***not*** a determination that FDIC-C must take a ***specific*** action, but rather a ***general*** determination that some FDIC-C action would avoid or mitigate the crisis. Treating this provision as requiring the Secretary to mandate that FDIC-C take a particular action (as SVBFG urges) is incompatible with § 1823(c)(4)(F) and the other provisions of the statute cited above providing that any actions FDIC-C takes are solely within its discretion.

SVBFG's reading is also inconsistent with the structure of the statute. The statute provides that the Secretary of the Treasury must "document" and "retain the documentation" of her determination to invoke the systemic risk exception. § 1823(c)(4)(G)(iii). It does not say that she will instruct the FDIC-C what action to take, nor does it provide that FDIC-C will ever even review or see that documentation. Instead, it provides that "review" of the documentation will be by the "Comptroller General of the United States" and the "GAO" (the U.S. Government Accountability Office). §§ 1823(c)(4)(G)(iii)(II), (iv). And the Secretary must notify certain congressional committees of its determination. § 1823(c)(4)(G)(v). If the statute were designed to have the Secretary instruct FDIC-C what action to take, it would say so and require the Secretary to provide FDIC-C—not just GAO and Congress—with that documentation.

The emergency purpose of the systemic risk exception would also be frustrated by SVBFG's approach. "Because systemic risk is unpredictable and fast moving, emergency tools such as the systemic risk exception have been crafted to give policymakers broad, discretionary powers to

respond quickly to a range of potential risks." Ex. A (CRS, *Bank Failures: The FDIC's Systemic Risk Exception* (Apr. 23, 2024)), at 2, *available at* https://crsreports.congress.gov/product/pdf/IF/IF12378. The Court can take judicial notice of public government reports. *See Nat'l Urban League v. Ross*, 508 F. Supp. 3d 663, 678 n.2 (N.D. Cal. 2020). The need for flexibility to deal with a quickly moving crisis is precisely why FDIC-C has discretion as to what action to take, not a mandate from the Secretary of the Treasury to take a particular action.

The GAO's initial report to Congress about the invocation of the systemic risk exception for Silicon Valley Bank further confirms that SVBFG's interpretation is wrong. *See* Ex. B (GAO, *Bank Regulation: Preliminary Review of Agency Actions Related to March 2023 Bank Failures* (Apr. 2023)) *available at* https://www.gao.gov/assets/gao-23-106736.pdf. As depicted in Figured 1 of the report, which is reproduced below, and as reflected throughout the report, once the Secretary invokes the systemic risk exception, the Secretary's role is complete, and the FDIC is "[a]uthorized"—not mandated or instructed—"to take actions under [the] systemic risk exception":



Ex. at 8 fig. 1. The GAO's understanding of § 1823(c)(4)(G) is based on its "review[] of agency documents" and on "interview[s]" with "Treasury," "FDIC," and others. Ex. A at 2. It is consistent with the text of § 1823(c)(4)(G) as explained above and in FDIC-C's prior briefs, and with FDIC-C's own understanding, *see* Dkt. 1-11 at 6–10. This Court should follow it as well.

Dated: July 18, 2024

**OF COUNSEL:**

Andrew J. Dober (CA Bar No. 229657)
Senior Counsel
adober@fdic.gov
Telephone: (703) 562-2545
Erik Bond, Counsel
erbond@fdic.gov
Telephone: (703) 562-6461
Jason Benton, Senior Attorney
jabenton@fdic.gov
Telephone: (703) 501-6256

Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive
Arlington, VA 22226

Respectfully submitted,

*/s/ Jonathan G. Cooper*

Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

*Counsel to the Federal Deposit Insurance Corporation (in its corporate capacity)*