# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:                                                      **FOR PUBLICATION**

      SVB FINANCIAL GROUP,                        Chapter 11

                                       Case No. 23-10367 (MG)

                         Debtor.

-------------------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER SUSTAINING THE OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR SILICON VALLEY BANK AND SILICON VALLEY BRIDGE BANK, N.A. TO THE SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

*A P P E A R A N C E S :*

SULLIVAN & CROMWELL
*Counsel to the Debtor*
125 Broad Street
New York, New York 10004
By:    James L. Bromley, Esq.
        Andrew G. Dietderich, Esq.
        Adam S. Paris, Esq.
        Christian Jensen, Esq.

1888 Century Park East
Suite 2100
Los Angeles, California 90067
By:    Diane L. McGimsey, Esq.
        Robert A. Sacks, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Counsel to the Official Committee of Unsecured Creditors*
One Bryant Park
New York, New York 10036
By:    Ira S. Dizengoff, Esq.
        David M. Zensky, Esq.
        Joseph L. Sorkin, Esq.
        Brad M. Kahn, Esq.
        Katherine Porter, Esq.

2001 K Street NW
Washington, D.C. 2006
By:     James R. Savin, Esq.

REED SMITH LLP
*Counsel to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank and*
*as Receiver for Silicon Valley Bridge Bank, N.A.*
599 Lexington Avenue
New York, New York 10022
By:     Kurt F. Gwynne, Esq.
        Casey D. Laffey, Esq.

Three Logan Square
1717 Arch Street
Suite 3100
Philadelphia, Pennsylvania 19103
By:     Derek J. Baker, Esq.

2850 N. Harwood Street
Suite 1500
Dallas, Texas 75201
By:     Keith M. Aurzada, Esq.

DAVIS POLK & WARDWELL LLP
*Counsel to the Ad Hoc Group of Senior Noteholders*
450 Lexington Avenue
New York, New York 10017
By:     Marshall S. Huebner, Esq.
        Elliot Moskowitz, Esq.
        Angela M. Libby, Esq.
        Aryeh Ethan Falk, Esq.
        Abraham Bane, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the objection (the "FDIC Objection," ECF Doc. # 1268) of

the Federal Deposit Insurance Corporation as receiver for Silicon Valley Bank (in such capacity,

the "FDIC-R1") and Silicon Valley Bridge Bank, N.A. (in such capacity, the "FDIC-R2," and

together with FDIC-R1, the "FDIC") to confirmation of the *Second Amended Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code* (ECF Doc. # 1332 and, together with

the plan supplement (the "Plan Supplement," ECF Doc. ## 1246, 1290, 1304), the "Plan") of

SVB Financial Group (the "Debtor" or "SVBFG").[1]  The Plan represents the eighth iteration of

the Debtor's proposed Plan.  (*See* ECF Doc. # 826 (first iteration); ECF Doc. # 1086 (second

iteration); ECF Doc. # 1143 (third iteration); ECF Doc. # 1175 (fourth iteration); ECF Doc. #

1178 (fifth iteration); ECF Doc # 1276 (sixth iteration); ECF Doc. # 1303 (seventh iteration);

ECF Doc. # 1332 (eighth iteration).)

The FDIC Objection raises, among other things, objections concerning the impact of the

Plan on the FDIC's purported defensive rights of setoff (the "FDIC Setoff Objection," and all

other objections asserted therein, the "FDIC Non-Setoff Objections"), which are pending before

the District Courts of the Southern District of New York and the Northern District of California.[2]

On July 18, 2024, the Debtor filed a memorandum of law (the "Confirmation Brief and

Omnibus Reply," ECF Doc. # 1307) in support of confirmation and in response to objections

filed to confirmation, including the FDIC Non-Setoff Objections.  That same day, the Debtor

filed a separate reply memorandum (the "Debtor Reply," ECF Doc. # 1306) that focused solely

on the FDIC Setoff Objection.

---

[1]     Defined terms used herein but not otherwise defined shall have the meaning ascribed to them in the *Disclosure Statement for Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement," ECF Doc. # 1179) or as further modified in the Plan.

[2]     In total, five objections were filed to the Plan: (i) the limited objection of creditor Shirley Jane Leung ("Leung" and her objection, the "Leung Limited Objection," ECF Doc. # 1267); (ii) the FDIC Objection; (iii) the objection of Hildene Collateral Management Company, LLC ("Hildene" and its objection, the "Hildene Objection," ECF Doc. # 1269); (iv) the objection of the U.S. Trustee (the "UST" and its objection, the "UST Objection," ECF Doc. # 1288); and (v) the objection of ACE American Insurance Company, ACE Property & Casualty Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Vigilant Insurance Company, and each of their respective U.S.-based affiliates and predecessors (collectively, the "Chubb Companies" and their objection, the "Chubb Objection," ECF Doc. # 1291).  Other than the FDIC Setoff Objection and the Hildene Objection, the Debtor resolved all objections to confirmation.  The Court has separately overruled the Hildene Objection in the Confirmation Order.

In conjunction with the Confirmation Brief and Omnibus Reply, the Debtor also filed the declaration of William C. Kosturos, Chief Restructuring Officer of SVB (the "Kosturos Declaration," ECF Doc. # 1308) in support of confirmation. Annexed to the Kosturos Declaration is (i) a copy of the BP Trust I Indenture as Exhibit A and (ii) a copy of the BP Trust II Indenture as Exhibit B.

In addition, on July 18, 2024, each of the Official Committee of Unsecured Creditors (the "Committee" and its statement, the "UCC Statement," ECF Doc. # 1309) and an ad hoc group of holders or investment advisors or managers acting on behalf of holders of certain Senior Notes (the "Ad Hoc Noteholder Group" and its reply, the "Ad Hoc Noteholder Group Reply," ECF Doc. # 1310) filed statements in support of confirmation.[3]

On July 19, 2024, the Court entered a joint pretrial order (the "Joint Pretrial Order," ECF Doc. # 1319), which sets forth, among other things, certain stipulated facts between the Debtor and the FDIC. The Court held a hearing on confirmation of the Plan on July 24, 2024 (the "Confirmation Hearing"). At the Confirmation Hearing, the Debtor and the FDIC notified the Court that the FDIC Non-Setoff Objections were resolved. (*See* July 24, 2024 Hr'g Tr. at 69:7–8 (notifying the Court that the Debtor "reached an agreement" with the FDIC on the FDIC Non-Setoff Objections).) Accordingly, this Opinion addresses the remainder of the FDIC Objection, which is comprised of the FDIC Setoff Objection.

At the Confirmation Hearing, the Court directed the FDIC-R1 to "file one or more declarations with supporting exhibits that show precisely what the flow of funds or paper account records reflect the transfer of the 1.9 billion dollars from one entity to another." (*See* July 24, 2024 Hr'g Tr. at 143:17–20.) In accordance with the foregoing, the FDIC-R1 filed the *Second*

---

[3]   The Ad Hoc Noteholder Group Reply also responds to the Hildene Objection, which has been overruled as set forth in the Confirmation Order.

*Amended Declaration of Luis Mayorga Pursuant to Court's Direction at the July 24, 2024,*

*Confirmation Hearing* (the "Mayorga Declaration," ECF Doc. # 1351) on July 28, 2024.  One

day later, the Debtor filed the *Declaration of Robert A. Sacks* (the "Sacks Declaration," ECF

Doc. # 1353) in response to the Mayorga Declaration.

For the reasons discussed, the Court **SUSTAINS** the FDIC Objection.

