```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3    Before The Honorable Beth Labson Freeman, District Judge
 4
 5  SVB FINANCIAL GROUP,           )
                                   )
 6           Plaintiff,            )
                                   )
 7  vs.                            )   Case No. C 23-06543-BLF
                                   )
 8  FEDERAL DEPOSIT INSURANCE      )
    CORPORATION,                   )
 9                                 )
             Defendant.            )
10  _____)
11
                                       San Jose, California
12                                     Thursday, August 22, 2024
13
     TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
14            RECORDING 11:25 - 11:43 = 18 MINUTES
15
    APPEARANCES:
16
    For Plaintiff:
17                             Sullivan & Cromwell, LLP
                               1888 Century Park East
18                             Los Angeles, California 90067
                         BY:   DIANE L. MCGIMSEY, ESQ.
19                             ROBERT A. SACKS, ESQ.
                               SVERKER HOGBERG, ESQ.
20  For Defendant:
                               Quinn Emanuel Urquhart &
21                               Sullivan, LLP
                               1300 I Street NW
22                             Suite 900
                               Washington, D.C. 20005
23                       BY:   JONATHAN G. COOPER, ESQ.
24
25
```

*Echo Reporting, Inc.*

2

1  Transcribed by:          Echo Reporting, Inc.
                            Contracted Court Reporter/
2                           Transcriber
                            echoreporting@yahoo.com
3

```
                                                              3
 1  Thursday, August 22, 2024                          11:25 a.m.
 2                     P-R-O-C-E-E-D-I-N-G-S
 3                            --oOo--
 4          THE CLERK:  Calling case 23-6543, SVB Financial
 5  Group versus Federal Deposit Insurance Corporation.
 6      Counsel, if you would please state your appearances,
 7  and if we could begin with Plaintiff and then moving to
 8  Defendant.
 9          MR. SACKS (via Zoom):  Good morning, your Honor.
10  Robert Sacks from Sullivan and Cromwell for the Plaintiff.
11          THE COURT:  Good morning.
12          MS. MCGIMSEY (via Zoom):  Good morning, your
13  Honor.  Diane McGimsey from Sullivan and Cromwell for the
14  Plaintiff.
15          THE COURT:  Morning.
16          MR. HOGBERG (via Zoom):  Good morning, your Honor.
17  Sverker Hogberg, Sullivan and Cromwell, on behalf of the
18  Plaintiff.
19          THE COURT:  Good morning.
20          MR. COOPER (via Zoom):  And, good morning, your
21  Honor.  Jonathan Cooper from Quinn Emanuel for the FDIC in
22  its corporate capacity as Defendant.
23          THE COURT:  Good morning.
24          All right.  Well, we're still working on our
25  scheduling issues, and Mr. Sacks, maybe we've made one step
```

forward?  I don't know how you -- how you see it.  Hopefully not too backwards.

MR. SACKS:  No, I think we're -- we're moving forward, your Honor.  I do think that the -- on the scheduling issue, we will -- we'll be filing our amended complaint next week, as -- as scheduled.

THE COURT:  Great.

MR. SACKS:  I think it will meet the issues that you were concerned about in the order.  I hope it will.  I hope we won't have a motion to dismiss, but hope springs eternal.  But I do think we should go ahead and set a schedule.

As we previewed in the case management, these two cases are going to involve the same witnesses, the same people, the same issues.  The discovery is completely overlapping and I'm putting aside the FDIC-R's alleged setoff claims in the other case for a moment, but the actual claims that we are asserting are completely overlapping involving the same people, the same facts, the same evidence, and we think that while you have you coordinated these cases, we think that they are appropriately consolidated.

The FDIC-C points to the FDIC-R, the FDIC-R says it's not liable, but there's going to be a lot of pointing between different FDIC entities here. It ought to just be resolved.  This is a non-jury claim.  You're going to hear

the evidence.  You're sophisticated enough to understand that there might be a different standard or different claims and different basis for liability against different FDIC entities, but we shouldn't be requiring, like we did yesterday, we had to serve the identical subpoena on a federal agency in one case and the same subpoena on another case.  We shouldn't ever have to depose witnesses more than once on the same subject, and we think that it's time to just consolidate these cases.  And I realize we're going to have to make a formal motion at some point to do that, but that's what we ought to be looking at.  And we ought to be just scheduling the discovery periods here.

