Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

*Counsel to the Federal Deposit Insurance
Corporation (in its corporate capacity)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>        Plaintiff,<br><br>   vs.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, in its corporate capacity,<br><br>        Defendant. | CASE NO. 5:23-cv-06543-BLF<br><br>**FDIC-C'S NOTICE OF MOTION AND<br>MOTION TO DISMISS THE AMENDED<br>COMPLAINT**<br><br>Judge: Hon. Beth Labson Freeman<br>Action Filed: December 19, 2023<br><br>Hearing Date: January 30, 2025<br>Time: 9:00am<br>Courtroom: 3 – 5th Floor |

**Notice of Motion and Motion**

TO ALL PARTIES, THEIR COUNSEL OF RECORD, AND THE CLERK OF THE COURT:

PLEASE TAKE NOTICE that at 9:00 AM on January 30, 2025, or as soon as the matter may be heard thereafter, before the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, Defendant Federal Deposit Insurance Corporation, in its corporate capacity (**FDIC-C**), will and hereby does move for dismissal of this action.

FDIC-C respectfully moves the Court to dismiss with prejudice the entire Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Eric Lyttle and accompanying exhibits; the arguments of counsel; and all other material that may properly come before the Court.

# Table of Contents

Table of Authorities ............................................................................................................. i

Memorandum of Points and Authorities ........................................................................... 1

Request for Judicial Notice ............................................................................................... 3

Background ......................................................................................................................... 4

      A.     Silicon Valley Bank's Failure ............................................................... 4

      B.     SVBFG's Deposit Accounts ................................................................... 5

      C.     The Prior MTD Order ............................................................................ 5

      D.     SVBFG's Amended Complaint ............................................................. 6

Legal Standard .................................................................................................................. 7

Argument ........................................................................................................................... 7

I.     The Court should dismiss SVBFG's Amended Complaint for failure to state a claim. ......... 7

      A.     The turnover claim (Count II) is still not plausible. .................................... 7

            1.     SVBFG still fails to allege that FDIC-C has SVBFG's deposit liabilities. ... 7

            2.     SVBFG's new allegations should be disregarded as a matter of law. .......... 10

            3.     SVBFG's new allegations should be disregarded as a matter of fact. ......... 12

      B.     The due process claim (Count IV) is still not plausible. .......................... 14

            1.     SVBFG lacks a cause of action. ............................................................ 15

            2.     SVBFG still fails to allege that FDIC-C deprived SVBFG of property. ..... 17

      C.     The promissory estoppel claim (Count VII) is not adequately alleged. ................... 18

            1.     The March 12–13 press releases are not affirmative misconduct. .............. 20

            2.     Statements in the "months following" are irrelevant. ................................ 22

            3.     FDIC-C cannot be held liable for FDIC-R1's conduct. .............................. 23

      D.     The § 1821(f) claim (Count VI) is not viable in light of the MTD Order. .............. 24

      E.     The claim for a declaratory judgment (Count I) should be dismissed. .................. 24

II.    Any dismissal of SVBFG's claims should be with prejudice ................................ 25

1

**Table of Authorities**

2

<u>**Cases**</u>

3

*Abcellera Biologics Inc. v. Bruker Cellular Analysis,*
 2024 WL 3074381 (N.D. Cal. June 20, 2024)................................................... 15, 19, 23

4

5

*In re Apple,*
 846 F.3d at 317–18)..................................................................................................23

6

*In re Apple iPhone Antitrust Litig.,*
 846 F.3d 313 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019)......15

7

8

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...........................................................................................7, 12

9

*Baccei v. United States,*
 632 F.3d 1140 (9th Cir. 2011) .....................................................................................3

10

11

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ...................................................................................................7

12

*In re Brown,*
 2022 WL 4390454 (Bankr. S.D.N.Y. Sept. 22, 2022) .......................................................7

13

14

*Browning v. Am. Honda Motor Co.,*
 549 F. Supp. 3d 996 (N.D. Cal. 2021) (Freeman, J.) ......................................................12

15

16

*Bullion Servs., Inc. v. Valley State Bank,*
 50 F.3d 705 (9th Cir. 1995) ................................................................... 1, 9, 10, 11

17

*Cause of Action Inst. v. U.S. Dep't of Justice,*
 330 F. Supp. 3d 336 (D.D.C. 2018) ...........................................................................14

18

19

*Dababneh v. FDIC,*
 971 F.2d 428 (10th Cir. 1992) ..................................................................................10

20

*Dawkins v. Witt,*
 318 F.3d 606 (4th Cir. 2003) ....................................................................................20

21

22

*Desoto Cab. Co. v. Uber Techs.,*
 2020 WL 10575294 (N.D. Cal. Mar. 25, 2020) ...........................................................19

23

24

*Deutsche Bank Nat'l Trust Co. v. FDIC,*
 784 F. Supp. 2d 1142 (C.D. Cal. 2011).......................................................................10

25

26

*DeVoll v. Burdick Painting, Inc.,*
 35 F.3d 408 (9th Cir. 1994) ......................................................................................19

27

*Dignity Health v. Cal. Dep't of Industrial Relations,*
 445 F. Supp. 3d 491 (N.D. Cal. 2020) ........................................................................17

28

*Edelman v. Jordan*,
   415 U.S. 651 (1974) ............................................................................17

*FDIC v. Meyer*,
   510 U.S. 471 (1994) .........................................................2, 15, 16, 17

*FDIC v. Nichols*,
   885 F.2d 633 (9th Cir. 1989) ...........................................................10

*Gengler v. U.S. ex*,
   463 F. Supp. 2d 1085 (E.D. Cal. 2006)............................................20

*Guancione v. IRS*,
   2022 WL 19333271 (N.D. Cal. 2022) (Freeman, J.) .......................16

*Hartford Cas. Ins. Co. v. FDIC*,
   21 F.3d 696 (5th Cir. 1994)..........................................................10, 11

*Hindes v. FDIC*,
   137 F.3d 148 (3d Cir. 1998) ........................................................16, 17

*Howell v. FDIC*,
   986 F.2d 569 (1st Cir. 1993).............................................................24

*Jachetta v. United States*,
   653 F.3d 898 (9th Cir. 2011) ...........................................................16

*Jacksonville Police Officers & Fire Fighters Health Ins. Trust v. Gilead Sciences, Inc.*,
   2023 WL 5600098 (N.D. Cal. Aug. 28, 2023) .................................15

*Johnson v. Fed. Home Loan Morg. Corp.*,
   793 F.3d 1005 (9th Cir. 2015) .........................................................12

*Jones Motor Co. v. Teledyne, Inc.*,
   732 F. Supp. 490 (D. Del. 1990) .................................................20, 22

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...........................................................12

*Koroma v. Richmond Redevelopment & Hous. Auth.*,
   2010 WL 1704745 (E.D. Va. Apr. 27, 2010) ...................................20

*Lavin v. Marsh*,
   644 F.2d 1378 (9th Cir. 1981) .........................................................22

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) .........................................2, 7, 12, 15

*Leung v. FDIC*,
   2024 WL 3588015 (N.D. Cal. July 29, 2024) (Freeman, J.) .............4, 8

*Mendoza v. Stickler*,
    51 F.4th 346 (9th Cir. 2022) ...................................................................................17

*Miscellaneous Service Workers Drivers & Helpers v. Philco–Ford Corp.*,
    661 F.2d 776 (9th Cir. 1981) ...................................................................................20

*Monetti, S.p.A. v. Anchor Hocking Corp.*,
    1992 WL 109106 (N.D. Ill. May 12, 1992) ............................................................23

*Mukherjee v. INS*,
    793 F.2d 1006 (9th Cir. 1986) .................................................................................22

*Pageland 29 Limited Partnership v. FDIC*,
    1992 WL 391377 (D.D.C. Dec. 14, 1992) ..............................................................11

*Pampena v. Musk*,
    705 F. Supp. 3d 1018 (N.D. Cal. 2023) ..................................................................12

*Patriot Square Assocs. v. FDIC*,
    1992 U.S. Dist. Lexis 22530 (D.D.C. Sept. 25, 1992) ...........................................11

*Penny v. Giuffrida*,
    897 F.2d 1543 (10th Cir. 1990) ...............................................................................23

*Puerto Rico Aqueduct Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) .................................................................................................17

*Riordan v. Western Digital Corp.*,
    2024 WL 2868152 (N.D. Cal. June 5, 2024) ..........................................................15

*Seven Up Pete Venture v. Schweitzer*,
    523 F.3d 948 (9th Cir. 2008) ...................................................................................17

*Shapiro v. Henson*,
    739 F.3d 1198 (9th Cir. 2014) ...................................................................................7

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir,) ............................................................................................15

*Stossel v. Meta Platforms, Inc.*,
    634 F. Supp. 3d 743 (N.D. Cal. 2022) ....................................................................12

*Sulit v. Schiltgen*,
    213 F.3d 449 (9th Cir. 2000) ...................................................................................20

*In re SVB Financial Group*,
    No. 23-10367 (Bankr. S.D.N.Y.) (attached as Exhibit B) .........................................3

*Tremblay v. OpenAI, Inc.*,
    --- F. Supp. 3d ---, 2024 WL 3640501 (N.D. Cal. July 30, 2024).....................18, 23

