Emily Kapur (CA Bar No. 306724)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: emilykapur@quinnemanuel.com

Benjamin I. Finestone (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Email: benjaminfinestone@quinnemanuel.com

*Counsel to the Federal Deposit Insurance Corporation (in its corporate capacity)*

Eric C. Lyttle (admitted *pro hac vice*)
Jonathan G. Cooper (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (650) 538-8100
Email: ericlyttle@quinnemanuel.com
Email: jonathancooper@quinnemanuel.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>Defendant. | CASE NO. 5:23-cv-06543-BLF<br><br>**FDIC-C'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Judge: Hon. Beth Labson Freeman<br>Action Filed: December 19, 2023<br><br>Hearing Date: January 30, 2025<br>Time: 9:00am<br>Courtroom: 3 – 5th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Contents

Introduction .................................................................................................................1

Request for Judicial Notice ..........................................................................................1

Argument .......................................................................................................................3

I.      The Court should dismiss SVBFG's Amended Complaint for failure to state a claim. .........3

    A.      The turnover claim (Count II) remains not plausible. .................................................3

        1.      SVBFG still fails to allege that FDIC-C has SVBFG's deposit liabilities. ....3

        2.      SVBFG's control allegations should be disregarded as a matter of law. .......4

        3.      SVBFG's control allegations should be disregarded as a matter of fact. .......7

    B.      The due process claim (Count IV) is also still not plausible. ...................................9

        1.      SVBFG still fails to allege that FDIC-C deprived SVBFG of property. .........9

        2.      SVBFG lacks a cause of action. ..................................................................9

    C.      The promissory estoppel claim (Count VII) is not adequately alleged. ...................11

        1.      FDIC-C's arguments are timely and not a request for reconsideration. .......11

        2.      Affirmative misconduct is an essential element. ..........................................12

        3.      SVBFG fails to adequately allege affirmative misconduct. .........................14

    D.      The § 1821(f) claim (Count VI) is not viable in light of the MTD Order. ...............15

    E.      The claim for a declaratory judgment (Count I) should be dismissed. ...................15

II.     Dismissal of SVBFG's claims should be with prejudice. .................................................15

Conclusion ..................................................................................................................15

# Table of Authorities

## <u>Cases</u>

*Advance Am. v. FDIC*,
257 F. Supp. 3d 56 (D.D.C. 2017) ......................................................................... 10

*In re Al Muehlberger Concrete Constr., Inc.*,
319 B.R. 663 (Bankr. D. Kan. Jan. 30, 2005) ........................................................... 3

*In re Apple iPhone Antitrust Litig.*,
846 F.3d 313 (9th Cir. 2017) ................................................................................... 12

*In re Arcapita Bank B.S.C.(c)*,
628 B.R. 414 (Bankr. S.D.N.Y. 2021) ....................................................................... 4

*Ascom Hasler Mailing Systems, Inc. v. U.S. Postal Serv.*,
885 F. Supp. 2d 156 (D.D.C. 2012) ......................................................................... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 6

*Beulah v. Broomfield*,
2024 WL 1607495 (N.D. Cal. Apr. 11, 2024) ........................................................... 2

*Bowers v. Christian Record Servs.*,
2012 WL 1865712 (C.D. Cal. May 21, 2012) ........................................................... 8

*In re Brown*
2018 WL 2308267 (B.A.P. 9th Cir. May 21, 2018) ................................................... 3

*Bullion Servs., Inc. v. Valley State Bank*,
50 F.3d 705 (9th Cir. 1995) ........................................................................... 1, 4, 5, 6

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ................................................................................... 15

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. FDIC*,
132 F. Supp. 3d 98 (D.D.C. 2015) ........................................................................... 10

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ..................................................................................... 2

*In re Denby-Peterson*,
941 F.3d 115 (3d Cir. 2019) ....................................................................................... 4

*Desoto Cab. Co. v. Uber Techs.*,
2020 WL 10575294 (N.D. Cal. Mar. 25, 2020) .................................................. 11, 12

*Dickow v. United States*,
654 F.3d 144 (1st Cir. 2011) ................................................................................... 14

*Doe v. United States*,
853 F.3d 792 (5th Cir. 2017) ................................................................................... 11

*Eagle Tr. Fund v. U.S. Postal Serv.*,
   365 F. Supp. 3d 57 (D.D.C. 2019) ................................................................. 10, 11

*Egbert v. Boule*,
   596 U.S. 482 (2022) ............................................................................................. 10

*Elmco Props., Inc. v. Second Nat'l Fed. Savs. Ass'n*,
   94 F.3d 914 (4th Cir. 1996) ................................................................................. 10

*FDIC v. Meyer*,
   510 U.S. 471 (1994) .......................................................................................... 9, 11

*FDIC v. Nichols*,
   885 F.2d 633 (9th Cir. 1989) ............................................................................... 4, 5

*Federal Express Corp. v. U.S. Dep't of Commerce*,
   39 F.4th 756 (D.C. Cir. 2022) ................................................................................. 6

*Foskaris v. Experian Info. Sols., Inc.*,
   808 F. App'x 436 (9th Cir. 2020) ......................................................................... 15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) .......................................................................................... 9, 10

*Harper v. Blumenthal*,
   478 F. Supp. 176 (D.D.C. 1979) .......................................................................... 11

*Hartford Cas. Ins. Co. v. FDIC*,
   21 F.3d 696 (5th Cir. 1994) .......................................................................... 1, 4, 5

*Heckler v. Community Health Services of Crawford County, Inc.*,
   467 U.S. 51 (1984) ............................................................................................... 13

*Hernandez v. DTI GmbH*,
   2024 WL 3939569 (N.D. Cal. Aug. 26, 2024) ....................................................... 8

*Herskowitz v. Apple, Inc.*,
   301 F.R.D. 460 (N.D. Cal. 2014) ......................................................................... 10

*Hindes v. FDIC*,
   137 F.3d 148 (3d Cir. 1998) .............................................................................. 9, 10

*Jablon v. United States*,
   657 F.2d 1064 (9th Cir. 1981) .......................................................................... 12, 13

*Keates v. Koile*,
   883 F.3d 1228 (9th Cir. 2018) ................................................................................ 6

*Koroma v. Richmond Redevelopment & Hous. Auth.*,
   2010 WL 1704745 (E.D. Va. Apr. 27, 2010) ....................................................... 12

*Lazy Y Ranch v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ............................................................................ 7, 8

*Leung v. FDIC*,
    2024 WL 3588015 (N.D. Cal. July 29, 2024) ................................................................. 2

