Robert A. Sacks (SBN 150146)
(sacksr@sullcrom.com)
Adam S. Paris (SBN 190693)
(parisa@sullcrom.com)
Diane L. McGimsey (SBN 234953)
(mcgimseyd@sullcrom.com)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East
Los Angeles, California 90067
Telephone:    (310) 712-6600
Facsimile:    (310) 712-8800
*Attorneys for Plaintiff SVB Financial Group*
[*Additional Counsel Listed on Signature Page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SVB FINANCIAL GROUP,<br><br>                     Plaintiff,<br><br>          v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity,<br><br>                     Defendant. | Case No.: 5:23-cv-06543-BLF<br><br>**PLAINTIFF SVB FINANCIAL GROUP'S OPPOSITION TO DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CORPORATE CAPACITY'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>The Honorable Beth Labson Freeman |

1

**TABLE OF CONTENTS**

2

**Page(s)**

3 INTRODUCTION ........................................................................................................1

4 REQUEST FOR JUDICIAL NOTICE ......................................................................2

5 LEGAL STANDARD.................................................................................................3

6 STATEMENT OF FACTS .........................................................................................3

7     A.    Closure of SVB ................................................................................3

8     B.    Senior FDIC-C Employees Take Action to Deprive SVBFG of Access to Its Account Funds .........................................................................................4

9

    C.    SVBFG Seeks to Recover the Account Funds ..............................................5

10

ARGUMENT ..............................................................................................................5

11

I.    SVBFG States a Plausible Turnover Claim Under 11 U.S.C. § 542. ...................5

12

    A.    SVBFG Has Adequately Alleged FDIC-C's Control over the Account Funds for Purposes of Section 542(b)........................................................6

13

    B.    SVBFG's New Allegations Cannot Be Disregarded. ...............................7

14

    C.    The New Allegations May Not Be Disregarded as a Matter of Law....................10

15

II.    SVBFG Plausibly States a Claim That FDIC-C Violated Its Due Process Rights. ..........12

16

    A.    SVBFG Does Not Need a Separate Cause of Action to Allege a Fifth Amendment Due Process Violation........................................................12

17

    B.    FDIC-C Deprived SVBFG of Its Property Interest Without Due Process.............14

18

III.    FDIC-C May Not Raise Its Forfeited Promissory Estoppel Arguments, Which Are Meritless...........................................................................................................15

19

    A.    FDIC-C Improperly Seeks Reconsideration of the Court's Denial of Its First Motion to Dismiss SVBFG's Promissory Estoppel Claim.....................15

20

    B.    FDIC-C Is Not Entitled to Re-Argue Its Promissory Estoppel Arguments. ..........16

21

    C.    SVBFG's Claim for Promissory Estoppel Does Not Require It to Plead Affirmative Misconduct...........................................................................17

22

    D.    SVBFG Has Adequately Alleged Affirmative Misconduct.......................19

23

IV.    SVBFG Has Adequately Pleaded a Claim for Review of Final Agency Action in the Alternative..................................................................................................23

24

V.    SVBFG's Claim for Declaratory Relief Is Not Subject to Dismissal. ..............24

25

26

27

28

-ii-

VI.     Any Dismissal of SVBFG's Claims Should Be with Leave to Amend. ............................25

CONCLUSION ................................................................................................................................25

SULLIVAN & CROMWELL LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Advance Am.* v. *FDIC*,
   257 F. Supp. 3d 56 (D.D.C. 2017) .................................................................13

5

*Aguilar* v. *Int'l Longshoremen's Union Loc. No. 10*,
   966 F.2d 443 (9th Cir. 1992) ........................................................................17

6

7

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313, 317-19 (9th Cir. 2017) ..........................................................17

8

*Applied Materials, Inc.* v. *Demaray LLC*,
   2022 WL 3139519 (N.D. Cal. Aug. 5, 2022) ...............................................25

9

10

*In re Arcapita Bank B.S.C.(c)*,
   628 B.R. 414 (Bankr. S.D.N.Y. 2021) ...........................................................6

11

*Ascom Hasler Mailing Sys., Inc.* v. *USPS*,
   885 F. Supp. 2d 156 (D.D.C. 2012) .............................................................19

12

13

*Baccei* v. *United States*,
   632 F.3d 1140 (9th Cir. 2011) ...............................................................19, 21

14

*Barnum Timber Co.* v. *EPA*,
   633 F.3d 894 (9th Cir. 2011) ........................................................................14

15

16

*Baum* v. *J-B Weld Co.*,
   2019 WL 6841231 (N.D. Cal. Dec. 16, 2019) ..............................................3

17

*Bivens* v. *Six Unknown Named Agents*,
   403 U.S. 388 (1971) .....................................................................................13

18

19

*In re Brown*,
   2018 WL 2308267 (B.A.P. 9th Cir. May 21, 2018) ......................................6

20

*Byers* v. *City of Richmond*,
   2024 WL 4295232 (E.D. Va. Sept. 25, 2024) ...............................................8

21

22

*Carlin* v. *Dairyamerica, Inc.*,
   2016 WL 1734182 (E.D. Cal. May 2, 2016) .................................................9

23

*CFTC* v. *Monex Credit Co.*,
   931 F.3d 966 (9th Cir. 2019) ........................................................................22

24

25

*Cmty. Fin. Servs. Ass'n of Am., Ltd.* v. *FDIC*,
   132 F. Supp. 3d 98 (D.D.C. 2015) ...............................................................13

26

*Coleman-Edwards* v. *Simpson*,
   330 F. App'x 218 (2d Cir. 2009) ...................................................................9

27

28

-iv-

*In re Denby-Peterson,*
    941 F.3d 115 (3d Cir. 2019)................................................................6

*Doe* v. *United States,*
    853 F.3d 792 (5th Cir. 2017) ............................................................13

*Eagle Tr. Fund* v. *USPS,*
    365 F. Supp. 3d 57 (D.D.C. 2019) ....................................................13

*EEOC* v. *Ganley Mgmt.,*
    2010 WL 11565385 (N.D. Ohio Mar. 25, 2010) ................................8

*Elec. Constr. & Maint. Co.* v. *Maeda Pac. Corp.,*
    764 F.2d 619 (9th Cir. 1985) .............................................................3

*Elmco Props., Inc.* v. *Second Nat'l Fed. Savs. Ass'n,*
    94 F.3d 914 (4th Cir. 1996) .............................................................13

*Eminence Capital, LLC* v. *Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ..........................................................25

*Erickson* v. *Pardus,*
    551 U.S. 89 (2007).............................................................................3

*Fano* v. *O'Neill,*
    806 F.2d 1262 (5th Cir. 1987) ..........................................................20

*FDIC* v. *Meyer,*
    510 U.S. 471 (1994)..........................................................................13

*Fed. Express Corp.* v. *U.S. Dep't of Com.,*
    39 F.4th 756 (D.C. Cir. 2022) ..........................................................11

*Gov't Emps. Ins. Co.* v. *Dizol,*
    133 F.3d 1220 (9th Cir. 1998) ..........................................................24

*Guardiola* v. *Essex Sun Park,*
    2006 WL 8434989 (W.D. Tex. Jan. 26, 2006) ....................................8

*Heckler* v. *Cmty. Health Servs. of Crawford Cnty., Inc.,*
    467 U.S. 51 (1984)............................................................................18

*Hindes* v. *FDIC,*
    137 F.3d 148 (3d Cir. 1998)..............................................................14

*Jablon* v. *United States,*
    657 F.2d 1064 (9th Cir. 1981) ..........................................................19

*James Madison Ltd.* v. *Ludwig,*
    82 F.3d 1085 (D.C. Cir. 1996)....................................................13, 14

*Jones Motor Co., Inc.* v. *Teledyne, Inc.,*
    732 F. Supp. 490 (D. Del. 1990) .......................................................19

*Koroma* v. *Richmond Redevelopment & Hous. Auth.,*
    2010 WL 1704745 (E.D. Va. Apr. 27, 2010) ....................................18

-v-

*Labowitz* v. *Bird Rides, Inc.*,
2020 WL 2334116 (C.D. Cal. Mar. 31, 2020) ................................................16

*Lavin* v. *Marsh*,
644 F.2d 1378 (9th Cir. 1981) ........................................................................22

*Lopez* v. *Smith*,
203 F.3d 1122 (9th Cir. 2000) ........................................................................25

*L.A. Cnty. Bar Ass'n* v. *Eu*,
979 F.2d 697 (9th Cir. 1992) ..........................................................................24

*Mario V.* v. *Armenta*,
2019 WL 8137140 (N.D. Cal. Apr. 17, 2019) ...........................................16, 17

*Martinez* v. *Freitas*,
2024 WL 4309277 (N.D. Cal. Sept. 26, 2024) ................................................3

*Niantic, Inc.* v. *Global++*,
2020 U.S. Dist. LEXIS 250756 (N.D. Cal. Sept. 2, 2020) .............................16

*Northstar Fin. Advisors Inc.* v. *Schwab Invs.*,
135 F. Supp. 3d 1059 (N.D. Cal. 2015) ......................................................16, 17

*Pageland 29 Ltd.* v. *FDIC*,
1992 WL 391377 (D.D.C. Dec. 14, 1992) .......................................................10

*Patriot Square Assocs.* v. *FDIC*,
1992 WL 12957147 (D.D.C. Sept. 25, 1992) ...................................................10

