1

2

3          **UNITED STATES DISTRICT COURT**

4          **NORTHERN DISTRICT OF CALIFORNIA**

5          **SAN JOSE DIVISION**

6

7   SVB FINANCIAL TRUST,                        Case No. 23-cv-06543-BLF

8                    Plaintiff,

9          v.                                    **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S
10  FEDERAL DEPOSIT INSURANCE                    MOTION TO DISMISS THE
    CORPORATION,                                 AMENDED COMPLAINT**

11                   Defendant.                  [Re:  ECF No. 99]

12

13          Before the Court is Defendant Federal Deposit Insurance Corporation, in its corporate capacity's

14  ("FDIC-C") Motion to Dismiss Plaintiff SVB Financial Trust's[1] ("Trust") Amended Complaint. ECF 99

15  ("Mot."). The Trust opposes the motion. ECF 100 ("Opp."). The FDIC-C filed a Reply. ECF 102

16  ("Reply"). The Court heard oral argument on the motion on January 30, 2024. *See* ECF 132. For the

17  following reasons, the Court GRANTS IN PART and DENIES IN PART the motion to dismiss.

18  **I.     BACKGROUND**

19          **A.  Factual Background**

20          For purposes of this motion, the Court accepts as true all well-pled facts in the Trust's

21  Amended Complaint. *See* ECF 92 ("AC").

22          Between 2000 and March 2023, SVB Financial Group ("SVBFG") owned Silicon Valley

23  Bank ("SVB") and several other affiliated businesses. AC ¶ 32. SVBFG kept substantially all of its

24  funds deposited at SVB. *Id.* As of March 10, 2023, SVBFG had on deposit approximately $2.1

25

26  ───────────────

27  [1] This action and the related *SVB Financial Trust v. Federal Deposit Insurance Corp., as Receiver
    for Silicon Valley Bank, et al.*, No. 5:24-cv-01321-BLF (N.D. Cal.) ("FDIC-R Action") were
    initially brought by SVB Group ("SVBFG"). *See* ECF 1; FDIC-R Action, ECF 1. The parties in
28  both this action and the FDIC-R Action have stipulated to substitute SVB Financial Trust for SVBFG
    as plaintiff in both actions. *See* ECF 129; FDIC-R Action, ECF 146.

United States District Court
Northern District of California

billion in three separate deposit accounts at SVB. *Id.* ¶ 33, 72.

On March 10, 2023, SVB closed. *Id.* ¶ 34. On the same day, the California Department of Financial Protection and Innovation ("DFPI") took possession of SVB and appointed the Federal Deposit Insurance Corporation as receiver ("FDIC-R1"). *Id.* On the same day, the FDIC created the Deposit Insurance National Bank of Santa Clara ("DINB") and transferred all insured deposits of SVB to the DINB. *Id.* ¶ 36. The FDIC also announced that "[a]ll insured depositors [would] have full access to their insured deposits no later than Monday morning, March 13, 2023." *Id.* The FDIC also planned to pay uninsured SVB depositors an advance dividend. *Id.*

Nonetheless, the FDIC's March 10, 2023, announcement did not calm the market as planned and the FDIC became concerned that uninsured depositors would respond by rapidly withdrawing funds from other banks. *Id.* ¶ 41. Over the weekend of March 11, 2023, the Department of the Treasury, the FDIC and the Federal Reserve assessed the impact of the closure of SVB and Signature Bank on the American banking system and financial markets. *Id.* ¶ 42.

On March 12, 2023, the boards of both the Federal Reserve and the FDIC unanimously recommended to Treasury Secretary Janet Yellen that she invoke the systemic risk exception. *Id.* ¶ 43. After consulting with the President of the United States, Secretary Yellen invoked the Systemic Risk Exception, codified at 12 U.S.C. § 1823(c)(4)(G), to guarantee that all deposits at SVB, regardless of insurance status, would be paid in full and that depositors would immediately have access to their funds. *Id.*

The FDIC, Secretary Yellen and other government officials made public statements confirming that all uninsured deposits at SVB would be covered by the systemic risk exception. *Id.* ¶¶ 2, 47. For example, on March 12, 2023, Secretary Yellen, Federal Reserve Board Chair Jerome Powell, and FDIC Chairman Martin Gruenberg jointly announced that all depositors "[would] have access to all of their money starting Monday, March 13." *Id.* ¶ 2. Additionally, on March 13, 2023, the FDIC issued a press release stating that "[t]he transfer of all the deposits was completed under the systemic risk exception approved [on March 12, 2023]," and that "[d]epositors will have full access to their money beginning this morning." *Id.* ¶¶ 48, 69 (citing AC, Ex. 7 (Press Release, FDIC, FDIC Acts to Protect All Depositors of the former Silicon Valley Bank)).

United States District Court
Northern District of California

On Monday, March 13, 2023, all insured and uninsured deposits, including SVBFG's deposits at SVB, were transferred to the newly formed Silicon Valley Bridge Bank ("Bridge Bank"). *Id.* ¶ 3, 68. On March 15 and 16, 2023, SVBFG successfully withdrew approximately $180 million via eight wire transfers. *Id.* ¶ 73. However, on March 16, 2023, Bridge Bank began rejecting wire transfers, at the direction of senior FDIC-C employees, because FDIC-R1 instructed Bridge Bank to place a hold on SVBFG's accounts. *Id.* ¶ 74. With the knowledge and approval from the FDIC-C employees, the FDIC-R1 further directed Bridge Bank to assign SVBFG's deposit accounts to FDIC-R1, and Bridge Bank did so. *Id.* ¶ 75. As a result, SVBFG lost access to approximately $1.93 billion of its deposit ("Account Funds"). *Id.* ¶ 95.