## I.     BACKGROUND

### A.  Relevant Events Preceding the Debtor's Chapter 11 Filing

Prior to March 10, 2023, the Debtor owned and operated Silicon Valley Bank ("SVB"), a

California-chartered bank, through which the Debtor offered commercial and private banking

products and services.  (Disclosure Statement, Art. II(A).)  On March 10, 2023, the California

Department of Financial Protection and Innovation closed SVB and appointed FDIC-R1 as

receiver for SVB.  (Joint Pretrial Order at 3.)

On March 13, 2023, following the Treasury Secretary's declaration of a systemic risk

exception on March 12, 2023, the Debtor had deposit accounts at Silicon Valley Bridge Bank,

N.A. ("Bridge Bank") with a combined balance of approximately $2.1 billion as of the opening

of business.  (*Id.*)  Between March 13–16, 2023, the Debtor withdrew funds from those accounts.

(*Id.*)

On or about March 15, 2023, FDIC-R1 purported to recall the account liability from

Bridge Bank to prevent the Debtor from withdrawing funds from its deposit accounts and sought

Bridge Bank's reversal of the wire withdrawals that the Debtor had previously initiated from that

account.  (*Id.*)

B. **Relevant Case History**

1. The Chapter 11 Case

On March 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Petition," ECF Doc. # 1) under chapter 11 of the Bankruptcy Code. (Disclosure Statement, Art. I.) On March 28, 2023, the UST appointed the Committee. (*Id.*, Art. III(C).)

In addition to the Committee, two ad hoc groups have also formed: (i) an ad hoc group of certain holders, or investment advisors managing or acting on behalf of holders of certain Senior Notes and Preferred Stock issued by the Debtor (the "Ad Hoc Group of Senior Noteholders") and (ii) an ad hoc group of holders, or investment advisors, sub-advisors, or managers of holders, of certain Senior Notes and preferred stock issued by the Debtor (the "Ad Hoc Cross-Holder Group"). (*Id.*, Art. III(D), (E).)

On June 29, 2023, the Court entered an order approving the Debtor's motion to establish deadlines for filing of proofs of claim (the "Bar Date Order," ECF Doc. # 373), which established September 14, 2023 at 4:00 p.m. (EST) as the deadline for governmental units to file proofs of claim against the Debtor (the "Government Bar Date"). (Bar Date Order ¶ 4.)

The FDIC acknowledges that it did not file proofs of claim in this bankruptcy case and "[has] not invoked this Court's claims allowance process" notwithstanding the FDIC-R1's awareness of the Government Bar Date and the "subject matter for which it claims defensive setoff rights." (FDIC Objection ¶ 10; Joint Pretrial Order at 6 ("FDIC-R1 was aware of the September 14, 2023 deadline for governmental units to file claims . . . .").) The FDIC-R1 does not dispute that it "could have filed a proof of claim based on the subject matter of those rights," but did not. (*Id.*) Such claims, it states, "were and remain under investigation." (*Id.*) In other words, the FDIC-R1 made a determination, prior to the Government Bar Date, to not file a claim

6

in this proceeding based on the subject matter for which it claims to have defensive setoff rights. (*Id.*)

## 2.   The Adversary Proceeding and the Withdrawal of the Reference

On July 9, 2023, the Debtor commenced adversary proceeding no. 23-01137 (MG) (the "Adversary Proceeding" and related complaint, the "Adversary Complaint") against the FDIC in its corporate capacity, FDIC-R1, and FDIC-R2.  (FDIC Objection ¶ 6; Joint Pretrial Order at 5.) Count II of the Adversary Complaint asserts a claim for turnover pursuant to section 542 of the Bankruptcy Code against the FDIC for the turnover of the "Deposit Account" that the Debtor asserts had a balance of $1,933,805,708.13 as of the Petition Date (the "Deposit Claim").  (FDIC Objection ¶ 6.)  Relatedly, count IV of the Adversary Complaint seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and asks the Court to determine the rights of FDIC-R1 with respect to setting off against the Deposit Claim.  (*Id.*)

On December 13, 2023, the U.S. District Court for the Southern District of New York withdrew the reference of the Adversary Complaint, which is pending in District Court as Civil Action No. 23-7218 (JPC) (the "S.D.N.Y. Action").  (*Id.* ¶ 7.)  The S.D.N.Y. Action remains pending in District Court but is currently stayed pending further developments in the litigation in the Northern District of California.  (Joint Pretrial Order at 6–7.)

## 3.   The Debtor's Asserted Claims in the FIRREA Process

Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the FDIC established July 10, 2023, as the claims bar date (the "FDIC Bar Date"). (FDIC Objection ¶ 9.)  On the FDIC Bar Date, the Debtor filed three claims against each of FDIC-R1 and FDIC-R2: (i) a $1.93 billion claim on account of the Deposit Claim; (ii) a second claim in an unidentified amount for deferred compensation plan participants (the "Deferred

Compensation Claim"); and a (iii) third claim in a contingent and unliquidated amount for alleged actions or omissions of the FDIC (such as allegedly selling the assets of SVB for less than their value) (the "Damages Claim" and together with the Deposit Claim and the Deferred Compensation Claim, the "Claims"). (*Id.*; *see also* Joint Pretrial Order at 5.) The FDIC notes that the Deposit Claim and the Damages Claim are based on the same allegations as the Adversary Complaint that is now before the District Court. (FDIC Objection ¶ 9.)

On January 5, 2024, FDIC-R1 disallowed the Deposit Claim because it was "not proven to the satisfaction of the receiver due to the receiver's defenses," and FDIC-R2 denied the claim because it was not a liability of Bridge Bank. (*Id.* ¶ 11.) Notably, the *Notice of Disallowance of Claim* concerning the Deposit Claim did not specifically identify those defenses, including any alleged right of setoff. (Joint Pretrial Order at 7.) All other Claims were "denied as speculative, unsupportable, or otherwise not proven to the satisfaction of the receiver." (FDIC Objection ¶ 11.)

### 4. The Pending Action in the Northern District of California

On March 5, 2024, the Debtor commenced an action against the FDIC in the U.S. District Court for the Northern District of California (the "N.D. Cal. Action" and the complaint, the "N.D. Cal. Complaint"). (*Id.* ¶ 12.) The N.D. Cal. Complaint asserts 11 counts against the FDIC with respect to the Deposit Claim and raises identical issues to those in the S.D.N.Y. Action. (*Id.* ¶¶ 13–14.)

### C.  The Chapter 11 Plan

On May 30, 2024, the Court entered an order (the "Disclosure Statement Order," ECF Doc. # 1172) approving the Disclosure Statement, which was filed in connection with the fifth iteration of the Plan (ECF Doc. # 1178), the solicitation version of the Plan.

On July 9, 2024, the Debtor filed the sixth iteration of the Plan (ECF Doc. # 1276).  That
version of the Plan reflected (i) modifications disclosed in the *Notice of Agreed Plan
Modifications* (the "Plan Modification Notice," ECF Doc. # 1208), including those reflecting
agreements reached with the Ad Hoc Cross-Holder Group and (ii) "additional clarifications
based on discussions with other parties-in-interest."  (Plan at 2.)  Subsequently, the Debtor filed
the seventh iteration of the Plan (ECF Doc. # 1303) on July 18, 2024, "reflecting certain
clarifications based on discussions with other parties-in-interest."  (*Id.*)  The Debtor further
revised the Plan and, on July 24, 2024, filed the version of the Plan that is before the Court for its
consideration.

### D.  The FDIC Setoff Objection[4]

The FDIC asserts that the section 10.7 of the Plan improperly extinguishes FDIC-R1's
defensive setoff rights.[5]  (FDIC Objection ¶¶ 1, 16.)  Section 10.7 of the Plan provides, in
relevant part:

> In no event will any Person or Entity be entitled to set off any Claim or
> Interest against any Claim or Interest, right, or Cause of Action and Defense
> of the Debtor, the Liquidating Trust or NewCo, as applicable, in any judicial
> or administrative proceeding, unless such Person or Entity has filed a Proof
> of Claim in this Chapter 11 Case preserving such setoff and a Final Order
> of the Bankruptcy Court has been entered, authorizing and approving such
> setoff.