You gave a pretty leisurely schedule, your Honor, unlike the last case where you were talking about a December '25 trial date.  We're not going to trial until 2026.  We should schedule them on the same schedule, and while we think they should all be tried together, you can make that judgment at the end and you can try them seriatim.  You can make the, you know, judgment at the end, but the witnesses are going to be the same witnesses in both cases on the same exact subjects.

THE COURT:  So, certainly on consolidation of the case for all purposes, there is a dispute, Mr. Cooper doesn't want to do that, but Mr. Cooper, can -- are you in a position where your client can agree to consolidate the

1 cases for all purposes up to trial and we'll take up the
2 trial issues separately?
3          MR. COOPER:  I would have to discuss that with my
4 client before I could consent to that, your Honor.
5          THE COURT:  Sure.
6          MR. COOPER:  And, respectfully, just to disagree
7 with Mr. Sacks, we don't submit that it would be all of the
8 exact same witnesses and same issues at trial.  The claims
9 here -- first of all, as your Honor obviously knows, there's
10 only one claim that survived against FDIC's corporate.
11          THE COURT:  Uh-huh.
12          MR. COOPER:  I understand Mr. Sacks will be filing
13 an amended complaint.  We don't know what's in that.  We are
14 very skeptical that they could plausibly allege, consistent
15 with their Rule 11 obligations, that FDIC corporate was
16 involved in the way I assume they're planning to try to
17 plead it.  So we'll take a look closely at that --
18          THE COURT:  Okay.
19          MR. COOPER:  -- but we do anticipate filing a
20 motion to dismiss.
21      And with respect to consolidation, as of right now,
22 your Honor already found it hasn't been plausibly alleged
23 that FDIC corporate was involved with FDIC-R's actions.  And
24 so it is certainly premature to consider consolidation,
25 given there's no pending plausible allegations to support

1  that.
2       And, beyond that, I think even assuming there were some
3  sort of plausible allegations, the claims here are very
4  different.  The claims against FDIC-R are essentially claims
5  of breach of contract that, we gave deposits to you as a
6  bank before he went into receivership.  We're entitled to
7  those deposits back.  Claims against FDIC corporate are very
8  different.  They are alleged allegations about the systemic
9  risk exception, alleged promises made.  Those two types of
10 claims are very different and won't overlap.
11      So, we submit it won't -- won't be the benefit --
12          THE COURT:  You also indicate that when you file
13 your answer that you'll be requesting a jury trial on claims
14 that are -- where jury trial is allowed.  So is that still a
15 TBD issue?
16          MR. COOPER:  We certainly will, your Honor.
17 Obviously we'll have to see what claims survive.  Obviously
18 if the only claim that -- right now it's just an estoppel
19 claim, so if there are claims that do survive, that -- for
20 which there is a jury right, we do plan to assert a jury
21 right, yes.
22          THE COURT:  All right.  So I am going -- I think
23 that Mr. Sacks raises a more immediate issue with this dual
24 discovery obligation that is not only burdensome on the
25 attorneys, it's burdensome of the parties receiving the

1 discovery, because it's confusing.  So I'm going to ask that
2 you immediately meet and confer to try to work out some
3 agreement on consolidating the discovery that is propounded
4 and that is responded to, because I think you can reach
5 quite a bit of agreement on issues that are pressing right
6 now.
7          MR. COOPER:  That makes sense to us, your Honor.
8 We certainly agree with coordinating on discovery and, you
9 know, when you're talking about consolidating discovery
10 versus coordinating discovery, if it's just about discovery,
11 I agree there's maybe not much difference there.  So we
12 certainly agree no witness should be deposed twice, we
13 shouldn't have to serve subpoenas in two separate cases.
14 We're happy to coordinate on all of those kinds of things.
15          THE COURT:  Okay.  So there's enough dispute in
16 this case that you need to come to a written agreement on
17 it.  So I -- I mean, I'm mindful that people may have plans
18 over the next couple of weeks, because it's the end of the
19 summer, but I would like you to meet and confer no later
20 than September -- I think it's the 5th.  I think that --
21 let's see.  Let me get my calendar.  I'd like you to meet
22 and confer no later than September 6th.  That's two weeks
23 from tomorrow, on -- to attempt to reach an agreement on
24 coordination of discovery and to bring it to a written
25 agreement so that it's clear to everybody.  That's separate