*Turkle Trust v. Wells Fargo & Co.*,
   602 F. App'x 360 (9th Cir. 2015) ................................................................. 12

*United States v. Sutter Health*,
   2021 WL 9182525 (N.D. Cal. Nov. 2, 2021) .............................................. 15

*United States v. Vantage Trust Fed. Credit Union*,
   2018 WL 306920 (M.D. Pa. Jan. 5, 2018) ................................................. 20

*United States v. Ven-Fuel, Inc.*,
   758 F.2d 741 (1st Cir. 1985) ...................................................................... 22

*Va. Office for Prot. & Advocacy v. Stewart*,
   563 U.S. 247 (2011) ................................................................................... 17

*Valerio v. Crawford*,
   306 F.3d 742, 754 n.4 (9th Cir. 2002) ....................................................... 18

*In re Washington Bancorporation*,
   1996 WL 148533 (D.D.C. Mar. 19, 1996) ............................................. 2, 11

*Windom v. Brady,*
   2019 WL 3367544 (N.D. Cal. June 27, 2019) ........................................... 25

*Wu v. Berryhill,*
   2017 WL 1947432 (C.D. Cal. M 10, 2017) ............................................... 22

*In re Zwanziger,*
   714 F.3d 74, 77 (10th Cir. 2014) ............................................................... 18

## **Statutes**

11 U.S.C. § 542 ................................................................................... 1, 7, 16

11 U.S.C. § 542(a) ...................................................................................... 7

11 U.S.C. § 542(b) ...................................................................................... 7

12 U.S.C. § 1821(f) .......................................................................... 1, 3, 5, 6

12 U.S.C. § 1821(f)(3) ............................................................................... 25

12 U.S.C. § 1823(c)(4)(G) ........................................................................... 4

42 U.S.C. § 1983 ....................................................................................... 16

## **Other Authorities**

88 Fed. Reg. 83329 (Nov. 29, 2023) ........................................................... 4

88 Fed. Reg. 83331 (Nov. 29, 2023) ........................................................... 4

Fed. R. Civ. P. 9(b) ........................................................................................................24

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 7, 15

Fed. R. Civ. P. 12(c) ......................................................................................................15

**Memorandum of Points and Authorities**

Plaintiff SVB Financial Group (**SVBFG**) was the holding company of Silicon Valley Bank. In March 2023, the Bank failed and SVBFG declared bankruptcy. Their primary federal supervisor, the Board of Governors of the Federal Reserve System (**Federal Reserve**), concluded that the Bank's failure was due to SVBFG's mismanagement. That failure caused an estimated loss of over $17 billion to the Deposit Insurance Fund, which Defendant Federal Deposit Insurance Corporation, in its corporate capacity (**FDIC-C**) administers to protect depositors of failed banks.

Not content with the losses it already caused, SVBFG filed this lawsuit seeking to force FDIC-C to pay SVBFG over $1.9 billion from the Deposit Insurance Fund for its deposit accounts. On August 8, 2024, this Court dismissed most of SVBFG's claims after concluding that (among other things) SVBFG "fails to adequately allege that SVBFG's deposit liabilities are in the possession, custody, or control of the FDIC-C, as opposed to the FDIC-R1." ECF No. 85 (**MTD Order**) at 22. FDIC-R1 is the FDIC in its capacity as receiver for Silicon Valley Bank. *Id.* at 2 n.2. "[T]he FDIC-C and the FDIC-R1 are legally distinct entities, so SVBFG must allege facts showing that the FDIC-C has possession, custody, or control of SVBFG's deposit liabilities." *Id.* at 22 (citing *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995)).

After that ruling, SVBFG filed an Amended Complaint to try to cure the deficiencies the Court had identified. ECF No. 92 (**Am. Compl.**). But the Amended Complaint fails to do that. It does not plausibly allege that FDIC-C has possession, custody, or control of SVBFG's deposit liabilities. Nor could it. It is clear from SVBFG's own pleadings and from the publicly available record of which this Court may take judicial notice that FDIC-R1—not FDIC-C—succeeded to SVBFG's deposit liabilities by operation of law.

SVBFG's Amended Complaint pleads five claims: (1) a turnover claim under 11 U.S.C. § 542 (Count II); (2) a due process claim (Count IV); (3) promissory estoppel (Count VII); (4) a claim under 12 U.S.C. § 1821(f) (Count VI); and (5) a claim for a declaratory judgment (Count I). Each claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**Turnover**: The turnover claim should be dismissed because SVBFG's Amended Complaint, like the original complaint, "fails to adequately allege that SVBFG's deposit liabilities are in the

possession, custody, or control of the FDIC-C, as opposed to the FDIC-R1." MTD Order at 22. To try to get around that reality, the Amended Complaint asserts that FDIC-C directed FDIC-R1 to seize SVBFG's deposit accounts from Silicon Valley Bridge Bank, N.A. (**Bridge Bank**). That assertion fails to support a turnover claim against FDIC-C for at least three reasons.

*First*, even assuming FDIC-C instructed FDIC-R1 to seize SVBFG's deposit accounts, that confirms that FDIC-R1 has SVBFG's deposit accounts. SVBFG's Amended Complaint does not—and cannot—allege that FDIC-C assumed SVBFG's deposit liabilities.

*Second*, as a matter of law, this Court should disregard SVBFG's assertion that FDIC-C directed FDIC-R1's actions. Other courts have concluded that such allegations "have no legal effect" and cannot support a claim against FDIC-C because FDIC-C and FDIC-R are legally separate. *E.g.*, *In re Washington Bancorporation*, 1996 WL 148533, at *14 (D.D.C. Mar. 19, 1996).

*Third*, this Court should also disregard SVBFG's assertion as a matter of fact because it is contradicted by emails that the Amended Complaint incorporates by reference and by materials subject to judicial notice. This Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (citations omitted). The incorporated emails and public record show that FDIC-R1, through Bridge Bank, placed holds on SVBFG's accounts and then called those accounts back to FDIC-R1 by March 15. SVBFG does not plausibly allege that FDIC-C took any actions with respect to SVBFG's deposit accounts before FDIC-R1 acted to block SVBFG's access on March 15, let alone that FDIC-R1 acted to block or call back SVBFG's account access because of a command from FDIC-C.

**Due Process**: The due process claim should be dismissed for two reasons. *First*, SVBFG lacks the necessary separate cause of action it needs to support its due process claim. *See FDIC v. Meyer*, 510 U.S. 471, 483–86 (1994). *Second*, as with the turnover claim, the Amended Complaint still "fail[s] to adequately allege that it was the FDIC-C, as opposed to the FDIC-R1, that deprived SVBFG of any protected property interest." MTD Order at 26–27.

**Promissory Estoppel**: The promissory estoppel claim should be dismissed because SVBFG fails to adequately allege the elements of the claim, especially affirmative misconduct. "Affirmative

misconduct on the part of the government requires an affirmative misrepresentation or affirmative concealment of a material fact, such as a deliberate lie or a pattern of false promises." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citations omitted). SVBFG does not adequately allege any deliberate lies or other misconduct by FDIC-C that surmounts the high bar for pleading a promissory estoppel claim against a federal agency.

**§ 1821(f) Claim**: In resolving FDIC-C's prior motion to dismiss, this Court held that 12 U.S.C. § 1821(f) is inapplicable because "SVBFG's claims are not claims for 'insurance coverage.'" MTD Order at 12. FDIC-C disagrees with that ruling but acknowledges that it is law of the case in this Court. In light of that ruling, SVBFG's claim under § 1821(f) is not viable. Because the Court has concluded that SVBFG is not seeking "insurance coverage" within the meaning of § 1821(f), it follows that SVBFG's § 1821(f) claim should be dismissed.

**Declaratory Judgment**: Finally, the Court previously ruled that SVBFG's claim for a declaratory judgment "will rise or fall" with SVBFG's other claims. MTD Order at 34. Because all of SVBFG's other claims should be dismissed, its claim for a declaratory judgment should also fall.

For these reasons and the reasons discussed below, the Court should dismiss the Amended Complaint in its entirety. The dismissal should be with prejudice because SVBFG already had an opportunity to replead its claims and, regardless, any amendment could not fix SVBFG's legally and factually deficient theories.

## Request for Judicial Notice

When ruling on the prior motion to dismiss, this Court took judicial notice of several government documents and court filings. MTD Order at 8–9. FDIC-C respectfully requests that the Court take judicial notice of the following three additional government documents and court filings:

- Transfer Agreement Between FDIC-R1 and Bridge Bank (Mar. 13, 2023), https://www.fdic.gov/system/files/2024-07/silicon-valley-transfer-agreement.pdf (attached as Exhibit A);

- Call Notice and Call Assignment (Mar. 15, 2023), ECF Nos. 1373-1 & 1373-2, *In re SVB Financial Group*, No. 23-10367 (Bankr. S.D.N.Y.) (attached as Exhibit B);

- FDIC Organization Directory – Headquarters, https://www.fdic.gov/about/organization-directory-headquarters (attached as Exhibit C).

1   Each of these documents is a government document publicly available on a government

2   website. "Judicial notice of these documents is appropriate because each document is a matter of

3   public record." MTD Order at 9 (collecting cases); *see also Leung v. FDIC*, 2024 WL 3588015, at

4   *3 (N.D. Cal. July 29, 2024) (Freeman, J.) (taking judicial notice of the Transfer Agreement).