*Mahalaxmi Amba Jewelers v. Johnson*,
    2015 WL 5252542 (D. Kan. Sept. 8, 2015) ................................................................. 12

*Norris v. Honeywell Int'l, Inc.*,
    2023 WL 6256183 (M.D. Fla. Sept. 26, 2023) ............................................................. 8

*Pageland 29 Limited Partnership v. FDIC*,
    1992 WL 391377 (D.D.C. Dec. 14, 1992) ................................................................... 5

*Papasan v. Allain*,
    478 U.S. 265 (1986) ....................................................................................................... 6

*Patriot Square Assocs. v. FDIC*,
    1992 WL 12957147 (D.D.C. Sept. 25, 1992) .............................................................. 5

*Penny v. Giuffrida*,
    897 F.2d 1543 (10th Cir. 1990) ................................................................................. 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ...................................................................................... 2

*In re Rosales*,
    621 B.R. 903 (Bankr. D. Kan. 2020) ......................................................................... 6

*Sanchez-Martinez v. Freitas*,
    2024 WL 4309277 (N.D. Cal. Sept. 26, 2024) ........................................................... 3

*Santoni v. FDIC*,
    677 F.2d 174 (1st Cir. 1982) ..................................................................................... 14

*In re Sarp*,
    2011 WL 1454072 (B.A.P. 9th Cir. Mar. 28, 2011) ................................................. 6

*In re Segovia*,
    2008 WL 8462967 (B.A.P. 9th Cir. Oct. 22, 2008) ................................................... 3

*Shapiro v. Henson*,
    739 F.3d 1198 (9th Cir. 2014) .................................................................................... 4

*Stagen v. FDIC*,
    152 F.3d 929, 1998 WL 385453 (9th Cir. 1998) ..................................................... 13

*Thompson v. Gen. Motors Acceptance Corp., LLC*,
    566 F.3d 699 (7th Cir. 2009) ...................................................................................... 4

*Thompson v. JPMorgan Chase Bank, N.A.*,
    2017 WL 897440 (N.D. Cal. Mar. 7, 2017) ............................................................... 2

*Tremblay v. OpenAI, Inc.*,
    --- F. Supp. 3d ---, 2024 WL 3640501 (N.D. Cal. July 30, 2024) ............................ 12

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ................................................................. 11

*In re U.S.A. Diversified Products, Inc.*,
    196 B.R. 801 (N.D. Ind. 1996), *aff'd*, 100 F.3d 53 (7th Cir. 1996) ............ 4

*United States v. Alisal Water Corp.*,
    114 F. Supp. 2d 927 (N.D. Cal. 2000) ...................................................... 14

*United States v. Mraz*,
    274 F. Supp. 2d 750 (D. Md. 2003) ......................................................... 12

*Valerio v. Crawford*,
    306 F.3d 742 (9th Cir. 2002) ................................................................... 11

*Vickars-Henry Corp. v. Board of Governors of Federal Reserve System*,
    629 F.2d 629 (9th Cir. 1980) ................................................................... 13

*In re Washington Bancorporation*,
    1996 WL 148533 (D.D.C. Mar. 19, 1996) ......................................... 1, 4, 5

*Watkins v. U.S. Army*,
    875 F.2d 699, 708 (9th Cir. 1989) ........................................................... 14

*Ybarra v. John Bean Techs. Corp.*,
    2011 WL 1596121 (E.D. Cal. Apr. 27, 2011) ............................................ 8

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................................. 10

*In re Zwanziger*,
    741 F.3d 74 (10th Cir. 2014) ................................................................... 11

### Statutes

11 U.S.C. § 542(b) ......................................................................... 3, 4, 6, 9

12 U.S.C. § 1821(a) ................................................................................. 5

12 U.S.C. § 1821(d)–(e) ........................................................................... 5

12 U.S.C. § 1821(d)(2)(F) ........................................................................ 9

12 U.S.C. § 1821(d)(2)(G)(i)(II) ........................................................... 5, 6

12 U.S.C. § 1821(f)(4) ............................................................................ 15

12 U.S.C. § 1821(n)(3)(A)(i), (ii) ......................................................... 5, 9

42 U.S.C. § 1983 ................................................................................... 10

### Other Authorities

U.S. Const. amend. V ............................................................................. 11

FED. R. CIV. P. 9(b) .................................................................................................... 14

FED. R. CIV. P. 12(c) ................................................................................................... 12

FED. R. CIV. P. 12(g)(2) .............................................................................................. 12

**Introduction**

The opposition brief of SVB Financial Group (**SVBFG**) does nothing to alter the uncontestable fact that it is the FDIC as Receiver for Silicon Valley Bank (**FDIC-R1**)—not FDIC Corporate (**FDIC-C**)—that is responsible for SVBFG losing access to its deposit accounts and that has possession, custody, and control over SVBFG's deposit liabilities.

SVBFG pleads in its amended complaint that it was "FDIC-R1" that "directed Bridge Bank to assign SVBFG's deposit accounts and all associated assets and liabilities to the FDIC-R1, and Bridge Bank complied with the FDIC-R1's instruction." Dkt. 92 (**Am. Compl.**) ¶ 75. And SVBFG acknowledges in its opposition brief that, as a matter of law, "FDIC-C could not legally enforce any attempts to direct FDIC-R1's actions." ECF No. 100 (**Opp.**) at 10 (emphasis omitted).

These admissions, as well as additional ones discussed below, align with the governing case law, which establishes that FDIC-C and FDIC-R1 are entirely separate entities, *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995), and that they may not be held liable for one another's conduct, *Hartford Cas. Ins. Co. v. FDIC*, 21 F.3d 696, 706 (5th Cir. 1994). That is why courts have repeatedly held that allegations that FDIC-C controls FDIC-R have no legal effect. *E.g.*, *In re Washington Bancorporation*, 1996 WL 148533, at *14 (D.D.C. Mar. 19, 1996).

In short, as this Court previously held, SVBFG's claims should be dismissed because SVBFG has not "adequately alleged that the FDIC-C, as opposed to the FDIC-R1, was responsible for SVBFG's injury." ECF No. 85 (**MTD Order**) at 24.

To be clear, this does not mean that SVBFG does not have a claim for an unpaid deposit liability. But that claim is against FDIC-R1 and, notably, is subject to setoff. This lawsuit is a transparent attempt to avoid those setoff rights. This Court should not allow SVBFG—a bank holding company that was supposed to serve as a source of strength to a bank whose failure was one of the costliest in U.S. history—to pursue invalid claims merely because it wishes to avoid setoff.