*Penny* v. *Giuffrida*,
897 F.2d 1543 ............................................................................................22, 23

*Perez-Mejia* v. *Holder*,
663 F.3d 403 (9th Cir. 2011) ..........................................................................20

*Petersen* v. *Boeing Co.*,
715 F.3d 276 (9th Cir. 2013) ..........................................................................25

*Purcell* v. *United States*,
1 F.3d 932 (9th Cir. 1993) ..............................................................................20

*Radware, Inc.* v. *U.S. Telepacific Corp.*,
2020 WL 836731 (N.D. Cal. Feb. 20, 2020) ....................................................9

*In re Rosales*,
621 B.R. 903 (Bankr. D. Kan. 2020) ...............................................................11

*Rutherford* v. *Pontchartrain Materials Corp.*,
2024 WL 1966428 (E.D. La. May 3, 2024) .......................................................9

*Santoni* v. *FDIC*,
677 F.2d 174 (1st Cir. 1982) ...........................................................................19

*In re Sarp*,
2011 WL 1454072 (B.A.P. 9th Cir. Mar. 28, 2011) ........................................11

-vi-

*SEC* v. *Phan*,
   500 F.3d 895 (9th Cir. 2007) ................................................................................3

*In re Segovia*,
   2008 WL 8462967 (B.A.P. 9th Cir. Oct. 22, 2008) ..............................................6

*Shroyer* v. *New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ..............................................................................3

*Stagen* v. *FDIC*,
   152 F.3d 929 (9th Cir. 1998) ..............................................................................19

*Steward* v. *Smith*,
   2018 WL 11361754 (W.D. Tex. July 31, 2018) ...................................................9

*Thompson* v. *Gen. Motors Acceptance Corp.*,
   566 F.3d 699 (7th Cir. 2009) ................................................................................6

*In re U.S.A. Diversified Prods., Inc.*,
   196 B.R. 801 (N.D. Ind. 1996) ............................................................................5

*United States* v. *Vantage Tr. Fed. Credit Union*,
   2018 WL 306920 (M.D. Pa. Jan. 5, 2018) ..........................................................19

*Vess* v. *Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................................21

*Villains, Inc.* v. *Am. Econ. Ins. Co.*,
   870 F. Supp. 2d 792 (N.D. Cal. 2012) ...............................................................12

*In re Washington Bancorporation*,
   1996 WL 148533 (D.D.C. Mar. 19, 1996).................................................10, 11

*Watkins* v. *U.S. Army*,
   875 F.2d 699 (9th Cir. 1989) ................................................................. *passim*

**Statutes**

5 U.S.C. § 702.............................................................................................................14

5 U.S.C. § 706(2).........................................................................................................14

11 U.S.C. § 542(b).........................................................................................................5

12 U.S.C. § 1819.........................................................................................................19

12 U.S.C. § 1821(f)(1)...................................................................................................5

**Other Authorities**

Civ. Local R. 7-9(b)....................................................................................................16

Fed. R. Civ. P. 12(b)(6)....................................................................................3, 10, 17

Fed. R. Civ. P. 12(g)(2)...................................................................................13, 16, 17

1

Fed. R. Civ. P. 12(h)(2)..............................................................................................13, 17

Fed. R. Evid. 201 ..............................................................................................................2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SULLIVAN & CROMWELL LLP

Plaintiff SVB Financial Group ("SVBFG") submits this opposition to the Motion to Dismiss the Amended Complaint (ECF No. 99) (the "Motion"), filed by Defendant Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC-C").

## INTRODUCTION

This case arises from FDIC-C's unlawful blocking of SVBFG's access to approximately $1.93 billion of its uninsured deposits (the "Account Funds") at Silicon Valley Bank ("SVB"). SVBFG's Amended Complaint (ECF No. 92) ("AC") now includes specific facts drawn from the (limited) discovery produced by FDIC-C and the Federal Deposit Insurance Corporation, acting as receiver for Silicon Valley Bank ("FDIC-R1"), that support SVBFG's allegations that FDIC-C employees supervised, instructed, and directed FDIC-R1 to block SVBFG's access to the Account Funds, and to take additional steps to ensure that SVBFG could not access its own Account Funds. The Motion fails to set out any sufficient basis for dismissal. FDIC-C chose instead to sidestep the new, well-pleaded facts in the Amended Complaint, and rehash arguments the Court already rejected.

***Turnover Claim Under 11 U.S.C. § 542*** (Count II). FDIC-C argues that it is not liable for FDIC-R1's actions, but it does not dispute that it is responsible for its <u>own</u> conduct. The Amended Complaint alleges with specificity that FDIC-C employees instructed, directed, and supervised FDIC-R1 to prevent SVBFG from accessing its Account Funds beginning on March 15, 2023, because FDIC-C wanted to be "certain" that "this money" was "locked down" and available to "bear loss." (AC ¶ 84.) These new facts, quoting FDIC-C's own words in paragraphs 74-94 of the Amended Complaint, suffice to state a turnover claim under section 542 against FDIC-C.

***Fifth Amendment Due Process Claim*** (Count IV). FDIC-C contends that SVBFG's due process claim should be dismissed either because it constitutes an improper *Bivens* claim seeking damages, or because SVBFG has not identified a "separate cause of action" underlying the due process claim. (Mot. 15-16.) FDIC-C is wrong on both counts. SVBFG's due process claim seeks an <u>injunction</u> prohibiting FDIC-C from continuing its unlawful blocking of SVBFG's access to its Account Funds. There is no requirement to plead a separate cause of action in connection with a due process claim that seeks injunctive relief.

1    ***Promissory Estoppel*** (Count VII).  FDIC-C seeks improper reconsideration of the Court's

2    Order (ECF No. 85.) (the "<u>Order</u>") declining to dismiss this claim.  On the merits, FDIC-C repeats

3    the argument that the Court already rejected—that a claim of promissory estoppel against the FDIC

4    requires a showing of "affirmative misconduct"—for which there is no support in the Ninth

5    Circuit.  But even if "affirmative misconduct" is required, the Amended Complaint pleads it.

6        ***Claim for Review of Final Agency Action Under 5 U.S.C. § 706*** (Count VI).  Relying on

7    the Court's holding that SVBFG's claims are not preempted by 12 U.S.C. § 1821(f), FDIC-C

8    argues the "law of the case" requires dismissal of SVBFG's claim for Administrative Procedure

9    Act ("<u>APA</u>") review of FDIC-C's October 20, 2023 final agency action denying SVBFG's claim

10   for its uninsured deposits.  (Mot. 3, 24.)  But the relevant issue for purposes of SVBFG's claim

11   under 5 U.S.C. § 706 is whether FDIC-C's final agency action was arbitrary, capricious, an abuse

12   of discretion, or otherwise not in accordance with law.  The Court's Order holding that section

13   1821(f) does not apply to SVBFG's claim did not foreclose this relief.

14       ***Claim for Declaratory Relief*** (Count I).  FDIC-C's argument with respect to SVBFG's

15   claim for declaratory relief incorporates its other arguments by reference.  (*Id.* 24-25.)  The

16   declaratory relief SVBFG seeks serves a useful purpose, will assist in resolving the central dispute

17   between the parties, and is attendant to adequately pleaded claims.

18                              <u>**REQUEST FOR JUDICIAL NOTICE**</u>

19       FDIC-C requests that the Court take judicial notice of the Call Notice and Call Assignment

20   and a PDF version of a webpage, "FDIC Organization Directory – Headquarters."  (*Id.* 3; *id.*

21   Exs. B, C.)  The Court should deny the request.  Courts may take judicial notice of adjudicative

22   facts "not subject to reasonable dispute" because they are either "generally known within the trial

23   court's territorial jurisdiction" or "can be accurately and readily determined from sources whose

24   accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  FDIC-C argues that these

25   documents are subject to judicial notice because they are matters of public record.  But the Call

26   Notice and Call Assignment was only recently made public through a filing in SVBFG's Chapter

27   11 proceeding, and FDIC-C cites no authorities to support the argument that filing a document on

28   a public court docket makes it susceptible to judicial notice for the truth of the matters contained

-2-

in the filing.  To the extent the Call Notice and Call Assignment and FDIC webpage are noticeable for some purposes, the Court should decline to notice the document to prove the truth of the matters contained therein, *i.e.*, whether SVBFG's accounts were, in fact, transferred back from Bridge Bank to FDIC-R1, or any fact concerning the roles or responsibilities of FDIC employees.  *Cf. Martinez* v. *Freitas*, 2024 WL 4309277, at *4 (N.D. Cal. Sept. 26, 2024) (denying judicial notice of government webpage to prove plaintiff was provided notice of mail policy).

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007), and may dismiss a claim "only where there is no cognizable legal theory," or an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer* v. *New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  While courts are not required to accept legal conclusions as true, "the application of the law to the particular facts of the case" is "a mixed question of law and fact," which "is not something that can be determined at the 12(b)(6) stage."  *Baum* v. *J-B Weld Co.*, 2019 WL 6841231, at *8 (N.D. Cal. Dec. 16, 2019); *SEC* v. *Phan*, 500 F.3d 895, 908-09 (9th Cir. 2007).  Courts should be "reluctant to dismiss on the basis of the pleadings," where, as here, the complaint raises a novel theory of liability because "it is important that new legal theories be explored and assayed in the light of actual facts."  *See Elec. Constr. & Maint. Co.* v. *Maeda Pac. Corp.*, 764 F.2d 619, 623 (9th Cir. 1985) (internal quotation omitted).