On March 17, 2023, SVBFG filed a petition for relief under Chapter 11 of the Bankruptcy Code and obtained all rights of a debtor in possession. *Id.* ¶ 96. On March 27, 2023, Bridge Bank closed and the FDIC was appointed to act as the receiver for Bridge Bank ("FDIC-R2"). *Id.* ¶ 97 n.8. Substantially all of Bridge Bank's assets were transferred to First-Citizens Bank & Trust Company ("First-Citizens"). *Id.* ¶ 97. On or around April 3, 2023, the FDIC mailed a letter to Bridge Bank depositors and informed them that "[a]ll deposits [at Silicon Valley Bank] were fully insured" by the FDIC-C, and that "the full amount of your deposit was transferred" to First Citizens. *Id.* SVBFG's Account Funds were expressly excluded from the transfer to First Citizens. *Id.*

On June 26, 2023, SVBFG sent a letter to the FDIC-C demanding that the FDIC-C pay or give SVBFG full access to all its uninsured funds pursuant to Secretary Yellen's invocation of the systemic risk exception. *Id.* ¶ 104. The FDIC-C did not respond to this letter until months later. *Id.* On July 9, 2023, SVBFG filed an adversary proceeding in the bankruptcy court against the FDIC-C and both FDIC-Rs. *Id.* ¶ 105. On August 11, 2023, all three FDIC defendants moved to dismiss the adversary complaint. *Id.* ¶ 108. On the same day, the FDIC-R1 filed a motion to withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). *Id.* ¶ 109. On August 15, 2023, the FDIC-C and FDIC-R2 filed non-substantive joinders to the FDIC-R1's motion to withdraw the reference. *Id.* On December 13, 2023, Judge John P. Cronan granted the motion to withdraw reference. *Id.* ¶ 111; *see also In re SVB Fin. Grp.*, No. 23 CIV. 7218 (JPC), 2023 WL 8622521, at *12 (S.D.N.Y. Dec. 13, 2023).

1       On September 14, 2023, the bankruptcy court directed the FDIC-C to provide SVBFG with

2   a statement, in writing, setting forth the applicable rules and procedures that applied to the FDIC-

3   C's claims process under 12 U.S.C. § 1821(f). AC ¶ 115. On September 19, 2023, the FDIC-C sent

4   SVBFG a letter, which characterized SVBFG's June 26 letter as a timely claim for insurance

5   coverage under § 1821(f) and informed SVBFG that the FDIC-C would provide a final

6   determination regarding insurance coverage within 30 days. *Id.* ¶ 116. On October 20, 2023, the

7   FDIC-C denied SVBFG's claim for insurance coverage because SVBFG had already withdrawn

8   over $250,000 from its accounts at Bridge Bank and because Secretary Yellen's invocation of the

9   Systemic Risk Exception did not obligate the FDIC-C to follow any particular course of action. *Id.*

10  ¶¶ 118–19.

11      **B.  Procedural History**

12      The Trust filed this action against the FDIC-C on December 19, 2023. *See* ECF 1

13  ("Compl."). In its Complaint, the Trust brought eight claims for relief: (I) declaratory judgment

14  pursuant to 28 U.S.C. § 2201 *et seq.*, *id.* ¶¶ 105–10; (II) turnover of account funds pursuant to 11

15  U.S.C. § 542, *id.* ¶¶ 111–20; (III) violation of the automatic stay under 11 U.S.C. § 362(a), *id.* ¶¶

16  121–23; (IV) violation of the Trust's Fifth Amendment due process rights, *id.* ¶¶ 124–34; (V) review

17  of "the FDIC-C's policy of exercising discretion to determine not to pay or provide access to

18  uninsured deposits" under the Administrative Procedure Act ("APA"), *id.* ¶¶ 135–47; (VI) review

19  of the FDIC-C's § 1821(f) decision under the APA, *id.* ¶¶ 148–61; (VII) estoppel, *id.* ¶¶ 162–69;

20  and (VIII) failure to produce records under the Freedom of Information Act ("FOIA"), *id.* ¶¶ 170–

21  75. On August 8, 2024, the Court granted in part and denied in part the FDIC-C's motion to dismiss.

22  *See* ECF 85. Specifically, the Court 1) dismissed Count I without leave to amend to the extent it

23  requested prejudgment interest and denied the motion to dismiss with respect to all other requests

24  for declaratory relief; 2) dismissed Counts II, IV, and V without leave to amend; 3) denied the

25  motion to dismiss Count VII; and 4) dismissed Counts III and VIII without leave to amend. *See* ECF

26  85.

27      On August 29, 2024, the Trust filed an Amended Complaint. *See* AC. In its Amended

28  Complaint, the Trust brings five claims for relief: (I) declaratory judgment pursuant to 28 U.S.C. §

United States District Court
Northern District of California

2201 *et seq.*, *id.* ¶¶ 126–31; (II) turnover of account funds pursuant to 11 U.S.C. § 542, *id.* ¶¶ 132–41; (IV) violation of the Trust's Fifth Amendment due process rights, *id.* ¶¶ 142–54; (VI) review of the FDIC-C's Final Agency Action Under 5 U.S.C. § 706, *id.* ¶¶ 155–68; and (VII) estoppel, *id.* ¶¶ 169–76.

On March 5, 2024, SVBFG filed a lawsuit against the FDIC, in its capacity as receiver for SVB ("FDIC-R1"), and the FDIC, in its capacity as receiver for Bridge Bank ("FDIC-R2"). *See SVB Financial Trust v. Federal Deposit Insurance Corp., as Receiver for Silicon Valley Bank, et al.*, No. 5:24-cv-01321-BLF (N.D. Cal.) ("FDIC-R Action"). On March 21, 2024, the Court granted a motion to relate the FDIC-R Action with this action. *See* ECF 38. On November 29, 2024, the Court granted in part and denied in part the FDIC-R1's and the FDIC-R2's motion to dismiss. *See* FDIC-R Action, ECF 108. On January 10, 2025, the FDIC-R1 and the FDIC-R2 filed an Answer in the FDIC-R Action. *See* FDIC-R Action, ECF 135.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

//

United States District Court
Northern District of California

1

**B.  Leave to Amend**

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1051–52. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* at 1052. However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III.    REQUESTS FOR JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

The FDIC-C requests that the Court take judicial notice of 1) the Transfer Agreement between the FDIC-R1 and Bridge Bank, ECF 99-3 ("Transfer Agreement"); 2) the Call Notice and Call Assignment between the FDIC-R1 and Bridge Bank, ECF 99-4 ("Call Notice & Assignment");

and 3) an FDIC Organization Directory – Headquarters ("FDIC Organization Directory"), ECF 99-5. *See* Mot. at 3-4. The FDIC-C argues that judicial notice of these documents is appropriate because they are "publicly available on a government website." Mot. at 3-4. The Trust does not object to judicial notice of the Transfer Agreement. Opp. at 2. With respect to the Call Notice & Assignment and the FDIC Organization Directory, the Trust argues that these documents "were only recently made public through a filing in SVBFG's Chapter 11 proceeding," and thus are not noticeable "to prove the truth of the matters contained therein." *Id.* at 2-3. The Court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Here, the Trust has not objected to the authenticity of the Call Notice & Assignment or the FDIC Organization Directory. *See* Opp. at 2-3. Thus, judicial notice of these documents is appropriate because each document is a matter of public record. *See Beulah v. Broomfield*, No. 24-cv-00205-BLF, 2024 WL 1607495, at *2 (N.D. Cal. Apr. 11, 2024) (Freeman, J.) (taking judicial notice of court filings); *Thompson v. JPMorgan Chase Bank, N.A.*, No. 16-CV-06134-BLF, 2017 WL 897440, at *2 (N.D. Cal. Mar. 7, 2017) (taking judicial notice of printouts from a government website).