(Plan § 10.7.)

As FDIC-R1 has not filed a proof of claim, the FDIC argues that section 10.7 eliminates
FDIC-R1's defensive setoff rights.  (FDIC Objection ¶ 16.)

---

[4]    As the Debtor and the FDIC have resolved the FDIC Non-Setoff Objections, the Opinion addresses solely
the FDIC Setoff Objection.

[5]    The FDIC also highlights section 4.2.9(ii) of the Plan, which it argues authorizes the Debtor to release
Intercompany Claims against the Debtor that are owned by FDIC-R1 and serve as the basis for its defensive setoff
rights.  (FDIC Objection ¶ 17.)

The foregoing is improper, the FDIC argues, because the FDIC-R1's defensive setoff rights are pending before the District Courts in the Southern District of New York and the Northern District of California, the latter of which has exclusive jurisdiction over the Claims and FDIC-R1's defensive setoff rights pursuant to 12 U.S.C. § 1821(d)(6)(A).  (*Id.* ¶¶ 1, 18, 20–21; *see also id.* ¶ 22 (arguing that the N.D. Cal. Action is the "only forum in which FDIC-R1's defensive setoff rights can be adjudicated").)  A release or extinguishment of the FDIC-R1's defensive setoff rights here, the FDIC maintains, would "unequivocally restrain or affect the FDIC-R1's powers under 12 U.S.C. § 1821(d)(2)(A)."  (*Id.* ¶ 23.)  Additionally, the FDIC argues, the District Court for the Southern District of New York, which has withdrawn the reference over the Debtor's claims in the Adversary Proceeding, possesses jurisdiction over the FDIC-R1's setoff rights that are pending in the S.D.N.Y. Action and divested this Court of jurisdiction.  (*Id.* ¶ 28.)

Moreover, the FDIC further argues that even if such setoff rights were not subject to the exclusive jurisdiction of another court (*i.e.*, the District Courts for Southern District of New York and the Northern District of California), section 553 of the Bankruptcy Code nonetheless preserves the FDIC-R1's setoff rights.  (*Id.* ¶¶ 1, 18, 29–30.)  It notes that the FDIC-R1 has "consistently asserted" and provided notice of its defensive setoff rights throughout the pendency of this chapter 11 case and in the Adversary Proceeding.  (*See id.* ¶¶ 32–34, 36–37; *see also id.* ¶ 35 (indicating that the FDIC-R1 asserted its right to defensive setoff in the S.D.N.Y. Action).)  The FDIC also maintains that it was not required to file a proof of claim to preserve its rights to setoff.  (*Id.* ¶ 38.)

To address the foregoing, the FDIC proposed language to be included in any order confirming the Plan that would resolve its objection.[6]  (*See id.* ¶ 40.)

### E.  The Debtor's Reply to the FDIC Setoff Objection

The Debtor opposes the FDIC Setoff Objection on five grounds: (i) the FDIC lacks constitutional and statutory authority to bring the FDIC Objection; (ii) section 553 of the Bankruptcy Code does not preserve the FDIC-R1's purported setoff from discharge; (iii) the FDIC-R1 forfeited any setoff claims when it failed to file a proof of claim or seek stay relief; (iv) notwithstanding, equitable principles dictate that the Court exercise its discretionary authority to overrule the FDIC Objection; and (v) FIRREA is inapplicable as its administrative process is limited to "claims against a depository institution."  (*See* Debtor Reply ¶ 2.)

### F.  The Committee's Statement in Response to the FDIC Setoff Objection

The Committee joins in support of the Debtor Reply and separately argues that the FDIC Setoff Objection is meritless and should be overruled.  (*See* UCC Statement ¶ 3.)  First, the Committee asserts that the FDIC has failed to file a proof of claim, and, therefore, it is appropriately barred by the Plan from asserting setoff claims or defenses in any future litigation. (*Id.* ¶ 4.)  The Committee emphasizes that the FDIC deliberately chose not to file a proof of claim to secure a "more favorable venue and to delay having to substantiate and litigate its

---

[6]      In addition, annexed to the FDIC Objection is (i) a list of relevant Plan provisions as Schedule 1; (ii) the Adversary Complaint as Exhibit A; (iii) the Opinion and Order issued in the S.D.N.Y. Action on December 13, 2023 as Exhibit B; (iv) copies of claims filed by the Debtor against the FDIC-R1 in the FIRREA claims process as Exhibit C; (v) copies of claims filed by the Debtor against the FDIC-R2 in the FIRREA claims process as Exhibit D; (vi) the N.D. Cal. Complaint as Exhibit E; (vii) the March 21, 2023 hearing transcript as Exhibit F; (viii) the May 17, 2023 hearing transcript as Exhibit G; (ix) the April 26, 2023 hearing transcript as Exhibit H; (x) the *Statement of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to the Court's Direction at the April 26, 2023 Hearing* (ECF Doc. # 145) as Exhibit I; (xi) the FDIC-R1's memorandum of law in support of its motion to dismiss filed in the Adversary Proceeding as Exhibit J; (xii) the FDIC-R1's reply in support of its motion to dismiss filed in the Adversary Proceeding as Exhibit K; (xiii) the October 19, 2023 hearing transcript as Exhibit L; (xiv) the *Statement of the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against SVB Financial Group* (ECF Doc. # 1081) as Exhibit M; (xv) the FDIC-R1's objection to the Disclosure Statement (ECF Doc. # 1111) as Exhibit N; and (xvi) the Amended Tax Allocation Agreement (ECF Doc. # 167-1) as Exhibit O.

alleged claims." (*Id.*)  The Committee concludes that the FDIC should not be allowed to object

to the Plan's language "bar[ring] future assertion of unfiled claims," especially after disregarding

the claim deadline set by the Court.  (*Id.*)  Second, the Committee disagrees with the FDIC's

classification of its claims as "defensive setoff claims."  (*Id.* ¶ 5.)  The UCC Statement states that

the FDIC's claims are "quintessential 'Claims'" against the Debtor's estate and the fact that

maximum potential recovery on these claims is capped to the $1.93 billion the FDIC owes the

Debtor does not change the analysis.  (*Id.*)  The Committee reiterates that the FDIC should have

identified and preserved its setoff claim but failed to do so.  (*Id.*)  Accordingly, the FDIC should

face the consequences of violating the deadline to file proofs of claims.  (*Id.*)  The Committee

maintains that any other result will undermine core bankruptcy purposes such as ensuring finality

and allowing the Debtor to have a "fresh start."  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

### A.  **Standing in a Bankruptcy Case**

Generally, to have standing in bankruptcy court, a party must possess: (i) prudential

standing; (ii) constitutional standing; and (iii) standing under section 1109 of the Bankruptcy

Code.  *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018); *see In re Old

Carco LLC*, 500 B.R. 683, 690 (Bankr. S.D.N.Y. 2013) (indicating that a party invoking federal

jurisdiction bears the burden to establish that it meets "(1) Article III's constitutional

requirements, (2) federal court prudential standing requirements, and (3) the 'party in interest'

requirements under Bankruptcy Code 1109(b).").  "All three standing requirements must be met

to have standing."  *Motors Liquidation*, 580 B.R. at 340.

1. <u>Prudential Standing</u>

First, a party seeking to appear in federal court must demonstrate prudential standing. *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988) (stating that "[t]he prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself."). The doctrine, self-imposed by federal courts, bars litigants "from asserting the constitutional and statutory rights of others in an effort to obtain relief for injury to themselves." *See id.* at 643 (holding that a creditor with an existing asbestos claim lacked standing to assert the rights of future claimants).