1 from Mr. Sacks' motion and I welcome that on consolidation.
2 But if we can cut off some chunks that are particularly
3 irksome right now, that will help I think.
4     Does that assist you, Mr. Sacks?
5     MR. SACKS: That would be fine, your Honor, thank
6 -- I mean, we're prepared to meet and confer tomorrow and
7 we'll get the FDIC-R in that discussion, as well. I mean --
8 so, for example, at the moment in theory, if I want
9 discovery from the FDIC-C, that's relevant to the FDIC-R
10 issues, to the extent they're different, I have to serve a
11 subpoena on them to do it --
12     THE COURT: Right.
13     MR. SACKS: -- which just makes no sense
14 whatsoever.
15     THE COURT: Okay.
16     MR. SACKS: I would just -- one point. We're not
17 going to argue it now, but the FDIC does not have a jury
18 trial right on any of the claims that have been asserted in
19 this case, and if that comes up, we'll address that at a
20 future date.
21     THE COURT: That's fine. Okay. Of course, I'd
22 always love it to be by a jury, but if it's a bench trial,
23 it's a bench trial. All right.
24     So, I think we can move on and discuss some scheduling
25 issues. I recognize there appears to be some dispute about

1 the completeness of the initial disclosures.  That's going
2 to require a motion to compel and that will go to the
3 magistrate judge.  So I'll just let you do that.
4      I received, in the current case management statement,
5 what was, I thought a little confusing on schedule.  I've
6 got an SVB FG proposal on a chart, starting at page seven
7 with a -- and then a -- I guess you're showing me what the
8 FDIC-R schedule is.  So I've already set trial in the FDIC-R
9 case.  Is that correct, Mr. Sacks?
10           MR. SACKS:  Correct, your Honor.  You set a full
11 schedule in that case, and so what that chart shows is,
12 we're basically proposing that the dates here, because the
13 discovery is entirely overlapping on --
14           THE COURT:  Right.
15           MR. SACKS:  -- in form to that.  And while we
16 suggest the same trial date, again, your suggestion that you
17 address that issue later if you want to set --
18           THE COURT:  Yeah.
19           MR. SACKS:  -- trial two weeks or three weeks
20 later and evaluate that at the time, that's fine.  But we
21 think for discovery purposes, certainly the same schedule
22 and the same deadlines should be applicable.  And this was
23 just an attempt to remind you what you --
24           THE COURT:  That's helpful.  That's -- and that is
25 very helpful.

1        So I'm not prepared to set the summary judgment motions
2   on the same date now.  If I consolidate the cases, I'm going
3   to get one set of motions, and if I don't they'll be --
4   they'll be handled as separate cases.
5        So what I was inclined to do was to approve the
6   schedule that FDIC proposes.  That can be modified if I
7   consolidate the cases, then we can either move up the dates
8   to what's already set for FDIC-R, or postpone the dates to
9   what I'm going to give you for this case.  But I think I'd
10  like to go ahead and give you those dates.  I had some
11  questions about the way you laid out the schedule, because
12  it -- it was unclear to me, and it my violate my
13  requirements.
14       So at page eight of the statement, it shows the date to
15  file summary judgment as June 30, 2025.  It also shows the
16  date for Daubert motions on that day, and I don't know what
17  you're talking about there.  If there is a Daubert motion
18  related to summary judgment, it must be contained within the
19  body of the summary judgment papers, and not separate.  If
20  it's separate, it will be decided for trial, but that
21  evidence will be considered for summary judgment.  So these
22  are not separate motions.  If you -- and then it goes on to
23  show a hearing date for summary judgment, which is the date
24  that I set the FDIC-R date and it doesn't say anything about
25  Daubert, so that's where I got confused.  But I want to be