5                                **Background**

6   The key events in this case happened during March 2023.

7       **A.    Silicon Valley Bank's Failure**

8   On March 10, a Friday, Silicon Valley Bank collapsed and FDIC-R1 became the Bank's

9   receiver. MTD Order at 2; Am. Compl. ¶ 34. According to the Federal Reserve, which "was the

10  primary federal regulator for the [B]ank and SVB Financial Group," ECF No. 92-6 (Am. Compl.

11  Ex. 6) at PDF page 16, the Bank "failed due to ineffective risk management, including the

12  management of its deposits and assets," *id.* at PDF page 20. The Federal Reserve described its views

13  about SVBFG's mismanagement in a comprehensive report. *See* Board of Governors of the Federal

14  Reserve System, *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank*

15  (Apr. 28, 2023), https://www.federalreserve.gov/publications/files/svb-review-20230428.pdf.

16  On Sunday, March 12—two days after the Bank failed—the Secretary of the Treasury, acting

17  on the recommendations of the FDIC Board of Directors and the Federal Reserve, and after

18  consulting with the President, invoked the systemic risk exception under 12 U.S.C. § 1823(c)(4)(G),

19  which enabled the FDIC to complete its resolution of Silicon Valley Bank in a manner that protected

20  all depositors, both insured and uninsured. Am. Compl. ¶ 43; *see also* ECF No. 55-2.

21  The next day, March 13, FDIC-R1 transferred the deposit accounts of Silicon Valley Bank

22  to the newly created Bridge Bank. *See* Ex. A (**Transfer Agreement**). That same day, a press release

23  announced that the deposit accounts at Bridge Bank would be accessible to depositors beginning

24  that morning. Am. Compl. ¶ 48 & ECF No. 92-7 (Am. Compl. Ex. 7).

25  The failure of Silicon Valley Bank is estimated to have caused a loss of over $17 billion to

26  the Deposit Insurance Fund. 88 Fed. Reg. 83329, 83331 (Nov. 29, 2023).

27

28

### B.    SVBFG's Deposit Accounts

When Silicon Valley Bank failed on March 10, SVBFG had deposit accounts at the Bank of $2.1 billion. Am. Compl. ¶ 33. Pursuant to the Transfer Agreement, on March 13 Bridge Bank assumed FDIC-R1's obligations to pay SVBFG's deposit liabilities. *Id.* ¶ 29. Over the next several days, "SVBFG withdrew approximately $180 million of its deposit funds" from Bridge Bank, *id.* ¶ 4, "*i.e.*, monies well in excess of the $250,000 deposit insurance limit," *id.* ¶ 73.

By March 15—just two days after the transfer—FDIC-R1 and Bridge Bank had implemented holds on SVBFG's accounts. *Id.* ¶ 79. Also on March 15, FDIC-R1 issued a call notice rescinding Bridge Bank's assumption of the SVBFG deposit liabilities and, with Bridge Bank, executed a new agreement that transferred the liabilities back from Bridge Bank to FDIC-R1. *See* Ex. B (**Call Notice & Assignment**). The Call Notice & Assignment were made pursuant to the Transfer Agreement, *id.*, which bestows on "the Receiver" the "right to request that the Bridge Bank assign to the Receiver . . . any Assumed Liability . . . ." Ex. A (Transfer Agreement) § 2.04.

On March 27, 2023, Bridge Bank entered into a purchase and assumption agreement with First-Citizens Bank & Trust Company. Am. Compl. ¶ 97. Consistent with the fact that FDIC-R1 had rescinded Bridge Bank's assumption of the SVBFG deposit liabilities on March 15, SVBFG's deposit accounts "were expressly excluded from the transfer to First Citizens." *Id.*

### C.    The Prior MTD Order

On August 8, 2024, the Court granted in part and denied in part FDIC-C's partial motion to dismiss SVBFG's original complaint. ECF No. 85. The Court rejected FDIC-C's argument that § 1821(f) preempts SVBFG's non-FOIA claims. MTD Order at 9–19. But the Court agreed that SVBFG had failed to adequately allege most of its claims. It dismissed SVBFG's turnover claim (Count II) because SVBFG "fails to adequately allege that SVBFG's deposit liabilities are in the possession, custody, or control of the FDIC-C, as opposed to the FDIC-R1." *Id.* at 22. It dismissed SVBFG's automatic stay claim (Count III) and due process claim (Count IV) for the same reason. *Id.* at 25 (dismissing automatic stay claim in part because "SVBFG fails to adequately allege that the FDIC-C, as opposed to the FDIC-R1, retains possession of SVBFG's deposit liabilities."); *id.* at 26–27 (dismissing due process claim because "SVBFG has failed to adequately allege that it was

the FDIC-C, as opposed to the FDIC-R1, that deprived SVBFG of any protected property interest."). The Court also dismissed SVBFG's standalone APA claim (Count V) because "SVBFG has failed to allege a final agency action." *Id.* at 30. The Court denied FDIC-C's motion to dismiss SVBFG's promissory estoppel claim (Count VII) after concluding that FDIC-C's opening brief challenged the sufficiency of an equitable estoppel claim but not a promissory estoppel claim. *Id.* at 33. Finally, the Court dismissed the portion of SVBFG's claim for a declaratory judgment (Count I) that sought prejudgment interest. *Id.* at 34–35.

The Court ruled that the dismissals of the turnover claim (Count II), due process claim (Count IV), and APA claim (Count V) were without prejudice, such that SVBFG could replead those claims in an amended complaint, while the other dismissals were with prejudice. *Id.* at 35–36.

### D.    SVBFG's Amended Complaint

On August 29, 2024, SVBFG filed its Amended Complaint. ECF No. 92. The Amended Complaint sets out five claims: (1) a claim for a declaratory judgment (Count I); (2) a turnover claim (Count II); (3) a due process claim (Count IV); (4) an § 1821(f) claim (Count VI); and (5) a promissory estoppel claim (Count VII). Am. Compl. ¶¶ 126–76.

The main addition to SVBFG's Amended Complaint is the assertion  that "between at least March 13 and 17, 2023, the FDIC-C was *directly* involved in directing, overseeing and monitoring FDIC-R1's and Bridge Bank's efforts to . . . block SVBFG from accessing its funds at Bridge Bank." *Id.* ¶ 7. SVBFG purports to plead supporting facts in paragraphs 74–94 of the Amended Complaint. The allegations in those paragraphs expressly refer to and incorporate selective portions of certain emails. *See, e.g., id.* ¶ 77 ("Ms. Cast forwarded that email with the subject 'HC Deposit' . . . ."); *id.* ¶ 80 ("These emails repeatedly show . . . .").

Even though SVBFG expressly references portions of these emails, SVBFG did not attach the emails to its Amended Complaint. As detailed below in Argument Section I.A.3, there is a reason SVBFG did not attach these emails: they contradict SVBFG's assertion that FDIC-C directed FDIC-R1 to block SVBFG's access to its deposit accounts at Bridge Bank.

**Legal Standard**

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). Although a court generally "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted). Courts also "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (citations omitted).

**Argument**

**I.     The Court should dismiss SVBFG's Amended Complaint for failure to state a claim.**

      **A.     The turnover claim (Count II) is still not plausible.**

Count II of SVBFG's Amended Complaint seeks turnover of SVBFG's "Account Funds" under 11 U.S.C. § 542. Am. Compl. ¶¶ 132–141.

            **1.     SVBFG still fails to allege that FDIC-C has SVBFG's deposit liabilities.**

When dismissing SVBFG's turnover claim in the original complaint, this Court held that "[t]o prevail on a claim for turnover, a plaintiff must demonstrate," among other things, "the property is in the possession, custody or control of another entity." MTD Order at 19 (quoting *In re Brown*, 2022 WL 4390454, at *20 (Bankr. S.D.N.Y. Sept. 22, 2022)). That requirement flows from the text of the statute, which requires that the defendant have "possession, custody, or control, during the case, of property" that belongs to the debtor, 11 U.S.C. § 542(a), *see Shapiro v. Henson*, 739 F.3d 1198 (9th Cir. 2014), or that the defendant "owes a debt that is property of the estate and that is matured, payable on demand, or payable on order," 11 U.S.C. § 542(b). Thus, for SVBFG to state a viable turnover claim against FDIC-C, "SVBFG must allege facts showing that the FDIC-C has possession, custody, or control of SVBFG's deposit liabilities." MTD Order at 22. To put it another way, if FDIC-C has not assumed SVBFG's deposit liabilities, then there is nothing for it to turnover.

The Court previously dismissed SVBFG's turnover claim because SVBFG "fails to adequately allege that SVBFG's deposit liabilities are in the possession, custody, or control of the FDIC-C, as opposed to the FDIC-R1." *Id.*; *see also id.* ("At no point does the Complaint allege that the deposit liabilities were transferred to the FDIC-C or that the FDIC-C ever exercised control over them."). SVBFG's turnover claim in the Amended Complaint suffers the same fatal flaw.