**Request for Judicial Notice**

FDIC-C has requested judicial notice of (1) the Transfer Agreement between FDIC-R1 and Bridge Bank, ECF No. 99-3 (**Transfer Agreement**); (2) the Call Notice and Call Assignment between FDIC-R1 and Bridge Bank, ECF No. 99-4 (**Call Notice & Assignment**); and (3) an FDIC

employee webpage, ECF No. 99-5. *See* ECF No. 99 (**MTD**) at 3–4. SVBFG does not object to judicial notice of the Transfer Agreement, and this Court has previously taken notice of it. *See Leung v. FDIC*, 2024 WL 3588015, at *3 (N.D. Cal. July 29, 2024) (Freeman, J.).

As for the Call Notice & Assignment, SVBFG argues that the document was "only recently" filed on "a public court docket," and this Court should "decline to notice the document to prove" that "SVBFG's accounts were, in fact, transferred from Bridge Bank to FDIC-R1." Opp. 2–3. Yet SVBFG itself has pleaded that its accounts were transferred from Bridge Bank to FDIC-R1: It alleges that "the FDIC-R1 . . . directed Bridge Bank to assign SVBFG's deposit accounts and all associated assets and liabilities to the FDIC-R1, and Bridge Bank complied with the FDIC-R1's instruction." Am. Compl. ¶ 75. The Call Notice & Assignment are "FDIC-R1's instruction" to Bridge Bank referenced in paragraph 75, so the document is relied on by, and incorporated into, SVBFG's Amended Complaint, which by itself supports judicial notice. *See Leung*, 2024 WL 3588015, at *4. Moreover, the only fact in the Call Notice & Assignment that FDIC-C relies on beyond what is in the Amended Complaint is the date that FDIC-R1 called SVBFG's accounts back from Bridge Bank: March 15, 2023. *See* MTD 5, 9, 12–13, 14, 23. SVBFG does not contest the authenticity of the Call Notice & Assignment or dispute that date, which is in a government record and public court filing. This Court "may take judicial notice of court filings and other matters of public record," *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), including uncontested dates, *see Beulah v. Broomfield*, 2024 WL 1607495, at *2 (N.D. Cal. Apr. 11, 2024) (Freeman, J.) (taking judicial notice of court filings evincing the date of an individual's death).

SVBFG also argues that the Court should not take notice of the FDIC employee webpage for "any fact concerning the roles or responsibilities of FDIC employees." Opp. 3. FDIC-C pointed to this webpage to provide the full job titles of two FDIC employees—Mr. Stark and Ms. Cast— because SVBFG misleadingly omitted the portions of their titles stating that they work on "receivership" issues. *See* MTD 13. SVBFG does not dispute the authenticity or accuracy of the FDIC employee webpage. Courts routinely take judicial notice of the undisputed contents of government websites. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010); *Thompson v. JPMorgan Chase Bank, N.A.*, 2017 WL 897440, at *2 (N.D. Cal. Mar. 7, 2017)

(Freeman, J.). SVBFG points to *Sanchez-Martinez v. Freitas*, 2024 WL 4309277, at *4 (N.D. Cal. Sept. 26, 2024), but there the court *did* take judicial notice of the *contents* of a government webpage; it denied notice only as to whether the plaintiff in that case had *notice* of the webpage because that issue was disputed. There is no similar dispute here over the titles of these FDIC employees.

Argument

**I.    The Court should dismiss SVBFG's Amended Complaint for failure to state a claim.**

**A.    The turnover claim (Count II) remains not plausible.**

**1.    SVBFG still fails to allege that FDIC-C has SVBFG's deposit liabilities.**

SVBFG argues that, to pursue its turnover claim under 11 U.S.C. § 542(b), FDIC-C need not have assumed SVBFG's deposit liabilities so long as FDIC-C has "possession, custody, or control" of them. Opp. 5. SVBFG does not dispute that FDIC-C lacks possession or custody of the liabilities; instead, it argues that, *in the past*, FDIC-C "exercised . . . control" over the liabilities. Opp. 6–7.

Even assuming, for the moment, that SVBFG has adequately alleged past control (and the sections below explain why it has not), that would not be enough. The text of § 542(b) authorizes a claim only when a defendant "*owes* a debt"—present tense—not when it *owed* a debt in the past. 11 U.S.C. § 542(b) (emphasis added); *see also In re Al Muehlberger Concrete Constr., Inc.*, 319 B.R. 663, 667 (Bankr. D. Kan. Jan. 30, 2005) (rejecting turnover claim under § 542(b) where defendant "no longer owes a debt"). As this Court previously held, "[t]o prevail on a claim for turnover [under § 542(b)], a plaintiff must demonstrate," among other things, that "the property *is*"—not *was*—"in the possession, custody or control of another entity." MTD Order at 19 (citation omitted; emphasis added); *id.* at 22 ("The problem with SVBFG's Complaint is that it fails to adequately allege that SVBFG's deposit liabilities *are* in the possession, custody, or control of the FDIC-C, as opposed to the FDIC-R1.") (emphasis added). SVBFG's claim fails because SVBFG does not (and cannot) allege that FDIC-C has assumed or otherwise currently has sufficient control of SVBFG's deposit liabilities to "owe" SVBFG a debt under § 542(b). *See* MTD 7–10.

SVBFG cites various cases to support its "control" argument, but each is inapposite. Opp. 5–6. Some do not even involve a turnover claim. *See In re Brown* 2018 WL 2308267, at *5 (B.A.P. 9th Cir. May 21, 2018); *In re Segovia*, 2008 WL 8462967, at *6 (B.A.P. 9th Cir. Oct. 22, 2008).

1  Others involve a turnover claim where the defendant had *current possession* of the property at issue

2  or *currently owed* the liability at issue. *See In re Denby-Peterson*, 941 F.3d 115, 119–20 (3d Cir.

3  2019) (defendant had current possession of debtor's car); *Thompson v. Gen. Motors Acceptance*

4  *Corp., LLC*, 566 F.3d 699, 702 (7th Cir. 2009) (same); *In re Arcapita Bank B.S.C.(c)*, 628 B.R. 414,

5  478 (Bankr. S.D.N.Y. 2021) (defendant currently owed contractual liability). The only other case

6  SVBFG cites concluded that a defendant law firm *lacked* control over client funds (although it did

7  have possession or custody of them). *In re U.S.A. Diversified Products, Inc.*, 196 B.R. 801, 809

8  (N.D. Ind. 1996), *aff'd*, 100 F.3d 53 (7th Cir. 1996).