## STATEMENT OF FACTS

### A.    Closure of SVB

SVBFG is the bank holding company that owned SVB.  (AC ¶ 30.)  As of March 10, 2023, SVBFG had approximately $2.1 billion in three deposit accounts at SVB.  (*Id.* ¶¶ 33.)  On March 10, 2023, the California Department of Financial Protection and Innovation ("DFPI") closed SVB and appointed FDIC-R1 to serve as receiver.  (*Id.* ¶ 34.)  On March 12, 2023, the Treasury Secretary, upon the unanimous recommendation of the FDIC and Federal Reserve and after consultation with the President, determined that "a least-cost resolution of SVB and Signature Bank would intensify deposit runs and liquidity pressure on other U.S. banks," and invoked the

systemic risk exception ("SRE") under 12 U.S.C. § 1823(c)(4)(G) to guarantee that all deposits at SVB, including SVBFG's deposits, would be paid in full. (*Id.* ¶¶ 42-43, 46.) On March 13, 2023, the FDIC announced the transfer of SVB account funds to a newly created Bridge Bank, emphasizing that "[a]ll depositors of the institution will be made whole." (*Id.* ¶¶ 48, 69.) This guarantee was repeated in public statements by various government officials. (*Id.* ¶¶ 2, 47-66.)

### B.    Senior FDIC-C Employees Take Action to Deprive SVBFG of Access to Its Account Funds

The FDIC caused FDIC-R1 to transfer all deposits at SVB, including SVBFG's Account Funds, to Bridge Bank, which FDIC-C was responsible for chartering and operating. (*Id.* ¶¶ 68-71.) SVBFG was able to access its accounts immediately following the transfer of funds to Bridge Bank. (*Id.* ¶ 73.) On March 15 and 16, 2023, SVBFG successfully initiated eight wire transfers totaling $180 million, but after that, without explanation or warning, SVBFG could no longer access its accounts because, unbeknownst to SVBFG, the Acting Deputy General Counsel of the FDIC instructed FDIC-C employees to not release funds from SVBFG's deposit accounts, and this order was relayed to FDIC-R1, who sent it to a Bridge Bank employee to implement. (*Id.* ¶¶ 73, 77-78.) Thereafter, FDIC-C personnel continued to demand updates from FDIC-R1 employees regarding the status of SVBFG's accounts and request assurance that those accounts be "locked down." (*Id.* ¶¶ 79-81.) FDIC-C employee Ryan Tetrick emailed FDIC-R1 employee Luis Mayorga that FDIC-C "[w]ant[ed] to be certain this money is locked down and can bear loss." (*Id.* ¶ 84.) Days later, Mr. Tetrick similarly instructed Mr. Mayorga that "we need to be very sure in any transaction with an acquirer that these holding company deposits do not pass." (*Id.* ¶ 86.) Other senior FDIC-C employees were also involved in the effort to unlawfully block SVBFG's access to its deposits. (*Id.* ¶¶ 88-89.) Updates from Mr. Mayorga were shared with senior FDIC-C officials, and a Senior Claims Administration Analyst at FDIC-R1 updated FDIC-C's Deputy General Counsel on their efforts to block SVBFG's account access pursuant to FDIC-C's express instructions. (*Id.* ¶¶ 88-90.) FDIC-C was also directly involved in directing Bridge Bank, an entity FDIC-C itself operated, to assign SVBFG's deposit accounts at Bridge Bank and all associated

assets and liabilities to FDIC-R1.  (*Id.* ¶ 90.)  In these ways, FDIC-C directed, oversaw, monitored, and participated in depriving SVBFG access to its Account Funds.  (*Id.* ¶¶ 92-93.)

### C.    SVBFG Seeks to Recover the Account Funds

On June 26, 2023, SVBFG demanded that FDIC-C pay or give SVBFG access to its Account Funds pursuant to the Secretary's invocation of the SRE.  (*Id.* ¶ 104.)  This demand went unacknowledged for months until FDIC-C responded to and incorrectly characterized the June 26, 2023 letter as a claim for insurance coverage under 12 U.S.C. § 1821(f).  (*Id.* ¶¶ 105, 112-116.)  On October 20, 2023, FDIC-C denied SVBFG's supposed "claim" for its Account Funds, arguing that SVBFG's access to more than $250,000 from its accounts at Bridge Bank satisfied FDIC-C's obligations under 12 U.S.C. § 1821(f)(1) and that the SRE did not obligate FDIC-C to follow any particular course of action.  (*Id.* ¶¶ 118-119.)  To this day, SVBFG has been unable to access the approximately $1.93 billion in its accounts in violation of the Treasury Secretary's guarantee of all depositors' account funds and various public statements made by the FDIC.

### <u>ARGUMENT</u>

### I.    SVBFG States a Plausible Turnover Claim Under 11 U.S.C. § 542.

FDIC-C argues that SVBFG fails to state a turnover claim because the Amended Complaint does not "plausibly allege that FDIC-C assumed SVBFG's deposit liabilities" and therefore FDIC-C did not have "possession, custody, or control" of SVBFG's Account Funds under 11 U.S.C. § 542(b).  (Mot. 7-8.)  FDIC-C's argument misses the point:  FDIC-C does not need to <u>assume</u> SVBFG's deposit liabilities to have "possession, custody, <u>or control</u>" over the Account Funds under section 542(b).  *In re U.S.A. Diversified Prods., Inc.*, 196 B.R. 801, 808-09 (N.D. Ind. 1996) (Congress drafted the "sweeping" phrase "'possession, custody[,] or control' in the disjunctive rather than the conjunctive," with the intention of including a "broad range of property" in the estate), *aff'd*, 100 F.3d 53 (7th Cir. 1996).

Here, the Amended Complaint alleges that FDIC-C exercised control over SVBFG's Account Funds by directing, instructing, and supervising FDIC-R1 and Bridge Bank in preventing SVBFG from accessing its Account Funds on a continuing basis.  This is adequate to plead a turnover claim.

1

### A. SVBFG Has Adequately Alleged FDIC-C's Control over the Account Funds for Purposes of Section 542(b).

2  The term "control" is undefined in the Bankruptcy Code and therefore should be given its

3  ordinary dictionary meaning. *In re Brown*, 2018 WL 2308267, at *5 (B.A.P. 9th Cir. May 21,

4  2018) (applying dictionary definitions to determine the meaning of "control" under 11 U.S.C.

5  § 348); *see also In re Denby-Peterson*, 941 F.3d 115, 125 (3d Cir. 2019) (adopting dictionary

6  definitions of "stay," "act," and "exercise control" in 11 U.S.C. § 362 because those terms were

7  not defined). "To 'control' means to 'direct or supervise,' to 'limit or regulate something.'"

8  *Brown*, 2018 WL 2308267, at *5 (citing the *Oxford American Dictionary*); *see also Thompson* v.

9  *Gen. Motors Acceptance Corp.*, 566 F.3d 699, 702 (7th Cir. 2009) (interpreting "control" in 11

10  U.S.C. § 362 and stating that "Webster's Dictionary defines 'control' as … 'to exercise restraining

11  or directing influence over' or 'to have power over'"); *In re Arcapita Bank B.S.C.(c)*, 628 B.R.

12  414, 480 (Bankr. S.D.N.Y. 2021) ("To 'exercise control' means 'to exercise restraining or

13  directing influence over' or 'to have power over.'"); *In re Segovia*, 2008 WL 8462967, at *6

14  (B.A.P. 9th Cir. Oct. 22, 2008) ("[W]ords and phrases in the Bankruptcy Code should

15  presumptively receive the same construction, even if found in different parts of the code.").

16  The Amended Complaint is replete with specific, factual allegations that FDIC-C exercised

17  what any reasonable person would understand to be "control" over the Account Funds—*i.e.*,

18  FDIC-C "exercise[d] restraining or directing influence over" or "ha[d] power over" SVBFG's

19  Account Funds. For example, the Amended Complaint alleges that, the day after the Treasury

20  Secretary's systemic risk determination, "Acting Deputy General Counsel of the FDIC, Richard

21  Penfield Starke, instructed FDIC-C employees Audra Cast, Deputy Director of the Division of

22  Resolutions and Ryan Tetrick, Deputy Director of Resolution Readiness, not to release funds from

23  SVBFG's deposit account," and that "Ms. Cast forwarded that email … to Janine D. Henkes,

24  Receiver-in-Charge for Silicon Valley Bank and Sharon E. Kelley, a Senior Financial Management

25  Analyst at FDIC-R1." (AC ¶ 77; *see also id.* ¶¶ 74-76.) Upon receiving the emails, FDIC-R1

26  complied with the instruction and worked with Bridge Bank to implement the holds. (*Id.* at 78-

27  80.)