Accordingly, the Court GRANTS the FDIC-C's requests for judicial notice.

## IV. DISCUSSION

### A. Declaratory Judgment (Count I)

The FDIC-C argues that the Trust's declaratory judgment claim fails because the claim is "tied to its other claims for relief." Mot. at 24-25. According to the FDIC-C, because the Trust's other claims are not plausible and should be dismissed, its "declaratory relief falls with them." *Id.* at 25. In response, the Trust argues that the Court should not dismiss its declaratory judgment claim because the other claims are adequately pled. Opp. at 24.

It is well-established that declaratory judgment is not an independent cause of action, but an equitable remedy. *See Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1038 (9th Cir. 2023) (noting that requests for declaratory and injunctive relief are not stand-alone claims); *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists."). As discussed below, because the Court

finds the Trust's turnover claim and promissory estoppel claim are adequately pled, the Trust's claim for declaratory relief rises with those claims. *See* Section III.B and III.E *infra*. Thus, the FDIC-C's motion to dismiss the Trust's claim for declaratory judgment is DENIED.

### B. Turnover Claim Pursuant to Section 542 of the Bankruptcy Code (Count II)

Count II of the Complaint seeks turnover of the Trust's Account Funds under § 542(b) of the Bankruptcy Code. Section 542(b) states:

> an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b) ("§ 542(b)"). "To prevail on a claim for turnover, a plaintiff must demonstrate '(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate.'" *In re Brown*, No. 18-10617 (JLG), 2022 WL 4390454, at *20 (Bankr. S.D.N.Y. Sept. 22, 2022) (quoting *Gletzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 327 (Bankr. E.D.N.Y. 2018)). The Trust only argues that FDIC-C has "control" over the deposits. *See* AC, ¶¶ 8, 91, 94; Opp. at 5-10.

### 1. The FDIC-C need not assume the Trust's deposit liabilities to have control over the Account Funds under § 542(b).

The FDIC-C argues that the Trust has still failed to adequately allege that the FDIC-C "has possession, custody, or control of" the Trust's deposit liabilities. Mot. at 7 (citing ECF 85 at 22). According to the FDIC-C, the FDIC-R1 "has sole possession of [the Trust's] deposit liabilities and [the] FDIC-C never assumed those liabilities." Mot. at 8. In response, the Trust argues that the FDIC-C "does not need to assume" the deposit liabilities to have "control" over the Account Funds under § 542(b). Opp. at 6 (citing cases).

Upon reviewing the authorities cited by the parties, the Court agrees with the Trust that having "control" of a deposit liability under § 542(b) does not require assuming the deposit liabilities. Courts have found that the term "control" is not defined in the Bankruptcy Code and have

United States District Court
Northern District of California

interpreted the term using its dictionary definitions. *See In re: JASON SCOTT BROWN, Debtor. KENNETH BROWN, Appellant, v. CHRISTOPHER BARCLAY, Appellee.*, No. AP 15-90085-MM, 2018 WL 2308267, at *5 (B.A.P. 9th Cir. May 21, 2018), *aff'd sub nom. In re Brown*, 953 F.3d 617 (9th Cir. 2020). In *Brown*, the Bankruptcy Appellate Panel of the Ninth Circuit found that in the Bankruptcy Code, "[t]o 'control' means to 'direct or supervise,' to 'limit or regulate something.'" *Id.* (citing Oxford American Dictionary, (Second Ed. 2008)); *see Thompson v. Gen. Motors Acceptance Corp.*, 566 F.3d 699, 702 (7th Cir. 2009) (using Webster's Dictionary and interpreting "control" in 11 U.S.C. § 362 as "to exercise restraining or directing influence over" or "to have power over"); *In re Arcapita Bank B.S.C.(c)*, 628 B.R. 414, 480 (Bankr. S.D.N.Y. 2021) ("To 'exercise control' means 'to exercise restraining or directing influence over' or 'to have power over.'"). The Court finds that the case cited by the FDIC-C is distinguishable. Reply at 3 (citing *Muehlberger*, 319 B.R. at 667). In *Muehlberger*, the Bankruptcy Court found the underlying debt was discharged under Kansas law governing accord and satisfaction, and thus the debtor no longer "owes" a debt subject to turnover pursuant to 11 U.S.C. § 542. *Muehlberger*, 319 B.R. at 667. Nonetheless, the Bankruptcy Court there did not interpret the meaning of "control" under § 542(b).

### 2. The FDIC-C's control may not be disregarded as a matter of law.

The FDIC-C further argues that, because the FDIC-C and the FDIC-R are entirely separate entities as a matter of law, the FDIC-C cannot be liable for the FDIC-R1's instruction to Bridge Bank to place holds on the Account Funds. Mot. at 10-11 (citing *In re Washington Bancorporation*, 1996 WL 148533 (D.D.C. Mar. 19, 1996); *Patriot Square Assocs.* v. *FDIC*, 1992 WL 12957147 (D.D.C. Sept. 25, 1992); *Pageland 29 Ltd.* v. *FDIC*, 1992 WL 391377 (D.D.C. Dec. 14, 1992)). The FDIC-C argues that because the FDIC-C and the FDIC-R are "legally separate" entities, the FDIC-C cannot "direct[]" FDIC-R1's actions. Mot. at 11 (citing *Bullion Servs., Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995)). In response, the Trust argues that the authorities cited by the FDIC-C are distinguishable because they only hold that "FDIC-C could not legally enforce" its directives to FDIC-R1, and that they do not address "factual allegations concerning FDIC-C's direction of FDIC-R1's actions." Opp. at 10-11.