2. <u>Constitutional Standing</u>

Once a party has shown that it has prudential standing, it then must prove that it has constitutional standing. Specifically, under the "case or controversy" requirement of Article III of the United States Constitution, a party "must have a 'personal stake in the outcome of the controversy'" to have standing. *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 708 (S.D.N.Y. 2001) (citation omitted), *aff'd sub nom. Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp.)*, 336 F.3d 94 (2d Cir. 2003). Similar to the prudential standing requirements, "[a] party can only assert its own legal rights and cannot assert the rights of third-parties." *Id.* Furthermore, "[t]he Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

To prove constitutional standing, a party must establish "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### 3. Party-in-Interest Standing

Section 1109(b) of the Bankruptcy Code states, in relevant part, that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b); *see also id.* § 1128(b) (providing that "part[ies] in interest may object to confirmation of a plan"). These interested parties are non-exclusive. *See In re Residential Cap., LLC*, No. 12-12020 (MG), 2013 WL 6698365, at *3 (Bankr. S.D.N.Y. Dec. 19, 2013) (explaining that "[i]n the context of chapter 11 cases, the Code provides a non-exclusive listing of 'parties in interest'").

The phrase, "any issue in a case," generally "grants a right to raise, appear and be heard on *any issue* regardless [of] whether it arises in a contested matter or an adversary proceeding." *Term Loan Holder Comm. v. Ozer Grp. LLC, et al. (In re Caldor Corp.)*, 303 F.3d 161, 169 (2d Cir. 2002) (emphasis in original). In applying section 1109(b), "[c]ourts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *Lazard v. Texaco Inc. (In re Texaco Inc.)*, 81 B.R. 820, 828 (Bankr. S.D.N.Y. 1988) (citing *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d. Cir. 1985)).

14

## B. Setoff

Section 553(a) of the Bankruptcy Code provides, in relevant part, that:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
>
>> (1) the claim of such creditor against the debtor is disallowed; . . .
>>
>> (3) the debt owed to the debtor by such creditor was incurred by such creditor—
>>
>>> (A) after 90 days before the date of the filing of the petition;
>>>
>>> (B) while the debtor was insolvent; and
>>>
>>> (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).

11 U.S.C. § 553(a).

"Section 553(a) of Title 11 of the United States Code does not create a right of setoff, but rather preserves whatever right exists under applicable non-bankruptcy law." *Off. Comm. of Unsecured Creditors v. Mfrs. & Traders Tr. Co. (In re Bennett Funding Grp.)*, 146 F.3d 136, 138–39 (2d Cir. 1998) (footnote omitted); *see also Bank of Am. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 439 B.R. 811, 823 (Bankr. S.D.N.Y. 2010) ("Section 553 of the Bankruptcy Code does not provide for an independent right of setoff[.]"); *In re Delta Air Lines*, 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006) ("Section 553 does not create a federal right of setoff, nor does it enhance, diminish or otherwise modify any state law right of setoff."); *In re McLean Indus., Inc.*, 90 B.R. 614, 618 (Bankr. S.D.N.Y. 1988) ("Section 553 is, however, not an independent source of a right to setoff; rather, it recognizes and preserves, but does not define,

15

the common law right of setoff under nonbankruptcy law. A creditor seeking to setoff a debt

under Title 11, therefore, must establish a claim and a right to setoff by applying the law of the

state where the operative facts occurred . . . . Section 553, moreover, does not expand

nonbankruptcy rights and clearly provides that the automatic stay provisions of section 362 limit

post-petition setoff rights, requiring creditors to obtain court permission before taking any action

against the property of the estate." (internal citations omitted)).

Therefore, in order to establish a right to setoff under section 553, a creditor must first

demonstrate a preexisting right of setoff under non-bankruptcy or state law. *In re Corp. Res.*

*Servs., Inc.*, 564 B.R. 196, 203 (Bankr. S.D.N.Y. 2017); *see also In re WL Homes LLC*, 471 B.R.

349, 352 (Bankr. D. Del. 2012) (stating that creditor must "first establish its right to setoff by

finding an independent right of setoff under non-bankruptcy law"); *Charles Russell, LLP v.*

*HSBC Bank USA, N.A. (In re Awal Bank, BSC)*, 455 B.R. 73, 87 (Bankr. S.D.N.Y. 2011)

("[Section] 553 requires the court to analyze the applicable nonbankruptcy law before dealing

with a set-off[.]").

The creditor asserting the right to setoff has the burden to establish that the right to setoff

exists. *See Geron v. Schulman (In re Manshul Constr. Corp.)*, Nos. 96B44080 (JHG), 96B44079

(JHG), 97 CIV. 8851 (JGK), 99 CIV. 2825 (JGK), 2000 WL 1228866, at *56 (S.D.N.Y. Aug. 30,

2000); *McLean Indus., Inc.*, 90 B.R. at 618 ("The burden of proof, moreover, squarely rests with

[the creditor] in demonstrating its entitlement to setoff in light of the facts of this case." (citing

*Pester Ref. Co. v. Mapco Gas Prods., Inc. (Matter of Pester Ref. Co.)*, 845 F.2d 1476, 1486 (8th

Cir. 1988) (stating that burden is on creditors to establish valid rights of setoff))). *See also Glob.*

*Cable, Inc. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, No. 02 Civ. 9770

(RCC), 2006 WL 1559437, at *4 (S.D.N.Y. June 7, 2006) (indicating that the burden of proving mutuality rests with the creditor).

### III. DISCUSSION

#### A. The FDIC-R1 Has Standing to Bring the FDIC Setoff Objection

The Debtor contends that the FDIC lacks standing to object to confirmation of the Plan because the FDIC has failed to (i) plead or present facts to support a "concrete and particularized" and "actual or imminent" injury or seek other relief; and (ii) file a proof of claim. (Debtor Reply ¶¶ 23–26.) While the Debtor Reply initially opposed the FDIC's standing, Debtor's counsel stated at the Confirmation Hearing that the FDIC Setoff Objection, while asserted by the FDIC, is truly an objection by the FDIC-R1. (*See* July 24, 2024 Hr'g Tr. at 79:15–21 ("We're here with an objection by the FDIC to section 10.7 of the [P]lan, which has the effect of ending any set-off rights they may have. Now, the FDIC, it's an objection by the FDIC-R1, which is the receiver for [SVB] as distinct from the FDIC-R2, which is the receiver for Bridge Bank.").) Accordingly, the Debtor opposes the standing of the FDIC-R1 to object to confirmation of the Plan. (*See Notice of Filing of Confirmation Hearing Presentation* (the "Debtor Confirmation Presentation," ECF Doc. # 1330) at 7 ("FDIC-R1 Lacks Standing to Object to the Plan").) For the reasons discussed below, the Debtor's assertions are unavailing.

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387–88 (2d Cir. 1997) (quoting *Warth*, 422 U.S. at 498); *see also In re Teligent, Inc.*, 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009) ("Standing is a threshold issue in every federal litigation."). "When a plaintiff lacks standing to bring a suit, the court does not have subject matter jurisdiction to hear their claim." *In re Genesis Glob. Holdco, LLC*, No. 23-10063

(SHL), 2024 WL 2264719, at *32 (Bankr. S.D.N.Y. May 17, 2024).  In other words, standing

determines "whether the litigant is entitled to have the court decide the merits of the dispute or of

particular issues."  *Warth*, 422 U.S. at 498.