1  really clear on that.
2          MR. SACKS:  So we -- at least -- your Honor, I
3  could be mistaken, but I believe this is the schedule that
4  you actually approved in the FDIC-R case, including each of
5  these items.
6          THE COURT:  Yeah.
7          MR. SACKS:  I believe, at least as I understood,
8  if the Daubert motions were true Daubert motions for
9  purposes --
10         THE COURT:  Okay.
11         MR. SACKS:  -- of trial and we had agreed with the
12 FDIC-R that they would be made on that date --
13         THE COURT:  Fine.
14         MR. SACKS:  -- at that time, but not -- we
15 understand your rules on summary judgment.  You have very
16 particular rules on that.
17         THE COURT:  I do.  But the evidentiary objections
18 related to a motion is our whole district's local rule, not
19 mine.
20         MR. SACKS:  Understood.
21         THE COURT:  Yeah.  Okay.
22         MR. SACKS:  These were intended to be true trial
23 Daubert motions.
24         THE COURT:  That's great.  And then you'll just
25 get a hearing date up to 14 days before.  Perfect.  And

```
 1  that's -- that's great.  Okay.
 2       So then moving on to the schedule that is proposed by
 3  the Defendants, which is different.  What I think I'm going
 4  to do is to adopt the schedule.  That would put -- for the
 5  FDIC-C case, that would put the hearing on summary judgment
 6  on January 8 of 2026.  And the -- that presumes -- and
 7  Daubert motions will simply be filed and scheduled on the
 8  next available date when they're filed.
 9       The -- I would agree that the final pretrial conference
10  for May 7 of 2026 -- and I couldn't quite accommodate the
11  trial date you wanted.  My next available is July 13 of
12  2026, so I'd like you to just mark that.  It's as close as I
13  could come.  And I want -- I actually was looking for a date
14  where I can be pretty sure yours would be the first case to
15  go out to trial.  And I had some other overlapping and you
16  might not have had priority.  So that's why I'm moving it.
17  There's nothing more frustrating than trailing another case.
18       So I will approve that schedule and --
19           MR. SACKS:  Your Honor, this is without prejudice
20  to our ability to move for some sort of consolidation here?
21           THE COURT:  Absolutely.  Yes.
22           MR. SACKS:  Because we're going to end up, you
23  know, with conflicting deadlines for these -- these issues.
24  And as a practical matter, if people are going to be deposed
25  once, they're going to have to be deposed within the time
```

frame of the FDIC-R case anyway --

       THE COURT:  Right.

       MR. SACKS:  -- because they're potentially subject to being deposed twice.

       THE COURT:  Well I'm hoping you work that issue out by agreement.  And I'd be surprised if you can't agree on that.  And then it would include subject matter covering both cases in the one deposition.  And to the extent you need to agree to extend the number of hours available to depose a witness, that shouldn't be hard to do.

       MR. SACKS:  I agree.

       THE COURT:  I -- I have no -- I'm sure that you'll work out those issues.  I mean for all of you, life is just too short to fight about that part of the case.

    Okay.  So that's our schedule and I don't think there's anything else we need to discuss today.

    Mr. Sacks?

       MR. SACKS:  No, I don't believe so, your Honor.

       THE COURT:  Okay.  Mr. Cooper?

       MR. COOPER:  Nothing further from the FDIC-C.  Thank you, your Honor.

       THE COURT:  All right.  Well I think that takes care of everything.  I'll be getting a motion -- an amended complaint soon and then we'll do this all over again on a motion to dismiss.

```
                                                                    15
 1           MR. SACKS:  I hope not.
 2           THE COURT:  I'm with you.  I hope not, too.
 3      All right.  Thank you, all.
 4           MR. SACKS:  Thank you, your Honor.
 5           MR. COOPER:  Thank you.
 6           THE CLERK:  This court is adjourned.
 7      (Proceedings adjourned at 11:43 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

16

1  <u>CERTIFICATE OF TRANSCRIBER</u>

3     I certify that the foregoing is a true and correct
4  transcript, to the best of my ability, of the above pages of
5  the official electronic sound recording provided to me by
6  the U.S. District Court, Northern District of California, of
7  the proceedings taken on the date and time previously stated
8  in the above matter.
9     I further certify that I am neither counsel for,
10 related to, nor employed by any of the parties to the action
11 in which this hearing was taken; and, further, that I am not
12 financially nor otherwise interested in the outcome of the
13 action.

*[signature]*

17        Echo Reporting, Inc., Transcriber
18            Monday, August 26, 2024