At no point in the Amended Complaint does SVBFG plausibly allege that FDIC-C assumed SVBFG's deposit liabilities. To the contrary, SVBFG's Amended Complaint continues to explicitly allege that FDIC-R1 alone possesses SVBFG's deposit liabilities. For example, SVBFG alleges that "FDIC-R1 . . . directed Bridge Bank to assign SVBFG's deposit accounts and all associated assets and liabilities to the FDIC-R1, and Bridge Bank complied with the FDIC-R1's instruction." Am. Compl. ¶ 75. This is the exact same kind of allegation that the Court previously found fatal to SVBFG's turnover claim. *See* MTD Order at 22–23 (rejecting SVBFG's assertions that FDIC-C had possession, custody, or control of SVBFG's deposit liabilities in part because those assertions "conflict with SVBFG's allegations that FDIC-R1 directed [Bridge Bank] to place a hold on SVBFG's accounts and to assign those accounts to the FDIC-R1.").

More than that, SVBFG *cannot* allege that FDIC-C assumed SVBFG's deposit liabilities. The facts in its Amended Complaint and the facts subject to judicial notice establish that FDIC-R1 has sole possession of SVBFG's deposit liabilities and that FDIC-C never assumed those liabilities. As the Amended Complaint alleges, on March 10, 2023, SVBFG's deposit liabilities were held by Silicon Valley Bank. Am. Compl. ¶ 33. When the Bank failed that day, FDIC-R1 became receiver of the Bank and succeeded to its liabilities, including SVBFG's deposit liabilities. *Id.* ¶ 34; *see also Leung*, 2024 WL 3588015 at *4 (explaining how the FDIC as receiver steps into the shoes of the failed bank, operates as its successor, and then has broad powers to allocate liabilities in order to effect a purchase and assumption agreement). On March 13, FDIC-R1 transferred SVBFG's deposit liabilities to Bridge Bank. *See* Ex. A (Transfer Agreement) at 2 (listing FDIC-R1 and Bridge Bank as the only contracting parties and reciting that "[t]he Receiver desires to transfer certain liabilities, including certain deposit liabilities, . . . to the Bridge Bank"); Am. Compl. ¶ 68 (alleging that FDIC-R1 transferred "all deposits at Silicon Valley Bank—insured and uninsured, alike—to Bridge

Bank"). Finally, on March 15, FDIC-R1 issued the Call Notice and, with Bridge Bank, executed the Call Assignment, which rescinded Bridge Bank's assumption of SVBFG's deposit liabilities pursuant to § 2.04 of the Transfer Agreement. *See* Ex. B (Call Notice & Assignment); Ex. A (Transfer Agreement) § 2.04; Am. Compl. ¶ 75 ("FDIC-R1 . . . directed Bridge Bank to assign SVBFG's deposit accounts and all associated assets and liabilities to the FDIC-R1, and Bridge Bank complied . . . .").

It is clear from this sequence of events that FDIC-C has never assumed SVBFG's deposit liabilities. It was FDIC-R1 (not FDIC-C) that became receiver of Silicon Valley Bank. It was FDIC-R1 (not FDIC-C) that executed the Transfer Agreement with Bridge Bank. And it was FDIC-R1 (not FDIC-C) that executed the Call Notice rescinding Bridge Bank's assumption of SVBFG's deposit liabilities. FDIC-R1 is where SVBFG's deposit liabilities remain to this day. SVBFG alleges that Bridge Bank "complied with the FDIC-R1's instruction[s]" to assign SVBFG's deposit liabilities back to FDIC-R1, Am. Compl. ¶ 75, and SVBFG does not (and cannot) allege that FDIC-C or any other party has since assumed SVBFG's deposit liabilities from FDIC-R1. "[T]he FDIC-C and the FDIC-R1 are legally distinct entities, so SVBFG must allege facts showing that the FDIC-C"— rather than FDIC-R1—"has possession, custody, or control of SVBFG's deposit liabilities." MTD Order at 22 (citing *Bullion*, 50 F.3d at 709). SVBFG's inability to plead such facts dooms its turnover claim.

The Amended Complaint's new allegations do not save the turnover claim. SVBFG asserts that "between at least March 13 and 17, 2023, the FDIC-C was *directly* involved in directing, overseeing and monitoring FDIC-R1's and Bridge Bank's efforts to . . . block SVBFG from accessing its funds at Bridge Bank." Am. Compl. ¶ 7; *see also id.* ¶¶ 74–94. As explained below, those new allegations should be disregarded. But even if they were accepted as true, they do not "adequately allege that SVBFG's deposit liabilities are in the possession, custody, or control of the FDIC-C, as opposed to the FDIC-R1." MTD Order at 22. An allegation that FDIC-C "directed" FDIC-R1 to block SVBFG's access to its deposit accounts is not an allegation that FDIC-C itself ever assumed or otherwise took possession, custody, or control of SVBFG's deposit liabilities—let alone that FDIC-C has them today as would be required for turnover. Because SVBFG has not

1   plausibly alleged—and cannot plausibly allege—that FDIC-C assumed SVBFG's deposit liabilities,

2   its turnover claim should again be dismissed, just as it was before. MTD Order at 22–23.

3               **2.        SVBFG's new allegations should be disregarded as a matter of law.**

4          As a matter of law, the Court should disregard SVBFG's new allegations that FDIC-C

5   directed FDIC-R1 to block SVBFG's account access. *See, e.g.*, Am. Compl. ¶¶ 7, 74–94.

6          "The FDIC-C and the FDIC-R1 are legally distinct entities." MTD Order at 22; *accord FDIC*

7   *v. Nichols*, 885 F.2d 633, 636 (9th Cir. 1989) ("[U]nder federal law, the FDIC is empowered to act

8   in two entirely separate and distinct capacities.") (cleaned up). The separation between FDIC-C and

9   FDIC-R1 is apparent in this case. The Transfer Agreement between FDIC-R1 and Bridge Bank

10  empowered only FDIC-R1—not FDIC-C—to direct Bridge Bank to place a hold on a deposit

11  account. Ex. A (Transfer Agreement) § 4.06 ("At any time, the Receiver can direct the Bridge Bank

12  to withhold payment of all or any portion of any Assumed Deposit balance. Upon receipt of such

13  direction, the Bridge Bank agrees to hold such Assumed Deposit . . . ."). Similarly, the Transfer

14  Agreement empowered only FDIC-R1—not FDIC-C—to call deposit accounts back from the

15  Bridge Bank. *Id.* § 2.04 ("[T]he Receiver has the right to request that the Bridge Bank assign to the

16  Receiver . . . any Assumed Liability . . . ."). Consistent with those provisions, SVBFG alleges that

17  FDIC-R1—not FDIC-C—was the entity that actually "instructed Bridge Bank to place holds on

18  SVBFG's deposit accounts" and "directed Bridge Bank to assign SVBFG's deposit accounts and all

19  associated assets and liabilities to the FDIC-R1." Am. Compl. ¶¶ 74–75.

20         "Because FDIC Corporate and FDIC Receiver perform two different functions and protect

21  wholly different interests, courts have been careful to keep the rights and liabilities of these two

22  entities legally separate." *Bullion*, 50 F.3d at 709. In particular, it is settled law that "FDIC-C may

23  not be held liable for acts committed by the FDIC-R." *Hartford Cas. Ins. Co. v. FDIC*, 21 F.3d 696,

24  706 (5th Cir. 1994); *accord, e.g.*, *Dababneh v. FDIC*, 971 F.2d 428, 432 (10th Cir. 1992) ("FDIC-C

25  may not be held directly liable for the actions of FDIC-R."); *Deutsche Bank Nat'l Trust Co. v. FDIC*,

26  784 F. Supp. 2d 1142, 1160 (C.D. Cal. 2011) ("FDIC-C is legally distinct from FDIC-R, and . . .

27  actions taken by FDIC-R are not attributable to FDIC-C.").

28

Like SVBFG here, plaintiffs in other cases have sought to circumvent the bar on holding FDIC-C liable for FDIC-R's conduct by alleging that FDIC-C "directed the actions of FDIC-Receiver," and courts have rejected those efforts by holding that such allegations "have no legal effect." *In re Washington Bancorporation*, 1996 WL 148533, at *14 (D.D.C. Mar. 19, 1996) (citing *Pageland 29 Limited Partnership v. FDIC*, 1992 WL 391377 at *3 (D.D.C. Dec. 14, 1992)); *accord Patriot Square Assocs. v. FDIC*, 1992 U.S. Dist. Lexis 22530, at *4 (D.D.C. Sept. 25, 1992). They have no legal effect because, as a matter of law, FDIC-C and FDIC-R are entirely separate and do not dictate each other's actions. In *Patriot Square*, the court explained that "FDIC-Receiver is charged with managing the assets and liabilities of failed institutions," while "FIRREA simply does not authorize FDIC-Corporate to make decisions with respect to the contracts of failed institutions," so "[i]f FDIC-Corporate attempted to make such a decision, it would have no legal effect." 1992 U.S. Dist. Lexis 22530, at *4; *id.* at *5 ("Under FIRREA the ratification of a failed institution's contract by FDIC-Corporate is a legally insignificant action and, as such, does not serve as a basis for a legal claim. That arm of the corporation simply has no authority to determine whether a failed institution's contract will be honored."). As the court put it in *Washington Bancorpation*, "even if FDIC-C had attempted to direct the actions of FDIC-R, these attempts would have no legal effect." 1996 WL 148533, at *14 (citing *Pageland*, 1992 WL 391377, at *3).