9      Moreover, the turnover claims in *Denby-Peterson*, *Thompson*, and *Diversified Products* were

10  brought under § 542(a), whereas SVBFG's claim is under § 542(b). *See* Opp. 5–6. That matters

11  because § 542(a) authorizes turnover if the defendant had possession, custody, or control "during

12  the case"—*i.e.*, during the bankruptcy case—even if it no longer does when the turnover claim is

13  filed. *Shapiro v. Henson*, 739 F.3d 1198, 1204 (9th Cir. 2014). Section 542(b), by contrast, does not

14  have the "during the case" language; instead, it requires that the defendant currently "owes a debt."

15      Because SVBFG still fails to plausibly allege that its deposit liabilities are in the possession,

16  custody or control of FDIC-C (rather than FDIC-R1) sufficient for FDIC-C to owe SVBFG a debt

17  under § 542(b), the Court should once again dismiss this claim.

18      **2.    SVBFG's control allegations should be disregarded as a matter of law.**

19      In any event, SVBFG's control allegations fail as a matter of law. SVBFG acknowledges

20  that "FDIC-C could not legally enforce any *attempts* to direct FDIC-R1's actions." Opp. 10. That

21  aligns with the Ninth Circuit's determinations that "the FDIC is empowered to act in two entirely

22  separate and distinct capacities," *FDIC v. Nichols*, 885 F.2d 633, 636 (9th Cir. 1989) (citation

23  omitted), and that "[b]ecause FDIC Corporate and FDIC Receiver perform two different functions

24  and protect wholly different interests, courts have been careful to keep the rights and liabilities of

25  these two entities legally separate," *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th

26  Cir. 1995). Many cases hold that "FDIC-C may not be held liable for acts committed by the FDIC-

27  R," *Hartford Cas. Ins. Co. v. FDIC*, 21 F.3d 696, 706 (5th Cir. 1994); *see also* MTD 10–11

28  (collecting cases), and that allegations that FDIC-C directed FDIC-R's actions "have no legal

effect," *In re Washington Bancorporation*, 1996 WL 148533, at *14 (D.D.C. Mar. 19, 1996) (citing *Pageland 29 Limited Partnership v. FDIC*, 1992 WL 391377 at *3 (D.D.C. Dec. 14, 1992)); *accord Patriot Square Assocs. v. FDIC*, 1992 WL 12957147, at *2 (D.D.C. Sept. 25, 1992).

SVBFG nonetheless argues that the Court should credit its allegations that FDIC-C "*actually directed*" FDIC-R1. Opp. 10. But that is incompatible with the caselaw cited above. SVBFG offers no response to *Nichols*, *Bullion*, and *Hartford*—its opposition brief simply ignores these and similar cases cited in FDIC-C's opening brief. Nor does SVBFG cite a single case holding FDIC-C liable for FDIC-R's conduct or crediting an allegation that FDIC-C controlled FDIC-R's actions. Simply put, caselaw is squarely against SVBFG's theory.

SVBFG does try to distinguish *Washington Bancorporation*, *Pageland*, and *Patriot Square* on their facts, but its efforts are unavailing. Opp. 10–11. SVBFG has no answer to the determinations in these cases that "even if FDIC-C had attempted to direct the actions of FDIC-R, these attempts would have no legal effect." *Washington Bancorporation*, 1996 WL 148533, at *14 (discussing *Pageland*, 1992 WL 391377, at *3); *accord Patriot Square*, 1992 WL 12957147, at *2 (holding that "it would have no legal effect" if FDIC-C attempted to dictate a decision for FDIC-R).

Just like in *Patriot Square*, FDIC-C's alleged direction to FDIC-R1 to block SVBFG's accounts is a "legally insignificant action and, as such, does not serve as a basis for a legal claim." 1992 WL 12957147, at *2. FDIC-C "simply has no authority" to control deposit liabilities, as the "role of FDIC-Corporate . . . is to insure bank deposits," *id.* (citing 12 U.S.C. § 1821(a)), "while FDIC-Receiver is charged with managing the assets and liabilities of failed institutions," *id.* (citing 12 U.S.C. § 1821(d)–(e)). Specifically, the governing statute empowers FDIC-R—not FDIC-C—to "transfer any . . . liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II); *see also* 12 U.S.C. § 1821(n)(3)(A)(i), (ii) (empowering FDIC "as receiver" to transfer liabilities of a failed bank to a bridge bank). Likewise, the Transfer Agreement empowers FDIC-R—not FDIC-C—to place holds on or to call back any accounts transferred to Bridge Bank. *See* Transfer Agreement § 2.04 (bestowing on "the Receiver" the "right to request that the Bridge Bank assign to the Receiver . . .

1    any Assumed Liability"); *id.* § 4.06 (empowering "the Receiver" to "direct the Bridge Bank to

2    withhold payment of all or any portion of any Assumed Deposit balance").

3        Confusingly, SVBFG cites *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756,

4    763 (D.C. Cir. 2022). Opp. 11. That case concerned an *ultra vires* claim, and SVBFG has not pleaded

5    an *ultra vires* claim. *See generally* Am. Compl. Even if it had, the claim would fail for many reasons,

6    not the least of which is that an *ultra vires* claim requires an alleged violation of "a specific and

7    unambiguous statutory directive" for which "there is no alternative procedure for review." *Fed.*

8    *Express*, 39 F.4th at 763–64 (citations omitted). SVBFG has not alleged such a statutory violation.

9        The other cases SVBFG cites are equally inapposite. *In re Rosales* permitted a turnover claim

10   under § 542(a) because both defendants indisputably had possession of the property at issue "at

11   some point during the case." 621 B.R. 903, 920–21 (Bankr. D. Kan. 2020). The case says nothing

12   about § 542(b), which is the turnover provision at issue in this case, *see* Opp. 5–6, or about whether

13   it is proper to hold FDIC-C liable for FDIC-R actions or to credit allegations that FDIC-C controlled

14   FDIC-R's actions. *In re Sarp* likewise says nothing about § 542(b) or the interplay between FDIC-

15   C and FDIC-R. 2011 WL 1454072 (B.A.P. 9th Cir. Mar. 28, 2011).

16       Because, as a matter of law, FDIC-C and FDIC-R1 are entirely separate, *see Bullion*, 50 F.3d

17   at 709; because, as a matter of law, FDIC-R alone is empowered to transfer deposit liabilities to and

18   from Bridge Bank and instruct Bridge Bank to place holds on those accounts, *see* 12 U.S.C.