28

The Amended Complaint further alleges that, after directing the initial blocking of SVBFG's access, FDIC-C continued to exercise control over the Account Funds through Mr. Tetrick, who supervised, directed, and instructed FDIC-R1 to take additional actions to ensure that SVBFG <u>continued</u> to be denied access to its Account Funds.  (*See, e.g.*, *id.* ¶ 84 ("Mr. Tetrick sent another email to Mr. Mayorga … instructing him to keep FDIC-C apprised of any developments, and emphasizing FDIC-C's wishes that SVBFG's accounts were to be completely blocked: 'BTW – great work on this please keep this group … posted on anything new you learn or if any of the facts change.  *Want to be certain this money is locked down and can bear loss*.'"); *id.* ¶ 82 ("In an email sent on March 16, Mr. Tetrick demanded that Mr. Mayorga provide him with a status update on SVBFG's Account Funds and sought reassurance that FDIC-R1 had confiscated those funds: 'What do we know about this?  Are these deposits still in the receivership?'"); *id.* ("Mr. Tetrick asked Mr. Mayorga to provide additional information about SVBFG's accounts to ensure that nothing was being missed—'It would be good to confirm the balances as of the date of close too'— to which Mr. Mayorga quickly responded by providing updated balances for SVBFG's accounts."); *see also id.* ¶¶ 81, 83-90.)

The Amended Complaint also alleges that FDIC-C exercised control over the Account Funds through its role in operating Bridge Bank.  (*Id.* ¶ 94 ("Prior to placing Bridge Bank in receivership… , Bridge Bank was operated under the control of the FDIC-C."); *id.* ("As Mr. Mayorga confirmed to Mr. Tetrick of the FDIC-C … , at the time SVBFG's access to its Account Funds was cut off, its accounts had been 'transferred into the bridge' from the FDIC-R1. [T]he removal of SVBFG's funds from its accounts at Bridge Bank was directed by FDIC-C.").)  These allegations plausibly plead that FDIC-C had control over SVBFG's Account Funds and directed and supervised FDIC-R1's and Bridge Bank's actions to block SVBFG's access to the Account Funds.

**B.    SVBFG's New Allegations Cannot Be Disregarded.**

FDIC-C fails altogether to engage with any of the new, detailed control allegations in the Amended Complaint, and instead argues that the Court should disregard these new allegations "as a matter of fact" and "as a matter of law."  (Mot. 10-14.)  These arguments lack merit.

*First*, FDIC-C disputes the Amended Complaint's factual allegations and argues that FDIC employees referenced in the Amended Complaint were acting as employees of FDIC-R1, not FDIC-C, when they directed the denial of SVBFG's access to its Account Funds.  (Mot. 12-13.) The capacity in which FDIC employees were acting is a factual inquiry inappropriate for resolution at the pleading stage, where SVBFG has plausibly alleged that these employees were acting on behalf of FDIC-C.  *See, e.g.*, *Byers* v. *City of Richmond*, 2024 WL 4295232, at \*15 (E.D. Va. Sept. 25, 2024) (given plaintiff's allegations that "Officer Gibson acted as an agent for both" the police department and the hospital, "[f]urther factual development will ultimately be necessary to determine in which capacities Officer Gibson was working at which times"); *EEOC* v. *Ganley Mgmt.*, 2010 WL 11565385, at \*9-10 (N.D. Ohio Mar. 25, 2010) (factual dispute existed when defendant had a "dual role in both companies," and "it [was] not clear in what capacity he was acting, whether on behalf of [either company] or both"); *Guardiola* v. *Essex Sun Park*, 2006 WL 8434989, at \*2 (W.D. Tex. Jan. 26, 2006) (whether an officer acted as a "courtesy officer" for an apartment complex or a "peace officer" for the sheriff's department was an issue of fact for trial).

Critically, FDIC-C does <u>not</u> dispute that Mr. Tetrick—a key player—was acting on behalf of FDIC-C at all relevant times.  (*See, e.g.*, AC ¶¶ 77, 81-94.)  Moreover, the Amended Complaint plausibly pleads that Mr. Starke and Ms. Cast acted in their capacities as FDIC-C employees (*id.* ¶¶ 77-79, 81, 86-90), which is also sufficient to defeat a motion to dismiss.  The online directory FDIC-C cites for judicial notice, even if it could be cited for the truth of matters published, does not contradict SVBFG's allegations.  FDIC-C argues that because Mr. Starke and Ms. Cast have job titles that include the word "Receivership," and Mr. Starke (but not Ms. Cast) was listed as one of two persons to receive notice on behalf of FDIC-R1 in the March 13, 2023 Transfer Agreement between Bridge Bank and FDIC-R1, they must have been acting on behalf of FDIC-R1 in blocking SVBFG's Account Funds.  (Mot. 13; *id*. Ex. A, at 33; *id*. Ex. C, at 3-4.)  Yet FDIC-C offers no support for why the inclusion of "Receivership" in Mr. Starke and Ms. Cast's job titles—which also include "Resolution" and "Resolution Strategy"—means that they were acting in their "Receivership" capacity when they directed the placement of holds on SVBFG's Account Funds. Courts in other contexts regularly hold that job titles are not determinative of an employee's role

-8-

or status.  *See, e.g.*, *Coleman-Edwards* v. *Simpson*, 330 F. App'x 218, 219 (2d Cir. 2009) (overtime exemption status under the Fair Labor Standards Act "is not determined by job titles."); *Rutherford* v. *Pontchartrain Materials Corp.*, 2024 WL 1966428, at *4 (E.D. La. May 3, 2024) ("[j]ob title does not determine seaman status" under the Jones Act); *Steward* v. *Smith*, 2018 WL 11361754, at *2 (W.D. Tex. July 31, 2018) ("[A]ttorney client privilege is not determined by date or job title.").  The Court should not deviate from this commonsense rule here.  And, again, FDIC-C nowhere disputes that Mr. Tetrick was acting on behalf of FDIC-C.

*Second*, FDIC-C's argument that the March 13 emails "do not contain any 'direction' from FDIC-C to block SVBFG's account access" is also an improper factual dispute.  (Mot. 14.)  The Amended Complaint plausibly alleges that FDIC-C employees instructed employees at FDIC-R1 to place holds on SVBFG's accounts, and FDIC-R1 in turn sent the instruction to a Bridge Bank employee, who complied and implemented the holds.  (AC ¶¶ 77-80.)  FDIC-C selects one email chain to argue that Mr. Starke's and Ms. Cast's emails "were simply alerting FDIC-R1," not directing its actions.  (Mot. 14.)  FDIC-C "confuses … the sufficiency of the pleading and the weight of the evidence cited [or referenced] by the pleading," since "[i]n determining a motion to dismiss, the court does not weigh evidence, [but] only checks to see that the complaint's allegations are rooted in ascertainable fact, whether or not the necessary facts are proven at the time of pleading."  *Carlin* v. *Dairyamerica, Inc.*, 2016 WL 1734182, at *6 (E.D. Cal. May 2, 2016); *see also Radware, Inc.* v. *U.S. Telepacific Corp.*, 2020 WL 836731, at *6 (N.D. Cal. Feb. 20, 2020) ("The Court does not weigh evidence on a motion to dismiss and does not require 'proof' at this stage because it must accept [nonmovant]'s factual allegations as true.").  Here, it is a reasonable interpretation of the numerous emails cited in the Amended Complaint, including this one, that FDIC-R1 and Bridge Bank were implementing FDIC-C's instructions to freeze SVBFG's Deposit Accounts and deny SVBFG access to them.

*Third*, FDIC-C also suggests (without authority) that the turnover claim fails because the Amended Complaint does not allege that FDIC-C has control of the Account Funds "today as would be required for turnover," and that "events after … March 15" should be disregarded because "FDIC-C could not have directed FDIC-R1 to initiate locking down SVBFG's accounts"

after that date.  (Mot. 9, 14.)  This argument ignores the Amended Complaint's well-pleaded allegations that FDIC-C has continued to exercise control over SVBFG's Account Funds after it directed FDIC-R1 to restrict SVBFG's accounts on March 15, 2023.  Mr. Tetrick and others at FDIC-C continued to direct FDIC-R1 to take additional measures to ensure that no Account Funds would be released to SVBFG <u>after</u> the hold was put in place.  (AC ¶¶ 79-95, 137.)  SVBFG's allegations regarding FDIC-C's continued control after March 15 are therefore relevant to SVBFG's turnover claim.

### C.   The New Allegations May Not Be Disregarded as a Matter of Law.

FDIC-C relies on three nonbinding, unpublished decisions to argue that "the Court should disregard SVBFG's new allegations that FDIC-C directed FDIC-R1 to block SVBFG's account access" because "such allegations 'have no legal effect.'"  (Mot. 10-11 (citing *In re Washington Bancorporation*, 1996 WL 148533 (D.D.C. Mar. 19, 1996); *Patriot Square Assocs.* v. *FDIC*, 1992 WL 12957147 (D.D.C. Sept. 25, 1992); *Pageland 29 Ltd.* v. *FDIC*, 1992 WL 391377 (D.D.C. Dec. 14, 1992)).)  FDIC-C's authorities suggest only that FDIC-C could not legally enforce any <u>attempts</u> to direct FDIC-R1's actions, not that <u>allegations that FDIC-C actually directed FDIC-R1 and FDIC-R1 complied</u> should be disregarded on a Rule 12(b)(6) motion.  *Cf. Washington Bancorporation*, 1996 WL 148533, at *14; *Patriot Square*, 1992 WL 12957147, at *2; *Pageland*, 1992 WL 391377, at *3.