The Court agrees with the Trust. Unlike the three cases cited by the FDIC-C, as discussed

1   above, the Trust has sufficiently alleged that the FDIC-C itself is responsible for denying the Trust

2   access to its Account Funds, on which a claim for turnover pursuant to § 542(b) may be brought

3   against the FDIC-C. The FDIC-C's reliance on *Bullion* is also off-point. *See* Mot. at 11. In *Bullion*,

4   the Ninth Circuit reversed the district court's decision to remand claims brought against FDIC

5   Corporate to state court because it had independent removal rights from FDIC Receiver for another

6   insolvent bank. *Bullion Servs.*, 50 F.3d at 709. Unlike *Bullion*, here, the Court finds that the Trust

7   has plausibly alleged that the FDIC-C is currently controlling the Account Funds independent of the

8   FDIC-R1. *See* AC ¶¶ 94-95.

### 3.    The Trust has adequately pled its turnover claim.

10  The FDIC-C argues that the Trust has still failed to adequately plead its turnover claim. Mot.

11  at 8-10, 12-14. Specifically, the FDIC-C contends that the Trust has failed to allege that the FDIC-

12  C currently has control of the Trust's deposit liabilities. Mot. at 9-10; Reply at 3-4 (citing § 542(b)

13  and *In re Al Muehlberger Concrete Constr., Inc.*, 319 B.R. 663, 667 (Bankr. D. Kan. Jan. 30, 2005)).

14  The FDIC-C further argues that the Court should disregard the Trust's allegations "that FDIC-C

15  directed FDIC-R1 to block SVBFG's account access because they are factually contradicted by the

16  emails referenced in the Amended Complaint and by materials subject to judicial notice." Mot. at

17  13-14 (citing AC ¶ 77, ECF 99-3 (Transfer Agreement), ECF 99-5 (FDIC-C Organizational

18  Directory), and ECF 99-6 (March 13 emails)).

19  In response, the Trust argues that the FDIC-C's contention "is a factual inquiry inappropriate

20  for resolution at the pleading stage." Opp. at 8 (citing AC ¶¶ 77-79, 81-94). The Trust further

21  contends that it has adequately alleged that the FDIC-C currently has "control" over the Account

22  Funds for the purpose of § 542(b), and that its pleadings should not be disregarded. *See* Opp. at 6-

23  10.

24  Considering the facts in the Amended Complaint, the Court finds that the Trust has

25  adequately pled its turnover claim. Although these allegations supporting "control" are vanishingly

26  thin, the Court concludes that the Trust has met the pleading standard. In the Amended Complaint,

27  the Trust alleges that: 1) on March 13, 2023, FDIC-C employees instructed FDIC-R employees via

28  email to withhold the Trust's Account Funds, AC ¶¶ 77-78; 2) over the ensuing days, FDIC-R1 and

Bridge Bank employees identified deposit accounts from the Trust and placed holds on those accounts, *id.* ¶ 79; 3) on March 15, 2023, an FDIC-R1 employee updated the FDIC-C on the efforts to block the Trust's access to its accounts, *id.*; 4) between March 15 and 17, 2023, employees from the FDIC-C and the FDIC-R1 continued to exchange emails concerning the FDIC-C's instruction to the FDIC-R1 and the status on the holds placed on the Trust's accounts, *id.* ¶¶ 80-88; and 5) as suggested by a March 16, 2023, email, the FDIC-C was directly involved in the decision to assign the Trust's Account Funds from Bridge Bank back to the FDIC-R1, *id.* ¶ 90. The Court finds the Trust has pled sufficient facts from which a reasonable inference could be drawn that the FDIC-C has "control" over the Trust's Account Funds pursuant § 542(b).

The Court also disagrees with the FDIC-C's contention that the Trust has failed to allege that the FDIC-C "currently has sufficient control of [the Trust's] deposit liabilities." Reply at 3; *see* Mot. at 9-10; ECF 139, Hearing Tr. at 38:19-39:1. When accepting as true all well-pled factual allegations and construing them in the light most favorable to the Trust, the Court finds that reasonable inference can be drawn that the FDIC-C has continued to direct the FDIC-R1 to deny the Trust access to the Account Funds after March 2023. *See* AC ¶¶ 81-82, 83-90.

The Court further disagrees with the FDIC-C's contention that the Trust's factual allegations should be disregarded as a matter of fact. Mot. at 12-14; Reply at 7-9. The FDIC-C's argument is based on a series of emails incorporated by reference in paragraphs 76-85 of the Amended Complaint that the FDIC-C asserts were sent by employees acting on behalf of the FDIC-R. To make this point, the FDIC-C asks the Court to consider the FDIC Organization Directory and the Transfer Agreement. Mot. at 14. Upon reviewing the relevant record, the Court finds that the March 13 emails do not contain information sufficient to indicate the employment capacities of the persons who participated in the email chain. *See* ECF 99-5. The FDIC Organization Directory and Transfer Agreement do not, on their face, conclusively establish that employment role either. *See* ECF 99-3, 99-5. Thus, the Court finds that too many inferences need to be drawn in FDIC-C's favor to support the FDIC-C's contention that those emails were not sent by the FDIC-C employees and that those emails did not contain directions from the FDIC-C. Those factual inferences are not warranted at the motion to dismiss stage. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008)

1   ("[T]he court need not . . . make unwarranted deductions or unreasonable inferences" when ruling

2   on a motion to dismiss.). However, the Trust is advised that upon a developed record, this claim

3   may prove untenable if FDIC-C's assertions are correct.

4          Accordingly, the FDIC-C's motion to dismiss the Trust's turnover claim is DENIED.

5          **C.  Violation of Plaintiff's Fifth Amendment Due Process Rights (Count IV)**

6          "The Due Process Clause of the Fourteenth Amendment imposes procedural constraints on

7   governmental decisions that deprive individuals of liberty or property interests." *Nozzi v. Hous.*

8   *Auth. of City of Los Angeles*, 806 F.3d 1178, 1190 (9th Cir. 2015), *as amended on denial of reh'g*

9   *and reh'g en banc* (Jan. 29, 2016). To prevail on a procedural due process claim, the plaintiff "must

10  establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a

11  deprivation of that interest by the government, [and] (3) a lack of process.'" *Blumenkron v.*

12  *Multnomah Cnty.*, 91 F.4th 1303, 1314 (9th Cir. 2024) (alteration in original) (quoting *Shanks v.*

13  *Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008)).