Here, while the FDIC-R1 has not invoked the Court's claims allowance process by filing

a proof of claim, the Plan nonetheless seeks to extinguish whatever defensive setoff rights the

FDIC-R1 may possess in the pending S.D.N.Y. Action and N.D. Cal. Action.  It goes without

saying that it was the Debtor who commenced the N.D. Cal. Action and the Adversary

Proceeding that is now before the District Court in the Southern District of New York, asserting

claims against the FDIC-R1, among others.  And it is these claims against which the FDIC-R1

believes it possesses "defensive setoff rights" that the Plan now seeks to irrevocably discharge.

The Plan's discharge of these defensive setoff rights undoubtedly impacts the FDIC-R1's

pecuniary interest as it forecloses one possible avenue for the FDIC-R1 to reduce its liability, if

any, to the Debtor.  The validity and merits of such defensive setoff rights, as will be discussed

in greater detail below, is ultimately a matter for the applicable district court to address.

Therefore, the FDIC-R1, in asserting its own legal rights and interests, has satisfied the

requirement of prudential standing.  *See In re Quigley*, 391 B.R. 695, 702 (Bankr. S.D.N.Y.

2008) (providing that prudential standing is established when a "plaintiff . . . assert[s] his own

legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

parties" (quoting *Ward*, 422 U.S. at 499)).  Moreover, given the possible direct impact of the

Plan's discharge on the FDIC-R1's pecuniary interest in both a concrete and particularized

manner, the FDIC-R1 also possesses Article III and party-in-interest standing to object to

confirmation on such grounds.  *See In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr.

S.D.N.Y. 2011) ("[A] party in interest is one that has a sufficient interest in the outcome of the

case that would require representation, or a pecuniary interest that will be directly affected by the case."); *Teligent*, 417 B.R. at 210 ("Generally, a 'party in interest' with respect to a particular issue will also meet the requirement for Article III standing with respect to that issue. . . . Thus, the inquiries overlap." (citations omitted)); *In re Motors Liquidation*, 430 B.R. 65, 92 (S.D.N.Y. 2010) ("An injury in fact is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." (internal citations and quotations omitted)).

Lastly, the Debtor's contention that the FDIC-R1 is out of luck because it failed to file a proof of claim is unpersuasive. This Court has previously recognized that "a creditor or party in interest need not file a proof of claim to obtain standing in a bankruptcy case." *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012). Rather, filing a proof of claim "is only required for a creditor to have voting and distribution rights." *Id.* at 188–89 (citing references).

Accordingly, the Court concludes that the FDIC-R1 possesses standing to assert the FDIC Setoff Objection.

## B. The FDIC-R1's Defensive Setoff Rights Are Preserved

The Debtor's purported reasons for extinguishing the FDIC-R1's defensive right to setoff are unpersuasive. Specifically, two of the Debtor's arguments are relevant here.[7] First, the Debtor states that the FDIC-R1's setoff rights are excluded from protection under section 553(a)(3) of the Bankruptcy Code. (Debtor Reply ¶¶ 27, 29.) And second, the Debtor claims that the FDIC-R1 has forfeited its setoff rights by failing to file a proof of claim in these chapter

---

[7] The Debtor advances a total of four arguments in favor of overruling the FDIC Objection. However, only two of them directly implicate the establishment and preservation of the FDIC-R1's right to setoff, and, therefore, are considered here. (Debtor Reply ¶ 27.)

11 cases.  (*Id.* ¶ 27.)  For the reasons discussed below, the Court disagrees with the Debtor's

conclusion and finds that the FDIC-R1's ability to assert defensive setoff rights are preserved.

### 1.   The FDIC-R1 Holds Defensive Setoff Rights

As an initial matter, the Debtor maintains that defensive setoff rights are "claims" under

section 11 U.S.C. § 101(5), and, therefore, the FDIC-R1 lost its ability to assert such claims

when the claim deadline passed under the Bar Date Order.  (*Id.* ¶¶ 9, 41, 45; Debtor

Confirmation Presentation at 5.)  In relevant part, under section 101(5), a claim is defined as:

> (A)  right to payment, whether or not such right is reduced to judgment,
> liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
> undisputed, legal, equitable, secured, or unsecured; or
>
> (B)  right to an equitable remedy for breach of performance if such breach
> gives rise to a right to payment, whether or not such right to an equitable
> remedy is reduced to judgment, fixed, contingent, matured, unmatured,
> disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

However, courts have noted that a defensive setoff is substantively different from a

"claim."  For instance, in *Styler v. Jean Bob Inc. (In re Concept Clubs, Inc.)*, 154 B.R. 581 (D.

Utah 1993), the court there noted that "when setoff is raised only as an affirmative defense

seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke

the bankruptcy court's equitable jurisdiction . . . ."  *Id.* at 589.  The court emphasized that "an

affirmative recovery raised through setoff implicates the allowance and disallowance of claims

against the estate . . . ."  *Id.*  The *Concept Clubs* court relied on the Tenth Circuit's reasoning in

*In re G.S. Omni Corp.*, where the court held that a defendant need not file a proof of claim to

assert a right of setoff.  *Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1319

(10th Cir. 1987).  Notably, the *Omni Corp.* court drew a distinction between affirmative relief

and defensive relief, stating:

> ***Setoff must be distinguished from a claim requesting a distribution from the liquidation of an estate***.  Here the Government sought only to exercise its right to a setoff as a defense to the turnover action.  Instead of seeking a distribution from the liquidation of the estate or double recovery, the Government attempted to satisfy its claim only to the extent of the money due from the Government to the debtor.  As long as the debt owed the Government continued to exist, the Government had the right to do so.

*Id.* at 1319 (emphasis added).

However, it is important to note that some courts disagree with this approach and hold that there is no distinction between asserting a setoff as a claim and asserting setoff as a defense. *See, e.g.*, *In re Com. Fin. Servs., Inc.*, 251 B.R. 397, 406 (Bankr. N.D. Okla. 2000) (disagreeing with the court's conclusions in *Concept Clubs*).

Nonetheless, this Court concludes that there is material difference between a defensive claim for setoff and a claim that seeks similar relief on an affirmative basis against a debtor or its estate.  Here, the FDIC-R1 is not attempting to affirmatively recover from the Debtor's estate.  Instead, the FDIC-R1 is interested in using the setoff defensively to extinguish or reduce its potential obligation to the Debtor.  At the Confirmation Hearing, counsel to the Debtor and the Ad Hoc Cross-Holder Group emphasized that the Plan could be confirmed and go effective even if the FDIC Setoff Objection remained unresolved.  (*See* July 24, 2024 Hr'g Tr. at 73:1–8, 74:7–9.)  Notably, counsel for the Ad Hoc Cross-Holder Group further noted that "***[the setoff] is not money that would come out of the estate***.  This is a question of just how much money we get back from the FDIC." (*Id.* (emphasis added)).  Accordingly, the FDIC-R1's purported setoff right is defensive and does not affirmatively implicate the Debtor's estate.

### 2. The FDIC-R1's Right to Defensive Setoff is Not Precluded by 11 U.S.C. § 553(a)(3)

A creditor's right of setoff is governed by section 553 of the Bankruptcy Code.  Notably, however, section 553 *does not* create a right of setoff, but preserves the right if it exists under

applicable non-bankruptcy law. *See Cairns & Assocs., Inc. v. Conopco, Inc. (In re Cairns & Assocs., Inc.)*, 372 B.R. 637, 660 (Bankr. S.D.N.Y. 2007) (citing *In re Bennett Funding Grp., Inc.*, 212 B.R. 206, 211 (2d Cir. BAP 1997)); *see also Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) ("Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy."). Here, the applicable non-bankruptcy law is 12 U.S.C. § 1822(d), which "has been found to create a federal statutory right to setoff."[8] *Villafane Neris v. Citibank, N.A.*, 845 F. Supp. 930, 934 (D.P.R. 1994); *see also FDIC v. Colonial BancGroup, Inc.(In re Colonial BancGroup, Inc.)*, No. 2:11cv133 (WO), 2012 U.S. Dist. LEXIS 957, at *8 (M.D. Ala. Jan. 4, 2012) (collecting cases). Specifically, section 1822(d) provides that:

> [The FDIC] may withhold payment of such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of any liability of such depositor to the depository institution in default or its receiver, which is not offset against a claim due from such depository institution pending the determination and payment of such liability by such depositor or any other person liable therefor.