This approach makes sense. If allegations that FDIC-C "directed" FDIC-R were sufficient to state a claim against FDIC-C, that would "subvert the distinction between FDIC-R and FDIC-C," *id.* at *15, and effectively make FDIC-C a potential party in every lawsuit against FDIC-R. And it would be at odds with the Ninth Circuit's admonition that the "liabilities of these two entities" must be kept "legally separate," *Bullion*, 50 F.3d at 709, would conflict with the cases holding that "FDIC-C may not be held liable for acts committed by the FDIC-R," *Hartford*, 21 F.3d at 706, and would contravene "Congress' careful delineation of responsibilities between FDIC-Corporate and FDIC-Receiver," *Washington Bancorporation*, 1996 WL 148533, at *14 (quoting *Pageland*, 1992 WL 391377 at *4). SVBFG's assertion that FDIC-C "directed" FDIC-R1's actions is, in effect, a legal conclusion that FDIC-R1 is subservient to FDIC-C, when *Bullion* and the other cases cited above make clear that FDIC-C and FDIC-R are separate and distinct entities that pursue their own interests.

50 F.3d at 708–09. This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. at 678 (citation omitted). Accordingly, the Court should, as a matter of law, disregard SVBFG's allegations that FDIC-C "directed" FDIC-R1 as having no legal effect.

### 3.      SVBFG's new allegations should be disregarded as a matter of fact.

This Court should also disregard SVBFG's new allegations that FDIC-C directed FDIC-R1 to block SVBFG's account access because they are factually contradicted by the emails referenced in the Amended Complaint and by materials subject to judicial notice. Courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch*, 546 F.3d at 588; *accord, e.g.*, *Johnson v. Fed. Home Loan Morg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015); *Turkle Trust v. Wells Fargo & Co.*, 602 F. App'x 360, 362 (9th Cir. 2015); *Stossel v. Meta Platforms, Inc.*, 634 F. Supp. 3d 743, 755 (N.D. Cal. 2022).

The Amended Complaint relies on portions of emails from March 2023 to support SVBFG's assertion that FDIC-C directed FDIC-R1 to block SVBFG's account access. *See* Am. Compl. ¶¶ 74–94. Tellingly, however, SVBFG did not attach those emails to its Amended Complaint. That is because they contradict its assertions that FDIC-C directed FDIC-R1's actions. Although SVBFG did not attach the emails, this Court may nonetheless consider them under the doctrine of incorporation by reference, which "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *accord, e.g.*, *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037–38 (N.D. Cal. 2023); *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1003–05 (N.D. Cal. 2021) (Freeman, J.). The emails incorporated by reference in paragraphs 76–85 of the Amended Complaint are attached as Exhibit D.

FDIC-R1 had acted to block SVBFG's account access by the end of the day on March 15. SVBFG alleges three deposit accounts are at issue, ending in numbers -5270, -0822, and -6176. Am. Compl. ¶ 95. FDIC-R1 and Bridge Bank had implemented holds on each of those three accounts by March 15. Am. Compl. ¶ 79 (alleging that "the holds on SVBFG's accounts had been implemented" by "March 15, 2023"); Ex. D at PDF page 4 (confirming holds were implemented by March 15). Likewise, the Call Notice and Call Assignment that recalled SVBFG's deposit accounts (including

accounts -5270, -0822, and -6176) to FDIC-R1 were also executed on March 15. Ex. B (Call Notice & Assignment).

To support its assertion that FDIC-R1 acted to block SVBFG's account access at FDIC-C's direction, SVBFG alleges only *two* facts from *before* the holds were implemented: (1) "On March 13, 2023, . . . the Acting Deputy General Counsel of the FDIC, Richard Penfield Starke, instructed FDIC-C employees Audra L. Cast, Deputy Director of the Division of Resolutions and Ryan Tetrick, Deputy Director of Resolution Readiness, not to release funds from SVBFG's deposit account," and (2) "Ms. Cast forwarded that email with the subject 'HC Deposit' . . . to Janine D. Henkes, Receiver-in-Charge for Silicon Valley Bank and Sharon E. Kelley, a Senior Financial Management Analyst at FDIC-R1." *Id.* ¶ 77. It is not alleged that anyone after Ms. Cast who received these emails (such as Ms. Henkes and Ms. Kelley) was acting for FDIC-C. *Id.*; *see also id.* ¶ 78 (discussing actions by FDIC-R1 and Bridge Bank personnel "to actually implement the hold").

SVBFG's assertion that FDIC-C (rather than FDIC-R1) was the one sending these March 13 emails rests on its allegation that Mr. Starke and Ms. Cast were acting for FDIC-C. SVBFG misleadingly alleges that Mr. Starke was "the Acting Deputy General Counsel of the FDIC." Am. Compl. ¶ 77. That allegation is contradicted by materials subject to judicial notice. In fact, Mr. Starke was not the "Acting Deputy General Counsel" for the entire FDIC but was instead the Acting Deputy General Counsel for the *Resolution and Receiverships Branch* of the FDIC's Legal Division, a role in which he acts for FDIC-R1 and other receivers. *See* Ex. A (Transfer Agreement) § 9.05 (listing Mr. Starke, the "Acting Deputy General Counsel, Resolutions and Receiverships," as one of two contacts for FDIC-R1); Ex. C (FDIC Organizational Directory) (listing Mr. Starke under the "Legal Division" as the "Deputy General Counsel" in the "Resolution and Receivership Branch"). Similarly, SVBFG misleadingly alleges that Ms. Cast was "Deputy Director of the Division of Resolutions." Am. Compl. ¶ 77. In fact, Ms. Cast worked in the Division of Resolutions *and Receiverships*, a role in which she acts for FDIC-R1 and other receivers. *See* Ex. C (FDIC Organizational Directory) (listing Ms. Cast under the "Division of Resolutions and Receiverships"); Ex. D at PDF page 9 (Ms. Cast's signature block listing her as "DRR Deputy Director").

Moreover, even assuming *arguendo* that these March 13 emails were sent by FDIC-C, they do not contain any "direction" from FDIC-C to block SVBFG's account access. Mr. Starke's email states in its entirety: "The ***Fed*** says the SVB holding company has a deposit at the bridge that we should not release." Ex. D at PDF page 9 (emphasis added). Ms. Cast then forwarded that email to FDIC-R1 personnel with the message "FYI." *Id.*; *see also* Am. Compl. ¶ 77. "FYI" means "for your information," which "gives the email the appearance of a simple alert to another government employee." *Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 348 (D.D.C. 2018). These emails show that Mr. Clarke and Ms. Cast were simply *alerting* FDIC-R1 that the *Federal Reserve* believed that SVBFG's deposit accounts should not be released. Ex. D at PDF page 9. Remarkably, the Amended Complaint omits any mention of the Federal Reserve in these emails and instead mischaracterizes them as containing "instructions . . . from FDIC-C." Am. Compl. ¶ 78.

Other than the March 13 emails, SVBFG's allegations about FDIC-C purportedly directing FDIC-R1 all concern events *after* FDIC-R1 had already acted to block SVBFG's access on March 15. *See* Am. Compl. ¶¶ 80–90. For example, SVBFG alleges that Mr. Tetrick, acting on behalf of FDIC-C, sent emails on March 16 "directing that those accounts be 'locked down.'" *Id.* ¶ 80; *see also id.* ¶¶ 81–85; Ex. D at PDF pages 2–4 (Tetrick emails dated March 16). Yet FDIC-C *could not* have directed FDIC-R1 to initiate locking down SVBFG's accounts on March 16 (or later) because by that time FDIC-R1 had already implemented holds on SVBFG's accounts, *see* Am. Compl. ¶ 79; Ex. D at PDF page 2–3, and called back SVBFG's accounts, *see* Ex. B (Call Notice & Assignment).

In sum, FDIC-R1 took actions to block SVBFG's account access by March 15, and SVBFG has not plausibly alleged that FDIC-R1 did so at FDIC-C's direction. SVBFG's assertions that FDIC-C instructed FDIC-R1 to block SVBFG's account on March 13 are contradicted by the emails incorporated by reference and by materials subject to judicial notice. Accordingly, the Court should disregard those allegations. *See Lazy Y Ranch*, 546 F.3d at 588; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

**B.     The due process claim (Count IV) is still not plausible.**

Count IV of SVBFG's Amended Complaint claims that FDIC-C violated SVBFG's Fifth Amendment due process rights. Am. Compl. ¶¶ 142–54. This claim fails for at least two reasons.

1    ***First,*** SVBFG lacks a cause of action to pursue its due process claim. ***Second***, SVBFG's amended

2    complaint still "fails to allege that FDIC-C was the government entity that deprived SVBFG of its

3    property interest." MTD Order at 29.

4                            **1.       SVBFG lacks a cause of action.**

5             In its prior motion to dismiss, FDIC-C did not raise an argument about SVBFG's lack of

6    cause of action for its due process claim. Nevertheless, the Ninth Circuit is "forgiving" of new

7    arguments in a second Rule 12(b)(6) motion. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313,

8    319 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019). "[C]ourts faced with

9    a successive motion often exercise their discretion to consider new arguments in the interests of

10   judicial economy," as otherwise the issue would likely arise again in a Rule 12(c) motion. *United*

11   *States v. Sutter Health*, 2021 WL 9182525, at *3 (N.D. Cal. Nov. 2, 2021) (citations omitted);

12   *accord, e.g.*, *Abcellera Biologics Inc. v. Bruker Cellular Analysis*, 2024 WL 3074381, at *3 (N.D.