19   § 1821(d)(2)(G)(i)(II); Transfer Agreement §§ 2.04, 4.06; and because, as a matter of law, FDIC-C

20   cannot enforce "*attempts* to direct FDIC-R1's actions," Opp. 10; it necessarily follows that the Court

21   should, as a matter of law, disregard SVBFG's allegations that FDIC-C controlled FDIC-R1's

22   actions with respect to SVBFG's deposit liabilities at Bridge Bank. Such allegations are legal

23   conclusions masquerading as factual allegations. Crediting them would eviscerate the Ninth

24   Circuit's directives to keep FDIC-C and FDIC-R1 entirely separate and distinct, as well as the ample

25   caselaw rejecting arguments that FDIC-C can be held liable for the actions of FDIC-R. It is firmly

26   established that "a legal conclusion couched as a factual allegation" is not presumed true and should

27   be disregarded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *accord, e.g.*, *Papasan*

28   *v. Allain*, 478 U.S. 265, 286 (1986); *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018).

**3.    SVBFG's control allegations should be disregarded as a matter of fact.**

The Court should also disregard the control allegations as a matter of fact. SVBFG does not dispute that, by March 15, 2023, FDIC-R1 had both (1) directed Bridge Bank to place holds on SVBFG's accounts, *see* Am. Compl. ¶ 79, and (2) executed the notice to recall SVBFG's accounts from Bridge Bank, *see* Call Notice & Assignment. It necessarily follows that FDIC-C could have controlled FDIC-R1's actions only if it had instructed FDIC-R1 on or before March 15.

SVBFG's Amended Complaint alleges a single email thread from that period as containing FDIC-C's purported instructions to FDIC-R1. Am. Compl. ¶ 77. Here is a picture of that thread:

From: Cast, Audra L. <████@FDIC.gov>
Sent: Monday, March 13, 2023 10:25 AM
To: Henkes, Janine D. <████@FDIC.gov>; Kelley, Sharon E. <████@FDIC.gov>
Subject: FW: HC Deposit

FYI

**Audra L. Cast**
DRR Deputy Director
**Federal Deposit Insurance Corporation**
Office:████
Cell:████
fdic.gov

**FDIC**

From: Starke, Richard P. <████@FDIC.gov>
Sent: Monday, March 13, 2023 10:24 AM
To: Cast, Audra L. <████@FDIC.gov>; Tetrick, Ryan P. <████@FDIC.gov>
Subject: HC Deposit

The Fed says the SVB holding company has a deposit at the bridge that we should not release.

ECF No. 99-6 at PDF page 9.

These emails cannot plausibly be read as a command from FDIC-C to FDIC-R1. They are an alert (an "FYI") to FDIC-R1 personnel that the Federal Reserve ("The Fed")—which is the primary regulator of Silicon Valley Bank and SVBFG—believed that SVBFG's deposits should not be released. There is no direction or instruction from FDIC-C to FDIC-R1 as to what action to take.

SVBFG argues that whether these emails contain a "direction" from FDIC-C is a "factual dispute." Opp. 9. It is not. This Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch v.*

1    *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *accord, e.g.*, *Hernandez v. DTI GmbH*, 2024 WL

2    3939569, at *1 n.1 (N.D. Cal. Aug. 26, 2024). SVBFG does not even *mention* the Federal Reserve

3    in its Amended Complaint or its opposition brief, let alone explain how these emails that only convey

4    a message from the Federal Reserve could plausibly be read as a command from FDIC-C.

5        Separately, SVBFG argues that Mr. Starke and Ms. Cast sent these emails for FDIC-C rather

6    than FDIC-R1. Opp. 8. Even if that were true, that still would not transmogrify this message from

7    the Federal Reserve into a direction from FDIC-C. But the premise is not true. The Transfer

8    Agreement makes clear that Mr. Starke was acting for FDIC-R1. *See* Transfer Agreement § 9.05

9    (listing Mr. Starke as one of two FDIC-R1 individuals to contact). And the FDIC employee webpage

10   confirms that both Mr. Starke and Ms. Cast work on receivership issues. *See* ECF No. 99-5.

11       In response, SVBFG points to its conclusory allegations that label Mr. Starke and Ms. Cast

12   as acting for FDIC-C. *See* Opp. 8–9; *e.g.*, Am. Compl. ¶ 81 (alleging "Ms. Cast (FDIC-C)"). No

13   well-pleaded facts support those legal conclusions, which should be disregarded as contrary to the

14   documents subject to judicial noticed discussed above. *See, e.g.*, *Bowers v. Christian Record Servs.*,

15   2012 WL 1865712, at *6 (C.D. Cal. May 21, 2012) (disregarding conclusory allegation about

16   individual's employment status); *Ybarra v. John Bean Techs. Corp.*, 2011 WL 1596121, at *3–4

17   (E.D. Cal. Apr. 27, 2011) (same); *Norris v. Honeywell Int'l, Inc.*, 2023 WL 6256183, at *23 (M.D.

18   Fla. Sept. 26, 2023) (collecting cases for the proposition that "conclusory allegations are not

19   sufficient to plausibly allege that defendants are in a joint employment relationship"). Each case

20   SVBFG cites had *well-pleaded* allegations, with factual enhancement, that an individual worked in

21   multiple, separate capacities. Here, SVBFG has alleged only labels without any factual support, and

22   what factual support there is (via judicial notice discussed above), directly contradicts them.

23       SVBFG also argues that "FDIC-C does *not* dispute that Mr. Tetrick . . . was acting on behalf

24   of FDIC-C at all relevant times." Opp. 8. To be clear, FDIC-C *does* dispute that Mr. Tetrick was

25   acting on behalf of FDIC-C at all relevant times. But that is irrelevant to this motion, as there is no

26   allegation that Mr. Tetrick directed FDIC-R1's actions on or before March 15.

27       SVBFG argues that alleged actions by "Mr. Tetrick and others at FDIC-C" *after* March 15

28   are somehow relevant. Opp. 8–9. But none of the actions SVBFG points to—namely, emails on

March 16 and 17, *see* Am. Compl. ¶¶ 80–90—could plausibly allege "that the FDIC-C, as opposed to the FDIC-R1, was responsible for SVBFG's injury." MTD Order at 24. After all, by that time, FDIC-R1 had already acted to place holds on all of SVBFG's accounts and call back to FDIC-R1 all of SVBFG's deposit liabilities that were at Bridge Bank. *See* Am. Compl. ¶¶ 75, 79; Call Notice & Assignment. SVBFG does not (and cannot) allege that, at any point after March 15, FDIC-C ever assumed from FDIC-R1 or otherwise took possession, custody, or control of SVBFG's deposit liabilities sufficient to owe it a debt for purposes of stating a claim under § 542(b).