The cited cases do not otherwise help FDIC-C because they are distinguishable on the facts.  In *Pageland*, plaintiff claimed that FDIC-C was liable for the actions of FDIC-R because "FDIC-Corporate 'directed' the actions of FDIC-Receiver."  1992 WL 391377, at *4.  The court rejected this claim because plaintiff "has not alleged any facts in support of [that] claim."  *Id*.  The court did not say it would disregard such facts had they been alleged.  *Patriot Square* involved an allegation that FDIC-C ratified a failed institution's contract, which the court held would have no legal effect because FIRREA "does not authorize FDIC-Corporate to make decisions with respect to the contracts of failed institutions."  1992 WL 12957147, at *2.  Here, FIRREA does not speak to the conduct alleged—transfer of funds to a bridge bank chartered and operated by FDIC-C under the invocation of the SRE and FDIC-C's subsequent actions in blocking a depositor's access to

-10-

those funds.  *Washington Bancorporation* is also inapposite.  That case concerns a debtor's equitable "defenses to FDIC-C's [commercial paper] claim against [the debtor's] estate" after it had entered into a settlement agreement with FDIC-R releasing FDIC-R's claims.  1996 WL 148533, at *1-2.  The court rejected the debtor's argument that its allegations of inequitable conduct could "subvert the distinction between FDIC-R and FDIC-C" and bar FDIC-C's claims. *Id.* at *15.  SVBFG makes no such argument here.  The Amended Complaint alleges wrongful actions committed by each of FDIC-C and FDIC-R1.

In short, none of FDIC-C's cases holds that the Court should "disregard" well-pleaded factual allegations concerning FDIC-C's direction of FDIC-R1's actions.  And there is no support for FDIC-C's position that the facts pleaded in a complaint should be disregarded on a motion to dismiss if the alleged agency conduct is allegedly *ultra vires*.  This contravenes "the longstanding principle that if an agency action is unauthorized by the statute under which the agency assumes to act, the agency has violated the law and the courts generally have jurisdiction to grant relief." *Fed. Express Corp.* v. *U.S. Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022).

FDIC-C's other policy arguments are also unavailing.  For starters, accepting "allegations that FDIC-C 'directed' FDIC-R" as legally sufficient will not, as FDIC-C suggests, "effectively make FDIC-C a potential party in every lawsuit against FDIC-R."  (Mot. 11.)  FDIC-C itself violated the turnover provision by impermissibly exercising "possession, custody, or control" over the Account Funds by instructing FDIC-R1 to hold SVBFG's Deposit Accounts and to continue to refuse to grant access.  To the extent that FDIC-R1 is <u>also</u> jointly liable for turnover based on its own conduct, SVBFG is permitted to pursue both FDIC-R1 and FDIC-C for turnover.  *See In re Rosales*, 621 B.R. 903, 932 (Bankr. D. Kan. 2020); *see also In re Sarp*, 2011 WL 1454072, at *1 (B.A.P. 9th Cir. Mar. 28, 2011) (affirming summary judgment order holding debtor's former president and principal booking agent jointly and severally liable for turnover, where the booking agent withheld debtor's customer payments "under the direction" of former president).  Nor will accepting SVBFG's new allegations "subvert the distinction" between FDIC-C and FDIC-R1. (Mot. 11.)  The new allegations focus on FDIC-C's independent conduct by which it exercised control over the Account Funds.  More fundamentally, allegations that FDIC-C directed FDIC-R1

-11-

presuppose that they are legally distinct, since an entity cannot "direct[]," authorize[]," or "act[] together with" itself (AC ¶ 136), just like one cannot conspire with or aid and abet oneself, *Villains, Inc.* v. *Am. Econ. Ins. Co.*, 870 F. Supp. 2d 792, 796 (N.D. Cal. 2012) ("[J]ust as a principal cannot conspire with itself, a principal cannot aid and abet itself.").

## II.    SVBFG Plausibly States a Claim That FDIC-C Violated Its Due Process Rights.

The only issues FDIC-C raises in the Motion with respect to SVBFG's due process claim are that (i) SVBFG needs a "separate" cause of action to advance its Fifth Amendment due process claim, an issue raised by FDIC-C for the first time in this Motion, and (ii) SVBFG has not alleged sufficient facts for the Court to reasonably infer that FDIC-C deprived SVBFG of its property interest in its Account Funds without due process.  FDIC-C's arguments are meritless.

### A.    SVBFG Does Not Need a Separate Cause of Action to Allege a Fifth Amendment Due Process Violation.

FDIC-C argues that SVBFG needs a "separate" cause of action—such as a section 1983 or *Bivens* claim—to plead a Fifth Amendment due process violation against it.  (Mot. 15-16.)  The cases on which FDIC-C relies concern due process claims for monetary damages and are inapposite because SVBFG seeks injunctive relief for its due process claim.  (AC ¶ 154.)

As an initial matter, FDIC-C argues that the remedy SVBFG seeks—an injunction "prohibiting the FDIC-C from continuing to deny SVBFG access to its Account Funds" (*id.*), is "equivalent to seeking an order that FDIC-C pay SVBFG $1.9 billion in the future," and is thus not "non-monetary relief" (Mot. 17).  By its plain terms, however, SVBFG's due process claim seeks an injunction "prohibiting the FDIC-C from continuing to deny SVBFG access to its Account Funds"—not an injunction compelling FDIC-C to pay SVBFG its Account Funds.  (AC ¶ 154; 50.)  For example, the injunction that SVBFG seeks would enjoin FDIC-C from continuing to take the types of wrongful actions it has already taken in the past—and continues to take—to instruct and direct FDIC-R1 to block SVBFG from accessing its Account Funds at Bridge Bank.

Next, FDIC-C argues that SVBFG needs a "separate" cause of action to seek injunctive relief from a federal agency for a constitutional violation.  (Mot. 15-16.)  To begin, FDIC-C cannot raise arguments that were previously available to it but not raised in the first Motion to Dismiss

(ECF No. 25) (the "First MTD"). Federal Rule of Civil Procedure 12(g)(2) provides that, except as provided in Rule 12(h)(2), a party may not make a second Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2), in turn, provides that a defense for failure to state a claim that was not raised in the original Rule 12 motion may only be raised in a Rule 7(a) pleading, a Rule 12(c) motion, or at trial.

Numerous courts have expressly recognized that a plaintiff may seek injunctive relief from a federal agency by bringing a due process claim directly under the Fifth Amendment without pleading a separate cause of action. *See, e.g., Eagle Tr. Fund* v. *USPS*, 365 F. Supp. 3d 57, 69 (D.D.C. 2019) ("[T]here is no question that a cause of action may be stated under the procedural due process component of the fifth amendment for equitable relief …." (citation omitted)); *Doe* v. *United States*, 853 F.3d 792, 796 (5th Cir. 2017) (where plaintiff sought nonmonetary relief for an alleged violation of Fifth Amendment due process rights, "[t]he district court had jurisdiction … because [plaintiff]'s claims arise under the Fifth Amendment and presented a federal question"). And others have implicitly recognized a Fifth Amendment due process claim seeking injunctive relief against the FDIC, even where the plaintiff did not plead a separate cause of action for the claim. *See, e.g., Elmco Props., Inc.* v. *Second Nat'l Fed. Savs. Ass'n*, 94 F.3d 914, 918, 920-22 (4th Cir. 1996) (recognizing claim "under the Fifth Amendment's Due Process Clause" against Resolution Trust Corporation and finding agency's denial of plaintiff's request for return of funds to be unconstitutional); *Cmty. Fin. Servs. Ass'n of Am., Ltd.* v. *FDIC*, 132 F. Supp. 3d 98, 121-24 (D.D.C. 2015) (finding plaintiffs had sufficiently stated a due process claim "under the Fifth Amendment"); *Advance Am.* v. *FDIC*, 257 F. Supp. 3d 56, 63-64 (D.D.C. 2017) (same).

FDIC-C ignores these cases and instead relies on *FDIC* v. *Meyer*, 510 U.S. 471 (1994). (Mot. 15-16.) *Meyer* is inapposite because it involves a claim for damages resulting from a due process violation. 510 U.S. at 483-84. There, the plaintiff sought to extend the logic of *Bivens* v. *Six Unknown Named Agents*—which allowed certain claims for damages against federal agents, 403 U.S. 388, 397 (1971)—to allow actions for money damages against federal agencies, but the Supreme Court rejected this effort. *Id.* at 484-85. Thus, the holding in *Meyer* has no bearing on this case, where SVBFG seeks injunctive relief. *Cf. James Madison Ltd.* v. *Ludwig*, 82 F.3d 1085,

-13-

1094-95 (D.C. Cir. 1996) ("Because the district court has jurisdiction to grant injunctive and declaratory relief [under the APA], we need not reach the FDIC's additional argument that *FDIC* v. *Meyer* bars the district court from granting the monetary relief that [the plaintiff] seeks as an alternative remedy.").

FDIC-C's reliance on *Hindes* v. *FDIC*, 137 F.3d 148 (3d Cir. 1998), is similarly flawed. In *Hindes*, the Third Circuit did not analyze the merits of plaintiff's right to declaratory and injunctive relief under its due process claims, instead electing to treat the requests for relief as though they had been asserted under the plaintiff's separate section 1983 and *Bivens* claims. *Id.* at 157. There was no argument, and the Third Circuit made no holding, regarding the need for a separate substantive cause of action for injunctive relief against the FDIC. *See id.*

Finally, even if SVBFG did need a "separate" cause of action to proceed, the APA provides one. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action … is entitled to judicial review thereof."); 5 U.S.C. § 706(2)(B) (the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … contrary to *constitutional right*, power, privilege, or immunity" (emphasis added)); *Barnum Timber Co.* v. *EPA*, 633 F.3d 894, 899 (9th Cir. 2011) (upon a showing that a federal agency's actions constituted behavior proscribed by 5 U.S.C. § 706(2), "the district court has the power under the APA to grant the declaratory judgment and injunctive relief [plaintiff] requests").