14         As an initial matter, the FDIC-C argues that the Trust must plausibly allege a separate cause

15  of action to sue the FDIC-C, a federal agency, for a due process violation. Mot. at 15 (citing *F.D.I.C.*

16  *v. Meyer*, 510 U.S. 471, 483-86 (1994)). The FDIC-C recognizes that it did not raise this argument

17  in its prior motion to dismiss but argues that the Ninth Circuit is "forgiving" of new arguments made

18  in a second motion to dismiss. Mot. at 15 (citing *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313,

19  319 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. 273 (2019)). The FDIC-C

20  contends that the Trust has failed to allege a cause of action to support the due process claim and

21  that the commonly used claims are unavailable to support a claim against a federal agency. Mot. at

22  16.

23         The Trust argues that the FDIC-C's argument is untimely under Federal Rule of Civil

24  Procedure 12(g)(2) because the FDIC-C failed to raise the argument in the first motion to dismiss.

25  Opp. at 12-13. The Trust further argues that a separate cause of action is not required for its due

26  process claim because it is seeking injunctive relief as opposed to damages. Opp. at 12-14. The Trust

27  contends that it has adequately pled a claim under the Administrative Procedure Act ("APA") even

28  if it is required to plead a separate cause of action. Opp. at 14.

1     The Court finds that the FDIC-C is not barred from raising this argument at this stage. "Rule

2   12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-

3   answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12 (b)(6)."

4   *Apple iPhone Antitrust Litig.*, 846 F.3d at 318. The Ninth Circuit has explained that a district court

5   may "properly entertain a second [Rule 12(b)(6)] motion if it were convinced it was not interposed

6   for delay and that addressing it would expedite disposition of the case on the merits." *Id.* at 319

7   (citation omitted). Here, the Court has no reason to believe that the FDIC-C seeks to delay the

8   litigation by raising the argument for the first time in its second motion to dismiss. Thus, the Court

9   will consider the FDIC-C's argument on the merits because doing so is "in the interests of judicial

10  economy." *United States v. Sutter Health*, 2021 WL 9182525, at *3 (N.D. Cal. Nov. 2, 2021)

11  (adjudicating an issue first brought in a second motion to dismiss).

12     To bring a claim for damages resulting from a due process violation against a federal agency,

13  a plaintiff must allege a separate cause of action. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 483-86 (1994)

14  (dismissing a Fifth Amendment due process claim against the FDIC seeking damages because there

15  was no implied *Bivens* cause of action). The Trust does not dispute this requirement. *See* Opp. at

16  13-14. Rather, it contends that a separate cause of action is not required because it seeks injunctive

17  relief, not damages. *See* Opp. at 13 (citing *Elmco Props., Inc. v. Second Natl's Fed. Savs. Ass'n*, 94

18  F.3d 914, 918, 920-22 (4th Cir. 1996) and *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. F.D.I.C.*, 132 F.

19  Supp.3d 98, 121-24 (D.D.C. 2015)).

20     The Court need not address whether a separate cause of action is required for a due process

21  claim seeking injunctive relief because the Trust effectively is seeking damages for its due process

22  claim in the guise of injunctive relief. Here, the Trust alleges that it "has a claim of entitlement to

23  the Account Funds because the Treasury Secretary's invocation and determination unequivocally

24  guaranteed all deposits of all depositors." AC ¶ 147. The Trust alleges that it wrote a letter to the

25  FDIC-C on June 26, 2023 demanding payment of the Account Funds, that the FDIC-C did not

26  acknowledge the letter until after the Trust filed an adversary complaint and the Bankruptcy Court

27  raised due process issues, and that the FDIC-C treated the Trust's request as a timely deposit

28  insurance claim under § 1821(f) and denied the claim. AC ¶¶ 104, 151. The Trust alleges that the

1  FDIC-C's § 1821(f) claims process is inadequate for uninsured deposits. AC ¶ 153. For remedy, the

2  Trust seeks "injunctive relief prohibiting the FDIC-C from continuing to deny [the Trust] access to

3  its Account Funds." AC ¶ 154. Based on these allegations, it appears that the Trust essentially seeks

4  monetary relief from the FDIC in the form of return of its Account Funds, despite labeling its request

5  as "injunctive relief." Thus, the Court finds that the Trust is required to allege a separate cause of

6  action for its due process claim seeking damages. *See Meyer*, 510 U.S. at 483-86.

7      The Court finds that the Trust has failed to plead a separate cause of action for its due process

8  claim. *See Meyer*, 510 U.S. at 483-86. The parties do not dispute that the Trust has failed to allege

9  one of the commonly used causes of action to support its due process claim, such as a cause of action

10  brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), 42 U.S.C. § 1983, or *Ex

11  parte Young*, 208 U.S. 123 (1908), because these claims are unavailable here. *See* Mot. at 16-17;

12  Opp. at 14. To the extent that the Trust argues that it has adequately pled a claim under the APA as

13  a separate cause of action for its due process claim, for the reasons stated in Part III.D, *infra*, the

14  Court finds that the Trust has failed to adequately plead a final agency action that warrants judicial

15  review. Thus, the Court finds that the Trust has failed to plead a separate cause of action which is

16  required for its due process claim seeking damages. *See Meyer*, 510 U.S. at 483-85.

17      On this basis alone, the Court GRANTS the FDIC-C's motion to dismiss Count IV

18  WITHOUT LEAVE TO AMEND. The Court need not reach the FDIC-C's remaining argument that

19  the Trust has failed to plausibly allege that the FDIC-C deprived the Trust of property. Mot. at 17-

20  18; Reply at 9.

21      **D.  Review of Final Agency Action Under 5 U.S.C. § 706 (Count VI)**

22      The Trust's Count VI alleges that the FDIC-C's denial of the Trust's administrative claims

23  for the Trust's uninsured deposits violated 12 U.S.C. § 1821(f) ("§ 1821(f)"). AC ¶¶ 155-68. The

24  Trust alleges that the FDIC-C has failed to establish "any rules or procedures governing the

25  submission or adjudication of uninsured deposit claims for Silicon Valley Bank or Bridge Bank

26  depositors," and the Court "must" set aside the FDIC-C's determinations because they are "arbitrary,

27  capricious, an abusive of discretion, or otherwise not in accordance with law." *Id.* ¶¶ 157, 160.