12 U.S.C. § 1822.

Critically, section 1822(d) does not modify the substantive requirements for setoff under the Bankruptcy Code. *See In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957, at *9 ("Section 1822(d) does not add substantive criteria to those necessary for offset already embodied in § 553."). Therefore, the Court must assess whether the FDIC-R1 has established the requirements under section 553: "(1) the debtor must owe a debt to the creditor which arose

---

[8]     The FDIC has also asserted that it has a common law right of setoff by virtue of 12 U.S.C.§ 1821(d)(2)(A)(i), which allows the FDIC to "succeed[] to SVB's common law right of setoff with respect to all claims by and between SVB and SVBFG." (*See* ECF Doc. # 145 at 3.) Furthermore, the FDIC claims that it has succeeded to "all [of] SVB's contractual setoff rights against SVBFG." (*Id.* at 4.) However, the Court need not to analyze these bases for setoff to resolve the issue.

22

prepetition; (2) the debtor must have a claim against the creditor which arose prepetition; and (3)

the debt and claim must be mutual." *In re Cairns & Assocs.*, 372 B.R. at 660 (citation omitted).

> a.  The FDIC-R1's Defensive Setoff Rights Satisfy Section 553
> Requirements

Here, the FDIC-R1's defensive setoff rights satisfy all three of the section 553

requirements.  First, the Debtor "owes" a debt to the FDIC-R1, in its capacity as receiver for

SVB, which arose in the prepetition period.  By operation of 12 U.S.C. § 1821(d)(2)(A)(i), the

FDIC-R1 has succeeded to "all rights, titles, powers and privileges of [SVB], and of any

stockholder, member, accountholder, depositor, officer or director of [SVB] with respect to the

institution and the assets of the institution."  12 U.S.C. § 1821(d)(2)(A)(i).  Accordingly, the

FDIC-R1 stands in the shoes of SVB and has the authority to bring claims against the Debtor.

On May 2, 2024, the FDIC-R1 filed the *Statement of the Federal Deposit Insurance

Corporation as Receiver for Silicon Valley Bank Regarding its Defensive Setoff Rights Against

SVB Financial Group* (the "FDIC-R1 Statement," ECF Doc. # 1081).  The FDIC-R1 had filed

the FDIC-R1 Statement in the N.D. Cal. Action as well, but Judge Freeman struck the statement

and noted that the "[FDIC-R1 Statement] [did] nothing to advance [the] litigation and

request[ed] no relief."  (ECF Doc. # 1096.)  The Court need not discuss the propriety and legal

effect of the FDIC-R1 Statement, other than to note it sets out the alleged bases of the FDIC-

R1's claims against the Debtor.  (*See generally* FDIC-R1 Statement.)  The FDIC-R1 alleges that

the debt owed to it by the Debtor arose in the prepetition period.  (*Id.*)  Of course, the FDIC-R1

has not asserted its defensive setoff rights in this Court or the N.D. Cal. Action.[9]  Accordingly,

the underlying claims have not been briefed and argued.  Nevertheless, the substance of the

---

[9]  Because the FDIC filed a motion to dismiss the Debtor's lawsuit, and the motion remains unresolved, the
FDIC is not required by the Federal Rules of Civil Procedure to answer the complaint and plead any affirmative
defenses and counterclaims.

claims is beyond the scope of the Court's decision to preserve such setoff rights to be asserted in a future proceeding. The Court finds that the debts owed to the FDIC-R1 plausibly arose in the prepetition period, and the merits of the underlying claims may be addressed in the N.D. Cal. Action when the defensive setoff rights are formally asserted.

Second, the Debtor's claim against the FDIC-R1 arose in the prepetition period. The Debtor had deposited funds in SVB before the Petition Date, and, therefore, entered a "standard debtor-creditor relationship" with SVB at that time. *See In re Bennett Funding Grp.*, 146 F.3d at 139 ("Ordinarily, funds in a general deposit account can be used to setoff debts owed to the bank because when a depositor deposits funds into a general account he parts with title to the funds in exchange for a debt owed to him by the bank, thereby establishing a standard debtor-creditor relationship."). Following the collapse of SVB on March 10, 2023, the FDIC-R1 was appointed receiver and transferred "all deposits and substantially all assets" of SVB to the Bridge Bank. (ECF Doc. # 21 ¶ 10.) On March 13, 2023, the Debtor's deposit accounts at the Bridge Bank had a total balance of approximately $2.1 billion. (Joint Pretrial Order at 3.) The deposit accounts were purportedly transferred back to FDIC-R1's control on March 15, 2023. (*See* Debtor Confirmation Presentation at 11.) As noted above, under 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R1 inherited SVB's obligations as well, including the obligation on the Debtor's deposit accounts. *See* 12 U.S.C. § 1821(d)(2)(A)(i). Accordingly, the Debtor has a prepetition claim against the FDIC-R1.

Third, mutuality exists between the Debtor and the FDIC-R1. Notably, courts have generally construed mutuality strictly and emphasized that "a narrow interpretation of mutuality ensures that setoff is allowed only in situations in which the equitable considerations are strongest: namely where the claims or debts are owed between the same parties in the same right

or capacity." *In re Cairns & Assocs., Inc.*, 372 B.R. at 660 (citing *In re Ionosphere Clubs, Inc.*,

164 B.R. 839, 843 (Bankr. S.D.N.Y.1994)). Here, the Debtor disputes that mutuality exists and

points to section 553(a)(3) to exclude the FDIC-R1's defensive setoff rights. Specifically,

section 553(a)(3) states that a right of setoff is not preserved where: "the debt owed to the debtor

by such creditor was incurred by such creditor—(A) after 90 days before the date of the filing of

the petition; (B) while the debtor was insolvent; and (C) for the purpose of obtaining a right of

setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7),

362(b)(17), 555, 556, 559, 560 or 561)." 11 U.S.C. § 553(a)(3). The Debtor argues that on

March 13, 2023, its deposit accounts were available at the Bridge Bank. (Debtor Reply ¶ 32.)

However, around March 15 "—two days before the Petition Date—FDIC-R1 purported to

transfer that account liability from Bridge Bank to FDIC-R1."[10] (*Id.*) The Debtor concludes that

the FDIC-R1's defensive setoff rights directly implicate section 553(a)(3) because the FDIC-R1

"incurred deposit liability to Debtor two days before Debtor's bankruptcy filing for the purposes

of obtaining a setoff right against Debtor." (*Id.*) The Court disagrees with the Debtor's position.

It is uncontroversial that the FDIC-R1 had a mutual debt with the Debtor before the

deposit accounts were transferred to the Bridge Bank pursuant to that certain Transfer

Agreement dated March 13, 2023 (the "Transfer Agreement," ECF Doc. # 1351-1.) The Debtor

argues that the transfer of the deposit accounts to Bridge Bank disrupts mutuality and their

subsequent return to the FDIC-R1's control offends section 553(a)(3). (Debtor Reply ¶ 32.)

However, the district court's analysis in *In re Colonial BancGroup* is instructive here. *See*

---

[10]     The Court notes that there is a factual dispute between the Debtor and the FDIC-R1 regarding the
movement of the Debtor's deposit accounts in the pre- and post-petition period. (*See generally* Sacks Declaration
(asserting, among other things, that "open issues" remain as to whether and when the Debtor's deposit accounts
were transferred).) However, as the Court has discussed, the merits of the FDIC-R1's setoff claims are for the
applicable district court to decide.