13   Cal. June 20, 2024); *Riordan v. Western Digital Corp.*, 2024 WL 2868152, at *6 (N.D. Cal. June 5,

14   2024); *Jacksonville Police Officers & Fire Fighters Health Ins. Trust v. Gilead Sciences, Inc.*, 2023

15   WL 5600098, at *2 (N.D. Cal. Aug. 28, 2023). The Court should thus consider this argument.

16            In *FDIC v. Meyer*, the Supreme Court dismissed for lack of a cause of action a due process

17   claim against the FDIC (in its capacity as the successor to the Federal Savings and Loan Insurance

18   Corporation) that sought damages. 510 U.S. 471, 483–86 (1994). The Supreme Court explained that

19   even though sovereign immunity was waived, a plaintiff must have a separate cause of action to sue

20   a federal agency for a due process violation. *Id.* at 484. As the Court put it: "The first inquiry is

21   whether there has been a waiver of sovereign immunity. If there has been such a waiver, as in this

22   case, the second inquiry comes into play—that is, whether the source of substantive law upon which

23   the claimant relies provides an avenue for relief." *Id.* The Court dismissed after concluding that there

24   was no implied *Bivens* cause of action to sue the FDIC (or any federal agency) for damages for an

25   alleged Fifth Amendment due process violation. *Id.* at 483–86.

26            Similarly, in *Hindes v. FDIC*, the Third Circuit dismissed for lack of a cause of action a due

27   process claim seeking declaratory and injunctive relief against the FDIC. 137 F.3d 148, 157–59 (3d

28   Cir. 1998). In that case, Count I of the complaint sought "declaratory and injunctive relief" for an

1   alleged due process violation, but it did "not identify the source of the substantive cause of action."
2   *Id.* at 157. The Third Circuit construed the complaint liberally as pleading 42 U.S.C. § 1983 as the
3   cause of action, but it then affirmed dismissal of the due process claim against the FDIC because
4   the FDIC, as a federal agency, is not "subject to section 1983 liability." *Id.* at 158–59.

5       *Meyer* and *Hindes* make clear that to sue a federal agency for an alleged violation of the
6   Fifth Amendment's Due Process Clause, the plaintiff needs a separate cause of action. SVBFG lacks
7   one here. The Amended Complaint identifies the cause of action for most of SVBFG's claims. *E.g.*,
8   Am. Compl. ¶ 141 (identifying "section 542 of the Bankruptcy Code" as the cause of action for the
9   turnover claim). But SVBFG's pleadings are conspicuously silent as to the cause of action for its
10  due process claim, and FDIC-C is not aware of any cause of action. The lack of a cause of action
11  warrants dismissal. *See Meyer*, 510 U.S. at 483–86; *Hindes*, 137 F.3d at 157–59.

12      The causes of action commonly used to support due process claims in other cases—such as
13  a *Bivens* action, 42 U.S.C. § 1983, and *Ex parte Young*—are unavailable to support a due process
14  claim here against FDIC-C.

15      A *Bivens* claim is unavailable because *Meyer* held that a *Bivens* action can never be brought
16  against a federal agency. 510 U.S. at 483–86.

17      Section 1983 is unavailable because it supplies a cause of action for claims against *state*
18  *officials*, not *federal agencies*. *See Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011)
19  ("§§ 1983 and 1985 impose liability upon a 'person,' and a federal agency is not a 'person' within
20  the meaning of these provisions."); *Hindes*, 137 F.3d at 158 (FDIC-C and other federal agencies
21  "are not 'persons' subject to section 1983 liability"); *Guancione v. IRS*, 2022 WL 19333271, at *2
22  (N.D. Cal. 2022) (Freeman, J.) (dismissing § 1983 claim against IRS because it is a federal agency
23  not liable under § 1983).

24      *Ex parte Young* is likewise unavailable. "The doctrine of *Ex parte Young* . . . is regarded as
25  carving out a necessary exception to Eleventh Amendment immunity." *Puerto Rico Aqueduct Auth.*
26  *v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). It does not authorize suit against government
27  agencies. *See id.* (holding that *Ex parte Young* "has no application in suits against the States and
28  their agencies"); *Dignity Health v. Cal. Dep't of Industrial Relations*, 445 F. Supp. 3d 491, 500 (N.D.

Cal. 2020) ("Numerous cases in the Ninth Circuit dictate that the *Ex parte Young* exception does not extend to state agencies.") (collecting cases). To the extent *Ex parte Young* creates a cause of action at all, it authorizes "a federal court [to] command[] a state official to . . . refrain from violating federal law." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011); *accord Mendoza v. Stickler*, 51 F.4th 346, 352 (9th Cir. 2022). SVBFG thus cannot sue FDIC-C—a federal agency—under *Ex parte Young*.

Were that not enough, *Ex parte Young* can be used to seek only prospective, non-monetary relief. It "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct Auth.*, 506 U.S. at 146. Nor does it allow prospective relief requiring payment, such as an injunction requiring the payment of money. *Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974). "A remedy for past injury, even if it purports to be an injunction against state officers requiring the future payment of money, is barred." *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008). Yet here, SVBFG seeks a judgment that FDIC-C "violated SVBFG's Fifth Amendment Due Process rights" *in the past* because of its "refusal to provide SVBFG with access to, or to pay SVBFG, its Account Funds." Am. Compl. ¶ 154. And for a remedy SVBFG seeks "injunctive relief prohibiting the FDIC-C from continuing to deny SVBFG access to its Account Funds," which is equivalent to seeking an order that FDIC-C pay SVBFG $1.9 billion in the future. *Id.* That is not permissible prospective, non-monetary relief under *Ex parte Young*.

In sum, SVBFG lacks a cause of action against FDIC-C for its due process claim, so this claim must be dismissed. *See Meyer*, 510 U.S. at 483–86; *Hindes*, 137 F.3d at 157–59.

## 2. SVBFG still fails to allege that FDIC-C deprived SVBFG of property.

SVBFG's due process claim should also be dismissed because it still fails to adequately allege that FDIC-C deprived SVBFG of any protected property interest. This Court previously dismissed SVBFG's due process claim because SVBFG "failed to adequately allege that it was the FDIC-C, as opposed to the FDIC-R1, that deprived SVBFG of any protected property interest." MTD Order at 26–27; *id.* at 29 ("SVBFG fails to allege that FDIC-C was the government entity that deprived SVBFG of its property interest.").

1    SVBFG's Amended Complaint continues to allege that it was "FDIC-R1" that "instructed

2    Bridge Bank not to release any of the Account Funds," Am. Compl. ¶ 74, and "FDIC-R1" that

3    "directed Bridge Bank to assign SVBFG's deposit accounts and all associated assets and liabilities

4    to the FDIC-R1," *id.* ¶ 75. Nor could SVBFG allege anything different. The Transfer Agreement

5    authorized only FDIC-R1 (not FDIC-C) to direct Bridge Bank to place holds on deposit accounts or

6    call those accounts back to FDIC-R1. *See* Ex. A (Transfer Agreement) §§ 2.04, 4.06. And the Call

7    Notice and Call Assignment confirm that FDIC-R1 (not FDIC-C) was the entity that actually called

8    SVBFG's deposit accounts back to FDIC-R1. *See* Ex. B (Call Notice & Assignment).

9    Finally, SVBFG's allegations that FDIC-C "directed" FDIC-R1's actions do not rescue

10   SVBFG's due process claim. Just as those allegations should be disregarded for SVBFG's turnover

11   claim because they are legally without effect and contradicted by the emails incorporated by

12   reference in the Amended Complaint and by documents subject to judicial notice, so they should be

13   disregarded for SVBFG's due process claim. *See* Sections I.A.2 & I.A.3, *supra*. Accordingly,

14   SVBFG has failed to plausibly allege that FDIC-C deprived SVBFG of a protective property

15   interest.

16   **C.    The promissory estoppel claim (Count VII) is not adequately alleged.**

17   Count VII of SVBFG's Amended Complaint pleads a claim of promissory estoppel. Am.

18   Compl. ¶¶ 169–76; *see also* MTD Order at 31 ("In its opposition, SVBFG clarified that its claim is

19   for promissory estoppel."). The Court should dismiss this claim because the Amended Complaint

20   fails to sufficiently allege the elements of promissory estoppel, especially affirmative misconduct.

21   Although the Court denied FDIC-C's prior motion to dismiss SVBFG's promissory estoppel

22   claim, it did not address the merits of whether SVBFG has plausibly alleged the elements of a

23   promissory estoppel claim. The Court concluded that argument had been waived because it was

24   raised in FDIC-C's reply brief but not its opening brief, MTD Order at 33, even though SVBFG did

25   not clarify that it asserted a promissory estoppel claim until its opposition brief, *id.* at 31. A finding

26   of waiver is "not a decision on the merits." *In re Zwanziger*, 714 F.3d 74, 77 (10th Cir. 2014)

27   (collecting cases); *see also Valerio v. Crawford*, 306 F.3d 742, 754 n.4 (9th Cir. 2002) (differentiating

28   between resolving an argument "on the merits" versus finding it "waived"). Whether SVBFG has

adequately pleaded a promissory estoppel claim thus has not been decided on the merits and remains an open question that FDIC-C can re-raise in this motion. *See Desoto Cab. Co. v. Uber Techs.*, 2020 WL 10575294, at *10 (N.D. Cal. Mar. 25, 2020) (holding that defendant could re-raise, in a motion to dismiss an amended complaint, an argument that the Court had previously declined to consider because it had been raised for the first time in a reply brief in support of an earlier motion to dismiss).