SVBFG also argues that FDIC-C "exercised control over the Account Funds through its role in operating Bridge Bank." Opp. 7. This argument fails because it was FDIC-R1, not FDIC-C, that had the power to organize the Bridge Bank, transfer deposit liabilities to it, and instruct it to place holds on accounts or transfer the deposit liabilities back to FDIC-R1. *See* 12 U.S.C. § 1821(d)(2)(F) (authorizing FDIC "as receiver" to "organize . . . a bridge depository institution under subsection (n)"); 12 U.S.C. § 1821(n)(3)(A)(i), (ii) (authorizing FDIC "as receiver" to "transfer any assets and liabilities" of a failed bank to a bridge bank); Transfer Agreement §§ 2.04 & 4.06 (authorizing "the Receiver" to call back deposit liabilities and direct Bridge Bank to place holds on deposit accounts).

**B.    The due process claim (Count IV) is also still not plausible.**

**1.    SVBFG still fails to allege that FDIC-C deprived SVBFG of property.**

As explained above in Sections I.A.1–I.A.3, SVBFG has failed to plausibly allege that FDIC-C deprived SVBFG of a protected property interest. *See also* MTD 17–18.

**2.    SVBFG lacks a cause of action.**

SVBFG also lacks a cause of action. To sue a federal agency for an alleged violation of the Fifth Amendment's Due Process Clause, the plaintiff needs a separate cause of action. *FDIC v. Meyer*, 510 U.S. 471, 483–86 (1994); *Hindes v. FDIC*, 137 F.3d 148, 157–59 (3d Cir. 1998).

SVBFG argues that *Meyer* is inapplicable because it involved a due process claim for damages whereas SVBFG seeks injunctive relief. Opp. 13. But SVBFG seeks "injunctive relief prohibiting the FDIC-C from continuing to deny SVBFG access to its Account Funds," Am. Compl. ¶ 154, which is practically indistinguishable from an order that FDIC-C pay SVBFG $1.9 billion. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("Almost invariably

1  . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay

2  a sum of money to the plaintiff are suits for 'money damages.'"); *Herskowitz v. Apple, Inc.*, 301

3  F.R.D. 460, 482 (N.D. Cal. 2014) ("a plaintiff cannot transform a claim for damages into an equitable

4  action by asking for an injunction that orders the payment of money") (cleaned up).

5        SVBFG also misreads *Hindes*, in which the Third Circuit dismissed for lack of a cause of

6  action a due process claim seeking declaratory and injunctive relief against FDIC-C. SVBFG argues

7  that *Hindes* did not address "the need for a separate substantive cause of action for injunctive relief

8  against the FDIC." Opp. 14. That is wrong. In *Hindes*, FDIC-C sought dismissal because the plaintiff

9  failed to identify "a substantive cause of action." 137 F.3d at 157. The Third Circuit responded that

10 it would construe the complaint liberally "to do substantial justice," and so it read the complaint as

11 alleging a due process claim under 42 U.S.C. § 1983, as that was the only statutory cause of action

12 it could conceive of as potentially applicable. *Id.* The Third Circuit then went on to affirm dismissal

13 of the due process claim against FDIC-C because as a federal agency it is not "subject to section

14 1983 liability." *Id.* at 157–59. In other words, dismissal hinged on the lack of a cause of action.

15       SVBFG cites several cases that it says authorize due process claims against federal agencies

16 "without pleading a separate cause of action." Opp. 13. Yet the Supreme Court has made clear in

17 recent years that a cause of action is necessary to sue to enforce a constitutional provision, and that

18 nowadays—unlike the 1960s and 1970s—a *statutory* cause of action is ordinarily required. *See*

19 *Egbert v. Boule*, 596 U.S. 482, 490–93 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 130–37 (2017).

20       In any event, none of SVBFG's cited cases support its argument. Most do not even address

21 the cause-of-action issue, presumably because the parties did not raise it. For example, in *Eagle*

22 *Trust Fund v. U.S. Postal Service*, the defendant did *not* seek dismissal for lack of a cause of action.

23 365 F. Supp. 3d 57, 69 (D.D.C. 2019) ("USPS does not seek dismissal of Plaintiffs' due process

24 claim on the same grounds as their other claims."); *see also, e.g.*, *Elmco Props., Inc. v. Second Nat'l*

25 *Fed. Savs. Ass'n*, 94 F.3d 914, 918, 920–22 (4th Cir. 1996) (not addressing due process cause of

26 action); *Advance Am. v. FDIC*, 257 F. Supp. 3d 56, 64 (D.D.C. 2017) (same); *Cmty. Fin. Servs. Ass'n*

27 *of Am., Ltd. v. FDIC*, 132 F. Supp. 3d 98, 121–24 (D.D.C. 2015) (same). One case held that sovereign

28 immunity to sue the United States was waived, but it nonetheless affirmed dismissal of a due process

claim for failure to state a claim. *Doe v. United States*, 853 F.3d 792, 796–803 (5th Cir. 2017). As the Supreme Court made clear in *Meyer*, a waiver of sovereign immunity differs from a cause of action; both are needed to sue a federal agency for a due process violation. 510 U.S. at 483–84.

*Eagle Trust* does quote a 1979 case, *Harper v. Blumenthal*, which opined that "[t]here is no question that a cause of action may be stated under the procedural due process component of the fifth amendment for equitable relief." 478 F. Supp. 176, 187 n.10 (D.D.C. 1979). But *Harper* was a case against a federal *officer*, not a federal *agency*; it did not purport to authorize Fifth Amendment claims against federal agencies without a statutory cause of action. *Id.* As the Supreme Court made clear in *Meyer*, the fact that causes of action may exist to sue federal officers (*e.g.*, under *Bivens*) does not imply that the cause of action extends to federal agencies. 510 U.S. at 484–86.

As a last-ditch effort, SVBFG suggests that the Administrative Procedure Act (**APA**) supplies a cause of action for its due process claim. Opp. 14. But its Amended Complaint does not plead that. *See* Am. Compl. ¶¶ 142–54. More fundamentally, "[t]he problem with relying on the APA . . . is that § 704 limits causes of action under the APA to final agency action." *Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006) (cleaned up). SVBFG does not identify any "final agency action" that is the subject of its due process claim. Indeed, this Court previously dismissed SVBFG's standalone APA claim for failure to allege a final agency action. MTD Order at 30–31. The same deficiency dooms any hybrid APA-due-process claim.