### B.    FDIC-C Deprived SVBFG of Its Property Interest Without Due Process.

FDIC-C argues that SVBFG did not adequately plead that it, rather than FDIC-R1, was responsible for a due process violation. (Mot. 17-18.) FDIC-C points the finger at FDIC-R1 and suggests that only one of the FDICs could be responsible for the due process violation. (*Id.*) But FDIC-C cites no authorities holding that due process violations cannot be committed by more than one party.

The Amended Complaint alleges that the Treasury Secretary's invocation of the SRE obligated the FDIC-C to guarantee the full amount of SVBFG's Account Funds, and the Court may take those allegations as true at the pleading stage. (AC ¶¶ 37-39, 42-46; *see also* Order 28 ("[T]he Court may reasonably infer from these allegations that when invoking the Systemic Risk

-14-

Exception, the Treasury Secretary used mandatory language that created a property interest in SVBFG's account funds and that this interest was created by the Treasury Secretary's exercise of authority, rather than any discretion on the part of the FDIC-C.").)   Rather than follow the Secretary's mandate, FDIC-C instead directed FDIC-R1 to deny SVBFG access to the Account Funds, and supervised FDIC-R1's compliance with its own mandate.  (AC ¶¶ 74-94 (detailing how FDIC-R1 worked to prevent SVBFG from accessing the funds "at the direction" and "[w]ith the knowledge and approval of" FDIC-C employees).)   FDIC-C employees directed FDIC-R1 employees to "'lock down' SVBFG's funds," "revers[e] [the] wires that had been made by SVBFG from Bridge Bank," and "remove the Account Funds from SVBFG's accounts at Bridge Bank into some sort of FDIC general ledger account." (*Id.* ¶ 148.) These FDIC-C actions violated SVBFG's right to due process.

## III.    FDIC-C May Not Raise Its Forfeited and Meritless Promissory Estoppel Arguments.

The Court previously held that FDIC-C forfeited its argument that SVBFG failed to plead the necessary elements of a claim for promissory estoppel, because FDIC-C failed to cite any apposite caselaw concerning equitable estoppel in its First MTD and instead waited until its reply brief.  (Order 33.)   FDIC-C now seeks to re-raise its already forfeited argument.  This is a procedurally improper request for reconsideration, which the Court should reject, and even were the Court to consider it, the Court should reject it – again – because SVBFG has adequately pleaded all of the elements of a promissory estoppel claim.

### A.    FDIC-C Improperly Seeks Reconsideration of the Court's Denial of Its First Motion to Dismiss SVBFG's Promissory Estoppel Claim.

FDIC-C argues that because the Court "did not address the merits of whether SVBFG has plausibly alleged the elements of a promissory estoppel claim," it is permitted to "re-raise" the issue for the Court's review. (Mot. 18-19.) FDIC-C already raised the arguments presented in the Motion, and the Court rejected them.  FDIC-C argued in its First MTD that, as to either equitable estoppel or promissory estoppel, SVBFG failed to allege two necessary elements: affirmative misconduct and undue damage to the public interest.  (First MTD at 20-21.)  In its first reply brief (ECF No. 66) ("First Reply"), FDIC-C again argued that SVBFG "failed to plausibly allege the

necessary elements of *any* 'estoppel claim.'" (First Reply at 14-15.) In finding that FDIC-C had forfeited its arguments with respect to SVBFG's promissory estoppel claim, the Court noted that while FDIC-C "clearly understood the difference between promissory estoppel and equitable estoppel," it "did not identify the type of estoppel to which it referred in arguing that SVBFG did not plausibly allege the elements of an estoppel claim." (Order 32-33.) Further noting that FDIC-C cited only caselaw addressing equitable estoppel, the Court declined to consider FDIC-C's arguments because its attempt to apply equitable estoppel caselaw to a claim for promissory estoppel constituted a new argument. (*Id.* 33.)

FDIC-C again relies on inapposite caselaw discussing or reliant upon equitable estoppel principles to argue that SVBFG has failed to allege affirmative misconduct to support its promissory estoppel claim. (Mot. 19-20.) As such, FDIC-C's argument is simply a request for reconsideration. Under Civil Local Rule 7-9(b), a party seeking such reconsideration must first request leave to file a motion for reconsideration, showing either (i) a material change in fact or law before or after the order to be reconsidered or (ii) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments." FDIC-C has not moved for leave to file a motion for reconsideration, nor has it attempted to show that Civil Local Rule 7-9's requirements are met. Therefore, the Court should decline to reconsider its earlier ruling.

### B.    FDIC-C Is Not Entitled to Re-Argue Its Promissory Estoppel Arguments.

In addition, FDIC-C may not raise this argument now because it was previously available but not raised in the First MTD. Fed. R. Civ. P. 12(g)(2). FDIC-C argues that Rule 12(g)(2) does not apply because SVBFG "amended" its promissory estoppel claim by "incorporat[ing] by reference" certain facts established in the Amended Complaint. (Mot. 19.) Courts have interpreted Rule 12(g)(2) to mean that where a defense was previously available but unraised, "[a] defendant cannot bring a second motion to dismiss challenging a claim that is based on substantially the same allegations in the amended complaint and the original complaint." *Niantic, Inc.* v. *Global++*, 2020 U.S. Dist. LEXIS 250756, *9 (N.D. Cal. Sept. 2, 2020) (internal quotations omitted); *see also Mario V.* v. *Armenta*, 2019 WL 8137140, at *2 (N.D. Cal. Apr. 17, 2019) (Freeman, J.) (same); *Labowitz* v. *Bird Rides, Inc.*, 2020 WL 2334116, at *8 (C.D. Cal. Mar. 31, 2020) (same); *Northstar*

-16-

*Fin. Advisors Inc.* v. *Schwab Invs.*, 135 F. Supp. 3d 1059, 1070 (N.D. Cal. 2015) (same). Here, the incorporation by reference of more factual allegations than those the Court has found sufficient to state a claim has no impact on the applicability of Rule 12(h)(2) because SVBFG's promissory estoppel claim is based on the same factual allegations and legal theory as asserted in the original Complaint (*compare* Compl. ¶¶ 162-169, *with* AC ¶¶ 169-176). Moreover, the Court has already recognized that FDIC-C's Rule 12(b)(6) defense to SVBFG's promissory estoppel claim was available to it at the time of the First MTD. (Order 33.)

Nor should the Court exercise discretion to consider FDIC-C's new arguments. The Ninth Circuit in *In re Apple iPhone Antitrust Litig.* observed that while a successive Rule 12(b)(6) motion on the merits is precluded by Rule 12(g)(2), it should be "forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." 846 F.3d 313, 317-19 (9th Cir. 2017). "Some district courts have taken that language to mean that despite the plain text of Rule 12(g)(2), district courts retain discretion to consider a successive Rule 12(b)(6) motion." *Mario V.*, 2019 WL 8137140, at *2. Assuming such an interpretation of *In re Apple* is accurate, the Court should not do so here, where FDIC-C has not "offered any explanation" as to why it did not raise its current defense in the First MTD, or "why Plaintiffs should be prejudiced by potential delay in litigating" the defense at this late date. *Id.*

## C.  SVBFG's Claim for Promissory Estoppel Does Not Require It to Plead Affirmative Misconduct.

Even if the Court finds that FDIC-C is permitted to re-raise its forfeited and rejected estoppel arguments, SVBFG has adequately pleaded a claim for promissory estoppel. Under federal common law, to establish an enforceable contract based on promissory estoppel, the promisee "must show (1) the existence of a promise, (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise." *Aguilar* v. *Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443, 445, 445 n.2 (9th Cir. 1992). These requirements are met here. The Amended Complaint alleges that (i) FDIC-C promised that all depositors would have full and immediate access to all of their funds (AC ¶171);

SULLIVAN & CROMWELL LLP

1  (ii) FDIC-C expected and intended its promise to induce reliance to calm U.S. markets (*id.* ¶ 172);

2  (iii) SVBFG relied upon the promise (*id.* ¶ 173); (iv) such reliance was reasonable (*id.* ¶¶ 172-173,

3  176); and (v) enforcement of the promise would avoid the injustice caused by FDIC-C's unlawful

4  withholding of the Account Funds (*id.* ¶¶ 175-176).

5    FDIC-C does not seriously dispute that these elements are present here.  Instead, it relies

6  on inapposite caselaw to argue that "affirmative misconduct" is an element of a promissory

7  estoppel claim against the government, and that SVBFG has not adequately alleged affirmative

8  misconduct.  The Court should reject this argument, now for the second time.