28      The FDIC-C argues that, as the Court concluded in its Order dismissing the Complaint, the

Trust's claims are not related to "any insured deposit" or claims for "insurance coverage" within the meaning of § 1821(f). Mot. at 24 (citing ECF 92 at 11-12). Thus, the Trust's Count VI must fail because § 1821(f) only authorizes judicial review of a "claim for insurance coverage." Reply at 102 (citing § 1821(f)(4)).

In response, the Trust argues that Count VI is based on the FDIC-C's final agency action on October 20, 2023, that denied the Trust's claim for its uninsured deposits. *See* Opp. at 23-24; *see also* AC ¶¶ 12-13. The Trust argues that, because the FDIC-C made its unilateral decision without due process or fair notice, the Court should review and put aside that decision. Opp. at 23.

The Court finds that the Trust has failed to allege a final agency action that can be reviewed by the Court. § 1821(f)(4) authorizes the Court to review a final agency action by the FDIC-C "regarding any claim *for insurance coverage*." § 1821(f)(4) (emphasis added). As the Court determined in its previous Order dismissing the Complaint, the Trust's claims are "not for insurance coverage because it seeks recovery that is distinct from the insured amounts to which it is entitled by statute." ECF 85 at 12. Thus, the Court finds that it lacks authority under § 1821(f) to review the FDIC-C's final agency action on October 20, 2023. The Court notes that the Trust has failed to identify any final agency action other than the FDIC-C's denial of the Trust's § 1821(f) claim. *See* AC ¶¶ 155-68.

Accordingly, the FDIC-C's motion to dismiss Count VI is GRANTED WITHOUT LEAVE TO AMEND.

### E.  Promissory Estoppel (Count VII)

In its prior Order, the Court denied the FDIC-C's motion to dismiss the Trust's promissory estoppel claim. *See* ECF 85 at 31-34. Specifically, the Court found that there is a waiver of sovereign immunity for actions against the FDIC and that promissory estoppel claims are meant to reach the FDIC. *Id.* at 32. The Court found that the FDIC-C had forfeited its argument that the Trust had failed to allege the elements of promissory estoppel because the FDIC-C did not raise the argument in its opening brief of its first motion to dismiss. *See* ECF 85 at 33.

The FDIC-C argues that the Court did not address the merits of whether the Trust had plausibly pled a promissory estoppel claim in its prior Order, and thus it can re-raise the issue in its

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

motion to dismiss the Amended Complaint. Mot. at 18-19. Considering the merits, the FDIC-C argues that affirmative misconduct on the part of the FDIC is required to adequately allege the Trust's promissory estoppel claim and the Trust has failed to allege affirmative misconduct in the Amended Complaint. Mot. at 19-20 (citing *Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 WL 1704745, at *12 (E.D. Va. Apr. 27, 2010)).

In response, the Trust argues that the FDIC-C's request is improper because it is seeking reconsideration of the Court's decision denying the FDIC-C's first motion to dismiss the promissory estoppel claim. Opp. at 15-16. The Trust argues that the FDIC-C is not entitled to re-argue its promissory estoppel arguments because the FDIC-C did not raise those arguments in the first motion to dismiss. *Id.* (citing Fed. R. Civ. P. 12(g)(2)). The Trust further contends that it is not required to plead affirmative misconduct for its promissory estoppel claims, and that it has adequately alleged affirmative misconduct even if it is required to do so. Mot. at 17-23.

>    i.    **The Court will consider the FDIC-C's challenge to the adequacy of the promissory estoppel claim.**

As an initial matter, the Court finds that the FDIC-C is not barred from re-raising this argument at this stage. Federal Rule of Civil Procedure 12(g) prohibits parties "from bringing successive motions to dismiss that raise arguments that could have been made in a prior motion." *DeSoto Cab Co., Inc. v. Uber Techs., Inc.*, No. 16-CV-06385-JSW, 2020 WL 10575294, at *3 (N.D. Cal. Mar. 25, 2020). Nonetheless, "courts have discretion to consider a successive motion under Rule 12(g) if to do so would facilitate judicial economy and efficiency." *Id.* (citing *In re Apple Iphone Antitrust Litig.*, 846 F.3d at 319). In its previous Order, the Court did not consider whether the Trust had adequately pled its promissory estoppel claim. *See Valerio v. Crawford*, 306 F.3d 742, 754 n.4 (9th Cir. 2002) (en banc) (distinguishing between a finding of waiver and decision on the merits); ECF 85 at 33. Thus, the FDIC-C's motion is not for reconsideration. Additionally, the Court finds that Rule 12(g)(2) is inapplicable because the FDIC-C did raise this argument in the first motion to dismiss. *See* Opp. at 15-16 (recognizing that the Trust raised this argument in its reply brief of the first motion to dismiss); *Desoto Cab.*, 2020 WL 10575294, at * 10. In any event, the Court can and will exercise its discretion to consider the FDIC-C's argument on its merits because

United States District Court
Northern District of California

1    doing so "would facilitate judicial economy and efficiency." *DeSoto Cab*, 2020 WL 10575294, at

2    *3. Accordingly, the Court will consider the FDIC-C's arguments on the merits.

3         **ii.    The Trust's promissory estoppel claim requires affirmative misconduct.**

4         Under federal common law and Ninth Circuit precedent, a promisee who brings a promissory

5    estoppel claim against the promisor must show: "(1) the existence of a promise, (2) which the

6    promisor reasonably should have expected to induce the promisee's reliance, (3) which actually

7    induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only

8    by enforcement of the promise." *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d 443,

9    445 (9th Cir. 1992). The FDIC-C argues that, in addition to the traditional elements of estoppel,

10   when a claim is made against the federal government, the Trust must also satisfy the element of

11   affirmative misconduct to prevail on its promissory estoppel claim. Mot. at 19 (citing *Koroma*, 2010

12   WL 170475, at *2). According to the FDIC-C, courts often apply equitable estoppel cases to

13   evaluate the affirmative misconduct element for promissory estoppel cases. Mot. at 19-20 (citing

14   cases). The FDIC-C contends that the affirmative misconduct element of promissory estoppel

15   requires the pleading of "an affirmative misrepresentation or affirmative concealment of a material

16   fact" by the government. Mot. at 20 (citing *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir.