*generally In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957. There, the district court

analyzed whether mutuality between the FDIC and BancGroup (the debtor's holding company)

was disrupted as a result of the purchase and assumption agreement (P&A), which transferred

substantially all of the debtor's assets to Branch Banking and Trust Company ("BB&T")

(including the six demand-deposit accounts owned by BancGroup). *Id.* at \*3. The *Colonial*

*BancGroup* court held that the P&A had not extinguished the FDIC's liability on the deposit

accounts, and, therefore, mutuality between the parties survived despite BB&T also incurring

liability. *Id.* at \*14. The district court reasoned that first, and most compellingly, the "[FDIC's]

liability to BancGroup was not addressed in the agreement and ***could not be addressed in the***

***agreement, for BancGroup was not a party to the agreement.***" *Id.* (emphasis added). Invoking

basic principles of contract law, the district court maintained that a debtor (*i.e.*, the FDIC, on

account of the deposit obligations) could not unilaterally modify its obligation to a creditor (*i.e.,*

BancGroup). *Id.* Second, even if the P&A could alter the FDIC's obligations without

BancGroup's consent, the language of the agreement showed that it did not intend to extinguish

the FDIC's liability. *Id.* The *Colonial BancGroup* court analyzed the relevant provisions and

found that they did not absolve the FDIC of liability on the deposit accounts that had been

transferred to the BB&T, so mutuality persisted.

Here, mutuality exists for similar reasons. First, the Debtor was not a party to the

Transfer Agreement, and, therefore, the agreement could not have unilaterally extinguished the

FDIC-R1's liability without the Debtor's consent. (Transfer Agreement at 1.) As the court

noted in *In re Colonial BancGroup*, under basic contract principles, the FDIC-R1 does not have

the power to single-handedly modify its obligations to the Debtor via the Transfer Agreement.

*See In re Colonial BancGroup*, 2012 U.S. Dist. LEXIS 957, at *18. Accordingly, throughout the relevant period and despite the various transfers, the FDIC maintained its liability.

Additionally, the provisions of the Transfer Agreement suggest that it was not meant to eliminate the FDIC-R1's obligations to SVB's depositors, including the Debtor. The Transfer Agreement provided for "the transfer of certain Assumed Liabilities, including Assumed Deposits, as between FDIC-R1 and Bridge Bank." (Mayorga Declaration ¶ 6.) However, section 9.09 of the Transfer Agreement precludes the application of the agreement to third-party beneficiaries, noting that:

> [T]he obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are *for the sole and exclusive benefit of the Receiver and the Bridge Bank, and the [FDIC] as an express, third-party beneficiary, and for the benefit of no other Person*.

(Transfer Agreement § 9.09 (emphasis added).) Furthermore, section 4.04 clarifies that SVB depositors retained the right to assert claims against the FDIC-R1 despite the Transfer Agreement, stating:

> *If any depositor does not accept the obligation of the Bridge Bank to pay the liability of the Failed Bank related to Assumed Deposits and asserts a claim against the Receiver for all or any portion of any such liability, the Bridge Bank agrees to provide to the Receiver funds sufficient to pay such claim* in an amount not in excess of the liability related to the Assumed Deposit reflected on the books of the Bridge Bank . . . ."

(*Id.* § 4.04 (emphasis added).)

Taken together, these provisions show that whether the Bridge Bank was liable to depositors in addition to the FDIC-R1 is immaterial. The FDIC-R1 remained liable to depositors throughout the process and expressly acknowledged its obligation in section 4.04 of the Transfer Agreement. (*See id.*) Accordingly, the Court finds that there is mutuality.

>   b.   *The Court Need Not Determine Whether the FDIC-R1's Defensive*
>       *Setoff Rights Are Sufficiently Liquid and Contingent*

The Debtor also attacks the FDIC-R1's defensive setoff rights for being "too contingent

to give it setoff rights."  (Debtor Reply ¶ 46.)  In support, the Debtor cites to this Court's

decision in *Corp. Res. Servs.*, 564 B.R. 196, where the Court determined the defendants could

not "set off [their] contingent claims, either as a defense in the adversary proceeding or as a

claim against these estates."  *Id.* at 208.  However, *Corp. Res. Servs.* is easily distinguished

because the defendants there sought to apply their purported setoff rights *in* the bankruptcy case.

*Id.*  Here, however, the FDIC-R1 does not intend to assert its defensive setoff rights in the

bankruptcy case but preserve them for the N.D. Cal. Action.  (*See* Debtor Reply ¶ 1 (noting that

the FDIC-R1 has not asserted any claims against the Debtor).)  Moreover, at the Confirmation

Hearing, counsel for the Debtor acknowledged that there was a pending motion to dismiss in the

N.D. Cal. Action, and the FDIC-R1's time to respond to the complaint had not run yet.  (*See* July

24, 2024 Hr'g Tr. at 91:23–92:2, 220:13–19.)  And, to date, the FDIC-R1 has not responded to

the N.D. Cal. Complaint.  Accordingly, the Court need not analyze the *merits* of the FDIC-R1's

defensive setoff rights, as that issue is neither issue before the Court nor necessary to decide

whether the FDIC-R1 may *preserve* the ability to assert such rights.

>   3.   The FDIC-R1 Was Not Required to File a Proof of Claim to Preserve Its
>        Defensive Setoff Rights

The Debtor argues that the FDIC-R1 has forfeited its defensive setoff rights by not filing

a proof of claim.  (Debtor Reply ¶ 2.)  The Court disagrees that filing a proof of claim is a

prerequisite to preserving a defensive setoff right.  Instead, case law in this district expressly

state that a defensive right of setoff can be preserved in the absence of a proof of claim.  *See,*

*e.g.*, *Bernstein v. IDT Corp. (In re Frigitemp Corp.)*, 76 B.R. 275, 281 (S.D.N.Y. 1987); *Thelen*

*LLP v. Fontana (In re Thelen LLP)*, No. 09-15631 (MEW), Adv. Pro. No. 11-02648 (MEW), 2015 WL 4999972, at *7 (Bankr. S.D.N.Y. Aug. 21, 2015); *Geltzer v. Bloom (In re M. Silverman Laces, Inc.)*, 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009) ("***The clear majority and better view . . . is that filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff***." (emphasis added)).  Other courts have also generally agreed that the absence of a proof of claim is not fatal to a right of setoff.  *See, e.g.*, *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539 (10th Cir. 1990) ("Accordingly, we reaffirm our holding in *Omni* that filing of a proof of claim is not a prerequisite to assertion of a right to setoff under 11 U.S.C. § 553 . . . ."); *In re G.S. Omni Corp.*, 835 F.2d at 1319 ("Making the right to assert the attribute of setoff dependent upon the filing of the proof of claim is an intrusion into the creditor's rights which is not contemplated in the Bankruptcy Code."); *Columbia Hosp. for Women Med. Ctr., Inc. v. NCRIC, Inc. (In re Columbia Hosp. for Women Med. Ctr., Inc.)*, 461 B.R. 648, 672–73 (Bankr. D.C. 2011) ("Although failure to file a proof of claim may preclude NCRIC from asserting any right to distribution under the plan, it does not bar NCRIC from asserting a right of setoff defensively in a turnover proceeding.").

Notably, a minority of courts require a creditor to file a proof of claim before the applicable bar date to preserve and exercise its right of setoff.  *See e.g., Neal v. Golden Knights, Inc. (In re Laughter, Inc.)*, Case No. 93-41808-B, APN. NO. 95-4022-B, 1995 Bankr. LEXIS 2163, at *11–12 (Bankr. E.D. Va. Oct. 13, 1995) (holding that filing a proof of claim is not necessary to assert setoff but collecting cases reflecting the minority view); *Bank of Dixie v. King (In re Honeycutt Grain Co., Inc.)*, 41 B.R. 678 (Bankr. W.D. La. 1984).