Moreover, SVBFG's Amended Complaint amended its estoppel claim. It "incorporate[d] by reference" into its estoppel claim all of the dozens of new allegations in the Amended Complaint. *See* Am. Compl. ¶ 169. FDIC-C is accordingly entitled to move to dismiss the claim. *See Tremblay v. OpenAI, Inc.*, --- F. Supp. 3d ---, 2024 WL 3640501 at *1 (N.D. Cal. July 30, 2024) (holding that defendants could move to dismiss a claim from an amended complaint, even after the court had previously found the claim sufficiently pleaded in an earlier complaint, because the plaintiffs amended the claim in the amended complaint). At minimum, the Court should exercise its discretion to consider this argument in the interest of judicial efficiency and economy. *See Tremblay*, 2024 WL 3640501 at *1 n.4 (citing *In re Apple*, 846 F.3d at 317–18); *Abcellera*, 2024 WL 3074381, at *3.

The elements of promissory estoppel are "(1) the existence of a promise, (2) that the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promise actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise." *DeVoll v. Burdick Painting, Inc.,* 35 F.3d 408, 412 n.4 (9th Cir. 1994). The promise must be "clear and unambiguous in its terms." *Id.* (cleaned up).

In addition, "[t]o prevail on a claim of promissory estoppel against the federal government, one must satisfy the traditional elements of estoppel as well as affirmative misconduct." *Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 WL 1704745, at *12 (E.D. Va. Apr. 27, 2010); *accord, e.g.*, *United States v. Vantage Trust Fed. Credit Union*, 2018 WL 306920, at *6 (M.D. Pa. Jan. 5, 2018) (dismissing promissory estoppel claim against federal agency for failure to plausibly allege "affirmative misconduct"); *Jones Motor Co. v. Teledyne, Inc.*, 732 F. Supp. 490, 495–96 (D. Del. 1990) (same). The "affirmative misconduct" requirement for promissory estoppel also applies to equitable estoppel, and courts often cite to equitable estoppel cases when evaluating the affirmative misconduct element for promissory estoppel claims. *See, e.g.*, *Koroma*, 2010 WL

1  1704745, at *12 (drawing on equitable estoppel cases such as *Dawkins v. Witt*, 318 F.3d 606, 611–

2  12 (4th Cir. 2003)). Accordingly, FDIC-C draws on equitable estoppel cases below.

3      "Affirmative misconduct on the part of the government requires an affirmative

4  misrepresentation or affirmative concealment of a material fact, such as a deliberate lie or a pattern

5  of false promises." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citations omitted).

6  The affirmative misconduct must involve "ongoing active misrepresentations or a pervasive pattern

7  of false promises as opposed to an isolated act of providing misinformation." *Purcell v. United*

8  *States*, 1 F.3d 932, 940 (9th Cir. 1993) (cleaned up). Mere "negligent provision of misinformation"

9  is not affirmative misconduct. *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000).

10      To adequately allege affirmative misconduct, SVBFG must plead it not only with plausibility

11  but also with particularity, as the heightened pleading standard in Federal Rule of Civil Procedure

12  9(b) applies to the affirmative misconduct element. *See Miscellaneous Service Workers Drivers &*

13  *Helpers v. Philco–Ford Corp.,* 661 F.2d 776, 782 (9th Cir. 1981); *Gengler v. U.S. ex rel. Dep't of*

14  *Def. & Navy*, 463 F. Supp. 2d 1085, 1110 (E.D. Cal. 2006).

15      SVBFG's promissory estoppel claim should be dismissed because it fails to adequately

16  allege affirmative misconduct. The words "affirmative misconduct" or anything similar never

17  appear in the Amended Complaint. Nor does the Amended Complaint otherwise adequately plead

18  affirmative misconduct.

19          **1.      The March 12–13 press releases are not affirmative misconduct.**

20      SVBFG alleges that two public statements constituted the promise that underlies SVBFG's

21  promissory estoppel claim. Am. Compl. ¶ 171. First, it points to the joint press release issued by the

22  FDIC-C, Treasury, and the Federal Reserve on March 12. *Id.* SVBFG previously requested that the

23  Court take judicial notice of that press release, *see* ECF No. 55 at 16 n.1, and FDIC-C agrees that

24  judicial notice is appropriate as it is a publicly available government document that is incorporated

25  by reference in the Amended Complaint. The March 12 joint press release states that the Treasury

26  Secretary "approved actions enabling the FDIC to complete its resolution of [SVB] in a manner that

27  fully protects all depositors. Depositors will have access to all of their money starting Monday,

28  March 13." ECF No. 55-2 (March 12 press release). Second, SVBFG points to the FDIC-C press

1   release issued first thing in the morning of March 13 "announcing that all deposits of the former

2   Silicon Valley Bank had been transferred to Bridge Bank and that all depositors would have full and

3   immediate access to the funds in their accounts beginning that morning." Am. Compl. ¶ 171; *see*

4   *also* Am. Compl. Ex. 7 (March 13 press release).

5        FDIC-C disagrees that these press releases contain an enforceable promise by FDIC-C to

6   SVBFG, but even assuming *arguendo* that they do, nothing in the statements rises to the level of

7   affirmative misconduct. To begin with, by SVBFG's own allegations, both statements were true

8   when made. SVBFG admits that—just as the press releases say—its deposit accounts were

9   transferred to Bridge Bank on March 13, and it had full access to them that day. Am. Compl. ¶ 71.

10   Indeed, it withdrew $180 million from its deposit accounts at Bridge Bank. *Id.* ¶ 73.

11        SVBFG does not allege that FDIC-C even knew, at the time it made these statements on

12   March 12 and March 13, that SVBFG had any deposit accounts at Silicon Valley Bank or the Bridge

13   Bank, let alone that FDIC-C was deliberately lying to SVBFG or knowingly making false promises

14   that SVBFG would have access to its deposit accounts when in fact FDIC-C harbored secret

15   intentions to later deprive SVBFG of access to its accounts. Nor did SVBFG allege that any promise

16   by FDIC-C was free and clear of the rights of creditors, such as FDIC-R1, which by operation of

17   law stepped into the shoes of the failed bank.

18        Simply put, the March 12 and 13 press releases, even if they are assumed to have

19   misinformed SVBFG about its deposit accounts, cannot be read as the affirmative misconduct

20   necessary to plead estoppel against the federal government. *See Purcell v. United States*, 1 F.3d 932,

21   940 (9th Cir. 1993) ("an isolated act of providing misinformation" is not affirmative misconduct);

22   *Wu v. Berryhill*, 2017 WL 1947432, at *4 (C.D. Cal. May 10, 2017) (dismissing complaint because

23   providing plaintiff with "inaccurate information about his potential retroactive benefits" is not

24   affirmative misconduct); *see also Mukherjee v. INS,* 793 F.2d 1006, 1009 (9th Cir. 1986) (no

25   affirmative misconduct where consular officer failed to inform petitioner that his visa was approved

26   and misinformed petitioner that he was not subject to a two-year residency requirement); *United*

27   *States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985) (agency statements in letters, bulletins,

28   and publications of proposed regulations that exhibited "a certain vagueness and lack of artistry"

1  does not suggest affirmative misconduct); *Jones Motor Co. v. Teledyne, Inc*., 732 F. Supp. 490, 496

2  (D. Del. 1990) (unauthorized actions of government agency were mistake of law and akin to "mere

3  negligence" insufficient to  rise to level of affirmative misconduct).

4          The Ninth Circuit's decision in *Lavin v. Marsh*, 644 F.2d 1378 (9th Cir. 1981), is instructive.

5  There the Ninth Circuit held that although the plaintiff was induced to join the U.S. Army Reserves

6  based on false representations that he was eligible for retirement benefits, an estoppel claim could

7  not lie because there was no affirmative misconduct. *Id*. at 1380. The court reasoned there was no

8  affirmative misconduct because the government did not "deliberately and knowingly lie[]" and the

9  plaintiff "chose trust over caution and he never attempted to confirm his eligibility." *Id*. at 1383.

10 There is no affirmative misconduct where the government "lulled [plaintiff] into [a] mistaken belief"

11 due to the plaintiff's own lack of due diligence since "[p]ersons dealing with the government are

12 charged with knowing government statutes and regulations, and they assume the risk that

13 government agents may exceed their authority and provide misinformation." *Lavin v. Marsh*, 644

14 F.2d 1378, 1382 (9th Cir. 1981). Here, too, even assuming the March 12 and 13 press releases were

15 misleading, SVBFG proceeded at its own risk by not attempting to confirm with the government its

16 understanding that its deposits were "safe" and "fully protected," such that it could "keep [its] funds

17 at Bridge Bank," Am Compl. ¶ 172, without FDIC-R1 exercising its right to recall SVBFG's deposit

18 accounts pursuant to the Transfer Agreement, *see* Ex. A (Transfer Agreement) § 2.04.

19          **2.      Statements in the "months following" are irrelevant.**

20          SVBFG also alleges that in the "months following" March 2023, FDIC-C representatives

21 made public statements repeating that "all deposits and depositors were protected." Am. Compl.

22 ¶ 174. Any statements after March 2023 cannot constitute affirmative misconduct because they

23 postdate any possible reliance by SVBFG. The only "promises" that count for promissory estoppel

24 are those made "at the time of the alleged justifiable reliance." *Monetti, S.p.A. v. Anchor Hocking*

25 *Corp.,* 1992 WL 109106, at *4 (N.D. Ill. May 12, 1992). SVBFG alleges that it acted "[i]n reliance

26 on the announced guarantee of all deposits of all depositors of Silicon Valley Bank" in the March

27 12 and 13 press releases when it "did not attempt to withdraw or transfer all of its insured deposits

28 out of Bridge Bank." *Id.* ¶ 173. But SVBFG does not allege that it relied on statements made in the

1    "months following" March 2023. *Id.* ¶ 174. Government actions that "occurred after any possible

2    reliance" by the plaintiff cannot constitute affirmative misconduct as they are "not relevant to an

3    estoppel analysis." *Penny v. Giuffrida*, 897 F.2d 1543, 1548 (10th Cir. 1990) (overturning district

4    court finding of affirmative misconduct).

5    Nor could SVBFG allege that it relied on FDIC-C's statements made in the months after

6    March 2023. FDIC-R1 acted to block SVBFG's account access by March 15. *See* Am. Compl. ¶ 79

7    (holds implemented by March 15); Ex. B (Call Notice & Assignment) (accounts recalled to FDIC-

8    R1 on March 15). And SVBFG was aware no later than March 21 that FDIC-R1 was withholding

9    access to SVBFG's deposit accounts because of FDIC-R1's setoff defenses. Am. Compl. ¶ 50 ("On

10   March 20, 2023, in an objection to the Bankruptcy Court . . . , counsel for the FDIC-R1 stated: '[t]o

11   the extent that the FDIC agrees that any amount is due to the Debtor (***and unavailable for setoff***),

12   such amount will be paid in full through the Deposit Insurance Fund.'") (citation omitted; emphasis

13   added); *see also id.* ¶ 51 (FDIC-R1 reiterated this point twice during a March 21 bankruptcy

14   hearing). SVBFG does not (and cannot) plausibly allege that it relied on statements made months

15   after it had lost access to its deposit accounts and knew FDIC-R1 was withholding access for setoff.

16   In sum, FDIC's public statements that "all deposits and depositors were protected" do not

17   rise to the level of "affirmative misconduct" because they are not part of "ongoing active

18   misrepresentations or a pervasive pattern of false promises" that SVBFG relied on. *See Purcell v.*

19   *United States*, 1 F.3d 932, 940 (9th Cir. 1993) (cleaned up).

20             **3.    FDIC-C cannot be held liable for FDIC-R1's conduct.**

21   Even assuming FDIC-C made a promise (it did not), it cannot be held liable for FDIC-R1's

22   alleged breach of that promise. SVBFG alleges that it was FDIC-R1 that placed a hold on and

23   recalled SVBFG's deposits. Am. Compl. ¶¶ 68, 75. And under the Transfer Agreement between

24   FDIC-R and Bridge Bank, it was FDIC-R—not FDIC-C—that had the authority to direct Bridge

25   Bank to place holds and recall deposit liabilities. *See* Ex. A (Transfer Agreement) §§ 2.04, 4.06.

26   As noted above, it is black-letter law that "FDIC-C may not be held liable for acts committed

27   by the FDIC-R." *Hartford*, 21 F.3d at 706; *see also* Section I.A.2, above (collecting additional

28   cases). In *Howell v. FDIC*, the First Circuit indicated this rule likely barred a promissory estoppel

claim against FDIC-C for allegedly making a promise that FDIC-R later breached. 986 F.2d 569, 574 (1st Cir. 1993) ("On this theory, the FDIC is not liable in this case as regulator, even if it affiliated itself with the promise of severance pay, since 'it' (the FDIC as regulator) did not break the promise; and as receiver, the FDIC was free to disavow the contracts because 'it' (the FDIC as receiver) made no promises.").

And, as explained above, SVBFG's allegations that FDIC-C "directed" FDIC-R's actions are legally without effect and are contradicted by the emails incorporated by reference in the Amended Complaint and by documents subject to judicial notice. As a result, these allegations should be disregarded; they cannot save SVBFG's promissory estoppel claim. *See* Sections I.A.2 & I.A.3, above.

**D.    The § 1821(f) claim (Count VI) is not viable in light of the MTD Order.**

Count VI alleges that FDIC-C's denial of SVBFG's administrative claim violated 12 U.S.C. § 1821(f). Am. Compl. ¶¶ 155–68. SVBFG expressly "asserts this claim in the alternative," in case the Court rejects its position that "section 1821(f) is not applicable." *Id.* ¶ 156.

"The plain text of § 1821(f) is clear that it provides a remedy for claims 'relating to any insured deposit or any determination of insurance coverage with respect to any deposit.'" MTD Order at 11 (quoting 12 U.S.C. § 1821(f)(3)). In resolving FDIC-C's prior motion to dismiss, this Court held that § 1821(f) does not apply to SVBFG's claims because (1) "[t]he parties agree that SVBFG's claims are not claims 'relating to any insured deposit,'" and (2) "SVBFG's claims are not claims for 'insurance coverage.'" MTD Order at 11–12; *see also* Am. Compl. ¶¶ 20, 129 (alleging that SVBFG is suing only for uninsured funds not subject to § 1821(f)).

FDIC-C disagrees with that ruling, but acknowledges it is law of the case in this Court. In light of that ruling, SVBFG's claim under § 1821(f) must be dismissed. Because the Court has concluded that SVBFG is not seeking insured deposits or insurance coverage within the meaning of § 1821(f), it necessarily follows that SVBFG lacks a viable claim under § 1821(f).

**E.    The claim for a declaratory judgment (Count I) should be dismissed.**

As the Court previously recognized, a "declaratory judgment is not an independent cause of action, but an equitable remedy." MTD Order at 34 (collecting cases). Here, "[t]he parties agree that

SVBFG's request for declaratory relief is tied to its other claims for relief and thus will rise or fall with the plausibility of those claims." *Id.* For the reasons explained above, all of SVBFG's other claims should be dismissed, and thus SVBFG's claim for declaratory relief falls with them. *Id.*

## II.     Any dismissal of SVBFG's claims should be with prejudice.

The Court should dismiss the complaint in its entirety with prejudice. The Court gave SVBFG an opportunity to amend, and SVBFG's effort fell short. "Because Plaintiff failed to cure this deficiency in [its] amended complaint," the Court should "find[] that further amendment would be futile." *Windom v. Brady*, 2019 WL 3367544, at *1 (N.D. Cal. June 27, 2019) (Freeman, J.). Additionally, as explained in each of the respective sections above, there are no facts that SVBFG could plausibly allege to cure the legal and factual defects in its claims. *See* Sections I.A (turnover), I.B (due process), I.C (promissory estoppel), I.D (§ 1821(f)), and I.E (declaratory judgment), above. Any dismissal of SVBFG's claims should therefore be with prejudice.

### Conclusion

The Court should dismiss the entire Amended Complaint with prejudice.

| | |
|---|---|
| 1 | Dated: September 19, 2024 |
| 2 | **OF COUNSEL:** |

Dated: September 19, 2024                    Respectfully submitted,

**OF COUNSEL:**                              /s/ Jonathan G. Cooper

Andrew J. Dober (CA Bar No. 229657)          Emily Kapur (CA Bar No. 306724)
Senior Counsel                               **QUINN EMANUEL URQUHART**
adober@fdic.gov                              **& SULLIVAN, LLP**
Telephone: (703) 562-2545                    555 Twin Dolphin Dr., 5th Floor
Erik Bond, Counsel                           Redwood Shores, CA 94065
erbond@fdic.gov                              Telephone: (650) 801-5000
Telephone: (703) 562-6461                    Facsimile: (650) 801-5100
Jason Benton, Senior Attorney                Email: emilykapur@quinnemanuel.com
jabenton@fdic.gov
Telephone: (703) 501-6256                    Eric C. Lyttle (admitted *pro hac vice*)
                                             Jonathan G. Cooper (admitted *pro hac vice*)
Federal Deposit Insurance Corporation        **QUINN EMANUEL URQUHART**
Legal Division                               **& SULLIVAN, LLP**
3501 Fairfax Drive                           1300 I Street NW, Suite 900
Arlington, VA 22226                          Washington, DC 20005
                                             Telephone: (202) 538-8000
                                             Facsimile: (650) 538-8100
                                             Email: ericlyttle@quinnemanuel.com
                                             Email: jonathancooper@quinnemanuel.com

                                             Benjamin I. Finestone (admitted *pro hac vice*)
                                             **QUINN EMANUEL URQUHART**
                                             **& SULLIVAN, LLP**
                                             51 Madison Avenue, 22nd Floor
                                             New York, NY 10010
                                             Telephone: (212) 849-7000
                                             Facsimile: (212) 849-7100
                                             Email: benjaminfinestone@quinnemanuel.com

                                             *Counsel to the*
                                             *Federal Deposit Insurance Corporation*
                                             *(in its corporate capacity)*