**C.    The promissory estoppel claim (Count VII) is not adequately alleged.**

**1.    FDIC-C's arguments are timely and not a request for reconsideration.**

FDIC-C explained in its opening brief that it could re-raise the issue of whether SVBFG has adequately pleaded a promissory estoppel claim because the Court did not decide that issue on the merits in its MTD Order. *See* MTD 18–19. SVBFG does not address the cases that FDIC-C cites that distinguish between a finding of waiver and decision on the merits. *See Valerio v. Crawford*, 306 F.3d 742, 754 n.4 (9th Cir. 2002) (en banc); *In re Zwanziger*, 741 F.3d 74, 77 (10th Cir. 2014) (collecting cases). Nor does it address the caselaw squarely holding that a defendant may re-raise an argument that a court previously declined to consider because it had been raised for the first time in a reply brief in support of an earlier motion to dismiss. *Desoto Cab. Co. v. Uber Techs.*, 2020 WL

10575294, at *10 (N.D. Cal. Mar. 25, 2020). Instead, SVBFG argues that FDIC-C is seeking "reconsideration." Opp. 16. But FDIC is not seeking reconsideration. There was no merits determination on this issue, so there is nothing to reconsider.

SVBFG also argues that FDIC-C's arguments are barred by Rule 12(g)(2), but as SVBFG admits, FDIC-C did raise the argument in its first motion to dismiss, so Rule 12(g)(2) is inapplicable. *See* Opp. 15–16; *Desoto Cab.*, 2020 WL 10575294, at *10. Even if Rule 12(g)(2) did apply, the Court should exercise its discretion to consider this argument in the interest of judicial efficiency and economy. *See Tremblay v. OpenAI, Inc.*, --- F. Supp. 3d ---, 2024 WL 3640501, at *1 n.4 (N.D. Cal. July 30, 2024) (citing *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–18 (9th Cir. 2017)). SVBFG asserts without any explanation that it will be prejudiced by delay. Opp. 17. But there is no prejudice as it is early in the case and the Court is already considering FDIC-C's second motion to dismiss with respect to SVBFG's other claims. Moreover, a finding of waiver here will force the FDIC-C to file a Rule 12(c) motion, so failing to consider FDIC-C's arguments in this motion will only prejudice the parties and the Court by creating an additional, unnecessary round of briefing.

### 2.    Affirmative misconduct is an essential element.

SVBFG incorrectly asserts that it is not required to plead affirmative misconduct for its promissory estoppel claim. Opp. 18. But the case law is clear. "To prevail on a claim of promissory estoppel against the federal government, one must satisfy the traditional elements of estoppel as well as affirmative misconduct." *Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 WL 1704745, at *12 (E.D. Va. Apr. 27, 2010); *see also, e.g.*, *Mahalaxmi Amba Jewelers v. Johnson*, 2015 WL 5252542, at *5 (D. Kan. Sept. 8, 2015) (rejecting claims of equitable and promissory estoppel due to lack of affirmative misconduct); *United States v. Mraz*, 274 F. Supp. 2d 750, 754 (D. Md. 2003) (dismissing promissory estoppel counterclaim for failing to allege affirmative misconduct); MTD 19 (collecting more cases). SVBFG takes issue with FDIC-C's reliance on cases outside the Ninth Circuit, *see* Opp. 18, but that is because our research has not located any Ninth Circuit case squarely addressing the issue. The closest is *Jablon v. United States*, in which the Ninth Circuit acknowledged that in several cases it had dismissed estoppel claims "where the estoppel in question is arguably 'promissory estoppel' rather than 'equitable estoppel,'" including one for

failure to show "affirmative misconduct." 657 F.2d 1064, 1069 n.7 (9th Cir. 1981) (citing *Vickars-Henry Corp. v. Board of Governors of Federal Reserve System*, 629 F.2d 629 (9th Cir. 1980)). Tellingly, SVBFG does not identify a *single* case—in the Ninth Circuit or elsewhere—that holds that affirmative misconduct is not required to sue the government for promissory estoppel.

Instead, SVBFG argues that "policy concerns" justify treating "affirmative misconduct" as an element of equitable estoppel but not promissory estoppel. Opp. 18. But "policy concerns" do not trump the strong suggestion from the Ninth Circuit in *Jablon* and *Vickars* that affirmative misconduct is an element of a promissory estoppel claim against the federal government, nor do they trump the unbroken line of cases from other courts holding that "affirmative misconduct" is an element. Promissory and equitable estoppel are two sides of the same coin: "promissory estoppel is used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a defense or objection . . . . Promissory estoppel is a sword, and equitable estoppel is a shield." *Jablon*, 657 F.2d at 1068. So the same policy considerations that (as SVBFG concedes) justify "affirmative misconduct" being an element of equitable estoppel equally justify it being an element of promissory estoppel. For example, in *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51 (1984), the Supreme Court addressed a case where the plaintiff sought to estop the Government from recovering overpayments because of alleged misrepresentations. The Court rejected the estoppel argument, emphasizing that "[t]here is simply no requirement that the Government anticipate every problem which may arise in the administration of a complex program." *Id.* at 64. While *Heckler* addresses equitable estoppel, its reasoning applies with equal force to promissory estoppel. Courts should be very hesitant to bind the Government, especially in the administration of complex programs, such as FDIC-C's emergency efforts in a short timeframe to avoid nationwide financial calamity after SVBFG's misconduct caused Silicon Valley Bank to fail.

SVBFG incorrectly relies on *Stagen v. FDIC*, 152 F.3d 929, 1998 WL 385453 (9th Cir. 1998)—an unpublished opinion—for the sweeping proposition that affirmative misconduct is not required because FDIC-C's liability "must be determined in the same fashion as that of a private party." Opp. 19. But *Stagen* did not involve an estoppel claim and did not discuss the element of affirmative misconduct, so it sheds no light on this issue. 1998 WL 385453, at *1–2. SVBFG also

cites two cases that *rejected* promissory estoppel claims against federal agencies. *Santoni v. FDIC*, 677 F.2d 174, 179 (1st Cir. 1982); *Ascom Hasler Mailing Systems, Inc. v. U.S. Postal Serv.*, 885 F. Supp. 2d 156, 190–92 (D.D.C. 2012). Neither *Santoni* nor *Ascom* discuss whether affirmative misconduct is an element because both cases rejected the estoppel claims on other grounds.

### 3.    SVBFG fails to adequately allege affirmative misconduct.

Just as SVBFG fails to plausibly allege that FDIC-C (rather than FDIC-R1) was responsible for SVBFG losing access to its accounts, so it also fails to adequately allege affirmative misconduct. *See* Sections I.A.1–I.A.3, above. Indeed, affirmative misconduct is an even higher bar, as SVBFG must plead it with both plausibility and particularity under Rule 9(b). MTD 20.

The crux of SVBFG's promissory estoppel claim is that FDIC-C's March 12 and 13 press releases stating that all depositors of Silicon Valley Bank would be protected constituted promises that SVBFG relied on to its detriment by not withdrawing its deposits from Bridge Bank. Am. Compl. ¶¶ 171–73. SVBFG concedes that it relied only "on the original statements" from March 12 and 13, and any subsequent statements "occurred after SVBFG's reliance." Opp. 23.

SVBFG points to various allegations that supposedly show affirmative misconduct. Opp. 20. But it identifies nothing in the March 12 and 13 press releases that rises to the level of affirmative misconduct—indeed, it is undisputed that the press releases were true when made. *See* MTD 20–22. All the remaining alleged affirmative misconduct occurred *after* the March 12 and 13 press releases. Alleged misconduct that postdates the plaintiff's reliance cannot satisfy the affirmative misconduct element. *See Penny v. Giuffrida*, 897 F.2d 1543, 1548 (10th Cir. 1990). SVBFG disagrees with *Penny*, but it does not cite a single case to the contrary. Opp. 22–23. The point of the affirmative misconduct requirement is that the party seeking estoppel must have "reasonably relied upon the [Government's] conduct to its detriment." *United States v. Alisal Water Corp.*, 114 F. Supp. 2d 927, 935 (N.D. Cal. 2000); *see also Dickow v. United States*, 654 F.3d 144, 152 (1st Cir. 2011) ("plaintiff must show that he reasonably relied on some affirmative misconduct attributable to the sovereign") (citations omitted). Even in *Watkins v. U.S. Army*, which SVBFG cites to argue that each case must be decided on its own facts, Opp. 23, the defendant continually relied on the alleged governmental misconduct. 875 F.2d 699, 708 (9th Cir. 1989).

1

      **D.**      **The § 1821(f) claim (Count VI) is not viable in light of the MTD Order.**

2

      SVBFG contends for the first time in its opposition brief that Count VI is an APA claim, not

3

an § 1821(f) claim. Opp. 23–24. Its Amended Complaint says otherwise: it invokes APA review only

4

"[p]ursuant to 12 U.S.C. § 1821(f)(4)." Am. Compl. ¶ 157. Section 1821(f)(4), in turn, authorizes

5

judicial review only for a "claim for insurance coverage." This Court held that "SVBFG's claims

6

are not claims for 'insurance coverage,'" MTD Order at 12, so the § 1821(f) claim is not viable.

7

Dismissal is further warranted because SVBFG expressly asserted that it pleaded this claim "in the

8

alternative" in case the Court rejected its view that "section 1821(f) is not applicable." Am. Compl.

9

¶ 156. The Court found § 1821(f) inapplicable, so this claim should be dismissed.

10

      **E.**      **The claim for a declaratory judgment (Count I) should be dismissed.**

11

      As the Court previously recognized, a "declaratory judgment is not an independent cause of

12

action, but an equitable remedy," so "SVBFG's request for declaratory relief is tied to its other

13

claims for relief and thus will rise or fall with the plausibility of those claims." MTD Order at 34

14

(collecting cases). SVBFG argues that declaratory relief "serves a useful purpose and may resolve

15

uncertainty." Opp. 24. It made the same argument in the last round of briefing. ECF No. 55 at 21.

16

But useful or not, a party cannot seek a declaratory judgment in an offensive suit like this one unless

17

it has an independent cause of action. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878–79 (9th Cir.

18

2022). Because all of SVBFG's other claims are not viable, its claim for declaratory relief should

19

be dismissed too. *See* MTD Order at 34.

20

**II.**      **Dismissal of SVBFG's claims should be with prejudice.**

21

      SVBFG's request for leave to amend should be rejected because SVBFG has already had

22

one chance to amend, and it does not explain what it could allege to cure its defective pleadings.

23

Opp. 25. Denial of leave to amend is appropriate where, as here, the plaintiff does not "explain why

24

the amendment would not be futile." *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 439

25

(9th Cir. 2020). Like the plaintiff in *Foskaris*, SVBFG does not explain what it could plead to cure

26

its defective claims, but instead merely notes that "discovery" remains ongoing. *Id.*; Opp. 25.

27

                              **Conclusion**

28

      The Court should dismiss the entire Amended Complaint with prejudice.

1   Dated: October 25, 2024                      Respectfully submitted,

2
    **OF COUNSEL:**                               /s/ Jonathan G. Cooper
3   Andrew J. Dober (CA Bar No. 229657)          Emily Kapur (CA Bar No. 306724)
    Senior Counsel                               **QUINN EMANUEL URQUHART**
4   adober@fdic.gov                              **& SULLIVAN, LLP**
    Telephone: (703) 562-2545                    555 Twin Dolphin Dr., 5th Floor
5   Erik Bond, Counsel                           Redwood Shores, CA 94065
    erbond@fdic.gov                              Telephone: (650) 801-5000
6   Telephone: (703) 562-6461                    Facsimile: (650) 801-5100
    Jason Benton, Senior Attorney                Email: emilykapur@quinnemanuel.com
7   jabenton@fdic.gov
    Telephone: (703) 501-6256                    Eric C. Lyttle (admitted *pro hac vice*)
8                                                Jonathan G. Cooper (admitted *pro hac vice*)
    Federal Deposit Insurance Corporation        **QUINN EMANUEL URQUHART**
9   Legal Division                               **& SULLIVAN, LLP**
    3501 Fairfax Drive                           1300 I Street NW, Suite 900
10  Arlington, VA 22226                          Washington, DC 20005
                                                 Telephone: (202) 538-8000
11                                               Facsimile: (650) 538-8100
                                                 Email: ericlyttle@quinnemanuel.com
12                                               Email: jonathancooper@quinnemanuel.com

13                                               Benjamin I. Finestone (admitted *pro hac vice*)
                                                 **QUINN EMANUEL URQUHART**
14                                               **& SULLIVAN, LLP**
                                                 51 Madison Avenue, 22nd Floor
15                                               New York, NY 10010
                                                 Telephone: (212) 849-7000
16                                               Facsimile: (212) 849-7100
                                                 Email: benjaminfinestone@quinnemanuel.com
17
                                                 *Counsel to the*
18                                               *Federal Deposit Insurance Corporation*
                                                 *(in its corporate capacity)*
19

20

21

22

23

24

25

26

27

28