9    Affirmative misconduct is not a required element of promissory estoppel—and for good

10  reason.  Promissory estoppel implicates <u>none</u> of the policy concerns that equitable estoppel against

11  the government raises, which are premised on the strong "interest of the citizenry as a whole in

12  obedience to the rule of law," and the potential undermining of that interest "[w]hen the

13  Government is unable to enforce the law because the conduct of its agents has given rise to an

14  estoppel." *Heckler* v. *Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984).  And

15  FDIC-C has not identified a single Ninth Circuit case requiring "affirmative misconduct" to

16  support a claim of promissory estoppel against the government.  FDIC-C relies exclusively on out-

17  of-circuit and inapposite cases that misapply caselaw concerning equitable estoppel.  FDIC-C's

18  primary authority, *Koroma* v. *Richmond Redevelopment & Hous. Auth.*, for example, relies

19  entirely on authority discussing equitable estoppel to arrive at its finding that affirmative

20  misconduct was an element of a claim of promissory estoppel against the government.  2010 WL

21  1704745, at *12 (E.D. Va. Apr. 27, 2010).  Moreover, *Koroma* involved a claim for promissory

22  estoppel against the Richmond Redevelopment & Housing Authority ("<u>RRHA</u>"), a local public

23  housing authority that administered the Section 8 housing program for the U.S. Department of

24  Housing and Urban Development.  *Id.* at *1, *3.  There is nothing in *Koroma* indicating that the

25  RRHA is remotely similar to the FDIC, which the Court found is subject to a claim of promissory

26  estoppel as "an independent federal agency" that waived its sovereign immunity and is authorized

27  by statute "[t]o make contracts" and "regulat[e] the manner in which its general business may be

28  conducted."  (Order 32-33.)

-18-

FDIC-C's remaining authorities are also inapposite.  *United States* v. *Vantage Tr. Fed. Credit Union*, 2018 WL 306920, at *6 (M.D. Pa. Jan. 5, 2018), and *Jones Motor Co., Inc.* v. *Teledyne, Inc.*, 732 F. Supp. 490, 495 (D. Del. 1990), rely on applying cases addressing equitable estoppel to a promissory estoppel cause of action.  In addition, *Vantage Tr.* and *Jones Motor* addressed promissory estoppel claims brought against the United States, not the FDIC.  2018 WL 306920, at *1, *5; 732 F. Supp. at 490, 495.  While the United States has not waived its sovereign immunity with regard to promissory estoppel claims, *Jablon* v. *United States*, 657 F.2d 1064, 1070 (9th Cir. 1981), this Court previously concluded that "promissory estoppel claims are … intended to reach the FDIC" due to its waiver of sovereign immunity through 12 U.S.C. § 1819 and its status as an "independent federal agency" authorized to regulate how to conduct its business (Order 33.) The Ninth Circuit has acknowledged that "[w]hen acting in its corporate capacity," the FDIC's "liability must be determined in the same fashion as that of a private party."  *Stagen* v. *FDIC*, 152 F.3d 929 (9th Cir. 1998); *see also Santoni* v. *FDIC*, 677 F.2d 174, 178 (1st Cir. 1982) (same). Accordingly, even assuming the validity of *Vantage Tr.* and *Jones Motor*'s conclusion that affirmative misconduct is an element for a claim of promissory estoppel against the United States, those cases do not address whether affirmative misconduct is an element of a promissory estoppel claim against FDIC.  FDIC's liability for SVBFG's promissory estoppel claim is analyzed as it is for a private party: without requiring a showing of affirmative misconduct.  *See Ascom Hasler Mailing Sys., Inc.* v. *USPS*, 885 F. Supp. 2d 156, 190 (D.D.C. 2012) (listing elements of promissory estoppel claim against USPS, which did not include affirmative misconduct).

### D.    SVBFG Has Adequately Alleged Affirmative Misconduct.

Even if SVBFG were required to allege affirmative misconduct by FDIC-C, it has met its burden.  "There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances."  *Watkins* v. *U.S. Army*, 875 F.2d 699, 707 (9th Cir. 1989).   Affirmative misconduct may be found where the government (i) affirmatively misrepresents or conceals a material fact, *Baccei* v. *United States*, 632 F.3d 1140, 1147 (9th Cir. 2011); (ii) deliberately lies, *id.*; (iii) engages in a "pattern of false promises," *id.*; or

1    (iv) acts in a willful, wonton, and reckless manner suggestive of selective treatment, *Fano* v.

2    *O'Neill*, 806 F.2d 1262, 1265-66 (5th Cir. 1987).

3         Assuming *arguendo* that this standard also applies to a promissory estoppel claim against

4    the government, sufficient allegations are present here.  These include that, despite FDIC-C's

5    repeated promises that all deposits of all depositors at SVB would be fully protected, FDIC-C

6    "unlawfully withheld" its Account Funds "without notice or disclosure of its conduct or the

7    justification for it," which was "tantamount to theft" (AC ¶¶ 1, 5); "was *directly* involved in

8    directing, overseeing and monitoring FDIC-R1's and Bridge Banks's efforts to … block SVBFG

9    from accessing its funds at Bridge Bank" (*id.* ¶¶ 7, 76-91); has not "disclosed upon whose authority

10   or at whose direction SVBFG's funds were withheld" (*id.* ¶ 6); continues to exercise control over

11   SVBFG's account funds by refusing to restore SVBFG's access (*id.* ¶ 8); "has not identified a

12   single former [SVB] or Bridge Bank depositor, other than SVBFG, that was required to file a claim

13   with the FDIC-C to obtain access to its funds" (*id.* ¶ 21); and that the "so-called process by which

14   the FDIC-C purported to assess SVBFG's demand" for its Account Funds was a sham proceeding

15   (*id.* ¶ 21).  SVBFG has also alleged that although FDIC-C publicly issued promises to fully protect

16   all depositors, its internal policy actually was that it had "complete discretion to determine whether

17   to guarantee any uninsured deposits of former Silicon Valley Bank depositors and in what

18   amounts." (*Id.* ¶ 175.)  Accordingly, at the time that FDIC-C's statements were made, they were

19   "knowingly and egregiously false." (*Id.*)  Such allegations constitute "affirmative misconduct

20   going beyond mere negligence." *Watkins*, 875 F.2d at 707.

21        FDIC-C cites *Purcell* v. *United States*, 1 F.3d 932, 940 (9th Cir. 1993), for the proposition

22   that affirmative misconduct must involve "ongoing active misrepresentations or a pervasive

23   pattern of false promises as opposed to an isolated act of providing misinformation."  (Mot. 21,

24   23.)  *Purcell*, however, merely reiterated that "a single oral misstatement by a government

25   employee will <u>ordinarily</u> not constitute affirmative misconduct."  1 F.3d at 940 (emphasis added)

26   (internal quotations omitted).  And Ninth Circuit cases before and after *Purcell* have recognized

27   that (i) there is no single test for determining the presence of affirmative misconduct, *Watkins*, 875

28   F.2d at 707; *Perez-Mejia* v. *Holder*, 663 F.3d 403, 417 (9th Cir. 2011), and (ii) that affirmative

-20-

misconduct may be found where there is "<u>an</u> affirmative misrepresentation or affirmative concealment of <u>a</u> material fact by the government," *Watkins*, 875 F.2d at 707 (emphasis added), such as a single "deliberate lie," *Baccei*, 632 F.3d at 1147.  Even if SVBFG were required to plead "ongoing" or "pervasive" misconduct, it has.  Here, SVBFG has alleged that FDIC-C deliberately lied about protecting all deposits of all depositors in an authorized writing, that over the course of several days FDIC-C secretly worked to withhold the Account Funds from SVBFG, that FDIC-C has exercised unlawful control over the Account Funds for more than 18 months, and that no other SVB depositor was treated similarly to SVBFG.  (*Supra* 20.)

Relying on equitable estoppel caselaw, FDIC-C argues that SVBFG has not alleged affirmative misconduct with particularity pursuant to Federal Rule of Civil Procedure 9(b). (Mot. 20.)  Even if such a requirement applies to a claim of promissory estoppel against the FDIC (a proposition for which FDIC-C provides no support), the Rule 9 standard is met here.  Under Rule 9, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess* v. *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).  Here, SVBFG has alleged that FDIC-C (the who) made promises that all deposits of all depositors of SVB were guaranteed (the what) through the March 12 and 13 (the when) press releases concerning the terms of the SRE (the where), which were "knowingly and egregiously false" because (i) FDIC-C has stated that it intended to exercise its discretion as to which deposits would be guaranteed and in which amounts and (ii) FDIC-C, in concert with FDIC-R1 and Bridge Bank, has unlawfully withheld from SVBFG the Account Funds guaranteed under the SRE (the how).  (AC ¶¶ 1, 5-8, 21, 76-91, 169-176.)

None of FDIC-C's other contentions for why SVBFG fails to allege affirmative misconduct is persuasive.  *First*, FDIC-C asserts that affirmative misconduct is missing because the promises contained in the March 12 and 13 releases were accurate (because SVBFG's deposits were transferred to Bridge Bank for two days before they were taken away), and even if they were untrue, SVBFG has not alleged that FDIC-C was aware of SVBFG's deposits at the time of the March 12 and 13 press releases.  (Mot. 21.)  Affirmative misconduct "does not require that the government intend to mislead a party."  *Watkins*, 875 F.2d at 707.  Whether the statements were

-21-

true when made, or whether FDIC-C was aware of SVBFG's deposits at the time of the relevant promises is not determinative of whether FDIC engaged in affirmative misconduct. Moreover, as recognized in FDIC-C's own caselaw, affirmative misconduct may be found where, as here, a party alleges "ongoing active misrepresentations" or "affirmative concealment of [] material fact[s]," such as FDIC-C's issuance of promises to fully guarantee all deposits while it concealed its actual policy of discretion and later unlawfully withheld SVBFG's Account Funds without any notice or disclosure to SVBFG. *Watkins*, 875 F.2d at 707-08.

*Second*, FDIC-C asserts that SVBFG does not allege that any promise by FDIC-C was free and clear of the rights of creditors. (Mot. 21.) FDIC-C is wrong. SVBFG alleges that the promise by FDIC-C was unequivocal that <u>all</u> depositors would have access to <u>all</u> their money at Bridge Bank beginning on Monday, March 13, 2023. (AC ¶¶ 1-3, 17-18, 43, 68-71, 147.) The promise of access to funds was without exception, and funds were not being withheld from transfer to satisfy any purported debts to creditors. SVBFG has also adequately alleged that it reasonably relied on FDIC-C's promises; that is sufficient. *CFTC* v. *Monex Credit Co*., 931 F.3d 966, 972 (9th Cir. 2019) ("Rule 8 does not require plaintiffs to plead around affirmative defenses.").

*Third*, FDIC-C relies on *Lavin* v. *Marsh*, 644 F.2d 1378 (9th Cir. 1981), to argue that SVBFG "proceeded at its own risk" by not confirming the truth of the March 12 and 13 press releases. (Mot. 22.) *Lavin* is inapposite because it involved (i) a claim for equitable estoppel that (ii) was based on the <u>unauthorized</u> representations of Army Reserve officers regarding plaintiff's eligibility for pension benefits that differed from the eligibility requirements set by statute. 644 F.2d at 1380, 1382-84. By contrast here, the Amended Complaint alleges that FDIC-C made unambiguous promises to the American public in <u>authorized</u> government communications by its <u>senior-most</u> officials based on statutory authority giving the Treasury Secretary the authority to do exactly what she did. (AC ¶¶ 42-48, 171-172.)

*Fourth*, FDIC-C argues that statements by FDIC-C officials in the months following March 2023 are "irrelevant" because they post-date reliance by SVBFG. (Mot. 22-23.) This argument is premised on *Penny* v. *Giuffrida*, a Tenth Circuit case discussing whether a plaintiff who was mistakenly issued a flood insurance policy by FEMA could equitably estop FEMA from denying

-22-

1   coverage under the policy.  897 F.2d 1543.  In *Penny*, the Tenth Circuit noted that FEMA's return

2   to plaintiff of the final premium payment was an action that "occurred after any possible reliance"

3   by plaintiff and that it was "not relevant to an [equitable] estoppel analysis."  *Id.* at 1548.  That

4   case does not stand for the sweeping proposition that any conduct following a plaintiff's reliance

5   on a defendant's promise is irrelevant to an affirmative misconduct analysis.  To the contrary, the

6   Ninth Circuit has made clear that when assessing allegations of affirmative misconduct, "each case

7   must be decided on its own particular facts and circumstances."  *Watkins*, 875 F.2d at 707.  Here,

8   although the post-March statements occurred after SVBFG's reliance on the original statements,

9   they are still relevant to the misconduct analysis because they confirm FDIC-C's misconduct in

10  representing to SVBFG and the rest of the nation that all deposits would be protected, while at the

11  same time secretly and without explanation blocking SVBFG's access to the Account Funds.

12          *Finally*, FDIC-C argues that it cannot be liable for acts committed by FDIC-R1.  FDIC-C's

13  argument ignores the numerous allegations in the Amended Complaint concerning FDIC-C's own,

14  affirmative conduct in blocking access to SVBFG's accounts.  (*Supra* 3-5, 7-9.) FDIC-C's cases

15  concerning holding FDIC-C liable for acts of FDIC-R1 are inapposite.  (*Supra* 9-11.)

16  **IV.    SVBFG Has Adequately Pleaded a Claim for Review of Final Agency Action.**

17          FDIC-C argues that SVBFG's claim for review of FDIC-C's denial of SVBFG's claims

18  for its uninsured deposits must be dismissed because the Court held that SVBFG's claims are not

19  for insured deposits or for "insurance coverage within the meaning of § 1821(f)."  (Mot. 24.)  The

20  question before the Court on a review of final agency action under 5 U.S.C. § 706 is not whether

21  SVBFG ultimately is entitled to relief under section 1821(f), but whether the FDIC-C's final

22  agency action on October 20, 2023, to "deny" SVBFG's claim for its uninsured deposits—based

23  on FDIC-C's wrongful conduct in unilaterally deciding to treat SVBFG's claim as a claim for

24  insured deposits under section 1821(f)—without due process or fair notice and in violation of the

25  Treasury Secretary's guarantee pursuant to the SRE, was "arbitrary, capricious, an abuse of

26  discretion, or otherwise not in accordance with law" such that the FDIC-C's final agency action

27  should be put aside.  (AC ¶ 157.)  Here, the Court's previous Order concluded that SVBFG's

28  claims are not preempted by section 1821(f) because they are not "for insurance coverage," and

-23-

1  are not "related to any determination of insurance coverage with respect to any deposit."

2  (Order 11, 12 (internal quotations omitted).)  The Court nowhere held or suggested that FDIC-C's

3  conduct was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

4  law, such that its final agency action "denying" SVBFG's claim for its uninsured deposits should

5  be set aside.  To the contrary, the Court's prior Order bolsters SVBFG's claim that FDIC-C acted

6  arbitrarily and contrary to law by issuing a final agency determination based on misconstruing

7  SVBFG's claim and without providing any adequate notice or process.    (Order 28-29).

8  Accordingly, whether SVBFG can recover on a claim made under section 1821(f), the final agency

9  action that FDIC-C took to deny a claim that SVBFG did not actually make should be set aside—

10  not least to avoid any potential collateral consequences to SVBFG from FDIC-C's misconduct.

11  **V.    SVBFG's Claim for Declaratory Relief Is Not Subject to Dismissal.**

12          FDIC-C seeks dismissal of SVBFG's declaratory relief claim because the "parties agree

13  that SVBFG's request for declaratory relief is tied to its other claims for relief and thus will rise

14  or fall with the plausibility of those claims."  (Mot. 24-25 (quoting Order 34).)  As with its First

15  Motion, "FDIC-C's arguments for dismissal of SVBFG's claims for declaratory relief simply

16  reiterate the substantive arguments that the FDIC-C made in support of" the instant Motion.

17  (Order 34.)  The Court held it "will not dismiss SVBFG's claims on this basis" (*id.*), and the Court

18  should do the same here because SVBFG's other claims are adequately pleaded.

19          Separately, as noted in SVBFG's opposition to the First MTD (ECF No. 66 at 21), the

20  declaratory relief SVBFG seeks both serves a useful purpose and may resolve uncertainty

21  underpinning this litigation by firmly establishing whether (1) Secretary Yellen's invocation of the

22  SRE requires FDIC-C to remit to SVBFG its Account Funds; and (2) FDIC-C must restore

23  SVBFG's deposit accounts and any accrued interest (other than prejudgment interest).

24  Accordingly, SVBFG's declaratory relief claim (Count I) should not be dismissed.  *See L.A. Cnty.*

25  *Bar Ass'n* v. *Eu*, 979 F.2d 697, 703 (9th Cir. 1992) ("[F]ederal courts should consider whether a

26  declaratory judgment will serve a useful purpose in clarifying and settling the legal relations

27  between the parties." (citation omitted)); *see also Gov't Emps. Ins. Co.* v. *Dizol*, 133 F.3d 1220,

28  1225 (9th Cir. 1998) (en banc) ("[W]hen other claims are joined with an action for declaratory

relief … , the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." (citation omitted)).

**VI.    Any Dismissal of SVBFG's Claims Should Be with Leave to Amend.**

Should the Court determine any of SVBFG's claims are deficient, SVBFG respectfully requests leave to amend any such claims.  Courts "shall grant leave to amend freely 'when justice so requires,'" *Lopez* v. *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15(a)), and requests for leave to amend "should be granted with extreme liberality," *Petersen* v. *Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013) (citation and internal quotation marks omitted).

Additionally, "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Eminence Capital, LLC* v. *Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted). As such, "[c]ourts rarely deny a motion for leave to amend for reason of futility," and, "before discovery is complete, as here, a proposed amendment is futile only if no set of facts can be proved under the amendment which would constitute a valid claim or defense." *Applied Materials, Inc.* v. *Demaray LLC*, 2022 WL 3139519, at *2 (N.D. Cal. Aug. 5, 2022) (internal quotations omitted)). Because SVBFG has already established that several of its claims are cognizable and the limited discovery SVBFG has received thus far has only strengthened its other claims, permitting further amendment (if necessary) would not be futile.

## **CONCLUSION**

For the foregoing reasons, the Court should deny FDIC-C's Motion.

1    Dated: October 10, 2024                Respectfully submitted,

2                                           */s/ Robert A. Sacks*
                                            Robert A. Sacks
3                                           Adam S. Paris
                                            Diane L. McGimsey
4                                           **SULLIVAN & CROMWELL LLP**
                                            1888 Century Park East
5                                           Los Angeles, California 90067
                                            Telephone:    (310) 712-6600
6                                           Facsimile:    (310) 712-8800

7                                           Sverker K. Hogberg
                                            **SULLIVAN & CROMWELL LLP**
8                                           550 Hamilton Avenue
                                            Palo Alto, California 94301
9                                           Telephone:    (650) 461-5600
                                            Facsimile:    (650) 461-5700

10
                                            *Attorneys for Plaintiff SVB Financial Group*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28