17   2011)). In response, the Trust argues that affirmative misconduct is not a required element for

18   promissory estoppel claims against the government because promissory estoppel does not implicate

19   equitable estoppel's policy concern that "the Government is unable to enforce the law because the

20   conduct of its agents has given rise to an estoppel." Opp. at 18 (citing *Heckler v. Cmty. Health Servs.*

21   *Of Crawford Cnty.*, 467 U.S. 51, 60 (1984)). The Trust argues that the Court should determine the

22   liability of FDIC-C "in the same fashion as that of a private party," and thus the affirmative

23   misconduct is not required for its promissory estoppel claim. Opp. at 19 (citing *Stagen v. FDIC*, 152

24   F.3d 929 (9th Cir. 1998)). Neither party has located any Ninth Circuit authority that squarely

25   addresses this affirmative misconduct requirement for promissory estoppel claims against a

26   government agency. *See* Opp. at 18; Reply at 12; ECF 139, Hearing Tr. at 24:8-16.

27        Considering the authorities cited by the parties, the Court finds persuasive that affirmative

28   misconduct is a required element for promissory estoppel claims against the government. *See, e.g.,*

*Koroma v. Richmond Redevelopment & Hous. Auth.*, 2010 WL 1704745, at *12 (E.D. Va. Apr. 27, 2010); *United States v. Vantage Tr. Fed. Credit Union*, No. 3:17-CV-0348, 2018 WL 306920, at *6 (M.D. Pa. Jan. 5, 2018); *Jones Motor Co. v. Teledyne, Inc.*, 732 F. Supp. 490, 495-96 (D. Del. 1990). In *Koroma*, the Eastern District of Virginia dismissed plaintiff's promissory estoppel claim brought under federal common law against Richmond Redevelopment & Housing Authority ("RRHA"), a local agency that administrated Section 8 Housing Choice Voucher Program promulgated by the U.S. Department of Housing and Urban Development, for failing to allege affirmative misconduct by the RRHA. *See Koroma*, 2010 WL 1704745, at *1, *12-13. In doing so, the Eastern District of Virginia relied on Fourth Circuit precedent addressing equitable estoppel and explained that "[t]o prevail on a claim of promissory estoppel against the federal government, one must show the traditional elements of estoppel as well as affirmative misconduct." *Id.* at *12 (citing *Dawkins v. Witt*, 318 F.3d 606, 611-12 (4th Cir. 2003)); *see Vantage Tr. Fed. Credit Union*, 2018 WL 306920, at *6 (dismissing promissory estoppel counterclaim against the United States for failing to allege affirmative misconduct on the part of the United States or its agency, the Department of Veterans Affairs); *Jones Motor*, 732 F. Supp. at 495-96 (dismissing plaintiff's claim against the United States Government under a theory of promissory estoppel for failure to prove affirmative misconduct).

The Court is not aware of any Ninth Circuit case that squarely rejects requiring affirmative misconduct as an element in a promissory estoppel claim brought against the government. For example, in *Jablon v. U.S.*, the Ninth Circuit considered a claim of recovery against the United States based upon promissory estoppel and dismissed the claim because "the United States ha[d] not waived its sovereign immunity with regard to a promissory estoppel cause of action." 657 F.2d 1064, 1065, 1070 (9th Cir. 1981). The Ninth Circuit explained that promissory estoppel "create[s] a cause of action, whereas equitable estoppel [bars] a party from raising a defense." *Id.* at 1068. The Ninth Circuit explained that it had dismissed several cases based on "an equitable estoppel theory where the estoppel in question is arguably 'promissory estoppel' rather than 'equitable estoppel,'" including *Vickars-Henry* because "no affirmative misconduct [was] found." *Id.* at 1069 n.7 (citing *Vickars-Henry Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 629 F.2d 629 (9th Cir. 1980), among others).

United States District Court
Northern District of California

Similarly, in *Vickars-Henry*, the Ninth Circuit considered an estoppel claim against the Board of Governors of the Federal Reserve System for denying a request for certification under section 1103 of the Internal Revenue Code, 16 U.S.C. § 1103, and section 2 of the Bank Holding Company Act, 12 U.S.C. § 1841. *Vickars-Henry*, 629 F.2d at 630, 635. The Ninth Circuit explained that "[f]undamental to [estoppel claims against the government] is that, in addition to satisfying the elements of ordinary estoppel, the governmental conduct complained of must amount to 'affirmative misconduct.'" *Vickars-Henry*, 629 F.2d at 635 (citing *Santiago v. Immigr. & Naturalization Serv.*, 526 F.2d 488, 491 (9th Cir. 1975)). The Ninth Circuit further explained that, "[i]n the instant case, the affirmative misconduct requirement 'must be read as requiring an affirmative misrepresentation or affirmative concealment of a material fact by the government.'" *Vickars-Henry*, 629 F.2d at 635 (citing *United States v. Ruby Co.*, 588 F.2d 697, 703-04 (9th Cir. 1978)). The Ninth Circuit affirmed the dismissal of the estoppel claim because there was "no real basis for challenging the agency's determination." *Vickars-Henry Corp.*, 629 F.2d at 636. In light of *Jablon* and *Vickars-Henry*, the Court finds that, while the Ninth Circuit requires affirmative misconduct as an element in an equitable estoppel claim against the government, the Ninth Circuit has not held that affirmative misconduct is not a required element for a promissory estoppel claim against the government. Thus, based on persuasive authority from courts outside the Ninth Circuit, and at least a tacit approval by the Ninth Circuit, this Court finds that the Trust must plead and prove affirmative misconduct by the FDIC-C.

The Court further finds that the Trust's "policy concerns" do not change the above result. *See* Opp. at 18. While the Supreme Court in *Heckler* explained that a private party could not prevail in its estoppel claim against the government "without at least demonstrating that the traditional elements of an estoppel [were] present," it did not address whether affirmative misconduct should be an element for a promissory estoppel claim against the government. 467 U.S. at 60-61. The Trust's reliance on *Stagen v. FDIC*, 152 F.3d 929, 1998 WL 385453 (9th Cir. 1998) is also off-point. In *Stagen*, plaintiffs brought claims of intentional interference and fraud against Resolution Trust Corporation ("RTC") in both its corporate capacity and its receiver capacity for failure to recommence funding of a loan. 1998 WL 385453, at *1. The Ninth Circuit affirmed a dismissal of

1  the claims against RTC in its corporate capacity because plaintiffs had failed to "point to any conduct

2  on the part of RTC in its corporate capacity in connection with their allegations of wrongdoing." *Id.*

3  at *2. Unlike here, *Stagen* did not involve an estoppel claim, and the Ninth Circuit did not address

4  whether affirmative misconduct was an element for estoppel claims. *See id.*

5      For the above reasons, the Court finds that affirmative misconduct is a required element in

6  the Trust's promissory estoppel claim against the FDIC-C.

7      **iii.    The Trust has adequately pled its promissory estoppel claim.**

8      Considering the adequacy of the pleading, the parties do not dispute that the Trust has

9  adequately alleged the traditional elements of promissory estoppel. *See* Mot. at 20; Opp. at 18.

10  Rather, the FDIC-C argues that, under the heightened pleading standard in Federal Rule of Civil

11  Procedure 9(b), the Trust has failed to adequately plead the affirmative misconduct element. Mot.

12  at 20. Specifically, the FDIC-C contends that the Trust's alleged March 12-13 press releases and the

13  FDIC-C's statements in the months following March 2023 are not affirmative misconduct. *See* Mot.

14  at 20-23. In response, the Trust argues that it has adequately pled the affirmative misconduct element

15  even under the Rule 9(b) standard. *See* Opp. at 21.

16      Rule 9(b) requires that "a party must state with particularity the circumstances constituting

17  fraud." Fed. R. Civ. P. 9(b). The applicability of Rule 9(b) hinges not on the elements of the claim

18  but rather on the nature of the allegations themselves: "Rule 9(b) applies to 'averments of fraud' in

19  all civil cases in federal district court," including "particular averments of fraud" even when fraud

20  is not an essential element of the claim. *Vess v. Cuva-Geigy Corp. USA*, 317 F.3d 1097, 1103-04

21  (9th Cir. 2003). "Averments of fraud must be accompanied by the who, what, when, where, and

22  how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)

23  (quotation marks and citation omitted). "Allegations of non-fraudulent conduct need satisfy only

24  the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1104.

25      "Affirmative misconduct on the part of the government requires an affirmative

26  misrepresentation or affirmative concealment of a material fact, such as a deliberate lie or a pattern

27  of false promises." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citations omitted).

28  "[N]egligent provision of misinformation" is not affirmative misconduct. *Sulit v. Schiltgen*, 213 F.3d

20

1    449, 454 (9th Cir. 2000).

2           The Trust has adequately pled the affirmative misconduct element. In the Amended

3    Complaint, the Trust alleges that 1) the FDIC and other government officials confirmed that the

4    systemic risk exception that was invoked on March 12, 2023 "covered all uninsured deposits of all

5    Silicon Valley Bank depositors," thereafter, 2) "at the direction of senior FDIC-C employees,"

6    Bridge Bank was instructed by the FDIC-R1 "not to release any of the Account Funds and to call

7    back any wire transfers that SVBFG had initiated from its accounts" and "to assign SVBFG's

8    deposit accounts and all associated assets and liabilities to the FDIC-R1," and 3) the FDIC-C's

9    statements on March 12 and 13 concerning the terms of the systemic risk exception that depositors

10   had "complete access the full amount of their deposit accounts . . . were knowingly and egregiously

11   false." AC ¶¶ 47, 66, 74, 75, 175. In light of these facts, the Court agrees with the Trust that it has

12   adequately pled affirmative misconduct on the part of the FDIC-C even under the heightened Rule

13   9(b) pleading standard. The FDIC-C's reliance on *Lavin* is misplaced. *See* Mot. at 22 (citing *Lavin*

14   *v. Marsh*, 644 F.2d 1378, 1380 (9th Cir. 1981). In *Lavin*, the Ninth Circuit declined to apply the

15   doctrine of equitable estoppel against the government because there was "no pervasive pattern of

16   false promises" that constituted affirmative misconduct. *Lavin*, 644 F.2d at 1383-84. Unlike *Lavin*,

17   here, the Amended Complaint plausibly alleges that the FDIC-C made promises that "were

18   knowingly and egregiously false." AC ¶¶ 171-72, 175. To the extent that the FDIC-C argues that it

19   is not responsible for the actions of the FDIC-R1, for the reasons stated in Part IV.B, *supra*, the

20   Court finds that the Trust has plausibly alleged that the FDIC-C was responsible for the Trust's loss

21   of access to its Account Funds.

22          Accordingly, the FDIC-C's motion to dismiss the Trust's promissory estoppel claim is

23   DENIED.

24   **V.    LEAVE TO AMEND**

25          The FDIC-C argues that any dismissal of the Trust's claims should be with prejudice because

26   the Trust had an opportunity to amend its claims, and the Trust's effort still fall short. Mot. at 25. In

27   response, the Trust argues that any dismissal should be with leave to amend because further

28   amendment would not be futile in light of the ongoing discovery. Opp. at 25. The Trust has failed

United States District Court
Northern District of California

21

to cure the deficiency in Count IV for violation of its Fifth Amendment due process rights and Count VI for review of the FDIC-C's Final Agency Action under 5 U.S.C. § 706, and the Trust has not shown it could allege additional facts to support those claims. Accordingly, the Court DISMISSES Counts IV and VI WITHOUT LEAVE TO AMEND.

## VI.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the motion to dismiss (ECF 99) brought by Defendant the Federal Deposit Insurance Corporation, in its corporate capacity, is GRANTED IN PART and DENIED IN PART.

1.  The motion to dismiss Count I for declaratory judgment, Count II for turnover claim pursuant to 11 U.S.C. § 542, and Count VII promissory estoppel is DENIED.

2.  Count IV for violation of the Trust's Fifth Amendment due process rights and Count VI for review of the FDIC-C's Final Agency Action under 5 U.S.C. § 706 are DISMISSED WITHOUT LEAVE TO AMEND.

Dated:  February 27, 2025

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California