The Debtor points to *Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, 2003 WL 21355214, at *5 (S.D.N.Y. June 11, 2003), for the proposition that courts have denied setoff

29

claims "if the creditor fails to timely take affirmative actions to assert a setoff . . . ." (Debtor Reply ¶ 35.) However, *Daewoo* is easily distinguished from the present case. In *Daewoo*, the District Court adopted the Third Circuit's reasoning in *In re Cont'l Airlines*, quoting "allowing the creditor ***to come forward after the plan of reorganization has been confirmed and . . . decide that it has a valid set-off without timely filing a proof of claim and asserting the set-off in the reorganization proceedings***, has a probability of disrupting the plan of reorganization . . . and can conceivably undermine . . . the objectives and structure of the Bankruptcy Code." *Daweeo*, 2003 WL 21355214, at *5 (citing *In re Cont'l Airlines*, 134 F.3d 536, 542 (3d Cir. 1998)) (emphasis added). Here, the FDIC-R1 has not appeared after the confirmation of the plan to assert purported defensive setoff rights. Instead, the FDIC-R1 has objected to the Plan and appeared at the Confirmation Hearing, and generally provided notice to the Debtor and other stakeholders that it intended to assert its defensive setoff rights. (*See* FDIC-R1 Statement.) Although the FDIC-R1 has not filed a proof of claim, it has taken sufficient affirmative action to put parties on notice. As counsel for the Ad Hoc Cross Holder Group emphasized at the Confirmation Hearing, the Debtor and creditors were aware of the FDIC-R1's purported defensive right of setoff which is why the Disclosure Statement projections for creditor recoveries accounted for a scenario where the Debtor recovered nothing from the N.D. Cal. Action. (*See* July 24, 2024 Hr'g Tr. at 74:7–24 (noting that the possibility of setoff was "expressly contemplated").) Ultimately, the concerns that moved the *Daewoo* and *In re Cont'l Airlines* Courts are not present here. Accordingly, this Court accepts the majority view that filing a proof of claim is not required for a creditor to preserve its defensive right of setoff.

In sum, the Court determines that the FDIC-R1's *ability* to assert defensive setoff rights are preserved. Notably, however, the Court's opinion does not consider whether the FDIC-R1

can *successfully* assert setoff in the N. D. Cal. Action.  As the Debtor concedes, the "[m]erits of

setoff [is] not at issue in Plan confirmation."  (Debtor Confirmation Presentation at 34.)

Accordingly, this Court does not take a position on the strength or propriety of the FDIC-R1's

purported defensive setoff rights since that is not the question before the Court.

### C.  The FDIC-R1's Preserved Defensive Setoff Rights Cannot be Discharged

The Debtor and the Committee also contend that the FDIC-R1's defensive setoff rights

are not immune from discharge and reject the FDIC-R1's contention that such rights survive

confirmation.  (*See* FDIC Objection ¶¶ 29–39 (discussing how section 553 of the Bankruptcy

Code preserves the FDIC-R1's defensive setoff rights post-confirmation); Debtor Reply ¶¶ 28–

29 (asserting that the FDIC-R1 is "wrong" that its "setoff rights cannot be extinguished post-

discharge"); UCC Statement ¶ 33 (arguing that the Plan's discharge and injunction provisions

bar the FDIC-R1's "future assertion" of its setoff claims).)

Specifically, the Committee makes two arguments in support.  *First*, the Committee

believes that the FDIC-R1's failure to file a proof of claim bars the ability of the FDIC-R1 to

assert its defensive setoff claims post-confirmation under the Plan's proposed discharge and

injunction provisions.  (UCC Statement ¶ 33.)  *Second*, the Committee argues that section 553 of

the Bankruptcy Code does not override the discharge authorized in section 1141 or what it deems

the "Centralization Sections"[11] of the Bankruptcy Code.[12]  (UCC Statement ¶ 46.)

---

[11]    The Committee defines "Centralization Sections" to include sections 105, 362, 502, 553, 1141, and 28
U.S.C. § 1334, which it believes ensures "procedural fairness and equality of treatment for creditors."  (UCC
Statement ¶ 29.)

[12]    The Debtor does not believe that the Court needs to resolve the "question [of] whether section 553
overrides section 1141 because the FDIC-R1's purported setoff rights are ***excluded*** from protection under section
553(a)(3)."  (Debtor Reply ¶ 29 (emphasis in original).)  However, the Court has already established that the FDIC-
R1's defensive setoff rights are not precluded by 11 U.S.C. § 553(a)(3).  (*See supra* Section III(B)(2).)  Accordingly,
the Court focuses solely on the Committee's arguments.

Section 1141 of the Bankruptcy Code addresses the effect of confirmation of a plan in a chapter 11 case. As a general matter, confirmation of a chapter 11 plan "discharges the debtor from any debt that arose before the date of such confirmation."[13] 11 U.S.C. § 1141(d)(1)(A). Meanwhile, section 553(a) of the Bankruptcy Code provides, in relevant part, that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of [Title 11], [Title 11] does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose [pre-petition] . . . against a claim of such creditor against the debtor that arose [pre-petition]." 11 U.S.C. § 553(a).

Underlying each of the Committee's arguments, however, is its position that the FDIC-R1 has failed to file a proof of claim. As discussed, however, the FDIC-R1 was not required to file a proof of claim to preserve its defensive setoff rights and, therefore, neither is availing. With respect to the Committee's first argument, while it may be true that sections 10.7 and 12.10 of the Plan, if approved, would bar the FDIC-R1's future assertion of its purported setoff claims, that is precisely the issue at hand and the basis for the FDIC Setoff Objection to the Debtor's proposed Plan. Similarly, with respect to its second argument, the Committee states that "section 553 expressly contemplates that a setoff claim should be submitted as part of the claim process and that it can be disallowed, and thus extinguished, in bankruptcy" and therefore, cannot be read to "trump the discharge provision in . . . section 1141." (UCC Statement ¶¶ 47–48; *see also id.* ¶ 52 (distinguishing *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Ent. Grp.)*, 963 F.2d 1269 (9th Cir. 1992), since the FDIC-R1 has "purposefully not filed a proof of claim and never sought relief from the automatic stay").) Since the Court has already concluded that

---

[13]    Section 524(a) of the Bankruptcy Code provides that such a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset" of any "debt discharged under section . . . 1141 [of the Bankruptcy Code]." 11 U.S.C. § 524(a)(1), (2).

the FDIC-R1 is asserting setoff defensively and that it did not need to file a proof of claim to preserve its rights, the Committee's position is unpersuasive.

Accordingly, the Court concludes that the FDIC-R1's preserved defensive setoff rights cannot be discharged. However, the Court emphasizes and makes clear that this ruling as to discharge is limited solely to the FDIC-R1's *preserved* setoff rights. Any claim that the FDIC-R1 may have held against the Debtor in this bankruptcy case for which it was required to file a proof of claim in this case, including those relating to the personal liability of the Debtor, is otherwise discharged. *See In re Velo Holdings Inc.*, 500 B.R. 693, 698 (Bankr. S.D.N.Y. 2013) (noting that a discharge under section 1141 of Bankruptcy Code, among others, operates as an injunction against the "recover[y] or offset [of] any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived" (quoting 11 U.S.C. § 524(a)(2))).

## IV.     CONCLUSION

For the reasons discussed, the Court **SUSTAINS** the FDIC Objection.

**IT IS SO ORDERED.**

Dated:     August 2, 2024
           New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge